Oliver D. Griffin (CO Bar No. 52262)
oliver.griffin@kutakrock.com
**KUTAK ROCK LLP**
1801 California Street, Suite 3000
Denver, CO 80202
Telephone:  (303) 297-2400
Facsimile:   (303) 292-7799

Rudy R. Perrino (SBN 190672)
rudy.perrino@kutakrock.com
**KUTAK ROCK LLP**
777 South Figueroa Street
Suite 4550
Los Angeles, California  90017-5800
Telephone:  (213) 312-4000
Facsimile:   (213) 312-4001

Attorneys for Plaintiffs
ABRAHAM STUART RUBIN, DUSTY
BERKE as Trustee of the STUART RUBIN
CHILDREN'S TRUST, ANNETTE AND
STUART RUBIN, as Co-Trustees of the
STUART AND ANNETTE RUBIN FAMILY
TRUST, ASR DEVELOPMENT CO., FORCE
RUBIN, LLC AND FORCE RUBIN 2, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| ABRAHAM STUART RUBIN, an individual; DUSTY BERKE, as Trustee of the STUART RUBIN CHILDREN'S TRUST; and ANNETTE AND STUART RUBIN, as Co-Trustees of the STUART AND ANNETTE RUBIN FAMILY TRUST; ASR DEVELOPMENT CO.; FORCE RUBIN, LLC; FORCE RUBIN 2, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> GARY STIFFELMAN; RICHARD M. PACHULSKI; PACHULSKI STANG ZIEHL & JONES LLP, a California Limited Liability Partnership; U.S. REAL ESTATE CREDIT HOLDINGS III-A, LP, an Irish Limited Partnership; | Case No. 2:23-cv-10152 <br><br> **PLAINTIFFS' COMPLAINT FOR:** <br><br> 1. **BREACH OF FIDUCIARY DUTY** <br> 2. **LEGAL MALPRACTICE** <br> 3. **CIVIL CONSPIRACY** <br> 4. **RICO 18 U.S.C. § 1961 (c)** <br> 5. **RICO 18 U.S.C. § 1961 (d)** <br> 6. **FRAUDULENT CONCEALMENT** <br><br> **DEMAND FOR JURY TRIAL** |

COMPLAINT

2:23-cv-10152

4885-9234-3956.1

CALMWATER ASSET
MANAGEMENT, LLC, a Delaware
Limited Liability Company;
GREENBURG TRAURIG, LLP, a New
York Limited Liability Partnership;
DOE ATTORNEYS 1-50; DOE
FIDUCIARIES 1-50; DOES 1-100,
inclusive,

Defendants.

Plaintiff Abraham Stuart Rubin ("Rubin" or "Plaintiff"), the entities through which Rubin holds his various property and business interests, including ASR Development, Inc., Force Rubin, LLC, and Force Rubin 2, LLC (the "Rubin Entities"), and the trusts he has created for his family, the Stuart and Annette Rubin Family Trust ("SARFT") and Stuart Rubin Children's Trust ("SRCT", collectively "Plaintiffs"), by and through their attorneys of record, submit the following for their Complaint against Gary Stiffelman ("Stiffelman"); Richard M. Pachulski ("Pachulski"); Pachulski Stang Ziehl & Jones LLP ("Pachulski Stang"); Greenberg Traurig, LLP ("Greenberg Traurig"), U.S. Real Estate Credit Holdings III-A, LP ("USRECH"); and Calmwater Asset Management, LLC. ("Calmwater"); DOE ATTORNEYS 1-50, DOE FIDUCIARIES 1-50, and DOES 1-100.

## **INTRODUCTION**

1.    This action concerns the betrayal of a man and his family by two lifelong family friends.

2.    Each such lifelong family friend is and was a lawyer and fiduciary with unique access to the details of Plaintiff Stuart Rubin's personal and, importantly, financial life.

3.    Each such lifelong family friend served as an attorney in connection with Plaintiff Stuart Rubin's business and personal interests and coinvested as an active partner with him, directly and through various entities, for over thirty years in one case (Richard Pachulski) and nearly twenty years in the other (Gary Stiffelman).

KUTAK ROCK LLP
ATTORNEYS AT LAW
LOS ANGELES

COMPLAINT

- 2 -

CASE NO. _____

4885-9234-3956.1

Those friends have now compromised themselves as lawyers and fiduciaries and acted in a manner that brings disgrace to them and to the profession.

4.      One such friend, defendant Richard Pachulski, is presently, and at all times relevant herein was, designated as successor trustee of Plaintiff SRCT established by Stuart Rubin for the benefit of his children.  That friend, fiduciary and lawyer, has now sought to compromise the value of the Trust by tarnishing its assets, as well as assets held by Rubin and/or the Rubin Entities, and/or Plaintiffs SRCT and SARFT, to the detriment of all Plaintiffs.   The other friend, defendant Gary Stiffelman, used his position of trust as both attorney and fiduciary to Rubin and his interests to steal Rubin's and, more broadly, Plaintiffs' secrets from his law firm, Greenburg Traurig, which represented Rubin and his business interests.  He then used those stolen client and fiduciary secrets to hurt Rubin and, more broadly, Plaintiffs.

5.      Even worse, unbeknownst to Plaintiffs until very recently through discovery propounded on some of the defendants, in 2019 and again in 2021 both Stiffelman and Pachulski assert they entered into clandestine agreements with Defendants USRECH and/or Calmwater, and others, to disclose personal and privileged information belonging to Plaintiffs, in violation of fiduciary and ethical duties owed by both of them, and further utilized their partnership relations with Plaintiffs and various Rubin Entities to impair the assets of those entities in violation of fiduciary duties, all in order to facilitate USRECH/Calmwater's ability to obtain a pre-verdict writ of attachment essentially seizing control of all cash flow, distributions, and sale proceeds from various revenue sources belonging to Plaintiffs.

6.      Plaintiffs did not know and could not have known of these secret agreements to conspire to share private information, in violation of Pachulski and Stiffelman's ethical and/or fiduciary duties, until January 2023, at the earliest, when Plaintiffs were first made aware of a secret settlement agreement between Stiffelman and Calmwater/USRECH that provides for unspecified cooperation.

KUTAK ROCK LLP
ATTORNEYS AT LAW
LOS ANGELES

COMPLAINT

- 3 -

CASE NO. _____

4885-9234-3956.1

7.     Indeed, the extent of the abuses by the Defendants wasn't fully understood until Pachulski's law firm disclosed, on July 12, 2023, the purported existence of one such secret agreement with Defendant USRECH and/or Calmwater, allegedly entered into at a time when Rubin and, more broadly, Plaintiffs continued to share private and privileged information with both Stiffelman and Pachulski based on their fiduciary and/or attorney/client relationships and the belief, developed over years, that Stiffelman and Pachulski not only could be trusted, but owed ethical and fiduciary obligations to maintain confidentiality of certain information.

8.     Since July 12, 2023, with the aid of Court direction, Rubin has pursued discovery into this "joint interest privilege" as Pachulski and his firm, Pachulski Stang refer to it.  Pachulski and Stiffelman have repeatedly referred to this agreement and its legal effect as a "joint interest privilege" agreement and have objected to production of records on this basis of that privilege.  When Judge Elaine W. Mandel of the Los Angeles Superior Court ruled that a subpoena seeking documents supposedly protected by this "joint interest privilege" was relevant to the issues in the matter of Gary Stiffelman v. Stuart Rubin, Los Angeles Superior Court Case No. 19SMCV01908, and later suggested that Pachulski sit for deposition to answer questions on the nature of what apparently amounts to a "Common Interest Agreement", Pachulski and his firm, Pachulski Stang, then took a surprising position – that Pachulski had been acting as opposing counsel to Stuart Rubin and, therefore, any deposition should be extremely narrow.  As explained below, while Rubin knew that Pachulski had been assisting Stiffelman to "get out of the guarantees", he did not know until sometime after July 12, 2023 that Pachulski had been acting adversely to his interests.  Moreover, as has become obvious through his discovery efforts, Rubin could not have discovered this through reasonable diligence because Pachulski, Pachulski Stang Ziehl & Jones, Stiffelman, USRECH, and Calmwater, among others have acted in concert to deny at every turn efforts to conduct discovery into this

KUTAK ROCK LLP
ATTORNEYS AT LAW
LOS ANGELES

COMPLAINT

- 4 -

CASE NO. _____

4885-9234-3956.1

purported "Common Interest Agreement" and the communications that have taken place pursuant to it.

9.      Recently, when Rubin attempted to take the deposition of Scott Eisner ("Eisner")— an accountant who has been responsible for many years for accounting and tax related services to not only Rubin and his interests, but also to Pachulski and his interests—to inquire about some inquiries made by Pachulski of Eisner related to private financial information belonging to Rubin, Stiffelman surprisingly objected and threatened to seek sanctions for the effort.  Eisner has confided that Pachulski and his firm are his biggest sources of business.  It is not a big leap of logic to infer that the private financial information requested by Pachulski was going to be used to advance the objectives of the grand conspiracy described herein.

10.     No doubt discovery will further reveal the full extent of the corrupt and sinister enterprise that has been cleverly devised through years of experience by these Defendants, and others.

11.     Each lifelong family friend, apart from their roles as lawyers, also has had pecuniary interests bound up with Plaintiffs' business interests, including as co-managing members or managing members of some of those interests.  Moreover, each of the law firm defendants still receives compensation for legal services rendered on behalf of Plaintiffs' business interests.

12.     Seeing an opportunity when Plaintiff Stuart Rubin began facing significant litigation pressures from multiple angles involving the development of a hotel property in Coachella, California, his two lifelong family friends used the litigation as an opportunity to betray him.

13.     The motives are legion.  However, at a minimum, Pachulski hopes to force Stuart Rubin into insolvency so that he can wrest away interests in commonly held investments, shared among their families for decades, and Stiffelman hopes to protect what remains of his assets from liquidation, if not recoup such assets off of Rubin's back.

KUTAK ROCK LLP
ATTORNEYS AT LAW
LOS ANGELES

COMPLAINT

- 5 -

CASE NO. _____

4885-9234-3956.1

14.     Defendants USRECH and Calmwater hope to be able to, through implementation of the fraudulent conspiratorial enterprise, improve their chances of collecting one-hundred percent (or more) of the shortfall on a $24.4 million loan to which several investors, including Stiffelman, are obligors.  Plaintiffs are informed and believe, and thereon allege, that Stiffelman, Pachulski, Calmwater/USRECH and others have conspired to participate in a broad scheme that involves meticulous cooperation to capture Rubin's and, more broadly, Plaintiffs' cash flow so that Pachulski and Calmwater/USRECH can feast on the bones of Plaintiffs' real estate assets, while Stiffelman is able to keep his assets in exchange for his complicit malfeasance.

