**VALLE MAKOFF LLP**
JOHN M. MOSCARINO (State Bar No. 122105)
jmoscarino@vallemakoff.com
11777 San Vicente Blvd., Suite 890
Los Angeles, California 90049
Telephone: (310) 476-0300
Facsimile: (310) 476-0333

Attorneys for Defendants
RICHARD M. PACHULSKI and PACHULSKI STANG ZIEHL & JONES LLP

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION – FIRST STREET COURTHOUSE**

ABRAHAM STUART RUBIN, an individual; DUSTY BERKE, as Trustee of the STUART RUBIN CHILDREN'S TRUST; and ANNETTE AND STUART RUBIN, as Co-Trustees of the STUART AND ANNETTE RUBIN FAMILY TRUST; ASR DEVELOPMENT CO.; FORCE RUBIN, LLC; FORCE RUBIN 2, LLC,

Plaintiffs,

v.

GARY STIFFELMAN; RICHARD M. PACHULSKI; PACHULSKI STANG ZIEHL & JONES LLP, a California Limited Liability Partnership;· U.S. REAL ESTATE CREDIT HOLDINGS III-A, LP, an Irish Limited Partnership; CALMWATER ASSET MANAGEMENT, LLC, a Delaware Limited Liability Company; GREENBURG TRAURIG, LLP, a New York Limited Liability Partnership; DOE ATTORNEYS 1-50; DOE FIDUCIARIES 1-50; DOES 1-100, inclusive

Defendants.

Case No. 2:23-cv-10152 CBM (PVCx)

Hon. Consuelo B. Marshall

**OPPOSITION OF DEFENDANTS RICHARD PACHULSKI AND PACHULSKI STANG ZIEHL & JONES LLP TO MOTIONS TO WITHDRAW FILED BY OLIVER D. GRIFFIN AND KUTAK ROCK LLP**

Date: March 12, 2024
Time: 9:00 a.m.
Place: Courtroom 8D

Complaint Filed: December 1, 2023

/ / /

/ / /

# TABLE OF CONTENTS

Page


MEMORANDUM OF POINTS AND AUTHORITIES .... 1

I. INTRODUCTION .... 1

A. Kutak's Representation Of Rubin In Active State Court Litigation Matters Arising Out Of Rubin's Fraud And Mismanagement Of The Glenroy Coachella Project .... 2

B. The Significant Connection Between the USRECH Case, The Stiffelman Case, And This Case .... 2

C. Griffin Departs From Kutak .... 4

D. Griffin Claims A Right To Withdraw Because He Does Not Have An Engagement Letter And Moves To Withdraw .... 4

E. Kutak Informs Counsel That It Will Also Withdraw And Files Its Own Opaque Motion .... 5

F. The Conflicting Client Address Information In the Motions .... 6

1. The Griffin Proof Of Service With The Beverly Hills Address Information .... 6

2. The Kutak Proof of Service With The Los Angeles And Orange Address Information .... 6

G. The Communications Between Counsel For Pachulski And Representatives Of Kutak's Executive Committee Which Preceded The Filing Of The Present Motions .... 7

H. Additional Evidence Of A Troubled Relationship Between Attorney And Client .... 8

II. THE COURT SHOULD ADDRESS THE SIGNIFICANT QUESTIONS ABOUT THE ADEQUACY OF NOTICE RAISED BY THE MOVING PAPERS, PARTICULARLY IF PLAINTIFFS DO NOT FILE OPPOSITION .... 8

III. THE COURT SHOULD EVALUATE THE CLAIM THAT WITHDRAWAL IS WARRANTED WITH THE INPUT OF PLAINTIFFS, IF NECESSARY .... 11

IV. THE COURT SHOULD IMPOSE REASONABLE CONDITIONS ON ANY WITHDRAWAL ORDER THAT ARE REASONABLE UNDER THE CIRCUMSTANCES EXISTING AT THE TIME THE MOTION IS DECIDED .... 13

A. This Court Can Impose Reasonable Conditions On Withdrawals .... 13

B. Pachulski And PSZJ Will Be Prejudiced If The Court Does Not Impose Conditions Related to the Rule 11 Concerns That Exist By Virtue Of The Filing Of The Case .... 14

1. The Allegations Made About the Alleged Attorney-Client Relationship With Plaintiffs That Were Not Well Grounded In Fact .... 15

2. Kutak's Failure To Conduct An Adequate Pre-Filing Investigation Into The Applicable Law .... 17

## TABLE OF CONTENTS (Cont'd)

Page


C. Harm To The Administration Of Justice ........ 19

D. Proposed Reasonable Conditions ........ 20

1. Conditions To Be Imposed With Respect To Contact Information For Plaintiffs And Future Progress Of This Action ........ 20

2. Conditions To Be Imposed As A Result Of Concerns About Rule 11 And Subject Matter Jurisdiction ........ 22

V. CONCLUSION ........ 24

# TABLE OF AUTHORITIES

Page

**Cases**

AIT Worldwide Logistics, Inc. v. HSIN Silk Road Shipping Ltd.
2022 WL 16859744,*2 (C.D.Cal. 2022) .......... 20

Alvarez v. Bimbo Bakeries USA, Inc.,
2019 WL 7875050 (C.D.Cal. 2019) .......... 10

American Export Partners, LLC v. Inman
2005 WL 6172616 (C.D.Cal. 2015) .......... 20

Burnette v. Godshall
828 F.Supp. 1439, 1448 (N.D.Cal. 1993 aff'd sub nom) .......... 14

Burnette v. Lockheed Missiles & Space Co.
72 F.3d 766 (9th Cir. 1995) .......... 14

Chapman & Cole v. Intel Customer Intern. B.V.
865 F.2d 676, 685 (5th Cir. 1989) .......... 14

Dietz v. Bouldin
579 U.S. 40, 46-47, 136 S.Ct. 1885, 195 L.Ed.2d 161 (2016) .......... 19

Galanis v. Suzlik
841 F.Supp.2d 456, 462 (D.Mass. 2011) .......... 15

Hartz v. Friedman
919 F.2d 469 (7th Cir. 1990) .......... 16

Hemi Group, LLC v. City of New York, N.Y.
559 US. 1, 17-18, 130 S.Ct. 983, 175 L.Ed.2d 943 (2010) .......... 18

Hernandez v. City of El Monte
138 F.3d 393 (9th Cir. 1998) .......... 19

In Re Personal Web Technologies, LLC, et al. Patent Litigation
2022 WL 2290592 at *4-*5 (N.D.Cal. 2022) .......... 13