15.     As the matter is incredibly complex and the co-conspirators have utilized the litigation process to deprive Plaintiffs of their right to discover the breadth and depth of this conspiracy, it is quite possible that additional malicious objectives serve as the basis to this conspiracy.  These are the only objectives that Plaintiffs have been able to ascertain at this time and they, quite clearly, constitute tortious objectives.

16.     Defendants' betrayals are tortious, insofar as each of Plaintiff Stuart Rubin's lifelong family friends breached ethical and fiduciary duties owed by virtue of their business and representative relationships with Plaintiffs by obtaining and using confidential information about Plaintiffs gained in their capacity as counsel and/or as fiduciaries, all to Plaintiffs' detriment, and for their own benefit.  They have worked to undermine and betray Plaintiffs, and they have done such work in concert with USRECH/Calmwater.

## JURISDICTION AND VENUE

17.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because the case involves questions of federal law.

18.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) because, at a minimum, Defendants Pachulski and Stiffelman, for purposes of venue,

KUTAK ROCK LLP
ATTORNEYS AT LAW
LOS ANGELES

COMPLAINT

- 6 -

CASE NO. _____

4885-9234-3956.1

reside in this district, each of them does business in this district, each of the law firm defendants does business in this district, and USRECH and Calmwater conspired with them in this district and do business in this district as well.

## THE PARTIES

19.    Plaintiff, Abraham Stuart Rubin or Stuart Rubin, is a resident of Los Angeles, California.

20.    Plaintiff, the Stuart & Annette Rubin Family Trust is a trust entity, operated out of Beverly Hills, California.

21.    Stuart Rubin Children's Trust is a trust operated out of California.

22.    Plaintiffs, the Rubin Entities are various business entities used to hold Stuart Rubin's, the SRFT's and SRCT's various real estate and other interests.  They include:

(a)    ASR Development Co., a California Corporation with its principal place of business in Los Angeles, CA.

(b)    Force Rubin, LLC is a California Limited Liability Company, with its principal place of business in Los Angeles, California.

(c)    Force Rubin 2, LLC is a California Limited Liability Company, with its principal place of business in Los Angeles, California.

23.    Defendant Richard M. Pachulski, Esq., is an attorney who Plaintiffs are informed and believe resides at 10460 Revuelta Way, Los Angeles CA 90077.  Mr. Pachulski is a partner in and an attorney with Defendant Pachulski Stang Ziehl & Jones LLP.

24.    Defendant Gary Stiffelman, Esq., is an attorney who Plaintiffs are informed and believe resides at 5011 Serena Circle Tarzana, CA 91356. During the relevant period of time, he was a shareholder at Defendant Greenberg Traurig, and is now owner of GSS Law PC.

KUTAK ROCK LLP
ATTORNEYS AT LAW
LOS ANGELES

COMPLAINT

- 7 -

CASE NO. _____

4885-9234-3956.1

25.     Defendant Pachulski Stang Ziehl & Jones LLP is a law firm incorporated under the laws of New York doing business in, among other places, California.  At all times that Pachulski has acted as an attorney, he has acted by and through his law firm, Pachulski Stang Ziehl & Jones LLP.

26.     Defendant Greenberg Traurig, LLP is a law firm formed under the laws of New York and doing business in, among other places, Los Angeles, CA.  At much of the times relevant herein, Defendant Stiffelman acted by and through his law firm, Greenberg Traurig, LLP.

27.     Defendant USRECH is an Irish Limited Partnership, authorized to do business in California.

28.     Defendant Calmwater is a Delaware Limited Liability Company, authorized to do business in California.

29.     By their own admission, Defendants USRECH and Calmwater are alter egos of one another, one in the same company.  They share the same address, the same ownership, the same officers, such as counsel.  Indeed, "Calmwater Capital is the marketing name for the affiliated entities" such as USRECH "which we have formed to engage in our commercial real estate lending business." (**Exhibit A**.) Accordingly, liability of one is liability of the other.

30.     The true names of defendants DOE ATTORNEYS 1-50 are presently unknown to Plaintiffs.  Plaintiffs know them to be attorneys who worked for Defendants Pachulski Stang Ziehl & Jones, LLP and/or Greenberg Traurig LLP, and who worked on Plaintiffs' matters, through which confidential and privileged information and communications were provided and/or created.  Plaintiffs are informed and believe, and based thereon allege, that each of the defendants designated herein as a fictitiously named defendant is in, some manner, responsible for the events and happenings herein referred to, either contractually or otherwise, and caused the damage to Plaintiffs as herein alleged.  When Plaintiffs ascertain the

true names of DOE ATTORNEYS 1-50, they will ask leave of Court to amend their complaint.

31.     The true names of defendants DOE FIDUCIARIES 1-50 are presently unknown to Plaintiffs.  Plaintiffs know them to be agents of Defendants Pachulski and/or Stiffelman who worked on Plaintiffs' matters.  Plaintiffs are informed and believe, and based thereon allege, that each of the defendants designated herein as a fictitiously named defendant is in, some manner, responsible for the events and happenings herein referred to, either contractually or otherwise, and caused the damage to Plaintiffs as herein alleged.  When Plaintiffs ascertain the true names of DOE FIDUCIARIES 1-50, they will ask leave of Court to amend their complaint.

32.     The true names and capacities, whether individual, corporate, associate or otherwise, of defendants DOES 1-100 are presently unknown to Plaintiffs, who therefore sue said defendants by such fictitious names.  Plaintiffs are informed and believe, and based thereon allege, that each of the defendants designated herein as a fictitiously named defendant is in, some manner, responsible for the events and happenings herein referred to, either contractually or otherwise, and caused the damage to Plaintiffs as herein alleged.  When Plaintiffs ascertain the true names of DOES 1-50, they will ask leave of Court to amend their complaint.

33.     Plaintiffs are informed and believe, and based thereon allege, that at all relevant times herein, defendants, and each of them, were the agents, employees, alter egos, conspirators, and servants of the other defendants and, in doing the things alleged herein, as well as those things that will be proven at trial, were acting within the course and scope of their authority as such agents, employees, alter egos, conspirators, and servants, and with the permission and consent of all other defendants.

34.     Plaintiffs are further informed and believe, and based thereon allege, that all of the corporate and non-natural person entity defendants are alter egos of the individual defendants, and: (a) there existed and now exists a unity of interest,

ownership and operation between defendants such that the individuality and separateness of defendants has ceased or never existed; and (b) their failure to honor the separate existence of each corporate and non-natural person entity would sanction a fraud or promote injustice.  Plaintiffs are further informed and believe, and based thereon allege, that recognition of the privilege of separate existence of the defendants would promote injustice because defendants, and each of them, in bad faith dominated and controlled each other as follows:

      a.     They have been and/or are now a mere shell and naked framework which they have used as a conduit for the conduct of their business, property, and affairs;

      b.     They comingled funds and other assets of each other with their own funds and other assets for their own convenience and to assist in evading obligations;

      c.     They used funds for something other than corporate uses;

      d.     They purported to, and did, work through each other during the negotiations and performance, and interpretation, of the contracts and services set forth herein;

      e.     They used each other as mere shells, instrumentalities and/or conduits for their own actions, and negotiated the terms of the subject contracts and/or individually changed and/or breached the contracts for the own benefits and/or diverted funds, customers, and other assets of each other for other than corporate uses and/or to defraud Plaintiffs and others;

      f.     They treated the assets of each other as their own;

      g.     They failed to maintain minutes and/or adequate corporate records of each other, created confusion of the records of the separate entities, and/or failed to maintain other corporate formalities;

      h.     They failed to maintain arm's length relationships among each other;

KUTAK ROCK LLP
ATTORNEYS AT LAW
LOS ANGELES

COMPLAINT

- 10 -

CASE NO. _____

4885-9234-3956.1

i.      They used each other to procure labor, services, or merchandise for the other;

j.      They used the same directors and officers of each other;

k.      They used the same office or business location, including co-habitating with unlicensed entities in violation of applicable laws;

l.      They employed the same employees, agents, and/or attorneys;

m.      All defendants acted in concert and for a common enterprise with respect to the acts complained of herein; and

n.      Other representations, acts, and/or omissions subject to proof.

## FACTS COMMON TO ALL CLAIMS

A. <u>Richard Pachulski's Connections to Plaintiffs</u>

35.     The Pachulski and Rubin families have known each other for at least sixty years.

36.     Pachulski has long acted as a paid attorney and fiduciary in relation to Rubin's interests, which include the Rubin Entities, SRCT and SARFT.  Pachulski has been involved in nearly all aspects of Rubin's affairs since 1988.

37.     Rubin's affairs, generally speaking, break down into two sets of assets, held both individually and through the Rubin Entities: the L&R group of companies and the Rubin Pachulski Properties ("RPP") business.  Pachulski has been involved as an attorney and/or fiduciary to Rubin's interests in both, as well as being a managing member of RPP.  In such capacities, he has been invested with confidential, trusted and privileged information.

38.     Respecting RPP, Plaintiff ASR—a company wholly owned by Stuart Rubin—is a partner therein and Pachulski is both a partner and he, individually and his law firm are paid a monthly fee by RPP for oversight.  This oversight extends both to Pachulski's own interests and to interests associated with Plaintiffs.  He is an active managing member and fiduciary of RPP and its owners, which include Rubin

KUTAK ROCK LLP
ATTORNEYS AT LAW
LOS ANGELES

COMPLAINT

- 11 -

CASE NO. _____

4885-9234-3956.1

directly and through the Rubin Entities, as well as SRCT and SARFT, and has had this role throughout the time period relevant to this Complaint.

39.     Respecting L&R Group, an entity in which Rubin and/or the Rubin entities hold interests, in his capacity as an attorney, Pachulski and PSZJ have handled—both as fiduciary and as lawyers—several sensitive issues surrounding those businesses giving him access to sensitive and confidential personal financial information belonging to Rubin and the Rubin Entities, and was engaged by L&R as an attorney for such work.  (*See* **Exhibit B**).

40.     Examples include: Pachulski was hired to co-manage, with co-defendant Greenberg Traurig, the dissident shareholder lawsuit that the Simons family brought against the L&R Group and Stuart Rubin individually, and he handled aspects of the mediation in that matter and was retained by The L&R Group for that reason.  (*See* **Exhibit C**).  He also handled the continued restructuring of debt and sale of assets between L&R and RP Realty Partners, consulting with all board members, including Rubin.  RP Realty Partners or its affiliate, which are all owned or controlled by Pachulski, also managed the commercial retail portfolio of The L&R Group, where fees were generated for Pachulski's benefit, so that over time Pachulski has earned several million dollars in fees in connection with such representation. Such representations made him privy to, in a confidential capacity, allegations against and interests at play in the L&R Group, and he was duty-bound to maintain the confidence of such knowledge.  He was an attorney for and a fiduciary of The L&R Group and its owners, which include S. Rubin and the Stuart Rubin Children's Trust, and through all his work as an attorney for L&R Group, he became intimate with aspects of Rubin's financial holdings, including which Rubin Entities they were held by and/or which trust they are associated with.