Kim v. Kimm
884 F.3d 98 (2d Cir. 2018) .......... 17

Kokkonen v. Guardian Life Ins. Co. of America
511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994) .......... 22

Langan v. Smith
312 F.Supp.3d 201, 206 (D.Mass. 2018) .......... 17

LaVay Corp. v. Dominion Fed. Sav. & Loan Ass'n.
830 F.2d 522 (4th Cir. 1987) .......... 17

Manion v. Freund
967 F.2d 1183 (8th Cir. 1992) .......... 17

## TABLE OF AUTHORITIES (Cont'd)

Page

Marceau v. International Broth. Of Elec. Workers
618 F.Supp.2d 1127, 1172 (D. Ariz. 2009) .......... 18

Muskegan Hotels, LLC v. Patel
986 F.3d 692 (7th Cir. 2021) .......... 17

Novelty Textile Inc. v. Wet Seal Inc.
2015 WL12828171 at *2 (C.D.Cal. 2015) .......... 13

Odom v. Microsoft
486 F.3d 541, 546 (9th Cir. 2007) .......... 14

Oki Semiconductor Co. v. Wells Fargo Bank Nat. Ass'n.,
298 F.3d 768, 775 (9th Cir. 2002) .......... 18

Pratap v. Wells Fargo Bank, N.A.
63 F.Supp.3d 1101, 1114. (N.D.Cal. 2014) .......... 22

Ramachandron v. City of Los Altos
2021 WL 5206675 at *3 (N.D.Cal. 2021) .......... 13

Schnitzer v. Oppenheimer & Co., Inc.,
633 F.Supp. 92, 97 (D.Or. 1985) .......... 13

Seoul Broadcasting Systems International, Inc. v. Korea Broadcasting Systems International, Inc.
2009 WL10676092 at *2 (C.D.Cal. 2009) .......... 13

Sosa v. DIRECTV, Inc
437 F.3d 923, 940 (9th Cir. 2006) .......... 17

Steele v. Hospital Corp. of America
36 F.3d 69, 71 (9th Cir. 1994) .......... 18

Williams v. County of Fresno
562 F.Supp.3d 1032 (E.D.Cal. 2021) .......... 13

**Statutes**

18 U.S.C. § 1962(d) .......... 24

18 U.S.C. § 1962(c) .......... 24

28 U.S.C. § 1367 .......... 24

Federal Rule of Civil Procedure 11(b) .......... 15

Federal Rule of Civil Procedure 11(c)(3) .......... 23

Local Rule 7-3 .......... 21

## TABLE OF AUTHORITIES (Cont'd)

Page

Local Rule 83-2.3.2 .......... 8

Local Rule 83-2.3.5 .......... 8

Local Rule 83-2.4 .......... 22

Rule of Professional Conduct 1.16(b) .......... 5, 11

Rule of Professional Conduct 1.16(b)(1) .......... 11

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

On December 1, 2023, Kutak Rock LLP ("Kutak") filed this case. Two lawyers were listed on the caption: (1) Oliver D. Griffin ("Griffin"), then a partner in Kutak's Denver office; and (2) Rudy R. Perrino ("Perrino"), a partner in Kutak's Los Angeles office. The Complaint was frivolous as to *all* Defendants and *all* claims for relief when filed. It remains frivolous as of this date.

Just 55 days after filing this case, the lawyers who filed it suddenly moved to withdraw. The laser speed with which this occurred would ring alarm bells in any case. Those alarm bells ring even louder here because the Complaint constitutes a transparent attempt to manufacture federal jurisdiction, to forum shop, and to revisit issues that are being litigated in ongoing state court proceedings.

Defendants Richard M. Pachulski ("Pachulski") and Pachulski Stang Ziehl & Jones LLP ("PSZJ") file this opposition to ensure that: (a) the Court satisfies itself that each of the six separate plaintiffs has been appropriately notified of the motions and that the Court's files ultimately contain appropriate and verified contact information for all of the Plaintiffs; and (b) in the event that the Court ultimately determines that withdrawal is appropriate after hearing from the Plaintiffs, any withdrawal order issued by the Court is accompanied by reasonable conditions tailored to the unique circumstances of this case.

Pachulski and PSZJ are filing this opposition more than a month before the hearing so as to give counsel ample opportunity to clear up the conflicting record that now exists on the two motions with respect to client addresses and to do so by the February 13, 2024 date the Court has set for service. (Docket No. 43.)

/ / /

/ / /

/ / /

/ / /

**A. Kutak's Representation Of Rubin In Active State Court Litigation Matters Arising Out Of Rubin's Fraud And Mismanagement Of The Glenroy Coachella Project**

Abraham Stuart Rubin ("Rubin") – the lead Plaintiff in this case – attempted to develop a real estate project known as the Glenroy Coachella project using an entity known as Glenroy Coachella, LLC. Defendant Gary Stiffelman ("Stiffelman") was Rubin's partner in the deal. Both of them guaranteed the project's loans. The financial failure of Glenroy Coachella project spawned a tremendous amount of litigation, including several Superior Court cases, the Bankruptcy of Glenroy Coachella, LLC and adversary proceedings filed by the Chapter 7 Trustee of the bankruptcy estate charging Rubin and his entities with fraudulent transfers designed to hinder, delay, and defraud creditors.

Beginning in the summer of 2023, Kutak became Rubin's lawyer in a number of matters, including matters in the Los Angeles County Superior Court, the Riverside County Superior Court, and the two adversary proceedings in the United States Bankruptcy Court for the Central District of California described above. Two of the Superior Court matters are directly tied to the allegations in the Complaint and arise out of Rubin's mismanagement of the Glenroy Coachella project: (1) a Riverside County Superior Court Action captioned U.S. Real Estate Credit Holdings III-A, LP v. Glenroy Coachella, LLP, Case No. RIC 1905743 ("the USRECH Case"); and (2) a Los Angeles County Superior Court Action filed by Stiffelman in the Santa Monica Courthouse captioned Stiffelman v. Rubin, Case No. 19SMCV01908 ("the Stiffelman Case").

Perrino was in charge of both cases. Each case had been pending since 2019.