41.     Pachulski also represented certain L&R Group elements in the contemplated sale by L&R of Wallypark interests to CKI in 2017.  (*See* **Exhibit D.**) Such sale exposed him to a plethora of additional documents and information about

L&R, including details about the Simons litigation mentioned above, and stakeholders' cash flow, including cash flow of Rubin's and the Rubin Entities.  (See **Exhibit E**; **Exhibit F.)**   Here again, such representation made him privy, in a confidential capacity, to confidential information and to various interests at play in the L&R Group which included all debt schedules, ownership percentages, and cash flows (both historic current and future). Pachulski was duty-bound to maintain the confidence of such knowledge but has actually sought to expose aspects of that confidential information.  (See **Exhibit G**)  He was a fiduciary of L&R Group and its owners, which owners included Rubin, through the Rubin Entities, and SRCT.  As Stiffelman told Rubin's son in January of 2023, referring to the aforementioned confidential financial information, Pachulski "knows where all the bodies are buried."

42.    Last, Rubin, and more broadly, Plaintiffs reposed such confidence and faith in Pachulski over the years, that Pachulski currently serves (but not for long) as successor trustee to the SRCT, with intimate knowledge of the investments owned by such trusts and an understanding of how impairment of such investments would harm the overall welfare of the trust.  In that capacity, he has owed and continues to owe a fiduciary duty to the trust, and continues to owe a duty to the trust because of his intimate and confidential knowledge of it, notwithstanding that he still serves as successor trustee. Mr. Pachulski further owed a duty to the trusts due to his legal representation of these entities, wherein, for all intents and purposes, he acted as the lawyer for SRCT as well as his representation of RPP.

43.    Rubin, individually and through the Rubin Entities, and Pachulski, with others, are also joint owners in La Cienega, which Pachulski estimates to be worth $170-180 million. The estimated value reflects Pachulski's efforts to cause such appraisal.  Pachulski would like to both own and control more of this investment and has admitted that he would like to be able to purchase Rubin's ownership stake at a discount.  See Evan Smith e-mail.  The root motivation of Pachulski's actions set

KUTAK ROCK LLP
ATTORNEYS AT LAW
LOS ANGELES

COMPLAINT

- 13 -

CASE NO. _____

4885-9234-3956.1

forth herein, including his breaches of fiduciary duty, his subornation of same from Stiffelman, and his connivance with USRECH and Calmwater, are traceable to this desire.

B    <u>Gary Stiffelman's Connections to Plaintiffs</u>

44.    Gary Stiffelman was a long-time friend of Stuart Rubin, as well as a neighbor and godfather to Rubin's children.

45.    Gary Stiffelman was an attorney with Defendant Greenberg Traurig, which has long served as counsel to Rubin, both personally and to his business interests, including the Rubin Entities.

46.    Indeed, Greenberg's work for Rubin and, more broadly, Plaintiffs has been extensive, including:

(a)    Representation of Stuart Rubin and Annette Rubin in a personal capacity since approximately 2005;

(b)    Representation of RPP, LLC in construction litigation (also involving Pachulski);

(c)    Representation of the L&R group of companies for over a decade through 2023 (where from Greenberg has earned millions of dollars of legal fees);

(d)    Representation of Glenroy Coachella, LLC and Lighthouse Coachella, LLC by and through Gary Stiffelman himself, even up to the time of his 2021 termination by Greenberg Traurig.

47.    Stiffelman worked directly on matters for Plaintiffs while at Greenberg Traurig, and Gary Stiffelman used his position as an attorney at Greenberg Traurig to understand Greenberg Traurig's representation of Stuart Rubin and its privileged work on his various affairs.

KUTAK ROCK LLP
ATTORNEYS AT LAW
LOS ANGELES

COMPLAINT

- 14 -

CASE NO. _____

4885-9234-3956.1

48.     Stiffelman certainly cannot claim that he was unaware of such representation.   Indeed, Stiffelman at least once in his role as a shareholder of Greenberg Traurig, characterized Stuart Rubin in internal correspondence as "our client."  (**Exhibit H.)**

49.     As set forth in a Declaration from Eric V. Rowen, Esq., co-managing member of defendant Greenberg Traurig LLP's Real Estate Litigation Practice, dated February 15, 2023, attached hereto as **Exhibit I**:

(a)     After Plaintiff Gary Stiffelman joined Greenberg Traurig, we had a discussion in the firm's Los Angeles office in which I provided Mr. Stiffelman with a detailed explanation of the Enterprise Litigation and Greenberg Traurig's representation of Stuart Rubin, Dr. Rubin, certain other owners of The Enterprise, and The Enterprise itself.

(b)     In the Enterprise Litigation, Ann Simons alleged that Stuart Rubin maintained two sets of books for The Enterprise. Our clients denied that false allegation and successfully defended against that claim, obtaining a complete defense arbitration award, which was subsequently confirmed in this court.

50.     Indeed, defendant Greenberg Traurig, LLP has acknowledged that sending a single e-mail from an e-mail associated with an entity would bind someone like Stiffelman as an agent of that entity.  Stiffelman literally sent thousands of e-mails from his Greenberg Traurig address over the years.  Stiffelman literally introduced Rubin as a client of the firm.  No doubt, Stiffelman is and was Rubin's lawyer.  And, as acknowledged by Mr. Rowen, Stiffelman's actions bind the firm. (See **Exhibit I**.)

51.     The confidential information Stiffelman learned while he worked at Greenberg Traurig as an attorney, in connection with Greenberg Traurig's

KUTAK ROCK LLP
ATTORNEYS AT LAW
LOS ANGELES

COMPLAINT

- 15 -

CASE NO. _____

4885-9234-3956.1

representation of Rubin and his interests, including the Rubin Entities, later proved useful to Stiffelman.  Notwithstanding that Stiffelman was bound by fiduciary duty and attorney ethics to refrain from using such confidential information against Rubin, Greenberg Traurig's client, Plaintiffs only recently learned that he has exploited and publicized such information, hand in hand with Pachulski, so as to weaken Stuart Rubin's interests vis-à-vis Pachulski.  He has used such allegations against Rubin in litigation, notwithstanding that such allegations are only known to each of Rubin and Pachulski insofar as they learned such allegations in their capacities as attorneys and fiduciaries for Rubin and/or Rubin's interests.

C. <u>The Coachella Investment</u>

52.     Among other investors, Stiffelman and Rubin together sought to develop a hotel/resort in Coachella, California.  Each of them personally guaranteed aspects of this project.  Stiffelman called Rubin his "partner."  (See **Exhibit J**.)  By his own admissions, Stiffelman himself was a managing member of the entity. (**Exhibit K**).  However, the development of this project ran into problems.

53.     Gary Stiffelman soon found himself in over his head.  Despite an invitation from Stuart Rubin to exit, Stiffelman stated that he was determined to stay in.  (*See* **Exhibit L**).  He maintained his desire to remain invested, despite the fact that he never had sufficient resources to truly act as a co-investor on the project. (See **Exhibit M**; **Exhibit N; Exhibit O).**

54.     Ultimately, defendant Calmwater/USRECH offered a $24.4 million loan on certain conditions that included that the loan be "in balance" with the budget for the project at the time of closing.  "In balance" in simple terms means that the loan proceeds plus the equity in the project would be sufficient to cover the total cost, or budget, for the project.

55.     On April 26, 2018, Calmwater/USRECH rushed to close the loan but failed to fund as approved and independently verified by their third-party due

diligence experts, paid for by the Plaintiffs and the other investors, as demanded by the unlicensed lender Calmwater/USRECH.   Calmwater/USRECH fraudulently withheld key reports and findings from Rubin and the Glenroy partners to induce completion of the loan they secretly never intended to fully fund.  At closing, when the borrowers raised questions about the budget, Calmwater/USRECH's Huell Kim responded, "let's close and we can worry about the budget later."

56.    Unbeknownst to Rubin and the other investors at the time of closing, the loan was not in balance at all.  Indeed, an appraisal provided by Calmwater/USRECH more than a month after closing, and only after repeated requests, showed that the project was more than $20 million underfunded.  Plaintiffs are informed and believe, and thereon allege, that Calmwater/USRECH intentionally concealed the fact that the loan was not in balance at the time of closing in order to induce the investors, including Rubin, to close, binding them to the loan agreement and, importantly, to the personal guarantees that Rubin and other investors signed.

57.    It did this by, first, requiring that the contracts with the contractor, Doug Wall Construction, and with all of the subcontractors and other vendors, like architects and engineers, be assigned to Calmwater/USRECH.

58.    They then required Rubin and the other investors to take a back seat, ostensibly for the purpose of maintaining objectivity per Calmwater/USRECH's Huell Kim.

59.    Through a series of their own underhanded deeds, including fraud, misrepresentations, and failures to disclose, USRECH and Calmwater ultimately issued and recorded a Notice of Default on the project, causing both the project and refinance efforts to fail.  The result, and apparent object from the beginning of Calmwater/USRECH's malfeasance was to force a default on the loan, which led to the action in the Superior Court of California, County of Riverside entitled *U.S. Real Estate Credit Holdings III-A, LP v. Glenroy Coachella, LLC, et al*, Case No. RIC1905743 (the "USRECH Litigation") against, among others, Gary Stiffelman and

KUTAK ROCK LLP
ATTORNEYS AT LAW
LOS ANGELES

COMPLAINT
- 17 -
CASE NO. _____

4885-9234-3956.1

Stuart Rubin, in their capacities as personal guarantors under the relevant project documents.

60.     Indeed, as Plaintiffs have recently learned, Calmwater/USRECH defrauded Rubin and the other borrowers by, among other things, concealing that the loan was not in balance while insisting that the loan close without that disclosure, and engaging in lending activities without being properly licensed to do so.   In addition to the offer of financing made on September 7, 2017 while not licensed, Calmwater/USRECH demanded and accepted payments for due diligence fees and other lending services in the hundreds of thousands of dollars.   Unbeknownst to Rubin and the other investors until very recently, Calmwater wasn't a licensed lender under California law until at least early 2018, Indeed, by Calmwater's own fraudulent representations on their California Lending License Application, it claims it did not engage in any lending activities in California prior to 2018.   (See **Exhibit A**).

61.     Calmwater's right to bring the USRECH Litigation through defendant U.S. Real Estate Credit Holdings III-A ("USRECH") remains a separate issue to be litigated in a different forum.

D.   Pachulski acts as Counsel to Gary Stiffelman Despite Both of Their Connections to Rubin, In Ways That Are Adverse to Rubin

62.     In violation of his fiduciary duties, Gary Stiffelman was not prepared for the USRECH Litigation.   On July 9, 2019, Stiffelman wrote to Rubin to disclose that his finances were in ruins.   (See **Exhibit O**.)   It was clear that Stiffelman was desperate.