**B. The Significant Connection Between the USRECH Case, The Stiffelman Case, And This Case**

The Complaint makes repeated references to a wide variety of litigation related activity, including but not limited to: (a) discovery requests, depositions,

and motions; (b) meet and confers; (c) the submission of declarations to Courts; (d) participation in mediation; (e) settlement negotiations; (f) settlement agreements; and (g) court orders under a writ of attachment. (See, e.g., Complaint, ¶¶ 7, 8, 9, 65, 66, 72, 79, 80, 85, 86, 87, 88, 89, 90, 91, 94, 101, 102 and 103.)

The Complaint admits that, at USRECH's request, the state court issued a February 22, 2022 Writ of Attachment on Rubin's assets. (Complaint ¶ 101.) The Complaint attempts to attribute something sinister to Calmwater and USRECH's hope to "improve their chances of collecting one-hundred percent (or more) of the shortfall on a $24.4 million loan to which several investors, including Stiffelman, are obligors, so that they can "feast on the bones of Plaintiffs' assets." (Complaint ¶ 14.) This sounds like Plaintiffs contend that there is something inherently illicit about a lender aggressively pursuing a guarantor's assets after the principal has defaulted on a bank loan. Likewise, the Complaint criticizes Stiffelman, who had liability as a guarantor, for seeking to protect his assets from liquidation. (Complaint ¶ 13.)

It is obvious that Plaintiffs are not happy with how the USRECH Case and the Stiffelman Case are progressing. Indeed, the Complaint makes a bizarre allegation that "[w]hat is clear, however, is that Stiffelman will continue to oppose Rubin's discovery efforts on relevancy and other grounds and that further efforts outside this RICO complaint will likely fail to generate the needed discovery." (Complaint ¶ 66.) After emphasizing that Plaintiffs have sought "time and time again" to obtain discovery, the Complaint expresses dissatisfaction that "recent meet and confer communications" have suggested that "PSZJ and Pachulski will continue to object to the relevance of the communications at issue here to the dispute in that pending litigation." (Complaint ¶¶ 89, 91.)

Simply put, Plaintiffs filed this case in Federal Court to obtain discovery (a) they were unable to obtain in state court; and (b) they would not be able to obtain

/ / /

in any new state court case assigned to a judicial officer whose rulings Rubin disagrees with.

### C. Griffin Departs From Kutak

We have no reason to doubt that Griffin left Kutak in January of 2024 to form his own firm. Indeed, on January 3, 2024, counsel for Pachulski and PSZJ noticed that Griffin was no longer using a Kutak email address and then sent him a cordial email about his apparent transition. (Docket No. 30-1 at pp. 9-10 of 12.)

Griffin's actions show that he expected to be involved in this case on a long-term basis. Specifically:

- He authored a January 3, 2024 email stating that "[w]e will be handling all court changes forthwith. Kutak Rock currently remains local counsel." (Id. at p. 9 of 12.)
- When Stiffelman's counsel asked who spoke for Rubin, he stated that "I speak on behalf of the client in this matter. I confer with Rudy daily, but I have authority." (Id. at pp. 8-9 of 12.)
- He filed a "Notice of Change Of Attorney Business Or Contact Information" on January 18, 2024 – 15 days later. (Docket No. 26.)

As of January 18, 2024, Griffin had objectively demonstrated that he was planning to litigate this case on Plaintiffs' behalf.

### D. Griffin Claims A Right To Withdraw Because He Does Not Have An Engagement Letter And Moves To Withdraw

On January 25, 2024, one week after filing his change of address form, Griffin notified defense counsel that he intended to move to withdraw. (Docket No. 30-1, Ex. 1 at p. 6 of 12.)

When counsel for Pachulski inquired about the grounds for the motion, Griffin responded that the motion would be based on the fact that he had left Kutak, did not have an engagement agreement with Plaintiffs, and did not anticipate

entering into one. (Id. at p. 6 of 12.) He further advised counsel that he did not have authority "to discuss anything relative to Kutak Rock LLP's positions/intentions with respect to this matter." (Id.)

Griffin filed his motion, supporting it only with his own declaration. Griffin's declaration stated that he gave "written notice" of his intent to withdraw to "all Plaintiffs" and that he also "advised in writing the *corporate plaintiffs* of their inability to appear pro se." (Docket No. 30-1 at p 2 of 12 ¶ 5.) Griffin does not indicate whether he took any step to confirm the accuracy of any contact information he had for the Plaintiffs. Nor does he state whether the "corporate plaintiffs" included the trusts he represents.

**E. Kutak Informs Counsel That It Will Also Withdraw And Files Its Own Opaque Motion**

On June 25, 2024, Kutak gave counsel notice that it also intended to withdraw. The email from Kutak stated that: "Recent events in this and other matters have revealed several *ethical concerns*, conflicts with the clients, and other concerns that have caused a complete breakdown in the attorney-client relationship impairing our ability to competently represent them going forward. I cannot reveal the nature of the ethical concerns, conflicts or other concerns without divulging client confidences or breaching ethical duties. However, in my view, the ethical concerns, conflicts and other concerns provide a sufficient basis under various permissive grounds for withdrawal contained in California Rule of Professional Responsibility 1.16(b)."

Kutak filed its motion and supported it with Perrino's declaration. Perrino's declaration admitted that Kutak is the moving party. (Docket No. 32 at p. 6 of 8 ¶ 1.) Although the Rubin client relationship began when Perrino appeared for Rubin in California cases in both Los Angeles and Riverside counties and the Complaint was filed when both Griffin and Perrino were partners at Kutak, Perrino's declaration states that Kutak filed this case on behalf of Plaintiffs "with

myself as local counsel," and Griffin "as lead counsel." (Docket No. 32 at p. 6 of 8 ¶ 3.) We are unfamiliar with any basis for one partner of a large law firm to be designated as "local counsel" for another partner in the same law firm.

We assume that Perrino's current claim that he was "local counsel" for Griffin is part of an effort to shirk his own responsibility for Kutak's lack of an adequate pre-filing investigation in a RICO case brought on behalf of a client that Perrino had been representing in the California Courts and that was new to Griffin.

**F. <u>The Conflicting Client Address Information In the Motions</u>**

The two motions are directly in conflict as to the contact information for the Plaintiffs. How or why that significant conflict in the address information provided exists is a complete mystery to us. One would assume that both lawyers would be on the same page.