63.     Pachulski began negotiating with Calmwater/USRECH on Stiffelman's behalf as early as July 2019.   While Plaintiffs were aware, as explained below, that Pachulski was assisting Stiffelman to get "off the guarantees", Pachulski and Stiffelman actively concealed that Pachulski was actually representing Stiffelman adversely to Plaintiffs' interests.   His adversity was not known and could not have been known until January 2023, at the earliest.

KUTAK ROCK LLP
ATTORNEYS AT LAW
LOS ANGELES

COMPLAINT

- 18 -

CASE NO. _____

4885-9234-3956.1

64.     As disclosed by Pachulski's own firm on July 12, 2023, at least by August 2, 2019, Pachulski had begun actually representing Stiffelman in relation to the litigation with Calmwater/USRECH.  Pachulski had told Rubin and others that he was only representing Stiffelman to "get him off the guarantees."  As Rubin learned only recently, this was untrue. Pachulski did not disclose that he and Stiffelman secretly entered into what they describe as a "common interest" agreement with Calmwater/USRECH—while Calmwater/USRECH were suing Rubin and Stiffelman (the "Secret 2019 Agreement"). Plaintiffs are informed and believe, and thereon allege, that pursuant to this Secret 2019 Agreement, Stiffelman and Pachulski were to pretend to continue to act as if they were active defendants in the USRECH Litigation, while simultaneously providing Calmwater/USRECH with confidential information about Plaintiffs to which they have access solely as a result of their unique fiduciary and attorney/client relationships.  Plaintiffs are further informed and believe, and thereon allege, that Defendants Pachulski and Stiffelman have, indeed, shared such confidential and private information with Calmwater/USRECH, in violation of their respective fiduciary and ethical duties, to the detriment of Plaintiffs with the goal of facilitating Calmwater/USRECH's efforts to force Rubin into insolvency, allowing USRECH, Calmwater and Pachulski to feast on the bones of his real estate assets, and allowing Stiffelman to exit quietly from the litigation. Moreover, it appears that Pachulski and Stiffelman continue to share more confidential information with Calmwater/USRECH because, as recently as January 17, 2023, Pachulski represented to Eric Rowen of Greenberg Traurig, that he continues to assist Stiffelman in the ongoing litigation with Calmwater/USRECH, despite the fact that Stiffelman settled that litigation in 2021 as discussed below. (See **Exhibit P**.)

65.     The information supporting these conclusions includes: the admission made since July 12, 2023 by Pachulski's law firm Pachulski Stang that Pachulski has been acting as "opposing counsel", adversely to Rubin's interests; the efforts by

Pachulski to obtain from Scott Eisner private financial information; and the purported "common interest agreement" between Stiffelman and USRECH/Calmwater as articulated by Pachulski Stang. The information further includes the recent efforts by Pachulski Stang, Stiffelman, USRECH/Calmwater and even the Bankruptcy Trustee, Edwin Leslie, to defeat efforts to obtain communications among these parties related to Rubin and other investors in the project through proper discovery.

66. Curiously, as part of Rubin's efforts to obtain discovery into the basis for and the objectives of the alleged "common interest agreement," Rubin attempted to depose representatives of USRECH/Calmwater on the subject. During meet and confer discussions directed at identifying a representative of USRECH/Calmwater to testify to the existence (or absence) of a common interest agreement between Stiffelman and USRECH/Calmwater, counsel for USRECH/Calmwater wrote: "After our call with you, we reached out to Jim Hunter to see if Stiffelman is willing to waive any common interest that arose between USRECH and Stiffelman starting on or about February 8, 2021, which as you may know was around the time of Glenroy's bankruptcy filing. Hunter confirmed Stiffelman is willing to this limited waiver as long as USRECH also agrees -- and USRECH is willing to agree. We understand from Hunter that Pachulski and his firm continue to believe that the documents you are seeking are not relevant and are otherwise objectionable." Previously, Pachulski Stang represented, and argued vehemently, that a common interest agreement had been entered into between Stiffelman and USRECH/Calmwater on August 2, 2019. It is unclear from counsel's e-mail whether they are claiming that there was no agreement between them until February 8, 2021 or that they are only waiving privilege as it pertains to the now confirmed common interest privilege that allegedly arose on February 8, 2021. What is clear, however, is that Stiffelman will continue to oppose Rubin's discovery efforts on relevancy and other grounds and that further efforts outside of this RICO complaint will likely fail to generate the needed discovery.

67.     Pachulski, by his own word, ***began to represent Gary Stiffelman to get him out of his Guarantee*** on the loan issued by Calmwater/USRECH.  (See **Exhibit Q**).  He allegedly made the Secret 2019 Agreement despite the fact (*or because of the fact*) that Mr. Stiffelman's interests with respect to Mr. Rubin were in conflict with Mr. Pachulski's own interests with respect to Mr. Rubin.  (See **Exhibit R**).  However, as detailed above, Pachulski had and has fiduciary and ethical duties to Plaintiffs that would be implicated in adverse developments in any action against Rubin.  Furthermore, as detailed above, Pachulski had over the years learned so much confidential information about Rubin, his finances, and his associated entities, and had such an interwoven set of fiduciary duties and duties of confidence stemming therefrom, that it would be impossible for him to act as an attorney for Stiffelman in a setting that would make him adversarial to Rubin.  (*See* **Exhibit O**).

68.     Indeed, Pachulski was sufficiently uncomfortable with his representation of Stiffelman that, when pressed on the question by Stacy Harrison of Orrick Herrington & Sutcliff LLP on October 23, 2019, he falsely claimed that he was not Gary Stiffelman's litigation counsel. (See **Exhibit Q**)     According to Pachulski, his sole goal was "to help [Stiffelman] to resolve his debt issues and assist, if possible, to sell or get investors for the Coachella Property" in which both Stiffelman and Rubin were tenants in common, and were by Stiffelman's own admission, fiduciaries to each other.  Pachulski repeated these misleading statements to just about everyone he interacted with.  (See **Exhibit S**).  These representations were, at best, misleading in that he and Stiffelman had already entered into the 2019 Secret Agreement with Calmwater/USRECH and , on information and belief, were in the process of aiding Calmwater/USRECH in freezing Rubin's and the Rubin Entities' assets and forcing sale of his assets at a discount, while simultaneously allowing Stiffelman to exit the USRECH Litigation quietly and at a minimum expense.

KUTAK ROCK LLP
ATTORNEYS AT LAW
LOS ANGELES

COMPLAINT

- 21 -

CASE NO. _____

4885-9234-3956.1

69.    Stiffelman himself understood the perils of such dual representations and that the "duty of loyalty . . . may be compromised."  (See **Exhibit T**.)  So too was Pachulski.

70.    Yet Pachulski had already proceeded: he became counsel to Stiffelman on August 2, 2019 precisely so that he could help shape the fall-out in such a way as to harm Stuart Rubin and, more broadly, Plaintiffs to his own pecuniary benefit.

71.    This representation led directly to the alleged Secret 2019 Agreement, which in turn led to Pachulski and Stiffelman sharing Plaintiffs' confidential and privileged information with Calmwater/USRECH, to Plaintiffs' detriment.   This included:

(a)    Voluntarily providing to Calmwater/USRECH, in the USRECH Litigation, confidential and privileged information, in violation of his fiduciary and ethical duties, which allowed Calmwater/USRECH to obtain a writ of attachment against Rubin and, more importantly, access to cash flows to Rubin and the Rubin Entities, and assets held by them and by SRCT and SARFT;

(b)    Using entities controlled by Pachulski, but in which Rubin holds an interest—like RPP—to divert funds away from Rubin, in violation of fiduciary duties owed by him; and

(c)    Voluntarily disclosing to Calmwater/USRECH privileged and confidential information about Rubin's finances that were never requested in formal discovery nor would have been the proper subject of such discovery.

72.    In October 2019, Rubin, Stiffelman, and Calmwater/USRECH participated in a mediation in the USRECH Litigation. By then, and unbeknownst to Plaintiffs, Stiffelman, Pachulski, and Calmwater/USRECH had already allegedly entered into the Secret 2019 Agreement. Pachulski then used the meeting to repeatedly request, and receive, detailed personal financial information from Rubin and Elliott Lander (another co-defendant in the USRECH Litigation) about their assets.  At the time, Rubin did not understand the reasons for the inquiries because,

KUTAK ROCK LLP
ATTORNEYS AT LAW
LOS ANGELES

COMPLAINT

- 22 -

CASE NO. _____

4885-9234-3956.1

at the time, he trusted both Pachulski and Stiffelman as fiduciaries and as attorneys. In retrospect, that trust was misplaced.

73.    Then, on October 25, 2019, Pachulski began sidelining Rubin from RPP—a businesses they held in common and in which the two owed fiduciaries duties to one another. RPP managed various real estate assets at the time, including La Cienega, and collected management fees for its management services.  He did this by arguing that Rubin would need to convert his interest in La Cienega from general partner to limited partner, with no voting rights, on the ruse that it would avoid a lender background check in a proposed refinancing of one of the business' largest assets known as "La Cienega" (this asset is owned through Plaintiff ASR, while the property was managed by RPP).  (See **Exhibit U.**)

74.    Pachulski later admitted that he has been planning to acquire Rubin's interest in the La Cienega investment on the cheap for years.  Unbeknownst to Rubin, all of these maneuvers were occurring at the same time that Pachulski was representing Stiffelman adversely to his interests and, more importantly, while they were allegedly parties to the Secret 2019 Agreement with Calmwater/USRECH to share confidential and private information.

75.    Pachulski's efforts to sideline Rubin and to obtain more confidential and private information—in violation of this ethical and fiduciary duties—continued well into 2022: in early 2020, Pachulski then coordinated the removal of Stuart as managing member of RP Realty Partners, ostensibly giving him complete control over the assets it manages—one of them La Cienega—then later turning over management of the assets to RPD, an entity in which Rubin has no ownership, but of which Pachulski is the managing member with total control.

76.    In early 2022, Pachulski sought and obtained personal and confidential information from Rubin's accountant Scott Eisner, in further violation of his fiduciary and ethical duties—about Plaintiff ASR Development Co. While ASR is owned by Stuart Rubin, it is not a party to the USRECH Litigation or to the ultimate

KUTAK ROCK LLP
ATTORNEYS AT LAW
LOS ANGELES

COMPLAINT

- 23 -

CASE NO. _____

4885-9234-3956.1

writ of attachment that was obtained by USRECH in it. Not surprisingly, Plaintiffs are informed by Eisner that Defendant Pachulski Stang Ziehl & Jones LLP is Eisner's largest client.