**1. <u>The Griffin Proof Of Service With The Beverly Hills Address Information</u>**

On January 26, 2024, Griffin filed a proof of service designed to reflect his service of the motion on the Plaintiffs by mail. All of the Plaintiffs, including the Trusts, were served care of Rubin as President and CEO of ASR Development Company at 269 S. Beverly Drive in Beverly Hills. Based on Internet searches, we believe that to be the address of Beverly Hills Postal Place, which rents out post office boxes, but allows the use of its street address.

Neither the proof of service nor any other document filed by Griffin explains why Rubin, as President and CEO of ASR Development Company, is the appropriate party to be served on behalf of all the Plaintiffs, including Dusty Berke ("Berke"), the Trustee of the Stuart Rubin Children's Trust.

**2. <u>The Kutak Proof of Service With The Los Angeles And Orange Address Information</u>**

When Kutak filed its amended notice of motion to withdraw on January 29, 2024, it included a proof of service by mail on (a) Rubin at 1801 South La Cienega

Blvd., Suite 301 in Los Angeles, purportedly on behalf of all six Plaintiffs; and (b) Berke at 2321 North Clinton Street in Orange.

Kutak's proof of service suggested that Berke was being served both "as Trustee of the Stuart Rubin Children's Trust," and on behalf of "A. Stuart Rubin."

### G. The Communications Between Counsel For Pachulski And Representatives Of Kutak's Executive Committee Which Preceded The Filing Of The Present Motions

The filing of a motion to withdraw just 55 days after an action is filed is not a commonplace occurrence. This extraordinary event necessarily raises questions about what may have precipitated this extraordinary development.

Two key events preceded notice of Kutak's intention to file a motion to withdraw: (1) counsel for Pachulski sent a January 12, 2024 letter to two key members of Kutak's Executive Committee expressing his grave concerns about the adequacy of Kutak's pre-filing investigation (Moscarino Decl. ¶ 12 and Ex. A); and (2) counsel for Pachulski received an email response to that letter from Kutak's General Counsel on January 22, 2024 – just three days before Kutak notified all counsel of its intent to withdraw – which acknowledged the letter and stated "[w]e will have a response to you this week." (Moscarino Decl. ¶ 13 and Ex. B.)

The only responses to the January 12, 2024 letter have been (a) the January 22, 2024 email from Kutak's General Counsel; (b) Perrino's email about withdrawing; and (c) the Kutak motion to withdraw. (Moscarino Decl. ¶ 22.) Both Perrino's email and the motion to withdraw reference "*ethical conflicts*." The logical inference is that Kutak concluded that the issues described in the January 12, 2024 letter caused Kutak management to conclude that it was obligated to disengage from its representation of Rubin and the other Plaintiffs in this case.

/ / /

/ / /

/ / /

**H. Additional Evidence Of A Troubled Relationship Between Attorney And Client**

On January 31, 2024 the parties to the Stiffelman Case filed a joint statement in connection with the ongoing discovery disputes, including the very discovery dispute referred in paragraphs 7, 8, 65, 66, 87, and 89 of the Complaint. (Moscarino Decl. ¶ 21.) That joint statement (a) acknowledged that Kutak's fractured client relationship made it unable to provide discovery responses to Stiffelman; and (b) requested a continuance of the informal discovery conference relating to the subpoena to PSZJ for 30 days. (Id. at ¶ 21.)

**II. THE COURT SHOULD ADDRESS THE SIGNIFICANT QUESTIONS ABOUT THE ADEQUACY OF NOTICE RAISED BY THE MOVING PAPERS, PARTICULARLY IF PLAINTIFFS DO NOT FILE OPPOSITION**

Local Rule 83-2.3.2 states that "[a] motion for leave to withdraw must be made upon written notice to the client and all parties who have appeared in the action." (Local Rule 83-2.3.2.) Corporations and trusts must be given notice of the consequences of their inability to appear pro se. (Local Rule 83-2.3.5.)

Proper notice is essential so that (a) the Court can be ensured that the Plaintiffs have actually received notice of an important motion affecting their rights; and (b) the Court can maintain accurate and complete contact information for the Plaintiffs in its files.

Here, there is a huge red flag. Two different lawyers for the same six Plaintiffs have served the Plaintiffs by mail at completely different addresses. Information available on the Internet reveals that the Beverly Hills address used by Griffin is the address of Beverly Hills Postal Place – an outfit that offers mailbox rentals. We understand that the street address used by Kutak is not a place where Rubin now maintains a physical presence, but it was an address given to the Santa

/ / /

Barbara County Superior Court by Rubin's wife in February of 2023. (RJN, Ex. C at p. 2.)

There is no evidence before the Court that Berke has ever maintained a sufficient presence in Beverly Hills to justify the use of that Beverly Hills address as her address of record in this proceeding.

Even if there was not already substantial confusion due to the conflicts in the addresses used in the two motions to withdraw, confusion exists by virtue of other documents in the public domain. Specifically, in a Santa Barbara Superior Court Case captioned Rubin v. Preferred Bank, Case No. 21cv03982 ("the Preferred Bank Case"), the public record shows that:

- Rubin and his wife, Annette, used a Santa Monica address in documents they filed on November 1, 2023 and November 15, 2023 as self-represented litigants. (RJN, Exs. A and B.)
- The caption of the case lists an Elliot Lander as the Trustee of the Stuart Rubin's Children's Trust, but a February 7, 2023 Notice of Ruling states that "Ms. Rubin confirmed that Dusty Berke is now the Trustee of the A. Stuart Rubin Children's Trust. Ms. Rubin did not have the physical address or email address for Ms. Berke with her, but noted that her California address was somewhere in Calabasas. The Court ordered Ms. Rubin to provide that information to the Court and counsel for the Defendants by February 10, 2023." (RJN, Ex. C and p. 2.)
- The Court's November 29, 2023 Order Granting Preferred Bank's Motion For Terminating Sanctions stated that the address Annette Rubin provided for Berke was incorrect and contained a proof of service with a service list showing an address for Berke in Simi Valley. (RJN, Ex. D at p. 4 and service list.)

/ / /

The juxtaposition of the conflicts in the disparate address information in the two sets of moving papers with further conflicting information in the Preferred Bank files raises significant questions here. In the end, before the Court allows counsel to withdraw, it must have accurate contact information for each Plaintiff that has been verified. The motions raise far more questions than they answer.

While we understand that state court procedures are not binding on this Court, the mandatory state court forms used in the withdrawal context illustrates a reasonable way for the Court to ensure that it has accurate client contact information. Specifically, California Judicial Council Form MC-052 requires that an attorney who serves his client with a motion to withdraw by mail either (a) attest to having confirmed the address the attorney used is correct in the 30 days preceding the filing of the motion; or (b) state that the attorney has been unable to confirm the address and explaining the efforts the attorney has undertaken to confirm the address. (California Judicial Council Form MC-052.)