77.    In sum, Pachulski's plan has been to use his knowledge of Rubin's finances, gained through his fiduciary and/or attorney-client relationship with Rubin and, more broadly, Plaintiffs, as well as through subversive means, to force Rubin to file for personal bankruptcy and/or force Rubin to lose his ownership interests in various enterprises he co-owns with Pachulski. Pachulski has executed this plan by, not only, weaponizing the confidential and privileged information he knows about Plaintiffs, but also by working with Stiffelman to share that information with Calmwater/USRECH real estate to abet their attempt to seize Rubin's real estate interests and re-sell those same interests to Pachulski at a steep discount. If successful, this will effectively force Rubin to cede ownership and the proceeds of a lifetime of work to Pachulski's benefit.

E.    Stiffelman settles

78.    In October 2019, Pachulski purported to S. Rubin that his involvement related to the Coachella Hotel was strictly to assist Stiffelman in getting off the personal guarantee (**Exhibit Q**.)

79.    On April 21, 2021, Pachulski, Stiffelman, Calmwater/USRECH, Counsel for Calmwater/USRECH, and the U.S. Trustee entered into a secret settlement agreement wherein Stiffelman was released from any further liability owed to Calmwater/USRECH (the "Secret 2021 Settlement"). (See **Exhibit V**.) Rather than publicly dismiss Stiffelman, Rubin recently learned that Pachulski, Stiffelman, Calmwater/USRECH secretly agreed that Stiffelman would *pretend* to continue to be a party in the USRECH Litigation and co-defendant of Rubin's— ostensibly to continue the ruse that Stiffelman and Rubin were still united in a common defense Calmwater/USRECH and allow Stiffelman to continue to act as Calmwater/USRECH's mole. (*Id* at ¶¶ 5). This  ruse was only discovered through

KUTAK ROCK LLP
ATTORNEYS AT LAW
LOS ANGELES

COMPLAINT

- 24 -

CASE NO. _____

4885-9234-3956.1

discovery propounded on Pachulski's office—which was initially opposed but finally began to be release released beginning in early 2023.

80.     To keep the Secret 2021 Settlement a secret for nearly two years, Calmwater/USRECH went so far as to have its managing director, attorney Simond Levian, perjure himself by signing and submitting a declaration to the Bankruptcy Court which specifically excluded the sum Stiffelman paid to Calmwater/USRECH as part of the Secret 2021 Settlement, artificially inflating the true amount of what remained to be paid under Rubin's guaranty, as well as Calmwater/USRECH's accruing interest.

81.     Consistent with the Secret 2019 Agreement and the Secret 2021 Settlement, Pachulski and Stiffelman have both spent years violating their fiduciary and professional duties to Rubin and, more broadly, to Plaintiffs by weaponizing and improperly disclosing the information they had gained in confidence in their capacity as attorneys and fiduciaries to harm Plaintiffs.

82.     Aside from releasing Stiffelman from further liability and providing Calmwater/USRECH a mole, the Secret 2019 Agreement and the Secret 2021 Settlement also furthered Pachulski's goal of using Calmwater/USRECH to keep pushing Rubin towards personal bankruptcy and force Rubin's assets into a fire sale, which Pachulski could then buy-up at a fraction of their actual value and ultimately gain control of RPP in toto.

83.     As Stiffelman informed Rubin's son, Joseph Rubin, in January 2023, Pachulski would be instrumental at a mediation adverse to Stuart Rubin because Pachulski "knows where all the bodies are buried." Of course, he did.  He had been counsel to Rubin's interests, and fiduciary to the trusts for his children, for years.

F.  The Bad Acts

84.     Mr.   Stiffelman   proved   zealous   in   his   efforts   to   help Calmwater/USRECH harm Mr. Rubin.  Though unaware at the time, Defendants began a concerted enterprise (this is where the use of a second enterprise may be

confusing) designed to destroy Plaintiff's business affairs, including preventing any resolution of the Calmwater dispute.

85. Unbeknownst to Plaintiffs until just the last few months, at least by July 2019, Stiffelman and Pachulski were negotiating in secret with Calmwater/USRECH to enter into a settlement agreement (the Secret 2021 Settlement) and a purported common interest agreement (the Secret 2019 Agreement) to share confidential and privileged information acquired by Stiffelman and Pachulski solely as a result of their fiduciary and/or attorney/client relationship with Rubin and, more broadly, with Plaintiffs, in order to aid Calmwater/USRECH's efforts to identify and freeze Rubin's and, more broadly, Plaintiffs' assets, with the aim of forcing Rubin into bankruptcy so that Calmwater/USRECH, Stiffelman, and Pachulski could feast on the bones of his assets.

86. Despite diligent efforts, this information was only recently discovered. Moreover, because of the multi-faceted opposition interposed by the various co-conspirators Pachulski, Stiffelman, USRECH/Calmwater, potentially the bankruptcy Trustee, Edwin Leslie, and others, Plaintiffs could not have discovered sufficient information about this conspiracy to meet pleading standards until July 12, 2023, at the soonest.

87. On July 12, 2023, Pachulski and Defendant PSZJ disclosed the existence of the supposed common interest agreement with Calmwater/USRECH. Not surprisingly, they have thus far refused to produce a copy of that agreement—only belatedly claiming that the agreement is only oral—and, along with USRECH/Calmwater, Stiffelman and even the bankruptcy trustee, Edwin Leslie, have vigorously opposed any and all discovery efforts into communications among those parties.

88. Indeed, only very recently, the coordination among Pachulski, PSZJ, Stiffelman (and his counsel) and Calmwater/USRECH has been on full display in the litigation. First, Pachulski/PSZJ shifted their claims of when the common interest

KUTAK ROCK LLP
ATTORNEYS AT LAW
LOS ANGELES

COMPLAINT

- 26 -

CASE NO. _____

4885-9234-3956.1

agreement arose and what triggered its creation, only ***after*** counsel for Calmwater/USRECH instructed them to do so based on negotiations over a subpoena of Calmwater/USRECH's person(s) most knowledgeable and specific individuals to talk about that common interest agreement.  It has become patently apparent that this shift is designed to shield the core communications at issue here and delay Rubin's and, more broadly, Plaintiffs' discovery of the details of those communications.

89.   Recent meet and confer communications with counsel for Pachulski/PSZJ have suggested that, despite a proposed limited waiver of this supposed common interest agreement, PSZJ and Pachulski will continue to object to the relevance of the communications at issue here to the dispute in that pending litigation.

90.   Second, counsel for Calmwater/USRECH—not counsel for the bankruptcy Trustee—sought successfully to quash a subpoena of the communications at issue here from the bankruptcy Trustee, only ***after*** the judge in the bankruptcy matter found that the *Barton* doctrine did not bar discovery of the communications at issue here.

91.   In short, Rubin and, more broadly Plaintiffs, as well as others, have sought time and time again, unsuccessfully, to obtain through discovery in the litigation among the parties the communications detailing the communication of the private/privileged information in violation of fiduciary and ethical duties.

92.   While Rubin does not possess any documents that would shed light on the nature, scope and object of the supposed common interest agreement (or the communications of the private/personal information that was actually shared), in light of the fact that Pachulski, Stiffelman and Calmwater/USRECH's only real shared goal would be to gain access to Rubin's assets, the only rational inference to be drawn is that the co-conspirators agreed to share this confidential, private financial information acquired solely as a result of Pachulski's and Stiffelman's unique fiduciary relationships with Rubin and, more broadly, Plaintiffs.  As the information

KUTAK ROCK LLP
ATTORNEYS AT LAW
LOS ANGELES

COMPLAINT

- 27 -

CASE NO. _____

4885-9234-3956.1

shared is confidential information about Rubin and his assets, it is not "privileged information" that either Pachulski or Stiffelman could share in confidence with Calmwater/USRECH.  As such, the communications are not privileged in the constitutional context and, in any event, have been shared in the context of a fraudulent enterprise, so any potential privilege that could apply to these communications has been stripped away.

93.    What is clear, however, is that Rubin's and, more broadly, Plaintiffs' private/personal information was shared by Pachulski and Stiffelman with Calmwater/USRECH in violation of their respective fiduciary and/or ethical duties to maintain that information in confidence.  Indeed, as to Pachulski, for more than a year, Pachulski has used the entity RPP to deprive Plaintiff ASR of partnership distributions—despite the lack of a formal court order requiring it to do so—pursuant to a writ of attachment obtained by Calmwater/USRECH against Rubin, not ASR. Calmwater/USRECH has used information it could only have obtained through the aforementioned improper disclosures to thwart efforts by ASR to recover property that it rightfully owns but for the improper diversion of those partnership payments supposedly pursuant to a Court order that doesn't exist.

94.    Indeed, when the lack of a court order requiring RPP to divert funds to the levying officer under the writ of attachment, the Los Angeles County Sheriff, was brought to the attention RPP by way of the appointed manager, RPD Catalyst (a partnership in which Pachulski is managing partner), by counsel for ASR, counsel hired by RPD wrote to counsel for ASR to dispute the point and, importantly, copied counsel for Calmwater/USRECH on that communication that was ostensibly between partners.   When RPD's counsel was questioned on why counsel for Calmwater/USRECH would be copied on communications in a discussion between ASR, a partner, and RPP, the partnership, counsel responded that as the party with the writ of attachment, he felt it was appropriate.  Since that time, both counsel for RPP and counsel for Calmwater/USRECH have gone to extraordinary lengths to

KUTAK ROCK LLP
ATTORNEYS AT LAW
LOS ANGELES

COMPLAINT

- 28 -

CASE NO. _____

4885-9234-3956.1

ensure that the two know what ASR is doing with respect to the partnership distributions it owns, despite no formal requirement—and fiduciary responsibilities not to—to do so.

95.    The evidence that Stiffelman had access to and was actively using Rubin's confidential information is obvious.  Stiffelman went so far as to remove files from Greenberg Traurig that pertained to Mr. Rubin so as to use those files against Mr. Rubin.  He did so up until he was dismissed by Greenberg Traurig in or about October 2020.

96.    Similarly, as set forth in the Declaration from Eric V. Rowen, Esq. of Greenberg Traurig, dated February 15, 2023, Stiffelman was confidentially briefed on Greenberg Traurig's representation of their firm's client.  (See **Exhibit I**.)  Yet such confidential information has now appeared in multiple filings against Rubin and his interests, including false allegations that were non-public and known only to Greenberg Traurig (and to Stiffelman and Pachulski, in their professional capacities). Despite their false nature, the allegations proven harmful to Rubin and, more broadly, to Plaintiffs.

97.    To aid and shape Calmwater/USRECH's collection efforts, Pachulski revealed information to Calmwater/USRECH known to him solely by virtue of his work as a fiduciary and counsel for various entities associated with Stuart Rubin.