We take no position on whether the serious address discrepancies described above are fatal to one or both motions. The Court may decide to grant some liberality to counsel, particularly because Plaintiffs have been ordered to appear in person. (Docket No. 43.) The Court should take affirmative steps to ensure that (a) Plaintiffs have been given notice; (b) the Court's records for the addresses, telephone numbers, facsimile numbers and email addresses of all Plaintiffs are accurate; and (c) Plaintiffs will not be given an opportunity to challenge subsequent actions the Court takes in this case for lack of proper notice. Given all the discrepancies, it would not be unreasonable for the Court to hold an evidentiary hearing at which the Plaintiffs can testify about their current address information.

/ / /

/ / /

/ / /

/ / /

## III. THE COURT SHOULD EVALUATE THE CLAIM THAT WITHDRAWAL IS WARRANTED WITH THE INPUT OF PLAINTIFFS, IF NECESSARY

Griffin moves to withdraw on the grounds that he has no retainer agreements for this matter. He suggests that withdrawal is mandatory under these circumstances. We have no reason to question Griffin's factual representation. Nonetheless, we recognize that Plaintiffs have a right to be heard on whether the lack of a written retainer agreement supports withdrawal and Griffin has the right to be heard on whether any other grounds for withdrawal exist.

Kutak's motion is general and vague as to the ethical concerns that led to the breakdown in communications between Kutak, on the one hand, and Rubin and the other Plaintiffs, on the other hand. We find it hard to be critical of Kutak's approach. See, e.g., Alvarez v. Bimbo Bakeries USA, Inc., 2019 WL 7875050 at * 2 (C.D.Cal. 2019) (acknowledging privilege concerns and finding good cause where there was "no reason to doubt Counsel's assertion that there was a breakdown in the attorney-client relationship").

Nonetheless, to make sure that the record is clear, we do believe it important to point out that:

- Pachulski and PSZJ's counsel wrote to Kutak's Executive Committee, explained that this case is frivolous, and asked the Executive Committee to conduct an investigation. (Moscarino Decl. ¶ 12 and Ex. A);
- The Perrino declaration references "*several ethical concerns*" and specifically mentions Rule of Professional Conduct 1.16(b) (Docket No. 32 at p. 6 of 8 ¶ 4); and
- Rule of Professional Conduct 1.16(b)(1) states that a lawyer may withdraw if "the client insists upon presenting a claim or defense in litigation, or asserting a position or making a demand in a non-

> litigation matter, that is not warranted under existing law and cannot be supported by good faith argument for an extension, modification, or reversal of existing law."

The timing is certainly suspicious. There is no denying that counsel for all parties were informed of a breakdown involving "*ethical issues*" shortly after (a) counsel for Pachulski complained to Kutak's Executive Committee about the case being a frivolous case; and (b) Kutak's General Counsel promised a response to that letter.

We have absolutely no reason to doubt that Rubin has aggressively pushed his lawyers to stretch the limits of what they can ethically do. After all, he is the person who (a) testified falsely in the USRECH case, as memorialized by the Fourth District's unpublished opinion in Case No. G062721 (RJN, Ex. F); and (b) was held in contempt of court for transferring title to properties in violation of a court order, as memorialized by the August 6, 2021 ruling in the USRECH case (RJN, Ex. E). Rubin has shown no respect for the litigation process, as evidenced by sanctions orders in numerous cases, including the order imposing terminating sanctions in the Preferred Bank Case. (RJN, Ex. D.)

We understand that the Court will determine if there is a good cause for either withdrawal after hearing from Plaintiffs and deciding if it should conduct an in camera hearing if so requested. We understand that whether grounds for withdrawal exist is primarily an issue to be determined by the Court based on the positions of the withdrawing lawyers and their clients. Assuming that the Court gets to the bottom of the conflicting address problem and is inclined to grant the motion, it should impose reasonable conditions on the order granting leave to withdraw, as described below.

/ / /

/ / /

/ / /

/ / /

## IV. THE COURT SHOULD IMPOSE REASONABLE CONDITIONS ON ANY WITHDRAWAL ORDER THAT ARE REASONABLE UNDER THE CIRCUMSTANCES EXISTING AT THE TIME THE MOTION IS DECIDED

Withdrawing counsel concedes that the Court should consider: (1) the prejudice that withdrawal may cause to the other litigants; and (2) the harm that withdrawal might cause to the administration of justice. Plaintiffs contend that these factors should play no role in the Court's consideration of their motion because this is a newly filed case.

However, withdrawing counsel miss two critical points: (1) counsel seek to exit a frivolous case due to "*ethical*" concerns after Kutak's Executive Committee was advised of the case's frivolousness and asked to conduct an investigation; and (2) the Complaint counsel filed was a blatant attempt to improperly forum shop.

We are deeply troubled by the prospect that lawyers can abandon a frivolous case and leave the Defendants in the position of having to defend the frivolous claims Kutak initially sponsored, but never should have filed.

### A. This Court Can Impose Reasonable Conditions On Withdrawals

The Court has the power to impose reasonable conditions on any order granting counsel the right to withdraw. See, Williams v. County of Fresno, 562 F.Supp.3d 1032, 1035 (E.D.Cal. 2021); In Re Personal Web Technologies, LLC, et al. Patent Litigation, 2022 WL 2290592 at *4-*5 (N.D.Cal. 2022); Ramachandron v. City of Los Altos, 2021 WL 5206675 at *3 (N.D.Cal. 2021); Novelty Textile Inc. v. Wet Seal Inc., 2015 WL12828171 at *2 (C.D.Cal. 2015); Seoul Broadcasting Systems International, Inc. v. Korea Broadcasting Systems International, Inc., 2009 WL10676092 at *2 (C.D.Cal. 2009).

In considering whether this Court should impose conditions on any order permitting withdrawal, we believe it important to emphasize three significant factors that are worthy of the Court's serious consideration: (a) an individual

lawyer and a law firm suffer harm every day that a frivolous lawsuit branding them as racketeers is permitted to remain pending; (b) this Court has an obligation to assure itself that a Plaintiff has properly invoked its subject matter jurisdiction and to assess whether it should exercise supplemental jurisdiction; (c) the administration of justice is compromised by forum-shopping – an activity that our courts have acknowledged to be an abuse of the judicial process.