98.    Specifically, Pachulski disclosed to Calmwater that one of Rubin's entities, Plaintiff ASR Development Co. ("ASR"), owned an interest in La Cienega – and encouraged Calmwater/USRECH to seek to attach that interest, notwithstanding that such attachment was unlawful.  He did this in part by disclosing confidential bank settlement documents, which he personally helped negotiate on Rubin's and ASR's behalf.  In turn, the only way Calmwater/USRECH can monetize ASR's interest in La Cienega—which now comes with no voting rights or control— is to sell that interest to Pachulski.  (See **Exhibit U**.)

KUTAK ROCK LLP
ATTORNEYS AT LAW
LOS ANGELES

COMPLAINT

- 29 -

CASE NO. _____

4885-9234-3956.1

99.   Pachulski continues to operate in dual roles – as a co-venturer with Rubin, and as a sole manager of one of Rubin's core interests, and now as an adversary, advocating for Gary Stiffelman and working behind the scenes to conspire with Calmwater/ USRECH to harm Rubin's interests.   Indeed, Pachulski has admitted that he is typically very liberal on issues of representation.  (See **Exhibit W**.)  He has persisted in reaching out to Rubin without the filter of counsel.  He continues to receive ongoing monthly compensation for his legal services from RPP, plus payment for his luxury home in Montecito, California, that he and his brother (also an attorney), receive as payment in kind for his legal services.

100.   When confronted directly with his obvious conflicts, Pachulski has vacillated between arguing that he is very aware of his ethical obligations and doesn't see conflicts with representing both Stiffelman and Rubin:

(a)   E-mail response to October 15, 2019 Stacy Harrison e-mail;

To denying representation of Stiffelman:

(b)   October 15, 2019 e-mail to Ron Bender;

To affirming representation:

(c)   October 21, 2019 e-mail to Hamid at Raines Feldman LLP;

To again denying representation of Stiffelman:

(d)   October 23, 2019 e-mail to Stacy Harrison;

To again affirming representation:

(e)   October 25, 2019 e-mail from Stiffelman;

To again denying representation:

(f)   November 1 and 5, 2019 e-mails;

101.   Confirming Pachulski's representation, Stiffelman, with the aid of Pachulski, was able to reach the Secret 2021 Settlement, which required Stiffelman

KUTAK ROCK LLP
ATTORNEYS AT LAW
LOS ANGELES

COMPLAINT

- 30 -

CASE NO. _____

4885-9234-3956.1

to pay $3.2 million  which Stiffelman, Pachulski, and even Calmwater/USRECH concealed from everyone, even the Court that ***subsequently*** issued--at Calmwater/USRECH's request, a Writ of Attachment on Rubin's assets on February 22, 2022.  The Writ amount did not account for and, at the time of the filing of this complaint, still has not accounted for the $3.2 million Secret 2021 Settlement.  While one attorney might miss this fact, Pachulski is an insolvency lawyer, and Calmwater/USRECH's attorney is an insolvency lawyer.   It simply defies explanation that they would have missed this fact, leading to the inescapable conclusion that Defendants intentionally concealed and continue to conceal the Secret 2021 Settlement.

102.   Pachulski then again, in a September 2021 Settlement Agreement with East West Bank, denied representing Stiffelman but, admitted that he had "discussions with Stiffelman in connection with certain pending litigation against Rubin regarding Coachella, California."   At the time, Rubin understood this statement to mean that Pachulski was not acting as counsel for Stiffelman, but instead assisting him with negotiations to settle with Calmwater/USRECH.  He had no reason to believe that Pachulski would be using the ruse of this assistance to use his confidential information, acquired solely through his fiduciary and/or attorney-client relationship with Pachulski, to hobble Rubin financially with the aim of forcing him into bankruptcy, allowing Pachulski and Calmwater/USRECH to feast on the bones of his assets.

103.   At the same time Stiffelman was settling with Calmwater/USRECH, he was deliberately sabotaging Rubin's ability to restructure the Coachella hotel project from creditors and take Calmwater out of the financing.  Stiffelman had a fiduciary duty to the partnership to stick with the project.  The partners had the ability to bring in a new lender and had already retained a chief restructuring officer.  Stiffelman took the position that he was going to support Calmwater/USRECH, to put in a receiver.  When the borrowers had no other choice and filed for BK, he supported the

KUTAK ROCK LLP
ATTORNEYS AT LAW
LOS ANGELES
COMPLAINT
- 31 -
CASE NO. _____
4885-9234-3956.1

appointment of a US Trustee.  He further opposed Debtor in Possession financing of $8M to $10M, in concert with Calmwater/USRECH.  In retrospect, it all makes sense. Stiffelman had already signed the Secret 2019 Agreement and the Secret 2021 Settlement Agreement. Calmwater/USRECH had his full cooperation to frustrate any and all efforts to resolve the USRECH Litigation so that Calmwater/USRECH could continue to freeze Rubin's cash flows, forcing him into bankruptcy, where Calmwater/USRECH and Pachulski could feast on the bones of his real estate assets. As counsel for Calmwater/USRECH told the Trustee for Glenroy Coachella LLC, there's value in the guarantees.  (Trustee e-mail).  It is notable now, in retrospect, that Calmwater/USRECH did not challenge Stiffelman's demurrer to the complaint in the USRECH Litigation, while they opposed Rubin's and Lander's.

104.   In January 2023, Stiffelman revealed to Rubin's son, Plaintiff Joseph Rubin, that Stiffelman and Pachulski hoped that Rubin would declare personal bankruptcy, thereby triggering a cascade by which Rubin could be forcibly removed at a discount from various entities where he holds interests in common with Pachulski.  In Stiffelman's own words: "I cannot believe he's still standing… How is he still paying for this."

105.   On January 17, 2023, Eric Rowen of Greenberg Traurig LLP e-mailed Pachulski indicating that, over the telephone, Pachulski had conveyed that he was 'no longer assisting [Stiffelman] in the litigation."  Meaning, that he was once again flip-flopping to admit he had been representing Stiffelman all along in the litigation, in violation of his ethical and fiduciary duties to Rubin.  Confounding matters further, Pachulski responded the same day that he was "very much still involved in the litigation." (**Exhibit P**.)

106.  The damages that Pachulski and Stiffelman have caused are extraordinary.   By   frustrating   the   effort   to   reach   settlement   with Calmwater/USRECH, and by intentionally thwarting efforts to restructure, they have caused cross-defaults on other properties associated with Rubin, including two

houses in Los Angeles and one in Santa Barbara.  They have also prevented a resolution of the Calmwater/USRECH defaults, thereby placing that project in jeopardy.  The aggregate loss of value to Plaintiffs has been in the tens of millions of dollars.

107.   To make their motivations crystal clear, very recently Gary Stiffelman informed Rubin's son, Joseph Rubin that if Rubin were only willing to give up his interest in the entities shared with Pachulski and/or L&R – thereby giving Pachulski unhampered control of such entities – "this could all go away." Stiffelman, acting as Pachulski's errand boy, has also said to Joseph Rubin, "Here is what [Stuart] needs to do.  Hand over his [La Cienega] or parking (L&R) shares to us."  There could be no more naked a revelation of Stiffelman and Pachulski's conspiracy with Calmwater – and their ultimate plan.

## CLAIMS FOR RELIEF

## FIRST CAUSE OF ACTION

### Breach of Fiduciary Duty

(Gary Stiffelman; Richard M. Pachulski; Pachulski Stang Ziehl & Jones; Greenberg Traurig)

108.   Plaintiffs repeat and re-allege every allegation in the preceding paragraphs as if set forth fully herein.

109.   Defendant Pachulski owed and owes fiduciary duties to Plaintiffs, as well as to numerous entities, including RPP and L&R, SRCT and SARFT, that would be impacted by adverse developments in any action against Rubin.  Acceptance of these fiduciary duties placed Mr. Pachulski under an obligation to act in the best interests of Plaintiffs, as supported by monthly payments to Pachulski for legal work and his law firm, PSZJ.

110.   Pachulski breached these fiduciary duties to the Plaintiffs by, among other things, representing Mr. Stiffelman, whose interests were adverse to Mr. Rubin and the entities to which Mr. Pachulski owed the fiduciary duty, and taking that

representation so far as to disclose confidential information about Rubin and Plaintiffs to Calmwater/USRECH with the intent of causing them harm.

111. Pachulski further breached his fiduciary duties by advising Calmwater/USRECH to target Rubin's interests in RPP and La Cienega so that Calmwater/USRECH could take possession of them, and in turn sell them to Pachulski for a discount.

112. Plaintiffs were unaware until at least July 12, 2023 of Pachulski and Stiffelman's breaches in this regard and could not have done anything to be made aware of these breaches.

113. In furtherance of that objective, when the COVID-19 pandemic caused Mr. Rubin financial setbacks that resulted in his inability to afford the line of credit paydown on a Preferred Bank loan, on which Pachulski was the guarantor. With Pachulski's assistance, Calmwater/USRECH placed a ninety-day injunction on Mr. Rubin's assets that was not lifted until after the expiry of that period. Upon information and belief, this was all done to force Mr. Rubin to file for personal bankruptcy, in order to trigger underlying loan and operating agreement covenants that would force the mandatory sale and relinquishment of mutually owned assets.

114. These disclosures were in violation of law and ethical duties and were otherwise not privileged.

115. Pachulski's breach of his fiduciary duties resulted in harm to the Plaintiffs, all of which was reasonably foreseeable given the above-described relationships he had developed over many years.

116. Stiffelman similarly owed fiduciary duties to Rubin and, more broadly, to Plaintiffs to maintain confidentiality of Plaintiffs' confidential information, which Stiffelman has breached through his disclosures to Calmwater/USRECH. These disclosures were in violation of law and were, otherwise, not privileged.

117. Stiffelman owed fiduciary duties not to sabotage efforts to restructure loans to resolve the Calmwater/USRECH matter. However, Stiffelman did sabotage

such efforts with the aim of creating opportunity for Calmwater/USRECH and Pachulski to target Rubin's interests in L&R, RPP, and La Cienega, so that Pachulski could purchase such interests at a discount.

118. Stiffelman also had a fiduciary duty to cooperate with his partners particularly as a managing member of the Glenroy project to assist in supporting the restructuring efforts to obtain replacement financing for the Calmwater/USRECH loan. Rubin and his partners were able to do so, and also to mitigate any issues there was a chief restructuring officer that was obtained to manage the construction and complete the project. It is obvious now that Stiffelman breached these duties and worked in contravention to sabotage his partners' efforts to do so, evidenced by the recent revelation of the Secret 2019 Agreement with Pachulski and Calmwater/USRECH to share confidential information in violation of ethical and fiduciary duties, in order to give Calmwater/USRECH an upper hand in pursuing the Guarantors, including Rubin.

119. Stiffelman's breach of his fiduciary duty resulted in harm to the Plaintiffs.

120. Each of Pachulski Stang Ziehl & Jones and Greenberg Traurig, acting through their respective partners, participated in the breaches of confidentiality and breaches of fiduciary duty wrought by same.