### B. Pachulski And PSZJ Will Be Prejudiced If The Court Does Not Impose Conditions Related to the Rule 11 Concerns That Exist By Virtue Of The Filing Of The Case

"RICO's *in terrorem* effect is potent, in that a RICO defendant faces the unsavory label "racketeer' as well as the risk of triple damages." Schnitzer v. Oppenheimer & Co., Inc., 633 F.Supp. 92, 97 (D.Or. 1985). Indeed, a RICO claim puts the defendant's "reputation for honesty at risk." Id. For this reason, an order permitting Rubin to withdraw (and presumably giving him some amount to search for counsel willing to take him on as a client in multiple cases at a time when there is an existing writ or attachment against him) will result in continuing injury to Pachulski, PSZJ, and the other defendants.

Griffin and Perrino, who jointly filed this case in their capacities as Kutak partners, should not have filed this case. No reasonable lawyer who had conducted an adequate pre-filing investigation would have done so. The Complaint makes a series of allegations that are (1) false; (2) in conflict with the very exhibits attached to the Complaint; and (3) in conflict with other allegations in the Complaint.

An attorney's responsibility to conduct a reasonable prefiling inquiry "is particularly important in RICO claims." Burnette v. Godshall, 828 F.Supp. 1439, 1448 (N.D.Cal. 1993 aff'd sub nom), Burnette v. Lockheed Missiles & Space Co. 72 F.3d 766 (9th Cir. 1995). This is so because RICO invokes the image of the "archetypical, intimidating mobster" Odom v. Microsoft, 486 F.3d 541, 546 (9th Cir. 2007). As the Fifth Circuit observed in Chapman & Cole v. Intel Customer

Intern. B.V. 865 F.2d 676, 685 (5th Cir. 1989), the "potential for frivolous suits in search of treble damages" places greater responsibility on the bar to "inquire into the factual and legal bases of potential claims" before bringing a RICO case.

When Perrino signed the Complaint on behalf of himself, Griffin and Kutak, he certified that (a) the factual contentions had evidentiary support or would likely have evidentiary support after a reasonable opportunity for reasonable investigation or discovery; and (b) the claims were warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law. (Federal Rule of Civil Procedure 11(b).)

The Complaint filed in this case fails to comply with Rule 11 in numerous respects with respect to *all* claims and *all* defendants. For purposes of illustration, we focus on (a) the frivolousness of the factual allegations relating to the alleged existence of an attorney-client relationship between all six Plaintiffs and PSZJ; and (b) the frivolousness of the contention that federal jurisdiction exists as a result of a properly alleged RICO claim. These two areas represent just the tip of the iceberg.

**1. The Allegations Made About the Alleged Attorney-Client Relationship With Plaintiffs That Were Not Well Grounded In Fact**

The core liability theory of the case is "betrayal." The gravamen is that Stiffelman and Pachulski breached their alleged fiduciary duties to Rubin. The connection between the alleged "betrayal" and the state court litigation is explicit. Rubin claims that Stiffelman and Pachulski "used the litigation as an opportunity to betray him." (Complaint ¶ 12.) Because Rubin was losing in State Court, he concocted a fundamentally flawed RICO theory as a means to convert his state law dominated grievances into a federal case.

Here, Rubin was a relatively new client of Kutak before two Kutak partners attested to the merit of this RICO case. They attested to the merits of the case by having Perrino sign the Complaint on behalf of both of lawyers and the firm. Before

the case was filed, Kutak argued an appeal before the Fourth District. The Fourth District's opinion pointed out that Rubin had given declaration testimony in the USRECH case which was proven to be false when documents were produced in that case. (RJN, Ex. F.) Moreover, as counsel who substituted into the USRECH case after it had been pending for many years, Kutak presumably reviewed the history of the USRECH case and became aware of the August 6, 2021 ruling finding Rubin in contempt of court for willfully violating a stipulated injunction when transferring title to real properties in Santa Barbara and Beverly Hills.

Kutak also knew that (a) Pachulski had provided a sworn declaration stating that he had never represented Rubin; and (b) that one contemporaneous document, which was ultimately attached as Exhibit R to the Complaint, unequivocally stated that he "never had Mr. Rubin as a client." (Complaint, Ex. R at p. 134 of 165.)

This combination of facts demanded a rigorous inquiry rather than blind reliance on Rubin's representations to Kutak. See, e.g., Galanis v. Suzlik, 841 F.Supp.2d 456, 462 (D.Mass. 2011) (Attorney must not persist in relying upon representations of a client without further factual investigations "after his client's representations have been shown to be inaccurate").

The Complaint falsely alleges that Pachulski and PSZJ were attorneys for each and every one of the Plaintiffs, including Berke, in her capacity as Trustee of the Stuart Rubin Children's Trust.[1] Simply put, that allegation was not well

---

[1] It appears obvious to us that Griffin was never personally in touch with Berke. He has served her care of Rubin. It appears that Perrino had a different address for Berke – an address in Orange County. We do know that Perrino and Kutak have filed a motion to withdraw as counsel for Berke, in her capacity as Trustee of the Stuart Rubin Children's Trust in a matter now pending in the Los Angeles County Superior Court captioned United States Real Estate Holdings III-A LLP v. Eisner, Los Angeles County Superior Court Case No. 19SMCV02061 ("the USRECH v. Eisner ("the Eisner Case"). Because Perrino represents Berke in the Eisner Case, his mere possession of an address for her is of no significance to assessing the reasonableness of Kutak's pre-filing investigation. An adequate investigation would have revealed that (a) no one at PSZJ has ever spoken with Berke about any legal matter; (b) Berke has never retained anyone at PSZJ for any purpose; and (c) there is no factual basis for any claim that PSZJ ever represented Berke, either individually or in her capacity as Trustee of the Stuart Rubin Children's Trust. Given that Berke apparently replaced a prior Trustee of the

grounded in fact and was contrary to factual information Kutak possessed when it filed the Complaint.

**2. Kutak's Failure To Conduct An Adequate Pre-Filing Investigation Into The Applicable Law**

The Complaint's RICO theories cannot be justified under existing RICO case law. The gravamen of this action is an alleged breach of fiduciary duty based on Pachulski's role as an attorney for Stiffelman.