121. Each of Pachulski Stang Ziehl & Jones and Greenberg Traurig's breaches of fiduciary duty have caused harm to Plaintiffs.

122. Each of Pachulski and Stiffelman's breaches of fiduciary duty were done with malice, oppression or fraud, and with an intent to do harm sufficient to support a claim for punitive and/or exemplary damages.

## **SECOND CAUSE OF ACTION**

### **Legal Malpractice**

(Gary Stiffelman; Richard M. Pachulski; Pachulski Stang Ziehl & Jones; Greenberg Traurig)

KUTAK ROCK LLP
ATTORNEYS AT LAW
LOS ANGELES

COMPLAINT

- 35 -

CASE NO. _____

4885-9234-3956.1

123. Plaintiffs repeat and re-allege every allegation in the preceding paragraphs as if set forth fully herein.

124. Defendants, as attorneys, owed a duty to Plaintiffs not to misuse for personal gain Plaintiffs' personal information provided to them, or obtained through legal representations.

125. Defendants, as attorneys, breached their duty to use such skill, prudence, and diligence as other members of the profession commonly use and exercise.

126. Contrary to that duty, Defendants were, at a minimum, professionally (and grossly) negligent. Said breaches for Stiffelman and Pachulski, however, went beyond mere negligence and were carried out with malice, oppression and/or fraud, and with an intent to cause harm that is deserving of punitive and/or exemplary damages, as evidenced by the declaration of Stiffelman's co-managing partner, Eric Rowen Co-Chair of the Real Estate Litigation Practice and the Chair of the Western Region Real Estate Litigation Group of Greenberg Traurig LLP, who declared that both Stiffelman and Pachulski should be reported to the State Bar emphasizing for disciplinary action to be taken against each. (See **Exhibit I**.)

127. The acts of the Defendants were below the standard of care for comparable attorneys.

128. Such deliberate use of confidential information, and the breaches of fiduciary duty therefrom, and the betrayals wrought thereby, have been perpetrated by each of Pachulski Stang Ziehl & Jones LLP and Greenberg Traurig, insofar as each firm tolerated such malfeasance and each partner acted on behalf of its firm, and with the resources of its firm, in the commission of such malfeasance. Rubin caused his attorneys to warn both firms of the risks of the aforementioned behaviors, yet both not only continued to engage in these behaviors, but magnified the risks to the firms, culminating in the recently disclosed Secret 2019 Agreement between Stiffelman and Pachulski on the one hand and Calmwater/USRECH on the other. (See **Exhibit X**; see **Exhibit R**.) In response, Stiffelman's co-managing partner, Eric

KUTAK ROCK LLP
ATTORNEYS AT LAW
LOS ANGELES

COMPLAINT

- 36 -

CASE NO. _____

4885-9234-3956.1

Rowen Co-Chair of the Real Estate Litigation Practice and the Chair of the Western Region Real Estate Litigation Group of Greenberg Traurig LLP, admitted that both Stiffelman and Pachulski should be referred to the State Bar, and for disciplinary action.  (**Exhibit I**.)  Said conduct constitutes malice, oppression or fraud sufficient to support punitive and/or exemplary damages.

129.   This conduct, as a direct and proximate cause of the injury, have caused Plaintiffs to suffer damages and continue to cause Plaintiffs damages on a daily basis in an amount to be proven at trial.

## **THIRD CAUSE OF ACTION**

### CIVIL CONSPIRACY

(Pachulski, Pachulski Stang Ziehl & Jones, Stiffelman, Calmwater and USRECH)

130.   Plaintiffs repeat and re-allege every allegation in the preceding paragraphs as if set forth fully herein.

131.   Each of Defendants Pachulski and Stiffelman knowingly formed an agreement with Calmwater and USRECH to form and operate a conspiracy against Plaintiffs in order to cause injury to Plaintiffs and to enrich Pachulski, Stiffelman, Calmwater and USRECH as set forth in the preceding facts, restated herein by reference.  At all times relevant, Pachulski was acting as a lawyer and an agent of Pachulski Stang Ziehl & Jones.

132.   Each of the Defendants Pachulski, Stiffelman, Calmwater and USRECH committed overt acts in furtherance of the civil conspiracy to breach Stiffelman's and Pachulski's fiduciary and professional duties to Rubin and/or Plaintiffs and to force a fire sale of Rubin's assets allowing Pachulski and Calmwater/USRECH to feast on their bones.

133.   Calmwater/USRECH knowingly suborned the breaches of fiduciary duty of each of Pachulski and Stiffelman and of Pachulski and Pachulski, Stang, Ziehl & Jones' ethical duties as lawyers.

KUTAK ROCK LLP
ATTORNEYS AT LAW
LOS ANGELES

COMPLAINT

- 37 -

CASE NO. _____

4885-9234-3956.1

134.   Calmwater/USRECH knowingly concealed Stiffelman's settlement and the concurrent reduction of amounts due under the guarantees so as to frustrate Rubin's efforts to resolve the matter and increase the value of interest due over time, as well as to fraudulently increase the amount of a pre-judgment writ of attachment obtained by Calmwater/USRECH.

135.   Calmwater/USRECH knowingly and wrongfully targeted ASR, as guided by Pachulski and aided by Stiffelman, so as to create an opportunity to wrongfully interfere with ASR's interest in La Cienega, as well as other assets in which Rubin and, more broadly, Plaintiffs hold interests.

136.   By entering into and executing the civil conspiracy with Calmwater/USRECH, each of the Defendants intended to cause harm to Plaintiffs.

137.   Damages resulted to Plaintiffs from actions done by Defendants in furtherance of the common design.

138.   Further, each of the Defendants' acts with regard to the conspiracy constitutes malice, oppression or fraud, and was undertaken with an intention to do harm sufficient to support an award of punitive and/or exemplary damages.

**FOURTH CAUSE OF ACTION**

RICO 18 U.S.C. § 1961 (c)

(All Defendants)

139.   Plaintiffs incorporate by reference as though fully set forth herein the allegations in each of the foregoing Paragraphs.

140.   Defendants Pachulski, Stiffelman, Greenberg Traurig, Pachulski Stang Ziehl & Jones LLP, and Calmwater/USRECH engaged in a pattern of racketeering activity as alleged herein, including, but not limited to, racketeering constituting wire fraud under 18 U.S.C. § 1343.

141.   Defendants intentionally formed and participated in a scheme or artifice to defraud Plaintiffs, as detailed in the above referenced facts, which are incorporated by reference here.

142.   Plaintiffs are informed and believe that the Defendants together constitute an enterprise, as defined by 18 U.S.C. § 1961, and functioned as an ongoing organization and continuing unit. The enterprise was created and/or used as a tool to effectuate a pattern of racketeering activity as defined by 18 U.S.C. § 1961. Each of these enterprise participants, including Defendants, is a "person" distinct from the enterprise and participated in the conduct of the enterprise.

143.   Plaintiffs are informed and believe, and thereon allege that the common purpose of this illegal enterprise was to damage Plaintiffs' financial and business interests, including impacting the Plaintiffs' status in the USRECH Litigation in order to enrich Pachulski, Stiffelman and Calmwater/USRECH. Specifically, Defendants acted in concert to utilize information gained in fiduciary and personal relationships with Plaintiffs in order to strip their interests in jointly held business ventures (primarily long-term partnership interests in commercial real estate), SRCT and SARFT, and other financial interests, so that Calmwater/USRECH, aided by Pachulski, could seize Rubin's interests in L&R, RPP, and La Cienega and in sell such interests to Pachulski at a discount, while Stiffelman would be allowed to quietly exit the litigation with Calmwater/USRECH.

144.   Defendants are "persons" within the meaning of 18 U.S.C. § 1961(3) who conducted the affairs of the enterprise through the pattern of racketeering activity detailed throughout this Complaint in violation of 18 U.S.C. § 1962(c).

145.   As detailed in this Complaint, Plaintiffs are informed and believe, and thereon allege that Defendants' pattern of racketeering activity includes willful acts indictable as wire fraud under 18 U.S.C. § 1343, acts which thereby affect interstate commerce. Defendants' fraudulent scheme consisted of, inter alia: (a) taking Plaintiff's confidential information obtained through fiduciary and legal representations and disseminating to the other Defendants, as members of the enterprise, for use against Plaintiffs' interests; (b) agreeing via the Secret 2021 Settlement and the Secret 2019 Agreement to act against Plaintiffs' interests by

COMPLAINT
- 39 -
CASE NO. _____
KUTAK ROCK LLP
ATTORNEYS AT LAW
LOS ANGELES
4885-9234-3956.1

sharing confidential information, despite pre-existing fiduciary and attorney/client relationships; (c) sabotaging Rubin's efforts to rescue the Coachella hotel project from creditors with a lender willing to complete the transaction, but for Calmwater/USRECH's intentionally inflated numbers due to the failure to disclose the Stiffelman settlement, causing the transaction to fail; (d) concealing from the courts and parties subject to writs of attachment the existence of the Secret 2021 Settlement and its offset against those writs; and (e) engaging in efforts to take away Plaintiffs'' interests in commonly held investments, all in order to cause harm to Plaintiffs' businesses and jeopardize Rubin's and, more broadly, Plaintiffs' financial interests, and all for the benefit of Defendants, and particularly for the benefits of Pachulski and Calmwater/USRECH.

146.   The Defendants utilized wires to continue to gather information on Stuart Rubin and to disseminate information amongst members of the enterprise to both further their objectives as against Stuart Rubin. As alleged in this Complaint, the following is a representative sample of specific wire and electronic communications made by the Defendants in furtherance of the RICO enterprise, with many more likely to be discovered.

(a)    Email dated October 8, 2019 wherein Pachulski agreed to act as Gary Stiffelman's counsel despite conflicting interest with Stuart Rubin.

(b)    Email dated October 25, 2019 wherein Pachulski sought to sideline Stuart Rubin from common business interests for his own personal gain.

(c)    Email chain dated December 4, 2016, including email dated December 2, 2016 from R. Pachulski to G. Sauer.

///

///

KUTAK ROCK LLP
ATTORNEYS AT LAW
LOS ANGELES

COMPLAINT

- 40 -

CASE NO. _____

4885-9234-3956.1

(d)     Stiffelman characterizing Stuart Rubin as his client while at Greenberg Traurig in an email chain dated April 5, 2016, including an email dated April 4, 2016 from G. Stiffelman to G. Fishman and J. Mace.

(e)     Email from G. Stiffelman to S. Rubin dated February 13, 2019 wherein Mr. Pachulski, when questioned by Stacy Harrison of Orrick, denied representing Stiffelman as litigation counsel in order to conceal that his duty of loyalty may be compromised.

(f)     Failing to disclose until July 12, 2023 the secret agreement with Calmwater/USRECH to share confidential information—presumably about Rubin and Plaintiffs—in violation of ethical and fiduciary duties.