There are a multiplicity of separate and independent reasons why the pre-filing investigation into the legal basis for the RICO claims was inadequate. See, e.g., Hartz v. Friedman 919 F.2d 469, 475 (7th Cir. 1990) (Affirming award or sanctions for bringing a defective RICO claim because "counsel neglected to make reasonable inquiry into the applicable law before filing"). The Complaint ignored significant lines of substantive case authority, including:

- Authorities establishing that alleged breaches of fiduciary duty are simply not racketeering activity under RICO. Manion v. Freund, 967 F.2d 1183, 1186 (8th Cir. 1992); LaVay Corp. v. Dominion Fed. Sav. & Loan Ass'n. 830 F.2d 522, 529 (4th Cir. 1987).
- Authorities establishing that RICO claims cannot be rooted in alleged litigation related activities recharacterized as wire fraud. Kim v. Kimm, 884 F.3d 98, 104 (2d Cir. 2018) (Litigation activity cannot constitute a predicate act. Otherwise, courts would be inundated with procedurally complex RICO pleadings arising out of retaliatory lawsuits filed by litigation adversaries).

---

Stuart Rubin Children's Trust after Preferred Bank case was filed in Santa Barbara County with Elliott Lander ("Lander") named as the Trustee of that Trust, a reasonable inquiry would have required that an inquiry about prior representation be made to Lander and any other Trustee who may have preceded him. We have seen nothing that suggests that any such inquiry was made. And, of course, such an inquiry would have shown no history of legal representation.

Langan v. Smith, 312 F.Supp.3d 201, 206 (D.Mass. 2018) ("Courts typically are skeptical of attempting to fashion fraud-based RICO claims out of litigation activities").

- Authorities establishing that the Noerr-Pennington Doctrine requiring that RICO must be construed so as to avoid burdening petitioning activity. Sosa v. DIRECTV, Inc. 437 F.3d 923, 940 (9th Cir. 2006) (RICO does not impose liability for sending pre-lawsuit demand letters because that activity is protected by Noerr-Pennington immunity).
- Authorities establishing that the requirement that a defendant participate in the operation or management of an enterprise is not met through the provision of legal services. Muskegan Hotels, LLC v. Patel, 986 F.3d 692, 699 (7th Cir. 2021) ("A Complaint that does no more than allege that a law firm performed legal work for an enterprise fails to state a violation of § 1962(c)").
- Authorities establishing that RICO's stringent standing requirements mandate that a plaintiff must prove that but for the alleged conduct violations of RICO, he or she would not have suffered an injury to his or her business and property. Rubin, a guarantor who was required to submit financial information to a lender as part of a loan application process, cannot establish a direct causal connection between any alleged predicate act and any harm he claims to have suffered. See, e.g., Hemi Group, LLC v. City of New York, N.Y., 559 US. 1, 17-18, 130 S.Ct. 983, 175 L.Ed.2d 943 (2010). To the extent that Rubin is suing over his fear about what may happen in the future, "speculative injuries do not serve to confer standing under RICO, unless they become

/ / /

concrete and actual" Steele v. Hospital Corp. of America, 36 F.3d 69, 71 (9th Cir. 1994).

- As to PSZJ, respondeat superior liability can attach only if PSZJ benefitted from any alleged RICO violation by Pachulski. Oki Semiconductor Co. v. Wells Fargo Bank Nat. Ass'n., 298 F.3d 768, 775 (9th Cir. 2002) Rubin can prove no set of facts sufficient to impose liability on PSZJ on a respondeat superior theory. See, Marceau v. International Broth. Of Elec. Workers, 618 F.Supp.2d 1127, 1172 (D. Ariz. 2009) ("based on the allegations and evidence presented, the Court cannot hold that the Union somehow benefitted from the Union Agents and Corporation Defendants alleged RICO conspiracy to conduct the affairs of an enterprise through a pattern of racketeering (here, involving preferential treatment)").

For these reasons, there never was and never will be any Federal jurisdiction.[2] But Rubin and his lawyers, acting with malice, have branded Pachulski, PSZJ and other defendants as racketeers.

### C. Harm To The Administration Of Justice

Likewise, the allegations in the Complaint clearly show that Plaintiffs are forum shopping. (See, Complaint ¶ 66.) ("What is clear, however, is that Stiffelman will continue to oppose discovery efforts . . . and that efforts outside of the RICO Complaint will likely fail to generate the needed discovery.")

---

[2] While we confine our RICO discussion to major substantive points. we note that (a) Federal Rule of Civil Procedure 9(b) applies to RICO claims based upon an alleged scheme to defraud; and (b) Plaintiffs' pleading is utterly confusing as to what is being alleged in terms of any claimed distinction between the alleged pattern of racketeering activity, alleged association-in-fact, enterprise and the conspiracy or conspiracies. The complaint even has a parenthetical note that "this is where the use of a second enterprise may be confusing." (Complaint ¶ 84.) The "Civil Conspiracy" alleged in the Third Claim For Relief has different participants than the alleged RICO conspiracy alleged in the Fifth Claim For Relief.

As the Ninth Circuit has noted "[j]udge-shopping clearly constitutes 'conduct which abuses the judicial process.'" Hernandez v. City of El Monte, 138 F.3d 393, 399 (9th Cir. 1998). Slowing the progress of this case through withdrawal motions thus implicates concerns relating to the administration of justice.

**D. Proposed Reasonable Conditions**

This Court undoubtedly has the inherent power to manage its docket with the view toward the efficient resolution of its cases by implementing "a reasonable response to a specific problem." Dietz v. Bouldin, 579 U.S. 40, 46-47, 136 S.Ct. 1885, 195 L.Ed.2d 161 (2016). In this case, we believe that any order granting the motion should respond to the problems identified below.

**1. Conditions To Be Imposed With Respect To Contact Information For Plaintiffs And Future Progress Of This Action**

As stated above, there is a conflict in the address information produced by the withdrawing lawyers. Our courts have imposed conditions to ensure that they obtain accurate address information and that parties are appropriately warned about the possible consequences of their failure to comply with court orders. See, e..g., AIT Worldwide Logistics, Inc. v. HSIN Silk Road Shipping Ltd., 2022 WL 16859744,*2 (C.D.Cal. 2022) (requiring declaration to be filed with the Court attesting that order has been served on defendants, informing client and counsel of the address that will be of record unless changed by notice or substitution, and warning defendants of consequences of their failure to appear through counsel by a specific date); American Export Partners, LLC v. Inman, 2005 WL 6172616 (C.D.Cal. 2015) (Dismissal after Court had entered an order granting a motion to withdraw, requiring Plaintiffs to file a substitution of attorney form within 30 days, warning Plaintiffs that their failure to comply with the Court's order would result in dismissal, and advising entity Plaintiffs that they could not appear *pro se*). Judicially noticeable documents form the Preferred Bank case in Santa Barbara,

including those showing the controversy in that case about Berke's address and the Court's issuance of an order for terminating sanctions, suggest that the Plaintiffs in this case should be given warnings.