(g)     Failure to disclose the settlement dated April 22, 2021 to Stuart Rubin despite Mr. Pachulski's fiduciary duty to do so in order to benefit from harm caused to Mr. Rubin.

(h)     Transmittal via email of private and confidential files stolen from Greenberg Traurig by Mr. Stiffelman on or about October 2020.

(i)     Transmittal of confidential information by Mr. Stiffelman regarding Mr. Rubin that was obtained during a private briefing at Greenberg Traurig for use in multiple legal filings.

(j)     Electronic mail communication by Mr. Pachulski directed to Mr. Rubin dated October 4, 2019 without the filter of counsel in order to further his scheme.

147.   Each one of the forgoing misrepresentations or acts constitutes a predicate act of wire fraud and/or mail fraud for purposes of 18 U.S.C. §1961 and 18 U.S.C. §1962(c).

KUTAK ROCK LLP
ATTORNEYS AT LAW
LOS ANGELES

COMPLAINT

- 41 -

CASE NO. _____

4885-9234-3956.1

148.   Each of the forgoing misrepresentations or acts was in violation of various ethical and/or fiduciary duties owed to Rubin and/or more broadly Plaintiffs and was otherwise not privileged.

149.   The purpose of Defendants' scheme was to enrich Defendants illicitly and illegally, and to negatively impact Plaintiff's financial viability and status in ongoing litigation.

150.   All of the predicate acts were and are related, establishing a pattern of racketeering activity under 18 U.S.C. § 1962(c), as their common purpose was to defraud Plaintiffs by unlawful means.

151.   Defendants violated the wire fraud statute, as set forth in greater detail above, when causing to be transmitted confidential information obtained from Greenberg Traurig, prior legal representations, and fiduciary positions, and transferring the information to personal email accounts, for which there could be no purpose served other than to damage Plaintiffs and benefit Defendants. Such instances of such wire fraud occurred at the direction of Defendants, as detailed above, and more are believed to have occurred, both with information improperly obtained through personal connections, fiduciary duties, and as attorneys with access to Plaintiffs' information. Plaintiffs intend to amend this complaint as additional examples of Defendants' wire and mail fraud are uncovered through discovery.

152.   The conduct of the enterprise activity described above constitutes "racketeering activity" within the meaning of 18 U.S.C. §1961(1). Further, Defendants chose to conduct activities in a continuous manner that constitutes a "pattern of racketeering activity" within the meaning of 18 U.S.C. §1961(5).

153.   Defendants participated in the illegal scheme, personally or through their agents, directly or indirectly, directed and/or participated in the acts alleged herein and employed the same or similar methods in their direction and/or participation of said acts.

///

KUTAK ROCK LLP
ATTORNEYS AT LAW
LOS ANGELES

COMPLAINT
- 42 -
CASE NO. _____

4885-9234-3956.1

154.   Defendants each had the specific intent to deceive and defraud Plaintiffs.

155.   The enterprise was made up of each defendant and was an association in fact, and the threat is open-ended and continuous and continues to this day.

156.   Plaintiffs have been injured in their property by reason of Defendants' use of confidential information obtained in violation of ethical and fiduciary duties owed to Plaintiffs, causing significant financial damage including interference with Plaintiffs' business affairs and personal family trusts, including SRCT and SARFT. Moreover, because of the drain on Plaintiffs' finances due to Defendants' actions, including taking overt acts to frustrate the efforts to reach a settlement with Calmwater/USRECH, Defendants have caused an aggregate loss to Plaintiffs amounting to tens of millions of dollars. Damages continue to accrue each and every day.

157.   The injuries to Plaintiffs were directly and proximately caused by Defendants' overt acts taken in furtherance of their racketeering activity. In the absence of Defendants' improper conduct, Plaintiffs would not have been deprived of income and property.

158.   WHEREFORE, as a direct and proximate result of Defendants' actions, Plaintiffs have suffered damages and continue to suffer damages. Plaintiffs are thereby entitled to compensatory damages, treble damages, equitable and declaratory relief, costs and reasonable attorneys' fees, and punitive and exemplary damages.

## **FIFTH CAUSE OF ACTION**

### 18 U.S.C. § 1961(d)

### (All Defendants)

159.   Plaintiffs incorporate by reference as though fully set forth herein the allegations in each of the foregoing Paragraphs.

160.   Section 1962(d) provides that it "shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b) or (c) of this section."

KUTAK ROCK LLP
ATTORNEYS AT LAW
LOS ANGELES

4885-9234-3956.1

COMPLAINT

- 43 -

CASE NO. _____

161.   Defendants Pachulski, Stiffelman, Greenberg Traurig, Pachulski Stang Ziehl & Jones LLP, and Calmwater/USRECH and the other co-conspirators violated § 1962(d) by conspiring to violate 18 U.S.C. § 1962(c). The object of this conspiracy was to conduct or participate in, directly or indirectly, the conduct of the affairs of the enterprise described previously through a pattern of racketeering activity. Defendants conspired with enterprise participants to interfere with Plaintiffs' business engagements, and success in the Calmwater/USRECH action, and to create an opportunity for Pachulski to acquire Rubin's interest in commonly owned enterprises at a substantial discount.

162.   Defendants as enterprise participants, and co-conspirators, engaged in numerous overt and predicate fraudulent racketeering acts in furtherance of the conspiracy, designed to defraud Plaintiffs as alleged in this Complaint.

163.   The nature of the co-conspirators' acts, material misrepresentations, and omissions in furtherance of the conspiracy gives rise to an inference that Defendants not only agreed to the objective of an 18 U.S.C. § 1962(d) violation by conspiring to violate 18 U.S.C. § 1962(c), but Defendants were also aware that their ongoing fraudulent and extortionate acts have been and are part of an overall pattern of racketeering activity.

164.   As a direct and proximate result of Defendants' and the enterprise's overt acts and predicate acts in furtherance of violating 18 U.S.C. § 1962(d) by conspiring to violate 18 U.S.C. § 1962(c), as described throughout this Complaint, Plaintiffs have been injured in their business and property interests as set forth more fully above.

165.   Defendants sought to and have engaged in the commission of overt acts, including multiple instances of wire fraud violations of 18 U.S.C. §§ 1341 and 1346.

166.   Because of these violations of 18 U.S.C. § 1962(d), Plaintiffs have suffered damages. Plaintiffs are thereby entitled to compensatory damages, treble

KUTAK ROCK LLP
ATTORNEYS AT LAW
LOS ANGELES

COMPLAINT

- 44 -

CASE NO. _____

4885-9234-3956.1

1  damages, equitable and declaratory relief, costs and reasonable attorneys' fees, and
2  punitive and exemplary damages.

3

4  **SIXTH CAUSE OF ACTION**

5  Fraudulent Concealment

6  (Pachulski, Pachulski Stang Ziehl & Jones, Stiffelman, Calmwater and USRECH)

7  167.   Plaintiffs incorporate by reference as though fully set forth herein the
8  allegations in each of the foregoing Paragraphs.

9  168.   Defendants Pachulski and Stiffelman had a duty to disclose the
10 existence and terms of the alleged Secret 2019 Agreement and the Secret 2021
11 Settlement at the time they came into existence.  As a named partner in Pachulski
12 Stang Ziehl & Jones, Pachulski's relevant actions and inaction are imputed to the
13 firm.

14 169.   As agents of the conspiracy, Calmwater and USRECH shared that duty
15 to disclose.

16 170.   Defendants Pachulski, Stiffelman, Calmwater and USRECH wrongfully
17 concealed the existence of those two agreements until, at the earliest, January 2023.

18 171.   Plaintiffs could not have discovered their existence any sooner as they
19 had no reason to believe that these agreements existed or that they implicated their
20 interests.

21 172.   As a direct and proximate result of this aforementioned concealment,
22 Plaintiffs have been harmed in an amount to be proven at trial, including being caused
23 to delay the claims brought herein.

24 173.   The aforementioned concealment was done with malice, oppression
25 and/or fraud, sufficient to subject Defendants Pachulski and Stiffelman to punitive
26 and/or exemplary damages, in an amount to be proven at trial.
27 ///
28 ///

KUTAK ROCK LLP
ATTORNEYS AT LAW
LOS ANGELES

COMPLAINT
- 45 -
CASE NO. _____

4885-9234-3956.1

## **DEMAND FOR TRIAL BY JURY**

174.   Plaintiffs hereby respectfully demand a trial by jury for all claims so triable.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment in their favor and the following relief:

(i)     Compensatory and punitive damages on their First Cause of Action, in an amount to be proven at trial, plus costs, attorneys' fees, and all other amounts this Court deems just and proper;

(ii)    Compensatory and punitive damages on their Second Cause of Action, in an amount to be proven at trial, plus interest, costs, attorneys' fees;

(iii)   Compensatory and punitive damages on their Third Cause of Action, in an amount to be proven at trial, plus interest, costs, attorneys' fees;

(iv)    Compensatory damages on their Fourth and Fifth Causes of Action including, general and special damages plus interest in an amount to be proven at trial, in an amount sufficient to deter such wrongdoing in the future and punish Defendants for their conduct herein, for recovery to Plaintiffs' actual economic damages including restitution, for treble damages pursuant to 18 U.S.C §1962(c) and 18 U.S.C §1962(d), for reasonable attorneys' fees and costs incurred in this action pursuant to 18 U.S.C §1962(c) and 18 U.S.C §1962(d), for an Order permanently enjoining Defendants and all persons or entities acting in concert with them, from continuing to engage in the actions complained of herein, equitable and declaratory relief, prejudgment and post-judgment interest at the maximum legal rate, as applicable;

(v)     Compensatory and punitive damages on their Sixth Cause of Action, in an amount to be proven at trial, costs, attorneys' fees;

(vi)    For punitive and/or exemplary damages in an amount sufficient to punish and deter Defendants Pachulski, Stiffelman, Calmwater and

1  USRECH, and to otherwise compensate Plaintiffs for the wrongs they have

2  committed; and

3        (vii)  For such other and further relief as this Court deems just and

4  proper.

5  Dated:  December 1, 2023                    KUTAK ROCK LLP

6

7                                    By: _____

8                                        Oliver D. Griffin
                                         Rudy R. Perrino
9                                        Attorneys for Plaintiffs
                                         ABRAHAM STUART RUBIN,
10                                       DUSTY BERKE as Trustee of the
                                         STUART RUBIN CHILDREN'S
11                                       TRUST, ANNETTE AND STUART
                                         RUBIN, as Co-Trustees of the
12                                       STUART AND ANNETTE RUBIN
                                         FAMILY TRUST, ASR
13                                       DEVELOPMENT, INC., FORCE
                                         RUBIN, LLC AND FORCE RUBIN
14                                       2, LLC

15

16

17

18

19

20

21

22

23

24

25

26

27

28