We suggest that the Court respond to our articulated concerns as follows:

- In the event that any of the Plaintiffs do not appear with counsel at the hearing on the motion to withdraw, the Court should set a Status Conference on a date certain to address the status of the representation of the Plaintiffs.
- Plaintiffs' counsel should be ordered to provide the street address, telephone number, fax number, and email address for each of the Plaintiffs and certify in writing that they have confirmed with email of the six Plaintiffs that such contact information is the correct street address, telephone number, fax number and email address for each Plaintiff.
- Plaintiffs' counsel should be ordered to prepare an order for entry by the Court which contains all of the language that would appear in paragraphs 7-12 of California Judicial Counsel Mandatory Form MC-053 if this were a matter in state court.
- Plaintiffs' counsel should be ordered to advise the corporate and trust parties that they must obtain counsel by a date certain, to advise Rubin that he must either retain counsel by a date certain, to advise Rubin that he must file a statement as to whether he intends to proceed pro se by a date certain, and to advise Rubin that he must comply with all court rules as an in pro per litigant and make himself available to meet and confer with counsel pursuant to Local Rule 7-3.
- Plaintiffs' counsel should be ordered to advise Plaintiffs that their case will be dismissed if they do not comply with any of the

Court's orders, including the orders that the corporate and trust parties appear through counsel by a date certain and the order that Rubin file a statement with respect to whether he intends to appear as a pro se litigant.

- Plaintiffs' counsel should be ordered to advise Rubin that he is permitted to sign up to receive ECF notices, that he is permitted to apply to become a registered ECF user, that he should review the web page on this Court's website entitled "Electronic Filing and Case Access For People Without Lawyers," and that he shall advise all counsel whether he intends to apply to become a registered ECF user by a date certain.
- Plaintiffs' counsel should be ordered to advise Rubin of his obligation to advise the Clerk of Court in writing of any change in his name, address of record, telephone number, or email address within five days of that change under Local Rule 83-2.4.

**2. Conditions To Be Imposed As A Result Of Concerns About Rule 11 And Subject Matter Jurisdiction**

Federal Courts "should strive to flush out frivolous RICO allegations at an early stage of the litigation." Pratap v. Wells Fargo Bank, N.A., 63 F.Supp.3d 1101, 1114. (N.D.Cal. 2014). Here, the only basis pled for Federal Jurisdiction is the RICO claim. It is to be presumed that a case lies outside federal jurisdiction and "the burden of establishing the contrary risks upon the party asserting jurisdiction" Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994).

We respectfully submit that this is a frivolous filing as to *all* claims for relief and *all* defendants that fails to comply with Rule 11 and constitutes a malicious prosecution. The Complaint pleads an implausible RICO claim that cannot justify the exercise of federal jurisdiction and constitutes an improper attempt to forum

shop. Federal Rule of Civil Procedure 11(c)(3) expressly gives the Court the power to issue an Order to Show Cause requiring a party or its counsel to address whether its conduct is violative of Rule 11.

To address the substantial Rule 11 and jurisdictional concerns raised in this case, we believe that the Court should impose the following conditions:

- Certification By New Counsel. The Court should order that pleading filed by withdrawing counsel – the Complaint – shall not serve as the operative pleading in this case unless and until successor counsel or an individual Plaintiff acting in an in pro per capacity certifies in writing that he or she has read both the Complaint and this opposition filed by Pachulski and PSZJ and further certifies that to the best of his or her knowledge, information or belief, formed after an inquiry reasonable under the circumstances: (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; and (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.
- Order To Show Cause Regarding Merits Of RICO Claim, Federal Subject Matter Jurisdiction, And Supplemental Jurisdiction. The Court should issue an order to show cause to Plaintiffs requiring them to show cause why this case should not be dismissed for lack of subject matter jurisdiction and why the supplemental state court claims should not be dismissed pursuant to 28 U.S.C.

§ 1367 on the grounds that the state law claims of "betrayal" substantially predominate over the RICO claims. As part of the order to show cause, Plaintiffs should be required to explain how they can satisfy each of the elements of their claims under 18 U.S.C. § 1962(c) and 18 U.S.C. § 1962(d) on plaintiff by plaintiff and a defendant by defendant basis.

- <u>Order To Show Cause As To Why Allegations Relating To Matters At Issue In Pending State Court Litigation Should Not Be Stricken</u>. Because the Complaint raises issues of comity by acknowledging that there is pending state court litigation and taking issue with ongoing proceedings in that state court litigation, the Court should issue an order to show cause as to why all references to litigation activity should not be stricken from the Complaint.

Each of the above orders is warranted by the unusual and extreme circumstances herein presented.

## V. <u>CONCLUSION</u>

Stunning circumstances existed in this case, including:

1. A motion to withdraw filed a mere 55 days after the Complaint was filed;
2. The involvement of two lawyers from the same law firm, including a lawyer who initiated the client relationship and signed the Complaint, but who now claims to have been "local counsel" for his former law partner;
3. An incomprehensible RICO Complaint that (a) completely overlooks significant lines of authority that bar Plaintiffs' RICO claims and cannot justify federal jurisdiction; and (b) asserts state law claims which predominate and are based on a meritless

"betrayal" theory premised upon facts which were falsely asserted without an adequate pre-filing factual investigation.

4. Motions to withdraw filed thirteen days after the law firm that filed the case received a letter complaining to its Executive Committee about the adequacy of the firm's pre-filing investigation; and

5. A complete state of disarray resulting from proofs of service filed by different lawyers that show different addresses for each and every Plaintiff, including addresses that conflict with those contained in the files of the Santa Barbara County Superior Court in the Preferred Bank Case.

These extraordinary circumstances are a call to action.

Dated: February 7, 2024 VALLE MAKOFF

By: */s/ John M. Moscarino*
JOHN M. MOSCARINO
Attorneys for Defendants
RICHARD M. PACHULSKI and
PACHULSKI STANG ZIEHL &
JONES LLP