**VALLE MAKOFF LLP**
JOHN M. MOSCARINO (State Bar No. 122105)
jmoscarino@vallemakoff.com
11777 San Vicente Blvd., Suite 890
Los Angeles, California 90049
Telephone: (310) 476-0300
Facsimile: (310) 476-0333

Attorneys for Defendants
RICHARD M. PACHULSKI and PACHULSKI STANG ZIEHL & JONES LLP

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION – FIRST STREET COURTHOUSE**

ABRAHAM STUART RUBIN, an individual; DUSTY BERKE, as Trustee of the STUART RUBIN CHILDREN'S TRUST; and ANNETTE AND STUART RUBIN, as Co-Trustees of the STUART AND ANNETTE RUBIN FAMILY TRUST; ASR DEVELOPMENT CO.; FORCE RUBIN, LLC; FORCE RUBIN 2, LLC,

Plaintiffs,

v.

GARY STIFFELMAN; RICHARD M. PACHULSKI; PACHULSKI STANG ZIEHL & JONES LLP, a California Limited Liability Partnership;· U.S. REAL ESTATE CREDIT HOLDINGS III-A, LP, an Irish Limited Partnership; CALMWATER ASSET MANAGEMENT, LLC, a Delaware Limited Liability Company; GREENBURG TRAURIG, LLP, a New York Limited Liability Partnership; DOE ATTORNEYS 1-50; DOE FIDUCIARIES 1-50; DOES 1-100, inclusive

Defendants.

Case No. 2:23-cv-10152 CBM (PVCx)

Hon. Consuelo B. Marshall

**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF OPPOSITION TO MOTIONS TO WITHDRAW FILED BY OLIVER D. GRIFFIN AND KUTAK ROCK LLP**

Date: March 12, 2024
Time: 9:00 a.m.
Place: Courtroom 8D

Complaint Filed: December 1, 2023

/ / /

/ / /

TO ALL PARTIES AND TO THE COURT:

PLEASE TAKE NOTICE THAT Defendants Richard M. Pachulski ("Pachulski") and Pachulski Stang Ziehl & Jones LLP ("PSZJ") hereby request that the Court take judicial notice of the following court records:

1. Plaintiffs' Memorandum Of Points And Authorities In Opposition To Motion For Summary Judgment filed in Rubin v. Preferred Bank, Santa Barbara County Superior Court Case No. 21CV03982 ("the Preferred Bank Case"), filed on November 15, 2023, a true and correct copy of which is attached hereto as Exhibit A;

2. Opposition Of Plaintiffs A. Stuart Rubin and Annette Rubin To Defendants' Motion For Terminating Sanctions Dismissing Complaint And Striking Answer To Cross-Complaint, filed on November 1, 2023 in the Preferred Bank Case, a true and correct copy of which is attached hereto as Exhibit B;

3. Notice Of Ruling Re Plaintiffs' Motion For Protective Order And Scheduling Issues filed on February 7, 2023 in the Preferred Bank Case, a true and correct copy of which is attached hereto as Exhibit C;

4. Order Granting Motion For Terminating Sanctions filed on November 29, 2023 in the Preferred Bank Case, a true and correct copy of which is attached hereto as Exhibit D;

/ / /

5. Minute Order filed on August 6, 2021 in United States Credit Holdings III-A LP v. Glenroy Coachella, LLC, Riverside County Superior Court Case No. RIC1905743 ("the USRECH Case") , a true and correct copy of which is attached hereto as Exhibit E;

6. Opinion filed on September 29, 2023 in United States Credit Holdings III-A LP v. Rubin, California Court of Appeal, Fourth Appellate District, Division Three ("the USRECH Appel") , a true and correct copy of which is attached hereto as Exhibit F;

7. Supplemental Declaration of Richard Pachulski filed on November 10, 2022 in Stiffelman v. Rubin, Los Angeles County Superior Court Case No. 19SMCV01908 ("the Stiffelman Case"), a true and correct copy of which is attached hereto as Exhibit G;

8. Resignation of Agent Upon Whom Process May Be Served For ASR Development Co., filed with California Secretary of State on March 11, 2022, a true and correct copy of which is attached hereto as Exhibit H;

9. Resignation of Agent of Service of Process for ASR Development Co., filed with the California Secretary of State on June 1, 2023, a true and correct copy of which is attached hereto as Exhibit I; and

10. Statement of Information Corporation for ASR Development Co., filed with the California

Secretary of State on December 8, 2023, a true and correct copy of which is attached hereto as Exhibit J.

Courts regularly take judicial notice of "undisputed matters of public record, including documents on file in federal or state courts." Harris v. Cty. of Orange, 682 F.3d 1126, 1131-32 (9th Cir. 2012) (internal citations omitted); Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001). Likewise, filings with the California Secretary of State are proper subjects of judicial notice. Motul S.A. v. USA Wholesale Lubricant, Inc., ___ F.Supp.3d ___, 2023 WL 5061945 (N.D.Cal. 2023).

The above items meet the requirements of Rule 20l(b)(2) of the Federal Rules of Evidence, and therefore, the Court should take judicial notice of them pursuant to Rule 201(c)(2) of the Federal Rules of Evidence.

Dated: February 7, 2024 VALLE MAKOFF

By: */s/ John M. Moscarino*
JOHN M. MOSCARINO
Attorneys for Defendants
RICHARD M. PACHULSKI and
PACHULSKI STANG ZIEHL &
JONES LLP

# EXHIBIT A

A. Stuart Rubin and Annette Rubin
100 Wilshire Boulevard, Suite #700
Santa Monica, CA 90401-3602
(310) 496-5831
srubin@rprp.com and arubin@rprp.com

Plaintiffs *In Pro Per*

ELECTRONICALLY FILED
Superior Court of California
County of Santa Barbara
Darrel E. Parker, Executive Officer
11/15/2023 9:30 AM
By: Terri Chavez , Deputy

**SUPERIOR COURT FOR THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF SANTA BARBARA**

**ANACAPA DIVISION**

A. STUART RUBIN, an individual; ANNETTE RUBIN, an individual; 1604 SUNSET PLAZA LLC, a California limited liability company; STUART RUBIN and ANNETTE RUBIN, as Trustees of the Stuart and Annette Rubin Family Trust, dated 11/4/2003; and ELLIOT LANDER, as Trustee of the Stuart Rubin Children's Trust, dated 12/21/2001, Plaintiffs,

vs. PREFERRED BANK, a California chartered bank, and DOES 1-20, inclusive, Defendants.

Defendants.

Case No. 21CV03982

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

DATE: November 15, 2023
TIME: 10:00 a.m.
DEPT: 3
Complaint filed: October 6, 2021
Trial: November 29, 2023

A. Stuart Rubin and Annette Rubin
100 Wilshire Boulevard, Suite #700
Santa Monica, CA 90401-3602
(310) 496-5831
srubin@rprp.com and arubin@rprp.com

A. Stuart Rubin and Annette Rubin
100 Wilshire Boulevard, Suite #700
Santa Monica, CA 90401-3602
(310) 496-5831
srubin@rprp.com and arubin@rprp.com

**MEMORANDUM OF POINTS AND AUTHORITIES**

Plaintiffs claim that they and Preferred Bank entered into a contract, the Forbearance Agreement, which required Plaintiffs to pay $8 million to Preferred Bank by June 6, 2021, in exchange for a Change in Terms Agreement that included modified terms for the repayment of the outstanding loan balance. The change in terms was for a fixed dollar amount, mutually agreed in writing.

Plaintiffs claim that Preferred Bank breached this contract by wrongly recording a Notice of Default during the period in which it was to forbear foreclosure activities; this breach impaired Plaintiffs' ability to sell the Beverly Hills property, impaired Plaintiffs' ability to lease the Santa Barbara Property and provided Preferred Bank the opportunity to avoid its obligation to enter into a Change in Terms Agreement upon receipt of $8 million from the sale of the Beverly Hills property.

This would have enabled borrowers to create an additional revenue generating stream a conforming asset and enabled a Borrower's Refinance of Preferred Bank's loan Balance. Because the Bank refused to rescind its improper/defective NOTS (in violation of TRO in force), the Forbearance Agreement was breached.

With respect to the escrow paydown of $8 MM, Preferred Bank ratified the forbearance agreement. The contract Allows $8 MM via (1) escrow-sale Alpine, Marina, (2) Refinance. Plaintiff's complied, offering both for a "net" paydown of $9.2-9.6 MM.

Borrower and Grantors have performed all conditions, covenants, and promises required by them on their part to be performed in accordance with the terms and conditions of the agreement, except for those they were prevented from performing or which were waived or excused by Preferred Bank's misconduct.

The Bank breached its agreement by ratifying and affirming the Forbearance Agreement and making a demand to escrow in the sale of the Beverly Hills property for the payment of $8 million on the one hand, while also recording Notices of Defaults and Notices of Trustee's Sale on all properties and proceeding to initiate non-judicial foreclosure, on the other hand. To the extent the Bank contends the Plaintiffs were in default under the Forbearance Agreement they waived

A. Stuart Rubin and Annette Rubin
100 Wilshire Boulevard, Suite #700
Santa Monica, CA 90401-3602
(310) 496-5831
srubin@rprp.com and arubin@rprp.com

such contention when making a demand for payment of $8 million from the pending escrow that would cure any alleged default. A true and correct copy of this demand is attached hereto as Exhibit 18.

Plaintiffs also claim that Preferred Bank's breach of this contract caused harm to Plaintiffs for which Preferred Bank should pay. Plaintiffs are also(were/are) entitled to injunctive relief to stay the Trustee's sales and forestall the irreparable harm of the pending foreclosures. (Foreclosures wrongful, defective notice, defective clock

In order to bring a claim for violation of Section 17200, "a plaintiff must show either an (1) 'unlawful, unfair, or fraudulent business act or practice,' or (2) 'unfair, deceptive, untrue or misleading advertising.' " *Lippitt v. Raymond James Fin. Servs*., 340 F.3d 1033, 1043 (9th Cir.2003) (quoting Cal. Bus. & Prof.Code § 17200). Pursuant to Section 17200, "there are three varieties of unfair competition: practices which are unlawful, unfair or fraudulent." *Daugherty v. American Honda Motor Co., Inc.*, 144 Cal.App.4th 824, 837, 51 Cal.Rptr.3d 118 (2006); Unlawful business activity includes " 'anything that can properly be called a business practice and that at the same time is forbidden by law.' " *Farmers Ins. Exch. v. Superior Court*, 2 Cal.4th 377, 383, 6 Cal.Rptr.2d 487, 826 P.2d 730 (1992) (citing *Barquis v. Merchants Collection Ass'n*, 7 Cal.3d 94, 113, 101 Cal.Rptr. 745, 496 P.2d 817 (1972)). The "unlawful" prong of Section 17200 prohibits "any practices forbidden by law, be it civil criminal, federal, state, or municipal, statutory, regulatory, or court-made." *Saunders v. Superior Court*, 27 Cal.App.4th 832, 838–39, 33 Cal.Rptr.2d 438 (1994) (internal quotation omitted).

"Unfair" simply means any practice whose harm to the victim outweighs any benefits. *Olsen v. Breeze, Inc.*, 48 Cal.App.4th 608, 618, 55 Cal.Rptr.2d 818 (1996). "The court must weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Gafcon, Inc. v. Ponsor & Assocs*., 98 Cal.App.4th 1388, 1425 n. 15, 120 Cal.Rptr.2d 392 (2002).

To state a cause of action under the fraudulent prong of Section 17200, it is necessary only to show members of the public are likely to be deceived; allegations that the fraudulent deception was "actually false, known to be false by the perpetrator and reasonably relied upon by a victim

A. Stuart Rubin and Annette Rubin
100 Wilshire Boulevard, Suite #700
Santa Monica, CA 90401-3602
(310) 496-5831
srubin@rprp.com and arubin@rprp.com

who incurs damages" are not necessary. *In re Tobacco II Cases*, 46 Cal.4th 298, 312, (2009). A claim under the fraudulent prong of Section 17200 is distinct from common law fraud. Id. "[S]ection 17200 does not require a plaintiff to plead all of the elements of fraud." *In re Mattel, Inc.*, 588 F.Supp.2d 1111, 1118 (C.D.Cal.2008) (finding that the complaint with a fraudulent Section 17200 claim "neither specifically alleges fraud nor alleges facts that necessarily constitute fraud"). However, if the UCL claim is said to be grounded in fraud, "the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir.2009) (quoting *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097 (9th Cir.2003)) (emphasis added in original).

The conduct of Preferred Bank alleged herein violates the provisions of the Unfair Business Practices Act, in that it constitutes unlawful, unfair, or fraudulent business practices, and is causing Plaintiffs to suffer irreparable injury and harm.

As a result of the conduct of Preferred Bank, Plaintiffs are entitled to restitution and disgorgement of the benefits improperly obtained by the Bank, monetary damages, as well as ancillary equitable relief, including temporary, preliminary, and permanent injunctive relief protecting Plaintiffs' real property and their ability to free sell, transfer, or lease the same while they are complying with the Forbearance Agreement, according to proof at trial.

Consequently, Plaintiffs request a judicial declaration of Plaintiffs' rights and duties under the Forbearance Agreement, including that Plaintiffs' actions constituted performance under the Forbearance Agreement. Additionally, Plaintiffs seek ancillary equitable relief, including, without limitation, temporary, preliminary, and permanent injunctions, mandating the Bank to comply with the terms of the Forbearance Agreement, withdraw the NODs and NOSs so that Plaintiffs may freely sell, transfer, or lease its properties, enjoining the Bank from recording any further NODs and NOSs on any of Plaintiffs' properties for as long as Plaintiffs are performing under the Forbearance Agreement, and enjoining the Trustee's sale of any of Plaintiffs' properties.

The essence of this case is the fact that Preferred Bank elected to enter into a Forbearance Agreement with Plaintiffs. Because the encumbrances to refinance and other forms of relief for Plaintiffs were present at the time of the Forbearance Agreement's formation, the only manner in

which Preferred Bank can be said to have entered the Forbearance Agreement in good faith would be with the intention of cooperating with each instrumentality available to realize the protections offered by said Forbearance Agreement to Plaintiffs.

California law has, for more than a century, recognized that a party claiming to have been induced into signing a contract by fraud or deceit is *deemed to have waived* a claim of damages arising therefrom if, after discovery of the alleged fraud, he enters into a new contract with the defendant regarding the same subject matter that supersedes the former agreement and confers upon him significant benefits. *Burne v. Lee* (1909) 156 Cal. 221, 226; *Schmidt v. Mesmer* (1897) 116 Cal. 267, 270–272, 48 P. 54 (*Schmidt* ); *Smith v. Roach* (1975) 53 Cal.App.3d 893, 898, 126 Cal.Rptr. 29 (*Smith* ); *Ball v. Warner* (1926) 80 Cal.App. 427, 431, 251 P. 929.)

*Schmidt* is the seminal California Supreme Court case on the subject and bears substantial similarity in fact pattern to ours. In *Schmidt,* the defendant leased a hotel to plaintiffs for a three-year term. The plaintiffs alleged that the defendant fraudulently misrepresented the amount of monthly income the hotel had generated. There was a conflict in the evidence as to whether the defendant made the misrepresentation and whether, prior to signing the contract, the plaintiffs were given access to records that accurately reflected the income of the hotel. (*Schmidt, supra,* 116 Cal. at p. 268, 48 P. 54.)

The plaintiffs discovered the true facts almost immediately after taking possession of the hotel. Several months later, they fell behind on the rent. Without mentioning the fraud, they proceeded to negotiate an agreement with the defendant permitting them to execute a promissory note in lieu of rental payments, due in six months. (*Schmidt, supra,* 116 Cal. at pp. 269–270, 48 P. 54.)

The California Supreme Court found it unnecessary to reach any of the claims of evidentiary and instructional error, because the evidence showed conclusively that the plaintiffs, by their conduct, had waived their claim of fraudulent inducement. (*Schmidt, supra*, 116 Cal. at p. 270, 48 P. 54.) Declared the court: “It is no doubt the law, that while where a party seeks to rescind a contract into which he was induced to go by the fraudulent representations of another party, he must rescind at once upon the discovery of the fraud, and restore the other party, as near as may

A. Stuart Rubin and Annette Rubin
100 Wilshire Boulevard, Suite #700
Santa Monica, CA 90401-3602
(310) 496-5831
srubin@rprp.com and arubin@rprp.com

A. Stuart Rubin and Annette Rubin
100 Wilshire Boulevard, Suite #700
Santa Monica, CA 90401-3602
(310) 496-5831
srubin@rprp.com and arubin@rprp.com

be, to his former condition, yet he may elect to go on with the contract, and sue to recover damages for the deceit, without giving any warning to the other party that he intends at some future time to charge him with fraud.... But this rule, which relieves a party when he chooses to sue for damages from many of the acts required of him when he elects to rescind, is subject to some just limitations. If, after his knowledge of what he claims to have been the fraud, he elects not to rescind, but to adopt the contract and sue for damages, he must stand toward the other party at arm's length; he must on his part comply with the terms of the contract; *he must not ask favors of the other party, or offer to perform the contract on conditions which he has no right to exact, and must not make any new agreement or engagement respecting it; otherwise he waives the alleged fraud.*" (*Id.* at pp. 270–271, 48 P. 54, italics added.) Concluding that the plaintiffs' conduct "clearly brings them within the principle declared in the authorities above cited," the court held that the fraud claim was waived. (*Id.* at p. 272, 48 P. 54.)

Fifty years later, the state's high court modified the rule articulated in *Schmidt,* but only slightly. In *Bagdasarian v. Gragnon* (1948) 31 Cal.2d 744, 192 P.2d 935 (*Bagdasarian* ), the buyers had purchased a farm from the seller. In response to a foreclosure suit, the buyers filed a cross-complaint alleging they had been induced to purchase the farm through fraud, a claim that prevailed at ****151** trial. (*Id.* at p. 747, 192 P.2d 935.) On appeal, the seller argued that the buyers' mere *request* for an extension of time to make payments on their note constituted an estoppel or waiver of their fraud claim. The court disagreed stating, "There appears to be no decision in California or elsewhere which squarely holds on its facts that the mere making of an unfulfilled request alone constitutes a waiver as a matter of law.... [¶] We think it unjust and unreasonable to hold as a matter of law that the mere asking of a favor should deprive an innocent person of rights arising from an unquestionably fraudulent act, and we therefore disapprove of the language in *Schmidt* ... to the extent that it indicates that the making of a request that is not complied with in itself constitutes a waiver without regard to the circumstances under which it is made." (*Id.* at p. 751, 192 P.2d 935.)

The core holding of *Schmidt* /*Bagdasarian* is that one who, after discovery of an alleged fraud, ratifies the original contract by entering into a new agreement granting him substantial

benefits with respect to the same subject matter, is deemed to have waived his right to claim damages for fraudulent inducement. While it has not recently been the central focus of judicial scrutiny in this state, the rule still stands as binding precedent.

Preferred Bank is precluded from escaping the responsibilities of the Forbearance Agreement because it ratified said contract. Preferred Bank waived its right to foreclose . More importantly, Preferred Bank never had a "right" to engage in bad faith actions, including its fraudulent actions associated with the Trustee sales.

Dated: November 15, 2023

By: ______________________
Annette Rubin

A. Stuart Rubin and Annette Rubin
100 Wilshire Boulevard, Suite #700
Santa Monica, CA 90401-3602
(310) 496-5831
srubin@rprp.com and arubin@rprp.com

A. Stuart Rubin and Annette Rubin
100 Wilshire Boulevard, Suite #700
Santa Monica, CA 90401-3602
(310) 496-5831
srubin@rprp.com and arubin@rprp.com

**PROOF OF SERVICE**

**STATE OF CALIFORNIA )**
**)ss.**
**COUNTY OF SANTA CLARA )**

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and am not a party to this action. My address is: 42228 Madrid Way, Lancaster, CA 93536.

On November 15, 2023, I served the foregoing document, described as, ~~DECLARATION OF ANNETTE RUBIN IN SUPPORT OF PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT~~. PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT.

Michael E. Bubman, Esq.
MIRMAN, BUBMAN & NAHMIAS
16133 Ventura Boulevard, Suite 1175
Encino, California 91436
mbubman@mbn.law

The above-referenced document was served on the interested parties in this action as follows:

[ ] **(BY MAIL)**The envelope was mailed with postage thereon fully prepaid. As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[X] **(BY ELECTRONIC MAIL)** I caused a true and correct copy of the aforementioned document to be forwarded, via electronic mail, to the addressee.

Executed on November 15, 2023, at Los Angeles, California.

[ ] **(BY PERSONAL SERVICE)** I delivered such envelope by hand to the addressee.

[X] **(STATE)** I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on November 15, 2023, at Los Angeles, California.

By: Steven Conlon

# EXHIBIT B

A. Stuart Rubin and Annette Rubin
100 Wilshire Boulevard, Suite #700
Santa Monica, CA 90401-3602
(310) 496-5831
srubin@rprp.com and srubin@rprp.com

Plaintiffs *In Pro Per*

ELECTRONICALLY FILED
Superior Court of California
County of Santa Barbara
Darrel E. Parker, Executive Officer
11/1/2023 11:59 PM
By: Terri Chavez , Deputy

**SUPERIOR COURT FOR THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF SANTA BARBARA**

**ANACAPA DIVISION**

A. STUART RUBIN, an individual; ANNETTE RUBIN, an individual; 1604 SUNSET PLAZA LLC, a California limited liability company; STUART RUBIN and ANNETTE RUBIN, as Trustees of the Stuart and Annette Rubin Family Trust, dated 11/4/2003; and ELLIOT LANDER, as Trustee of the Stuart Rubin Children's Trust, dated 12/21/2001, Plaintiffs,

vs. PREFERRED BANK, a California chartered bank, and DOES 1-20, inclusive, Defendants.

Defendants.

Case No. 21CV03982

OPPOSITION OF PLAINTIFFS *IN PRO PER* A. STUART RUBIN AND ANNETTE RUBIN TO DEFENDANT'S MOTION FOR TERMINATING SANCTIONS DISMISSING COMPLAINT AND STRIKING ANSWER TO CROSS-COMPLAINT

[Filed concurrently with the Declaration of Annette Rubin in Support thereof]

Date: November 15, 2023
Time: 10 a.m.
Dept. 3
Judge: Hon. Thomas J. Anderle

COMPLAINT FILED: 10/6/21
TRIAL DATE: 11/29/23



A. Stuart Ruben and Annette Rubin
100 Wilshire Boulevard, Suite #700
Santa Monica, CA 90401-3602
(310) 496-5831
srubin@rprp.com and srubin@rprp.com

**TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

Plaintiffs *In Pro Per*, A. Stuart Rubin and Annette Rubin, hereby oppose Defendant Preferred Bank's Motion for Terminating Sanctions.

This Opposition is based, in part, upon the fact that Defendant Preferred Bank has failed to demonstrate that Plaintiffs have willfully committed any violation of the discovery process.

This Opposition is further based upon the complete file and records in this action, the attached Memorandum of Points and Authorities, the Declaration of Annette Rubin, as well as any and all documentary or oral evidence as may be presented at the time of the hearing on this Motion.

**Respectfully submitted,**

By:________________
A.Stuart Rubin
Annette Rubin

A. Stuart Ruben and Annette Rubin
100 Wilshire Boulevard, Suite #700
Santa Monica, CA 90401-3602
(310) 496-5831
srubin@rmrn.com and srubin@rmrn.com

A. Stuart Ruben and Annette Rubin
100 Wilshire Boulevard, Suite #700
Santa Monica, CA 90401-3602
(310) 496-5831
srubin@rprp.com and srubin@rprp.com

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendant Preferred Bank filed a Motion for Terminating Sanctions hearing with a hearing date of November 15, 2023. Preferred Bank seeks no less than a draconian result that will effectively end the case. Preferred Bank seeks to have Plaintiffs' complaint dismissed with prejudice and to strike Cross-Defendants' answer. Preferred Bank chooses to ignore the efforts of Plaintiffs to comply with the discovery requests, in particular the responses that were served and verified on April 24, 2023. They also seemed to have misplaced the sixteen (16) checks that were sent in order to satisfy the monetary sanctions. Due to the fact that the discovery at issue has also been served and verified as of November 1, 2023, the purpose of the motion is moot because Plaintiffs have complied. Also, because the trial date is very near, there should be a hearing on the merits.

## II. PERTINENT FACTS

### A. Plaintiffs and Preferred Bank propound discovery.

At the beginning of this action, October 6, 2021, Jared Katz represented all plaintiffs. On November 16, 2022, Mr. Katz filed a motion to withdraw as counsel. [Annette Rubin ("Annette R.") Declaration ("Decl.") ¶ 1] On October 29, 2021, Mr. Katz propounded discovery to Preferred Bank. Preferred Bank responded with nothing but objections on December 30, 2021. [Annette R. Decl. ¶2] Preferred Bank propounded discovery on October 3, 2022 with responses due by November 7, 2022. Mr. Katz requested an extension from Preferred Bank's counsel, Michael Bubman, which was granted until November 19, 2022, because Mr. Katz was preparing to withdraw as counsel. Mr. Bubman granted a second extension request to December 5, 2022 so that that Mr. Katz could avoid preparing responses during the Thanksgiving holiday. On November 29, 2022, Mr. Katz requested a third extension that was denied. [Annette R. Decl. ¶3] Discovery was improperly served to Elliot Lander as trustee for the Rubin Children's Trust. Mr. Lander was no longer trustee; Dusty Berke held that position as of June 27, 2022. Dusty Berke was not served the discovery requests. [Annette R. Decl. ¶4] On December 2, 2022, Mr. Katz filed a motion for a protective order requesting a 60-day extension from the date of the motion ruling to respond to discovery requests. The grounds were that a hearing for his motion to withdraw had been set for

January 4, 2023 and that the written discovery was extremely voluminous and burdensome, requiring a significant amount of time and resources in order to answer. He stated that the Moving Parties anticipated counsel would require the appropriate time to come up to speed on the case and to prepare discovery responses. Also, on December 2, 2022, the Moving Parties timely served written objections to the discovery in order to preserve their legal positions and avoid any argument by Preferred Bank that objections had been waived. [Annette R. Decl. ¶5].

B. Preferred Bank Files Motion to Compel and Mr. Katz Withdraws as Counsel.

On December 22, 2022, Preferred Bank filed sixteen (16) motions to compel with a hearing date of February 15, 2023. Twenty-seven days later, on January 18, 2023, Mr. Katz' motion to withdraw was granted; he withdrew as attorney for all Plaintiffs. [Annette R. Decl. ¶6].

The hearing for Plaintiff's motion for a protective order, at which Ms. Rubin appeared representing herself, took place on February 1, 2023 and was granted, extending time to respond to discovery requests to April 15, 2023. Also, Preferred Bank's Motions to Compel hearing was continued from February 15, 2023 to May 3, 2023. The Court's ruling also stated that the Case Management Conference ("CMC") scheduled for March 1, 2023 would take place at 10 a.m. The Court expected Plaintiffs to participate through new counsel at the CMC. At the hearing, Ms. Rubin informed the Court that Dusty Berke was now the Trustee of the Stuart Rubin Children's Trust but that she did not have Ms. Berke's physical or email address at that time. The Court ordered her to provide it to the Court and opposing counsel by February 10, 2023. [Annette R. Decl. ¶7].

On February 10, 2023, Ms. Rubin poke with Judge Anderle's secretary, Reagan Hoff and provided her only with the physical address for Dusty Berke as her email address was unknown. In April 2023, Mr. Thyne provided Ms. Berke's updated physical address to the Court and to Mr. Bubman. [Annette R. Decl. ¶8].

On March 1, 2023, per the notice of ruling for a protective order filed February 7, 2023, a CMC was to be held at 10 a.m. Mr. Bubman showed up early and failed to appear at the proper time; Ms. Rubin was present at 10 a.m. The previous day, on February 28, 2023, Ms. Rubin emailed Judge Anderle stating their efforts to procure new representation and explained that two potential law firms were considering requests to obtain representation and that they were

A. Stuart Ruben and Annette Rubin
100 Wilshire Boulevard, Suite #700
Santa Monica, CA 90401-3602
(310) 496-5831
srubin@rnrn.com and srubin@rnrn.com

investigating any conflict issues. She stated that she had expected to hear back from them within 14-20 days. She also explained that, due to the myriad of conflicts that attorneys had conveyed, it had been extremely challenging to obtain new counsel. [Annette R. Decl. ¶9].

C. Mr. Thyne Substitutes In As Counsel and Plaintiffs Serve Discovery Responses.

On April 12, 2023, John Thyne substituted in as attorney for Stuart Rubin and Ms. Rubin. He also substituted is as attorney for Stuart Rubin and Annette Rubin, as Trustees of the Stuart Rubin Family Trust on April 20, 2023. [Annette R. Decl. ¶10].

On April 24, 2023, Plaintiffs, through Mr. Thyne, delivered discovery responses to Mr. Bubman. They were sent by word documents, PDF documents, a Google drive link and a Dropbox link. These responses were verified by Stuart Rubin, Annette Rubin, Stuart and Annette for the family trust, and by 1604 Sunset Plaza, LLC by verifications sent separately to Mr. Thyne. Mr. Thyne continued to update and supplement discovery responses through June 23, 2023. [Annette R. Decl. ¶11].

On May 3, 2023, the CMC and hearing for Motions to Compel was held. Since Mr. Thyne did not substitute in as counsel until April 12, 2023, the Court assumed there was insufficient time to respond to the motions to compel. Therefore, the Court continued the hearing on the motions to compel to June 7, 2023. The Court also appointed R.A. Carrington to serve as Discovery Referee. [Annette R. Decl. ¶12].

On June 6, 2023, Ms. Rubin sent a declaration to Mr. Thyne to correct the record. Judge Anderle read my declaration out loud at the June 23, 2023 hearing. During this hearing Mr. Thyne confirmed that he had delivered all of the discovery responses. [Annette R. Decl. ¶13].

On June 7, 2023, a hearing for Preferred Bank's Motions to Compel was held and all motions were granted. The Court awarded sanctions for $500 for each Motion to Compel, for a total of $8000 to be paid by June 21, 2023. [Annette R. Decl. ¶14].

D. Plaintiffs Pay The Full Amount of Sanctions and Propound Discovery on Preferred Bank.

On June 21, 2023, Ms. Rubin placed 16 checks for $500 each into a single envelope. The envelope was addressed to the office of Mr. Bubman. The envelope was mailed on the same date and delivered by the USPS with a tracking number, signature required. To this date, only five (5)

A. Stuart Ruben and Annette Rubin
100 Wilshire Boulevard, Suite #700
Santa Monica, CA 90401-3602
(310) 496-5831
srubin@rmn.com and srubin@rmn.com

A. Stuart Ruben and Annette Rubin
100 Wilshire Boulevard, Suite #700
Santa Monica, CA 90401-3602
(310) 496-5831
srubin@rorp.com and srubin@rorp.com

checks have been presented to the bank and have cleared. All checks could have been presented to the bank for payment the same day that Mr. Bubman received them. [Annette R. Decl. ¶15]. On August 22, 2023, Plaintiffs propounded discovery to Preferred Bank. On September 26, 2023, responses were returned with only objections. [Annette R. Decl. ¶16].

E. Mr. Thyne Motion to Withdraw as Counsel is Denied.

On September 19, 2023, Mr. Thyne filed a motion to withdraw as counsel. The court denied the motion on October 4, 2023. That same day Ms. Rubin filed substitution of attorney forms and Stuart Rubin signed substitution of attorney forms on October 5, 2023. Stuart and Ms. Rubin replaced Mr. Thyne with self-representation. [Annette R. Decl. ¶17].

On October 17, 2023, depositions were noticed for Wellington Chen, President and Chief Operating Officer, Robert Kosof and Li Yu, Chairman and Chief Executive Officer. Mr. Bubman responded with objections. [Annette R. Decl. ¶18].

On October 31, 2023, Ms. Rubin emailed Mr. Bubman regarding several issues. She informed that, as of October 31st, Preferred Bank had not responded with a single response to the discovery propounded on August 22, 2023. She also informed him that on August 26, 2023, his office objected to all Rubin discovery propounded Preferred Bank. She asked when he would respond to the several attempts to meet and confer, advising him that Plaintiffs had reached out multiple times and that they had been informed that he will not answer their calls. In addition, she advised him that only objections were received regarding noticed depositions for his clients on October 17, 2023. She requested a deposition date. Lastly, Ms. Rubin informed him that all sixteen (16) checks had been mailed to him in one envelope by USPS on June 21, 2023; she notified him that U.S. Bank revealed that only five (5) of the checks had been deposited and also told him that U.S. Bank confirmed that all 16 checks could be deposited and presented for payment, effective immediately. All checks would be honored. [Annette R. Decl. ¶19]. She spoke to Mr. Bubman the afternoon of October 31, 2023. He refused to answer questions she had asked of him. [Annette R. Decl. ¶20].

On November 1, 2023, in good faith, though responses had previously been delivered to Mr. Bubman on April 24, 2023, Plaintiffs resent him discovery responses from Stuart Rubin,

A. Stuart Ruben and Annette Rubin
100 Wilshire Boulevard, Suite #700
Santa Monica, CA 90401-3602
(310) 496-5831
srubin@rprp.com and srubin@rprp.com

Annette Rubin, 1604 Sunset Plaza, LLC, and the Stuart Rubin Children's Trust. This was also done to be in compliance with the June 7, 2023 Court order. [Annette R. Decl. ¶21].

## II. LEGAL ARGUMENT

### A. Termination Sanctions Should Not Be Imposed Because Preferred Bank Has Failed to Show any Conduct of Plaintiffs that Has Been Willful

Code of Civil Procedure Section 2023.030 provides that "to the extent authorized by the chapter governing any particular discovery method or any other provision of this title, the court, after notice to any affected party, person, or attorney, and after opportunity for hearing, may impose the following sanctions against anyone engaging in conduct that is a misuse of the discovery process:

(d) The court may impose a terminating sanction by one of the following orders:

(1) An order striking out the pleadings or parts of the pleadings of any party engaging in the misuse of the discovery process. (2) An order staying further proceedings by that party until an order for discovery is obeyed. (3) An order dismissing the action, or any part of the action, of that party. (4) An order rendering a judgment by default against that party."

An order imposing discovery sanctions is reviewed under the abuse of discretion standard. *New Albertsons, Inc. v. Superior Court,* (2008) 168 Cal.App.4th 1403, 1422. An abuse of discretion occurs if, "in light of the applicable law and considering all of the relevant circumstances, the court's decision exceeds the bounds of reason and results in a miscarriage of justice." *Id.*

Defendant argues that *Liberty Mutual* bears a "striking resemblance" to the instant case. *Liberty Mutual* states that only two facts are absolutely required before imposing a [discovery] sanction: "(1) there must be a failure to comply…and (2) the failure must be willful." *Liberty Mutual Fire Ins. Co. v. LcL Administrators, Inc.,* 163 Cal.App.4th 1093, 1102 (2008). Unlike here, in *Liberty Mutual,* the defendant repeatedly ignored meet and confer letters, provided the same answers after two orders that compelled it to give further responses. *Id.* at 1103. Here, not only did Plaintiffs believe that they complied on April 24, 2023, they have taken steps to confirm

compliance in good faith and with the June 7, 2023 Order. Plaintiffs, furthermore, paid all sanctions by June 21, 2023. [Annette R. Decl. ¶¶11, 15, 19, 21.]

B. The Circumstances Do Not Support The "Ultimate Sanction" of Dismissal

1. *Plaintiff's conduct during the discovery process has not been willful.*

The trial court may order a terminating sanction for discovery abuse "after considering the totality of the circumstances: the conduct of the party to determine if the actions were willful; the detriment to the propounding party; and the number of formal and in-formal attempts to obtain the discovery." *Los Defensores, Inc. v. Gomez,* 223 Cal.App.4th 377, 390 (2014). Generally, a court's decision to impose terminating sanctions should not be taken lightly. *Id.* It is a "drastic penalty and should be used sparingly." *Lopez v. Watchtower Bible & Tract Society of New York, Inc.*, 246 Cal.App.4th 566, 604 (2016). If a violation is both willful and preceded by a history of abuse, and evidence shows that less severe sanctions would not produce compliance with the discovery rules, the trial court would be justified to order the terminating sanctions. *Id.* Under this standard, "trial courts have properly imposed terminating sanctions when parties have willfully disobeyed one or more discovery orders." *Id.*

Unlike the appellants in *Gomez,* Plaintiffs have not "willfully" committed any violation of the discovery process. In *Gomez,* the appellants allegedly intentionally "passed off" business to another law firm after prospective clients accidentally dialed their phone number which was very similar to that of a phone number used by attorney joint advertising group for advertising. *Id.* at 382-383. When the callers mistakenly dialed the appellants phone number while attempting to contact the respondent, the appellants intentionally referred them to attorneys who were not affiliated with the respondent. *Id.* at 383.

The Court found sufficient evidence that the appellants in *Gomez* willfully failed to comply with a court order; the Court found that the record showed ample evidence that, despite a court order, the appellants "willfully concealed or destroyed" written documents and other records regarding phone calls to their similar telephone number. *Id.* at 391. The appellants, furthermore, asserted that documents of incoming phone calls "never existed," even though one of the appellants had testified earlier in a deposition that a call log existed that had recorded incoming phone numbers. Here, Plaintiffs have not "willfully" concealed or destroyed any documents; they

A. Stuart Ruben and Annette Rubin
100 Wilshire Boulevard, Suite #700
Santa Monica, CA 90401-3602
(310) 496-5831
srubin@rmrp.com and srubin@rmrp.com

A. Stuart Ruben and Annette Rubin
100 Wilshire Boulevard, Suite #700
Santa Monica, CA 90401-3602
(310) 496-5831
srubin@rrrp.com and srubin@rrrp.com

also have not claimed that certain documents did not exist. To the contrary, to their knowledge the discovery had been propounded by their former attorney, Mr. Thyne, on April 24, 2023, and that he continued to supplement discovery responses through June 23, 2023. [Annette R. Decl. ¶11] Any possible misconduct by Plaintiffs falls far short of the standard for willful conduct.

2. *Failure to pay monetary sanctions is not grounds for terminating sanctions.*

Though Defendant Preferred Bank interestingly claims that they have not been fully paid the monetary sanctions, they acknowledge that they have received seven (7) checks for $500 each, totaling. $3500.00. [Bubman Decl. ¶19]. Plaintiffs assert, however, that sixteen (16) checks for $500 each, totaling $8,000.00, were sent by USPS, signature required, in one envelope, to Mr. Bubman's office on June 21, 2023. All sixteen (16) could have been presented to the bank for payment immediately upon receipt. [Annette R. Decl. ¶¶15, 19]. Nevertheless, even had Plaintiffs not fully paid the sanctions, it is not grounds for ordering terminating sanctions. The dismissal of a case due to a party's failure to comply with a discovery order that produces monetary sanctions is an abuse of discretion. *Midwife v. Bernal,* 203 Cal.App.3d 57, 63 (1988); *Newland v. Superior Court,* 40 Cal.App.4th 608, 614 (1995). Therefore, although Plaintiffs argue that the sanctions have been fully paid, because Defendant Preferred Bank has acknowledged that they have received close to half of the sanctions amount, no order for terminating sanctions should be issued.

3. *Sanctions should be proportionate to misconduct at issue.*

Plaintiff's alleged misconduct in producing discovery responses is not proportionate to the ultimate penalty of dismissal. A trial court must be cautious when ordering a terminating sanction because eliminating a party's fundamental right to a trial impacts that party's due process rights. *Lopez v. Watchtower Bible & Tract Society of New York, Inc.,* 246 Cal.App.4th 566, 604 (2016). Sanctions "should be appropriate to the dereliction, and should not exceed that which is required to protect the interests of the party entitled to but denied discovery." The discovery statutes thus "evince an incremental approach to discovery sanctions, *starting* with monetary sanctions and *ending* with the ultimate sanction of termination." (Italics added) *Id.*

Plaintiffs' diligent efforts are sufficient to avoid a terminating sanction. Opposing counsel acknowledged that on October 25, 2022, Mr. Katz asked him for an extension to respond to the discovery requests because he was preparing to withdraw as counsel and asked for a second

extension so he could avoid working during the Thanksgiving holiday. [Bubman Decl. ¶¶ 4, 5]. Plaintiffs, furthermore, intended to substitute in new counsel for Mr. Katz, as the Court expected by March 1, 2023, and made a strong effort to do so but, due to a myriad of conflicts conveyed by potential attorneys, obtaining new counsel had been very challenging. [Annette R. Decl. ¶¶7, 9]. Eventually, Mr. Thyne substituted in on April 12, 2023. The Court understood that there was insufficient time to respond to the motions to compel and continued the hearing on the motions to June 7, 2023. [Annette R. Decl. ¶10, 12].

4. *Terminating sanctions may not be issued unless a court order has been disobeyed.*

Generally, a court many not impose…terminating sanctions unless a party disobeys a court order. *Mileikowsky v. West Hills Hospital & Medical Center* (2005) 128 Cal.App.4th 262, 277, disapproved on another ground by *Mileikowsky v. West Hills Hospital & Medical Center* (2009) 45 Cal.4th 1259, 1273. "The statutory requirement that there must be a failure to obey an order compelling discovery before the court may impose a nonmonetary sanction for misuse of the discovery process provides some assurance that such a potentially severe sanction will be reserved for those circumstances where the party's discovery obligation is clear and the failure to comply with that obligation is clearly apparent." *New Albertsons,* 168 Cal.App.4th at 1423.

In *Mileikowsky,* the Court affirmed the order for sanctions, reasoning that the record was replete with evidence of the plaintiff's failures to answer discovery despite the issuance of numerous court orders and monetary sanctions. *Mileikowsky,* 128 Cal.App.4th at 279. After the Court's third order imposing monetary sanctions for failure to provide discovery, it warned the plaintiff and his counsel that any future failure to comply with discovery obligations may result in…a terminating sanction, in addition to monetary sanctions. *Id.* at 270. It was only after no less than five separate occasions of motions to compel and five requests for terminating sanctions did the Court agree with the discovery referee who finally recommended the motion be granted as to both termination of the litigation and sanctions. *Id.* at 272-73.

Here, there has been only one occasion for a motion to compel, which was granted on June 7, 2023; sanctions were also issued that day for a total of $8000, $2000 against four separate plaintiffs. The plaintiffs complied with the sanctions order and mailed 16 checks for $500 each to

A. Stuart Ruben and Annette Rubin
100 Wilshire Boulevard, Suite #700
Santa Monica, CA 90401-3602
(310) 496-5831
srubin@rmrn.com and srubin@rmrn.com

Mr. Bubman's office on June 21, 2023, the day they were to be paid. All checks were available to be issued to the bank for payment the day they were received. Though Mr. Bubman interestingly claims he only received 7 checks, all 16 were mailed in one single envelope. In good faith and to be in compliance with the Court order, Plaintiffs re-sent the discovery to Mr. Bubman on November 1, 2023, even though responses for the plaintiffs who had been properly served were previously sent to him on April 24, 2023. [Annette R. Decl. ¶¶11, 14, 15, 19, 21]

C. Plaintiffs Have Diligently Prosecuted This Action.

Preferred Bank claims that no one entered into the action on behalf of the Rubin Children's Trust. The order granting Defendant's motions to compel, filed on July 25, 2023, however, provides that Mr. Thyne substituted in as counsel on behalf of Annette and Stuart Rubin, in their capacity as Trustees of the Rubin Children's Trust on April 20, 2023. Preferred Bank relies on CCP §583.130 to assert that, in addition to the policy of California that the plaintiff "shall proceed with reasonable diligence in the prosecution of an action, all parties shall cooperate in bringing the action to trial or other disposition." What Preferred Bank failed to include was the following sentence which states, "Except as otherwise provided by statute or by rule of court adopted pursuant to statute, the policy favoring the right of parties to make stipulations in their own interests and the policy favoring trial or other disposition of an action on the merits are generally to be preferred over the policy that requires dismissal for failure to proceed with reasonable diligence in the prosecution of an action in construing the provisions of this chapter." CCP §583.130. Simply stated, the Code favors a trial on the merits over dismissing a plaintiff due to alleged lack of prosecuting an action. Here, not only did both 1604 Sunset Plaza and the Rubin Children's Trust both Answer to the Cross-Complaint, 1604 Sunset responded to discovery on April 24, 2023. [Annette R. Decl. ¶11]. The Children's Trust, furthermore, was not properly served discovery requests. Discovery was improperly served to Elliot Lander as trustee for the Children's Trust; Dusty Berke, however, was trustee at that time and was not served. [Annette R. Decl. ¶4].

D. Preferred Bank Should Not Benefit From Their Unclean Hands.

Preferred Bank's Motion is riddled with accusations against Plaintiffs depicting them in a horrible light. They act as though Preferred Bank has been innocent throughout; on the contrary, they've had unclean hands. Though they depict Plaintiff's written objections on December 2, 2022

A. Stuart Ruben and Annette Rubin
100 Wilshire Boulevard, Suite #700
Santa Monica, CA 90401-3602
(310) 496-5831
srubin@rrrn.com and srubin@rrrn.com

as practically a despicable act, they responded with only objections the end of December, 2021 after Plaintiffs had propounded discovery. Plaintiffs had explained that the written objection were served in order to preserve their legal positions and avoid any argument by Preferred Bank that objections had been waived. [Annette R. Decl. ¶¶2, 5]. Mr. Bubman, furthermore, claims to have only received 7 checks when 16 were in fact mailed to him on June 21, 2023. [Annette R. Decl. ¶15; Bubman Decl. ¶19]. Defendants act as though Plaintiffs are attempting to delay the process, yet they are very aware that Plaintiffs have had two attorneys withdraw and are aware that Plaintiffs assert that verified discovery responses had been supplied to Preferred Bank on April 24, 2023 through four different methods. [Annette R. Decl. ¶6, 11, 17]. Contrary to Preferred Bank's misguided belief, Plaintiffs have made efforts to comply with discovery requests and Court orders.

## III. CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that this Court fully deny Defendant's Motion for Terminating Sanctions, in part, because Defendant's have not shown any willful violation of the discovery process.

**Respectfully submitted,**

Dates: November 1, 2023

By:____________
A.Stuart Rubin
Annette Rubin

A. Stuart Ruben and Annette Rubin
100 Wilshire Boulevard, Suite #700
Santa Monica, CA 90401-3602
(310) 496-5831
srubin@rnrp.com and srubin@rnrp.com

A. Stuart Ruben and Annette Rubin
100 Wilshire Boulevard, Suite #700
Santa Monica, CA 90401-3602
(310) 496-5831
srubin@rmrn.com and srubin@rmrn.com

## DECLARATION OF ANNETTE RUBIN

I, Annette Rubin, make this declaration of my own personal knowledge and if called to testify would testify truthfully to the matters set forth herein.

1. At the beginning of this action, October 6, 2021, Jared Katz represented all plaintiffs. On November 16, 2022, Mr. Katz filed a motion to withdraw as counsel.
2. On October 29, 2021, Mr. Katz propounded discovery to Preferred Bank. Preferred Bank responded with nothing save objections on December 30, 2021.
3. Preferred Bank propounded discovery on October 3, 2022, with responses due by November 7, 2022. Mr. Katz requested an extension from Preferred Bank's counsel, Michael Bubman, which was granted until November 19, 2022, because Mr. Katz was preparing to withdraw as counsel. A second extension request was granted by Mr. Bubman to December 5, 2022 so that that Mr. Katz could avoid preparing responses during the Thanksgiving holiday. On November 29, 2022, Mr. Katz requested a third extension, but that was denied.
4. Discovery was improperly served to Elliot Lander as trustee for the Rubin Children's Trust. Mr. Lander was no longer trustee; Dusty Berke held that position as of June 27, 2022. Dusty Berke was not served the discovery requests.
5. On December 2, 2022, Mr. Katz filed a motion for a protective order requesting a 60-day extension from the date of the motion ruling to respond to discovery requests. The grounds were that a hearing for his motion to withdraw had been set for January 4, 2023 and that the written discovery was extremely voluminous and burdensome, requiring a significant amount of time and resources in order to answer. He stated that the Moving Parties anticipated counsel would require the appropriate time to come up to speed on the case and to prepare discovery responses. Also, on December 2, 2022, the Moving Parties timely served written objections to the discovery in order to preserve their legal positions and avoid any argument by Preferred Bank that objections had been waived.

6. On December 22, 2022, Preferred Bank filed sixteen (16) motions to compel with a hearing date of February 15, 2023. Twenty-seven days later, on January 18, 2023, Mr. Katz' motion to withdraw was granted; he withdrew as attorney for all Plaintiffs.

7. The hearing for Plaintiff's motion for a protective order, at which I appeared representing myself, took place on February 1, 2023 and was granted, extending time to respond to discovery requests to April 15, 2023. Also, Preferred Bank's Motions to Compel hearing was continued from February 15, 2023 to May 3, 2023. The Court's ruling also stated that the Case Management Conference ("CMC") scheduled for March 1, 2023 would take place at 10:00 a.m. The Court expected Plaintiffs to participate through new counsel at the CMC. At the hearing, I informed the Court that Dusty Berke was now the Trustee of the Stuart Rubin Children's Trust but that I did not have the physical or email address for her at that time. The Court ordered me to provide it to the Court and opposing counsel by February 10, 2023.

8. On February 10, 2023, I spoke with Judge Anderle's secretary, Reagan Hoff. I provided her with the physical address for Dusty Berke; I did not have her email address. In April of 2023, Mr. Thyne provided Ms. Berke's updated address to the Court and to Mr. Bubman.

9. On March 1, 2023, per the notice of ruling for a protective order filed February 7, 2023, a CMC was to be held at 10:00 a.m. Mr. Bubman showed up early and failed to appear at the proper time. The previous day, on February 28, 2023, I emailed Judge Anderle stating our efforts to procure new representation and explained that two potential law firms were considering our requests to obtain representation and that they were investigating any conflict issues. I stated that I had expected to hear back from them within 14-20 days. I also explained that, due to the myriad of conflicts that attorneys had conveyed, it had been extremely challenging to obtain new counsel.

10. On April 12, 2023, John Thyne substituted in as attorney for my husband, Stuart Rubin, and myself. He also substituted is as attorney for Stuart Rubin and Annette Rubin, as Trustees of the Stuart Rubin Family Trust on April 20, 2023.

11. On April 24, 2023, Plaintiffs, through Mr. Thyne, delivered discovery responses to Mr. Bubman. They were sent by Word documents, PDF documents, a Google drive link and a

A. Stuart Ruben and Annette Rubin
100 Wilshire Boulevard, Suite #700
Santa Monica, CA 90401-3602
(310) 496-5831
srubin@rmrp.com and srubin@rmrp.com

A. Stuart Ruben and Annette Rubin
100 Wilshire Boulevard, Suite #700
Santa Monica, CA 90401-3602
(310) 496-5831
srubin@rrrp.com and srubin@rrrp.com

Dropbox link. These responses were verified by Stuart Rubin and me, as individuals and on behalf of the family trust, and by 1604 Sunset Plaza, LLC by verifications sent separately to Mr. Thyne. Mr. Thyne continued to update and supplement discovery responses through June 23, 2023.

12. On May 3, 2023, the CMC and hearing for Motions to Compel was held. Since Mr. Thyne did not substitute in as counsel until April 12, 2023, the Court deduced that there had been insufficient time to respond to the motions to compel. As a result, the Court continued the hearing on the motions to compel to June 7, 2023. The Court also appointed R.A. Carrington to serve as Discovery Referee.

13. On June 6, 2023, I sent a declaration to Mr. Thyne to correct the record. Judge Anderle read my declaration out loud at the June 23, 2023 hearing. During this hearing Mr. Thyne confirmed that he had delivered all of the discovery responses to him.

14. On June 7, 2023, a hearing for Preferred Bank's Motions to Compel was held and all motions were granted. The Court awarded sanctions for $500.00 for each Motion to Compel, for a total of $8,000.00, to be paid by June 21, 2023.

15. On June 21, 2023, I placed 16 checks, each in the amount of $500.00, into a single envelope. The envelope was addressed to the office of Mr. Bubman, counsel for Preferred Bank. The envelope was mailed on the same date and delivered by the U.S. Postal Service, inclusive of a tracking number, signature required. To this date, only five (5) checks have been presented to the bank. Each of these checks has cleared. I have since learned that each of these checks could have been presented to the bank for payment the same day that Mr. Bubman received them, irrespective of the dates in scripted.

16. On August 22, 2023, Plaintiffs propounded discovery to Preferred Bank. On September 26, 2023, responses were returned with only objections. Mr. Thyne requested to meet and confer in September and October but did not receive a response.

17. On September 19, 2023, Mr. Thyne filed a motion to withdraw as counsel for Stuart and myself. The court denied the motion on October 4, 2023. That same day I filed substitution of attorney forms and Stuart Rubin signed substitution of attorney forms on October 5, 2023. Stuart and I replaced Mr. Thyne with self-representation.

A. Stuart Ruben and Annette Rubin
100 Wilshire Boulevard, Suite #700
Santa Monica, CA 90401-3602
(310) 496-5831
srubin@rmrn.com and srubin@rmrn.com

18. On October 17, 2023, we noticed depositions for Wellington Chen, President and Chief Operating Officer, Robert Kosof and Li Yu, Chairman and Chief Executive Officer. Mr. Bubman responded with objections, but, to date, Preferred bank has not produced these witnesses.

19. On October 31, 2023, I emailed Mr. Bubman regarding several issues. I informed that, as of October 31, 2023, Preferred Bank has not responded with a single response to the discovery we propounded on August 22, 2023. I also informed him that on August 26, 2023, his office objected to all Rubin discovery propounded upon his client, Preferred Bank. I requested revised deposition dates. Lastly, I informed him that all sixteen (16) checks had been mailed to him in one envelope by USPS on June 21, 2023; I provided the tracking number and stated that we received confirmation of the delivery. I notified him that U.S. Bank revealed that only five (5) of the checks had been deposited and also told him that U.S. Bank confirmed that all 16 checks could be deposited and presented for payment, effective immediately. All checks would be honored.

20. As of November 1, 2023, in good faith, though responses had previously been delivered to Mr. Bubman on April 24, 2023, Plaintiffs are engaged in the process of resending discovery responses from Stuart Rubin, Annette Rubin, 1604 Sunset Plaza, LLC, and the Stuart Rubin Children's Trust. It is our intention to confirm compliance with the June 7, 2023 Court order.

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 1st day of November, 2023, at Los Angeles, California.

By:______________
Annette Rubin

## PROOF OF SERVICE

**STATE OF CALIFORNIA** )
)ss.
**COUNTY OF SANTA CLARA** )

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and am an *In Pro Per* litigant, with respect to the within action. My address is: 42228 Madrid Way, Lancaster, CA 93536

On November 1, 2023, I served the foregoing document, described as, OPPOSITION OF PLAINTIFFS *IN PRO PER* A. STUART RUBIN AND ANNETTE RUBIN TO DEFENDANT'S MOTION FOR TERMINATING SANCTIONS DISMISSING COMPLAINT AND STRIKING ANSWER TO CROSS-COMPLAINT; SUPPORTING DECLARATION OF ANNETTE RUBIN, on the interested parties in this action by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

Michael E. Bubman, Esq.
MIRMAN, BUBMAN & NAHMIAS
16133 Ventura Boulevard, Suite 1175
Encino, California 91436
mbubman@mbn.law

[ ] **(BY MAIL)**The envelope was mailed with postage thereon fully prepaid. As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[X] **(BY ELECTRONIC MAIL)** I caused a true and correct copy of the aforementioned document to be forwarded, via electronic mail, to the addressee.

Executed on November 1, at Los Angeles, California.

[ ] **(BY PERSONAL SERVICE)** I delivered such envelope by hand to the addressee.

[X] **(STATE)** I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on November 1, at Los Angeles, California.

*Steven Conlon*
By: Steven Conlon

A. Stuart Ruben and Annette Rubin
100 Wilshire Boulevard, Suite #700
Santa Monica, CA 90401-3602
(310) 496-5831
srubin@rprp.com and srubin@rprp.com

# EXHIBIT C

(SPACE BELOW FOR FILING STAMP ONLY)

Michael E. Bubman, Esq. (SBN 143468)
Scott H. Noskin, Esq. (SBN 164923)
**MIRMAN, BUBMAN & NAHMIAS, LLP**
21860 Burbank Boulevard, Suite 360
Woodland Hills, California 91367
Telephone: (818) 451-4600
Facsimile: (818) 451-4620
Email: mbubman@mbn.law
snoskin@mbn.law

Attorneys for Defendant, PREFERRED BANK

ELECTRONICALLY FILED
Superior Court of California
County of Santa Barbara
Darrel E. Parker, Executive Officer
2/7/2023 3:43 PM
By: Narzralli Baksh , Deputy

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF SANTA BARBARA**

A. STUART RUBIN, an individual; ANNETTE RUBIN, an individual; 1604 SUNSET PLAZA LLC, a California limited liability company; STUART RUBIN and ANNETTE RUBIN, as Trustees of the Stuart and Annette Rubin Family Trust, dated 11/4/2003; and ELLIOT LANDER, as Trustee of the Stuart Rubin Children's Trust, dated 12/21/2001,

Plaintiffs,

vs.

PREFERRED BANK, a California chartered bank; and DOES 1-20, inclusive,

Defendants.

AND RELATED CROSS-COMPLAINT

CASE NO. 21CV03982

**NOTICE OF RULING RE PLAINTIFFS' MOTION FOR PROTECTIVE ORDER AND SCHEDULING ISSUES**

Date: February 1, 2023
Time: 10:00 a.m.
Dept.: 3
**Judge:** Honorable Thomas P. Anderle

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

On February 1, 2023, the Plaintiff's Motion for Protective Order was called for hearing, the Honorable Thomas P. Anderle presiding. Plaintiff Annette Rubin was personally present for the hearing, for herself and as Trustee of the Stuart and Annette Rubin Family trust dated 11/4/2003. No appearance was made for plaintiffs A. Stuart Rubin, 1604 Sunset Plaza or Elliot Lander or Dusty Berke, as Trustee of the Stuart Rubin Children's Trust. Appearing for Defendant Preferred Bank was

Michael E. Bubman, of Mirman, Bubman & Nahmias, LLP. After a review of the papers and allowing for argument of the parties and counsel, the Court ruled as follows:

The motion is granted. Plaintiffs' time to further respond to Preferred Bank's written discovery, (including form interrogatories, special interrogatories, requests for admission and requests for production) is extended to April 15, 2023. Preferred Bank's Motions to Compel, currently scheduled for February 15, 2023, is continued to May 3, 2023. The Case Management Conference ("CMC"), scheduled for March 1, 2023, will proceed at 10:00 a.m. on that day. The Court expects that Plaintiff will participate through new counsel at that CMC, at which time a trial date will be set.

The Court further inquired of Annette Rubin as to proper contact information for the Plaintiffs. Ms. Rubin advised that the correct physical address for herself and Mr. Rubin, both individually and as Trustees of the Stuart and Annette Rubin Family Trust, and for 1604 Sunset Plaza, LLC, is 1801 S. La Cienega Blvd., Suite 301, Los Angeles, CA 90035. The correct email address for Annette Rubin is ar@rprp.com . The correct email address for A. Stuart Rubin is srubin@rprp.com .

Ms. Rubin confirmed that Dusty Berke is now the Trustee of the A. Stuart Rubin Children's Trust. Ms. Rubin did not have the physical address or email address for Ms. Berke with her, but noted that her California address was somewhere on Calabasas. The Court ordered Ms. Rubin to provide that information to the Court and counsel for the Defendants by February 10, 2023.

Counsel for Preferred Bank was ordered to give notice.

Respectfully submitted,

Dated: February 7, 2023

**MIRMAN, BUBMAN & NAHMIAS, LLP**

By: ______________________

Michael E. Bubman
Attorneys for Defendant PREFERRED BANK

(SPACE BELOW FOR FILING STAMP ONLY)

PROOF OF SERVICE

LOS ANGELES COUNTY )
) ss
STATE OF CALIFORNIA )

I am employed in the County of Los Angeles, State of California, in the office of a member of the bar of this court at whose direction the service was made. I am over the age of 18 and not a party to the within action. My business address is 21860 Burbank Boulevard, Suite 360, Woodland Hills, California 91367.

On **February 7, 2023**, I served a true and correct copy of the document described as **NOTICE OF RULING RE PLAINTIFFS' MOTION FOR PROTECTIVE ORDER AND SCHEDULING ISSUES** on the interested parties named below, as follows:

**SEE ATTACHED SERVICE LIST**

[X] (BY MAIL) I am familiar with the ordinary business practice of the law firm of MIRMAN, BUBMAN & NAHMIAS, LLP for collection and processing of correspondence for mailing with the United States Postal Service at the aforementioned place of business and that the above-entitled document was placed in a sealed envelope and deposited for collection and mailing on the date stated above, following such ordinary practices, and in such manner as to cause it to be deposited with the United States Postal Service that same day, with postage thereon fully prepaid, in the ordinary course of business, addressed as indicated above.

[ ] (BY FACSIMILE TRANSMISSION) Based on the agreement of the parties to accept service by facsimile transmission, I faxed the document(s) to the person(s) via facsimile machine number (818) 451-4620 to the person(s) at the fax number(s) listed on the service list on February 7, 2023. No error was reported by the facsimile machine that I used.

[X] (BY E-MAIL) Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission. I caused the documents to be sent to the persons at the e-mail addresses listed. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

[ ] (BY PERSONAL SERVICE) I caused such envelope to be delivered by hand to the offices of the addressee.

[ ] (BY OVERNIGHT DELIVERY, CCP 1013(c, d) I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons at the addresses listed below. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

[X] (STATE) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on February 7, 2023, at Woodland Hills, California.

[signature]
ANA I. ACOSTA

Service List
*Rubin v. Preferred Bank, et al.*

A Stuart Rubin, individually
Stuart Rubin, as Trustee
1801 S. La Cienega Blvd., Suite 301
Los Angeles, CA 90035
Email: srubin@rprp.com

Annette Rubin, individually
Annette Rubin, as Trustee
1801 S. La Cienega Blvd., Suite 301
Los Angeles, CA 90035
Email: ar@rprp.com

1604 Sunset Plaza, LLC
c/o Stuart Rubin and Annette Rubin
1801 S. La Cienega Blvd., Suite 301
Los Angeles, CA 90035
Email: srubin@rprp.com; ar@rprp.com

Elliot Lander and/or Dusty Berke, Trustee for the Stuart Rubin Children's Trust
c/o Stuart Rubin and Annette Rubin
1801 S. La Cienega Blvd., Suite 301
Los Angeles, CA 90035
Email: srubin@rprp.com; ar@rprp.com

1604 Sunset Plaza, LLC
c/o Agent for Service of Process
James R. Felton
16000 Ventura Boulevard, Suite 1000
Encino, CA 91436
Email: jfelton@gblawllp.com

Dusty Berke (Believed to be Successor Trustee for the Stuart Rubin Children's Trust
c/o Simran S. Tiwana
Peckar & Abramson P.C
801 S. Figueroa Street, Suite 950
Los Angeles, CA 90017
Email: stiwana@pecklaw.com

Elliot Lander
120 South Spalding Drive, Suite 300
Beverly Hills, CA 90212

Elliot Lander
72780 Country Club Drive, Suite 301
Rancho Mirage, CA 92270

Paul V. Carelli, IV
ARTIANO SHINOFF
3636 Fourth Avenue, Suite 200
San Diego, CA 92103
Email: pcarelli@as7law.com

# EXHIBIT D

Pursuant to CRC 2.259 this document has been electronically filed by the Superior Court of California, County of Santa Barbara, on 11/18/2023

**FILED**
SUPERIOR COURT of CALIFORNIA
COUNTY of SANTA BARBARA
11/29/2023
Darrel E. Parker, Executive Officer
BY Chavez, Terri
Deputy Clerk

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF SANTA BARBARA**

A. STUART RUBIN, an individual; ANNETTE RUBIN, an individual; 1604 SUNSET PLAZA LLC, a California limited liability company; STUART RUBIN and ANNETTE RUBIN, as Trustees of the Stuart and Annette Rubin Family Trust, dated 11/4/2003; and ELLIOT LANDER, as Trustee of the Stuart Rubin Children's Trust, dated 12/21/2001,

Plaintiffs,

vs.

PREFERRED BANK, a California chartered bank; and DOES 1-20, inclusive,

Defendants.

AND RELATED CROSS-COMPLAINT

CASE NO. 21CV03982

**ORDER GRANTING DEFENDANT'S MOTION FOR TERMINATING SANCTIONS**

Date: November 15, 2023
Time: 10:00 a.m.
Dept.: 3
**Judge:** Honorable Thomas P. Anderle

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

On November 15, 2023, the Motion for Terminating Sanctions filed by defendant Preferred Bank ("Preferred") was called for hearing at 10:00 a.m. before the Honorable Thomas P. Anderle, judge presiding. Appearing on behalf of plaintiffs A. Stuart Rubin and Annette Rubin (collectively, the "Rubins") was Franklin Ferguson Jr., of the Law Office of Franklin L. Ferguson Jr., and Douglas

Reid, of Reid Law Firm, Inc. Appearing on behalf of moving party, Preferred, was Michael E. Bubman, of Mirman, Bubman & Nahmias.

The Motion for Terminating Sanctions was filed by Preferred on or about October 2, 2023. In its Motion for Terminating Sanctions, Preferred moves for an order: (a) dismissing with prejudice Plaintiffs' complaint, and (b) striking cross-defendants' answer to the cross-complaint filed by Preferred, on the grounds that: (1) "Plaintiffs and Cross-Defendants have deliberately and repeatedly violated their statutory discovery obligations despite being afforded numerous opportunities by both Preferred and this Court to comply; (2) Plaintiffs and Cross-Defendants have violated and refused to obey numerous orders of this Court designed specifically to remedy the impact of their ongoing failure to comply with their statutory discovery obligations; (3) Preferred has been prejudiced in its ability to defend itself against the complaint or prosecute its cross-complaint as a direct result of Plaintiffs and Cross-Defendants' deliberate, repeated and wrongful failures to comply with their statutory discovery obligations and this Court's orders; and (4) Plaintiffs and Cross-Defendants' continuing misconduct, which this Court described in its June 7, 2023 order as 'egregious,' 'deliberate' and occurring with 'rhythmic regularity,' makes clear that any sanction less than terminating sanctions will be ineffective." (Notice of Motion, p. ii, *l*. 2 – p. iii, *l*. 8.)

The Rubins oppose the motion, in their individual capacity, on the grounds that "Defendant Preferred Bank has failed to demonstrate that Plaintiffs have willfully committed any violation of the discovery process." (Opposition, p. 2, ll. 4-5.).

After a review of the papers filed in support of and in opposition to the Motion for Terminating Sanctions, allowing for a full and fair hearing as to the Motion, and for the reasons set forth below, the Court rules as follows:

Preferred's Motion for Terminating Sanctions is GRANTED.

## I. BACKGROUND.

There have been numerous discovery disputes related to Plaintiffs' failure to properly respond to discovery. The timeline of the discovery disputes, and related matters, is:

- On October 3, 2022, Preferred propounded form interrogatories, special interrogatories, requests for admissions, and requests for production of documents on all Plaintiffs. (Bubman, Dec., ¶ 3.);
- On October 25, 2022, Plaintiffs' first attorney in this matter, Jared Katz, requested an extension of them to respond to the discovery requests to give him time to withdraw as counsel. (Bubman, Dec., ¶ 4.);
- Plaintiffs were given an extension to respond to November 19, 2022. (*Ibid*.);
- On November 16, 2022, Katz filed a motion to be relieved as counsel for Plaintiffs and requested an additional extension to respond with the new date of December 5, 2022. (Bubman, Dec., ¶ 5.) The request was granted. (*Ibid*.);
- On November 29, 2022, Katz requested a third extension to respond to a date after the date for hearing on his motion to withdraw. (Bubman, Dec., ¶ 6.) The request was denied. (*Ibid*.);
- On December 2, 2022, Plaintiffs served unverified objection only responses. (Bubman, Dec., ¶ 7.)
- On December 22, 2022, Preferred filed 16 motions to compel responses to the discovery and a hearing was scheduled for February 15, 2023. (Bubman, Dec., ¶ 9.)
- On January 18, 2023, Katz was relieved as counsel for all Plaintiffs.
- Plaintiffs filed a motion for protective order to extend their time in which to respond to the discovery with a hearing date of February 1, 2023. (Bubman, Dec., ¶ 8.) The motion was granted, and Plaintiffs were ordered to respond to the discovery by April 15, 2023, and Preferred's motions to compel were continued to May 3, 2023. (Bubman, Dec., ¶ 11.)
- On April 12, 2023, John Thyne, III substituted into the action on behalf of the Rubins and substituted into the action on behalf of the Rubin Family Trust on April 20, 2023. (Bubman, Dec., ¶ 14.) Thyne did not substitute in as counsel for Sunset Plaza or the Children's Trust, both of which have been unrepresented in this action since January 18, 2023. (*Ibid*.)
- On May 3, 2023, at a status conference, the Court continued the 16 motions to compel discovery to June 7, 2023, in order to give Plaintiffs additional time to provide proper discovery responses,

and again ordered A. Rubin to provide defense counsel with the address of Dusty Berke, who is apparently the current trustee of the Children's Trust. (Bubman, Dec., ¶ 16.)

- On June 7, 2023, the Court granted the 16 pending motions to compel responses to discovery, filed by Preferred, against Plaintiffs and ordered sanctions against each of the Plaintiffs in the amount of $500.00, for a total of $8,000.00, payable by June 21, 2023. (Bubman, Dec., ¶ 17.)
- As of October 2, 2023 (the date of Bubman's declaration), Plaintiffs have provided no substantive responses to the discovery, nor have they paid the full amount of the monetary sanctions. (Bubman, Dec., ¶¶ 18, 19.)
- The address for the Children's Trust as provided by Plaintiff Annette Rubin ("Annette") to defense counsel is incorrect. (Bubman, Dec., ¶ 20.)
- In addition to violations of both the February 1 Order and the June 7 Order:
    - Plaintiffs also failed to appear with new counsel at the hearing on the Protective Order Motion as ordered;
    - failed to appear at the continued March 1, 2023 Case Management Conference as ordered;
    - violated this Court's order on March 1, 2023 to provide [defense counsel] with Ms. Berke's correct address;
    - violated this Court's repeated order on May 3, 2023 to provide [defense counsel] Ms. Berke's correct address no later than May 13, 2023; and
    - failed to file a status report by May 26, 2023 as directed regarding Preferred's motions to compel. (Bubman, Dec., ¶ 22.)
- On October 4, 2023, Thyne's motion to be relieved as counsel was denied. The Court concluded: "The Motion must be denied. We have done this once before. Rubin's previous counsel, Jared Katz, was relieved in 1/2023; Mr. Thyne substituted in this case on 4/12/23; the trial date and MSC dates were long before set and confirmed at the CMC on 6/23/23; at that CMC Mr. Thyne acknowledged the previously set trial date; the SJ Motion was filed by the Bank on 8/14/23; it is vastly too late in this case to relieve counsel [again]; Mr. Thyne is an experienced and competent lawyer; has been told numerous times that the Court intended this case to go on schedule; to seek to be relieved on the very eve of trial and just before significant

motions are to be decided would be extraordinarily unfair to the Bank and the Court. The Bank's Opposition to the Motion is very persuasive."

- However, the following day, on October 5, 2023, both Annette and Plaintiff A. Stuart Rubin ("Stuart") filed substitutions of attorney relieving Thyne of his representation of them and becoming self-represented. The decision to ignore this Court's Order when given an opportunity to be represented at this time in this case counts heavily against Plaintiffs.

## II. ANALYSIS.

A self-represented litigant is not entitled to "special treatment" (*Stebley v. Litton Loan Servicing, LLP* (2011) 202 Cal.App.4th 522, 524), but is held to the same standards as a party represented by counsel (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1247).

"[M]ere self-representation is not a ground for exceptionally lenient treatment. Except when a particular rule provides otherwise, the rules of civil procedure must apply equally to parties represented by counsel and those who forgo attorney representation. [Citation.] . . . A doctrine generally requiring or permitting exceptional treatment of parties who represent themselves would lead to a quagmire in the trial Courts, and would be unfair to the other parties to litigation." (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 984-985.)

Preferred seeks terminating sanctions for Plaintiffs' failure to provide substantive discovery responses.

Sanctions available for disobeying a Court order to provide discovery responses include: (1) Monetary sanctions; (2) Issue sanctions; (3) Evidence sanctions; (4) Terminating sanctions; and (5) Contempt. (Code Civ. Proc., 2023.030.)

"If a lesser sanction fails to curb misuse, a greater sanction is warranted: continuing misuses of the discovery process warrant incrementally harsher sanctions until the sanction is reached that will curb the abuse." (*Doppes v. Bentley Motors, Inc.* (2009) 174 Cal.App.4th 967, 992.)

"A Court has broad discretion in selecting the appropriate penalty" for a party's refusal to obey a discovery order. (*Lopez v. Watchtower Bible & Tract Society of New York, Inc*. (2016) 246 Cal.App.4th 566, 604.) Despite this broad discretion, the Courts have long recognized that the terminating sanction is a drastic penalty and should be used sparingly. A trial Court must be cautious

when imposing a terminating sanction because the sanction eliminates a party's fundamental right to a trial, thus implicating due process rights.

"While sanctions are discretionary, the term judicial discretion implies absence of arbitrary determination, capricious disposition, or whimsical thinking. It imports the exercise of discriminating judgment within the bounds of reason. To exercise the power of judicial discretion, all the material facts must be known and considered, together also with the legal principles essential to an informed, intelligent and just decision. [Citation.] Therefore, the Court must examine the entire record in determining whether the ultimate sanction should be imposed. [Citations.]" (*Deyo v. Kilbourne* (1978) 84 Cal.App.3d 771, 796.)

The Court has done all those things. The Court agrees with Preferred's position on the issue. It did take an unreasonably long time for Plaintiffs to comply; Plaintiffs were given ample opportunity to provide proper code-compliant responses to discovery and did not do so; deliberately and intentionally.

Preferred claims not to have been served with any "substantive responses." (Bubman Dec., ¶ 18.) Annette claims to have provided responses on April 24, 2023, and was in the process of resending them on November 1, 2023. (Rubin Dec., ¶ 20.) But Preferred's counsel reports it has received no substantive responses. In reply to the Rubins' opposition, Preferred's counsel states that he has not received any discovery responses from anyone in this matter between November 1, 2023, and November 7, 2023.

The Court believes that Preferred is making an accurate statement regarding Plaintiffs' failure to provide substantive responses and finds Plaintiffs have routinely, with rhythmic regularity, consistently failed to do what the Court has ruled, long ago. The decision not to comply has been deliberate. The Court has examined the entire record including the *ex parte* motion of Plaintiffs to continue the matter that was heard on 11/14/23 at 8:15am. The Court pointed out at that hearing [emphasis added]: "This case was filed two years ago in 10/2021. It has been very heavily litigated. Their first lawyer made a Motion to Withdraw in 11/2022; the Court finally granted that motion over the objection of the defense. We were in the midst of very heavy discovery motions made by the defense. In 7/2023 Defendant's Motions to Compel and for Sanctions was granted, albeit the discovery was never forthcoming. Subsequently Plaintiffs second lawyer made a motion to withdraw. Plaintiffs

had an opportunity to be represented by that lawyer in this matter when the Court denied his untimely request to withdraw only to have Plaintiffs subsequently substitute their lawyer out anyway on the 10/5/23, virtually on the eve of trial and ignoring the Court's analysis and Order, electing instead to represent themselves. That was done deliberately, not through mistake or ignorance. At the same time, they have continued to fail to respond to discovery requests. Plaintiffs have been given every opportunity to do what was required in a timely fashion. But they have consistently and routinely ignored all the timelines. They have made their elections deliberately. This is not a situation where there are Plaintiffs who are handicapped by being self-represented. They know exactly what they are doing or not doing. They are clearly able to understand what must be done and what they must do to participate. Plaintiffs must live with the decisions they have knowing and routinely made. Defendant has rights here, too."

The motion for terminating sanctions is granted.

**IT IS SO ORDERED.**

Dated: **11/29/2023**

[signature]
Thomas P. Anderle, Judge, Superior Court for the County of Santa Barbara

Respectfully submitted,

DATED: November 17, 2023

MIRMAN, BUBMAN & NAHMIAS

By: [signature]
MICHAEL E. BUBMAN
Attorneys for Defendant PREFERRED BANK

(SPACE BELOW FOR FILING STAMP ONLY)

PROOF OF SERVICE

LOS ANGELES COUNTY )
) ss
STATE OF CALIFORNIA )

I am employed in the County of Los Angeles, State of California, in the office of a member of the bar of this court at whose direction the service was made. I am over the age of 18 and not a party to the within action. My business address is 16133 Ventura Blvd., Suite 1175, Encino, California 91436.

On **November 17, 2023**, I served a true and correct copy of the document described as **ORDER GRANTING DEFENDANT'S MOTION FOR TERMINATING SANCTIONS** on the interested parties named below, as follows:

**SEE ATTACHED SERVICE LIST**

[X] (BY MAIL) I am familiar with the ordinary business practice of the law firm of MIRMAN, BUBMAN & NAHMIAS for collection and processing of correspondence for mailing with the United States Postal Service at the aforementioned place of business and that the above-entitled document was placed in a sealed envelope and deposited for collection and mailing on the date stated above, following such ordinary practices, and in such manner as to cause it to be deposited with the United States Postal Service that same day, with postage thereon fully prepaid, in the ordinary course of business, addressed as indicated above.

[ ] (BY FACSIMILE TRANSMISSION) Based on the agreement of the parties to accept service by facsimile transmission, I faxed the document(s) to the person(s) via facsimile machine number (818) 451-4620 to the person(s) at the fax number(s) listed on the service list on November 17, 2023. No error was reported by the facsimile machine that I used.

[X] (BY E-MAIL) Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission. I caused the documents to be sent to the persons at the e-mail addresses listed. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

[ ] (BY PERSONAL SERVICE) I caused such envelope to be delivered by hand to the offices of the addressee.

[ ] (BY OVERNIGHT DELIVERY, CCP 1013(c, d) I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons at the addresses listed below. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

[X] (STATE) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on November 17, 2023, at Encino, California.

ANA I. ACOSTA

Service List
*Rubin v. Preferred Bank, et al.*

**BY EMAIL ONLY**
A. Stuart Rubin
100 Wilshire Boulevard, Suite #700
Santa Monica, CA 90401
Telephone: (310) 496-5831
Email: srubin@rprp.com
In pro per

**BY EMAIL ONLY**
Annette Rubin
100 Wilshire Boulevard, Suite #700
Santa Monica, CA 90401
Telephone: (310) 496-5831
Email: ar@rprp.com
In pro per

**BY EMAIL ONLY**
Elliot Lander and/or Dusty Berke, Trustee for the Stuart Rubin Children's Trust
c/o Stuart Rubin and Annette Rubin
1801 S. La Cienega Blvd., Suite 301
Los Angeles, CA 90035
Email: srubin@rprp.com; ar@rprp.com

**BY MAIL ONLY**
Dusty Berke
494 Bliss Court
Simi Valley, CA 93065

**BY MAIL ONLY**
Elliot Lander
120 South Spalding Drive, Suite 300
Beverly Hills, CA 90212

**BY MAIL ONLY**
Elliot Lander
72780 Country Club Drive, Suite 301
Rancho Mirage, CA 92270

**BY EMAIL ONLY**
Paul V. Carelli, IV
ARTIANO SHINOFF
3636 Fourth Avenue, Suite 200
San Diego, CA 92103
Email: pcarelli@as7law.com

# EXHIBIT E

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**COUNTY OF RIVERSIDE**

| TITLE: U.S. REAL ESTATE CREDIT HOLDINGS III A LP vs GLENROY COAC... | DATE & DEPT. August 5, 2021 Dept. 06 | NUMBER RIC1905743 |
|---|---|---|
| COUNSEL Please see attached Clerk's Certificate of Mailing | REPORTER None Present | FILED SUPERIOR COURT OF CALIFORNIA COUNTY OF RIVERSIDE |
| PROCEEDING RULING ON CONTEMPT | | AUG 06 2021 S. Salazar |

CAI AUG 18 2021 R

Following issuance of an OSC, the court on July 30, 2021 conducted a hearing to determine whether Rubin should be held in contempt. Rubin was present at the hearing, represented by counsel, and advised of his rights. Following submission of evidence and argument, the court now finds as follows:

The elements of contempt are: (1) the making of a valid order, (2) knowledge of the order, (3) ability of respondent to render compliance, and (4) willful disobedience of the order. *In re Ivey* (2000) 85 Cal.App.4th 793, 798; *People v. Superior Court (Stein)* (1965) 239 Cal.App.2d 99. "Willful" as pertaining to contempt does not mean merely a deliberate intention to disregard a court order, but rather encompasses "an indifferent disregard of the duty to obey it promptly." *In re Burns* (1958) 161 Cal.App.2d 137, 142.

It cannot be reasonably disputed that Rubin was aware that an injunction was made (one which he stipulated to and one where his signature appears on the stipulation in at least four places), that he had the ability to comply (since the only thing he had to do was to not transfer either of the properties), or that he disobeyed the order, as the APNs in the attachments to the injunction describing the properties involved match the grant deeds that were recorded with the Los Angeles and Santa Barbara recorders, respectively (4341-028-016 and 063-220-006). Nor does Rubin dispute any of these elements.

What Rubin contends is that a valid injunction was not made by the court and that the order was void. As has been explained, "[t]he rule is well settled in California that a void order cannot be the basis for a valid contempt judgment.... [¶] This court and the Courts of Appeal have frequently acknowledged that violation of a void order is not punishable as contempt.... [¶] Some other jurisdictions require persons affected by injunctive orders to challenge the injunctive order directly, and in the meantime, to obey the order. Disobedience of the order is punished as contempt whether the order is valid or not. This is known as the 'collateral bar' rule. California law is otherwise." *People v. Gonzalez* (1996) 12 Cal.4th 804, 817–818 (footnote omitted). Rubin's contention is that the injunction was void for failing to require a bond.

The general rule is that "[s]ince an undertaking is an indispensable prerequisite to the issuance of a preliminary injunction, regardless of whether the party to be restrained has reminded the court to require the applicant to post one, the restrained party does not waive its right to that statutorily mandated protection by failing to affirmatively request it." *Abba Rubber Co. v. Seaquist* (1991) 235 Cal.App.3d 1, 10. An injunction issued without a bond is, indeed, void. See *Northport Homeowners Assn. v. Superior Court* (1979) 95 Cal.App.3d 241, 245-246 (citing cases). However, the requirement of a bond can be waived. "California law defines waiver as the intentional relinquishment or abandonment of a known right or privilege. [Citation.] Under this definition,

S. SYKES, Judge.
S. Salazar, Clerk
Pages 1 of 2

waiver always is based upon intent and, thus, presents a question of fact. [Citation.] The intent to waive may be expressed in words, either oral or written, or implied by a party's conduct." *Smith v. Adventist Health System/West* (2010) 182 Cal.App.4th 729, 745.

A stipulation is a contract and the rules for construction of contracts govern them. *Los Angeles City School Dist. of Los Angeles County v. Landier Management Co.* (1960) 177 Cal.App.2d 744, 750–751. Here defendant Rubin contends that he did not intend to waive the requirement of a bond, submitting a declaration to that effect. But "'California recognizes the objective theory of contracts [Citation], under which "[i]t is the objective intent, as evidenced by the words of the contract, rather than the subjective intent of one of the parties, that controls interpretation" [Citation.] The parties' undisclosed intent or understanding is irrelevant to contract interpretation.' [Citation.]" *Iqbal v. Ziadeh* (2017) 10 Cal.App.5th 1, 8 [215 Cal.Rptr.3d 684, 689; see also *Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.* (2003) 109 Cal.App.4th 944, 956. "The question is what the parties' objective manifestations of agreement or objective expressions of intent would lead a reasonable person to believe." *Winograd v. American Broadcasting Co.* (1998) 68 Cal.App.4th 624, 632.

The stipulation here was negotiated between multiple represented parties, with Rubin himself being a party to the stipulation not only as an individual but in his capacity of representing the interests of multiple LLCs. Rubin's opposition to the ex parte application for a TRO disputed the sufficiency of the proposed bond offered for the appointment of a receiver ("Plaintiff seeks a bond of $10,000. The bond for a receiver should be sufficient to compensate Defendants from any harm caused to them from the appointment of a receiver. Given the broad powers sought for this Receiver, and the harm that might be caused by him, the amount of this bond is grossly insufficient".) The court in fact ordered a bond posted. Because the portions of the injunction covering the subject properties were reached by stipulation and no noticed motion regarding them was filed, the issue specifically of a bond for that injunction was not raised, but undeniably the parties and their counsel were aware in general of bond requirements and capable of disputing and negotiating them. That after negotiations the parties and their attorneys reached a thirteen paragraph stipulation with numerous provisions to the benefit and detriment of each party and did not call for a bond, nor did any party request one when the stipulation was presented to the court, leads to the inextricable conclusion that Rubin waived the bond requirement in favor of more concrete consideration expressed in the stipulation.

The court therefore finds beyond a reasonable doubt that Rubin waived any requirement of a bond for the injunction when he stipulated to the injunction being issued without one, and therefore that the injunction was a valid order. The court further finds that Rubin was aware of the order, as evidenced by his signature on the stipulation, that he was capable of complying with the order by not transferring the property, and that he willfully violated the order twice, once by transferring title to the Santa Barbara property and again by transferring title to the Beverly Hills property.

For this violation the court imposes a $1,000 sanction for transferring title to the Santa Barbara property and a $1,000 sanction for transferring title to the Beverly Hills property, and awards plaintiff attorney's fees in the amount to be determined by motion.

Date: August 5, 2021

SUNSHINE S. SYKES
Judge of the Superior Court
County of Riverside

S. SYKES, Judge.
S. Salazar, Clerk
Pages 2 of 2

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE

Historic Court House
4050 Main Street, Riverside, CA 92501

**Case Number:** RIC1905743

**Case Name:** U.S. REAL ESTATE CREDIT HOLDINGS III A LP vs GLENROY COACHELLA LLC

## CERTIFICATE OF MAILING

I certify that I am currently employed by the Superior Court of California, County of Riverside, and that I am not a party to this action or proceeding. In my capacity, I am familiar with the practices and procedures used in connection with the mailing of correspondence. Such correspondence is deposited in the outgoing mail of the Superior Court. Outgoing mail is delivered to and mailed by the United States Postal Service, postage prepaid, the same day in the ordinary course of business. I certify that I served a copy of the foregoing notice on this date, by depositing said copy as stated above.

Notices Mailed: Ruling on Contempt

Dated: 08/06/2021

W. SAMUEL HAMRICK JR.,
Court Executive Officer/Clerk of Court

by: [signature]

S. Salazar, Deputy Clerk

Notice has been printed for the following Firm/Attorneys or Parties: RIC1905743

Rivas, Christopher Orlando
355 S GRAND AVE #2900
Los Angeles, CA 90071

Houston, Marsha Ann
355 S GRAND AVE STE 2900
Los Angeles, CA 90071

SULMEYERKUPETZ
333 S GRAND AVE STE 3400
LOS ANGELES, CA 90071

MCGARRIGLE,KENNEY, & ZAMPIELLO
9600 TOPANGA CANYON BLVD
SUITE 200
CHATSWORTH, CA 91311

Messina, John Anthony Jr
24910 LAS BRISAS RD STE 102
Murrieta, CA 92562

Smith, Evan Llewellyn
24910 LAS BRISAS ROAD
SUITE 102
MURRIETA, CA 92562

THE LAW OFFICES OF DAMIAN D CAPOZZOLA
633 W. FIFTH STREET
26TH FLOOR
LOS ANGELES, CA 90071

MARC S HOMME A PROFESSIONAL LAW CORPORATION
74361 HIGHWAY 111 #12
PO BOX 4250
PALM DESERT, CA 92261

BAAKE LAW LLC
350 EL MOLINO BLVD
LAS CRUCES, NM 88005

The Law Office of Stephen J. Armstrong
44200 MONTEREY AVENUE
STE B
PALM DESERT, CA 92260

ROEMER & HARNIK LLP
45025 MANITOU DRIVE
INDIAN WELLS, CA 92210

ABDULAZIZ, GROSSBART & RUDMAN
6454 COLDWATER CANYON AVE
NORTH HOLLYWOOD, CA 91606-1187

PLUMTREE & ASSOCIATES
11132 WINNERS CIRCLE STE G-207
LOS ALAMITOS, CA 90720

LAW OFFICE OF ERIC EVERETT HAWES
23945 CALABASAS ROAD SUITE 113
CALABASAS, CA 91302

BERMAN LITIGATION GROUP
815 MORAGA DR
LOS ANGELES, CA 90049

RAINES FELDM AN LLP
18401 VON KARMAN AVE
STE 360
IRVINE, CA 92612

LAW OFFICES OF ARNOLD L VELDKAMP
1508 W. MISSION ROAD
ESCONDIDO, CA 92029

LANAK & HANNA PC

GEORGE SYKULSKI A PROF LAW CORP
Post Office Box 10426
Burbank, CA 91510

625 THE CITY DRIVE SOUTH
SUITE 190
ORANGE, CA 92868

THE GREEN LAW GROUP, LLP
1777 E. LOS ANGELES AVE
SIMI VALLEY, CA 93065

RAINES FELDMAN LLP
18401 VON KARMAN AVE STE 360
IRVINE, CA 92612

Morris, Matt H.
47040 WASHINGTON ST #3201
La Quinta, CA 92253

WCH LAW GROUP, P.C.
625 THE CITY DR. SOUTH #325
ORANGE, CA 92868

CUMMINS & WHITE LLP
2424 S.E. BRISTOL STREET
SUITE 300
NEWPORT BEACH, CA 92660

# EXHIBIT F

Filed 9/29/23 U.S. Real Estate Credit Holdings III-A v. Rubin CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| U.S. REAL ESTATE CREDIT HOLDINGS III-A, L.P.,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>A. STUART RUBIN,<br><br>Defendant and Appellant. | G062721<br><br>(Super. Ct. No. RIC1905743)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Riverside County, Sunshine S. Sykes, Judge. Affirmed.

Messina & Hankin, Evan L. Smith, John A. Messina and Jeffrey J. Van Wick; Benedon & Serlin, Douglas G. Benedon and Mark Schaeffer; Kutak Rock LLP and Rudy R. Perrino for Defendant and Appellant.

Reed Smith, Marsha A. Houston, Christopher O. Rivas, Kasey J. Curtis and Charles P. Hyun for Plaintiff and Respondent.

## INTRODUCTION

A. Stuart Rubin appeals from a right to attach order granted in favor of U.S. Real Estate Credit Holdings III-A, L.P. Rubin guaranteed a loan to four limited partnerships to build a hotel. When the project failed, U.S. Real Estate sued the guarantors, Rubin among them, to enforce their guaranties. Eventually U.S Real Estate obtained a right to attach order against Rubin, from which he now appeals.

We affirm the order. The trial court correctly ruled that U.S. Real Estate had submitted sufficient evidence to fulfill the requirements of a right to attach order. Rubin submitted no evidence to establish an offset to the amount of the order, and his argument that the court could not grant the order until it adjudicated his cross-complaint against U.S. Real Estate is unavailing.

## FACTS

U.S. Real Estate lent $24 million to a consortium of four limited liability companies to fund the construction of a luxury hotel in Coachella.[1] Rubin and two others personally guaranteed the loan. When the borrowers defaulted, U.S. Real Estate sued Rubin to enforce his guaranty, along with numerous other persons and entities on other causes of action. The proof of personal service of the summons and complaint on Rubin is dated November 26, 2019.[2]

Rubin's main defense was that U.S. Real Estate had concealed certain deficiencies in the hotel construction budget detailed in a report, the Okubo Report, prepared before he signed his guaranty. He claimed he would never have signed had he known about these deficiencies.

---

[1] Rubin is allegedly the managing director of at least one of the limited liability companies that borrowed the money from U.S. Real Estate and has a direct or indirect ownership interest in two of the other companies.

[2] According to the register of actions, a notice and acknowledgement of receipt of U.S. Real Estate's complaint as to Rubin was filed on November 22, 2019.

U.S. Real Estate moved for summary adjudication on this defense in January 2021. At first, the trial court denied the motion, holding that Rubin had raised a triable issue of fact about whether his performance was excused because U.S. Real Estate failed to disclose facts that materially increased a surety's risk, citing *Sumitomo Bank v. Iwasaki* (1968) 70 Cal.2d 81 (*Sumitomo*).

U.S. Real Estate applied for a right to attach order and a writ of attachment against Rubin on October 19, 2021. That matter was heard on January 28, 2022, along with a second motion for summary adjudication on Rubin's nondisclosure defense. The court granted the second summary adjudication motion, on two grounds. First, new evidence revealed that Rubin had received the Okubo Report, which he claimed he had not seen, and that he had responded to this report before signing the guaranty. Second, the guaranty expressly absolved U.S. Real Estate of any obligation to disclose anything to Rubin or to the other guarantors.[3]

The evidence Rubin submitted in opposition to the application for a right to attach order consisted of his declaration and a request for judicial notice. Rubin's declaration set out the monetary value of three pieces of real estate he owned and denied that he engaged in a trade, business, or profession. He claimed an exemption on his primary residence. The request for judicial notice consisted of Rubin's answer, five notices of rescission, the order denying U.S. Real Estate's first motion for summary adjudication, U.S. Real Estate's writ petition for the order denying summary adjudication and the order denying the petition, U.S. Real Estate's petition for Supreme Court review and the order denying the petition, a request for leave to file a cross-complaint with a draft cross-complaint, and various documents from the bankruptcy of the lead borrower.

---

[3] U.S. Real Estate has requested judicial notice of a subsequent order, entered on December 16, 2022, granting U.S. Real Estate's motion for summary adjudication as to another of the loan's guarantors – in which the court again found the *Sumitomo* defense unavailing – and as to the breach of guaranty cause of action as a whole. This ruling is unnecessary to the resolution of this appeal, which concerns only Rubin and the evidence before the court when it granted the right to attach order against him. The request is therefore denied. (See *County of San Diego v. State of California* (2008) 164 Cal.App.4th 580, 613, fn. 29.)

The court granted U.S. Real Estate's application for a right to attach order against Rubin in the amount of $9.7 million on January 28, 2022. This amount took into account U.S. Real Estate's purchase of the hotel property by means of a credit bid in bankruptcy. A written order was entered on February 24, 2022.

At the same January hearing, Rubin sought leave to file a cross-complaint. The court continued this motion to February 24, 2022, at which time the court granted leave to file the cross-complaint.[4]

The cross-complaint alleges causes of action for, inter alia, rescission of Rubin's guaranty, fraud, and interference with prospective economic advantage. In the cross-complaint, Rubin alleged that the Okubo Report was withheld from him and that he was therefore unaware of the budget deficiencies related in the report. He reiterated that he would not have signed the guaranty had he known about the budget deficiencies. The cross-complaint also alleged other breaches of the loan agreement that prompted Rubin's rescission allegations.

**DISCUSSION**

A right to attach order requires evidence of a claim for an amount of money greater than $500 based on a contract, express or implied, unsecured by an interest in real property, and, if the defendant is a natural person, based on his or her trade, business, or profession. (Code Civ. Proc., § 483.010, subds. (a-c).)[5] An order granting a right to attach order is an appealable order. (§ 904.1, subd. (a)(5).)

The trial court issues a right to attach order after hearing if it finds that (1) the claim is one upon which an attachment may be issued, (2) the claim has "probable validity,"[6] (3) the attachment is not sought for an improper purpose, and (4) the amount is

---

[4] Rubin's personal notice of rescission is dated May 17, 2021. He filed a notice of motion for leave to file a cross-complaint containing a cause of action for rescission on November 5, 2021.

[5] All further statutory references are to the Code of Civil Procedure.

[6] "A claim has 'probable validity' where it is more likely than not that the plaintiff will obtain a judgment against the defendant on that claim." (§ 481.190.)

greater than zero. (§ 484.090, subd. (a).) We review the trial court's finding of probable validity for substantial evidence. (*Santa Clara Waste Water Co. v. Allied World National Assurance Co.* (2017) 18 Cal.App.5th 881, 885 (*Santa Clara*).)

Rubin has advanced four reasons why the trial court should not have issued a right to attach order. First, U.S. Real Estate failed to comply with the strict procedure necessary to secure such an order. Second, the court should have denied the application because the underlying contract (the guaranty) has been rescinded. Third, the court had to adjudicate the rescission claim in his draft cross-complaint before an attachment order could issue, and, finally, U.S. Real Estate did not establish the probable validity of its claim.

**I. Procedural Compliance**

Rubin argues U.S. Real Estate failed to comply with the notice requirements for an application for a right to attach order, namely serving a copy of the summons and complaint along with the notice of application and hearing and a copy of the application and supporting affidavits. Section 484.040 requires all three types of documents to be served on the defendant "[a]t the times prescribed by subdivision (b) of Section 1005[.]" Section 1005, subdivision (b), in turn, requires "all moving and supporting papers [to be] served and filed at least 16 court days before the hearing." Rubin argues that the statute requires the summons and complaint to be served *at the same time* as the notice of application and a copy of the application with its affidavits.

The statutory language does not support this argument. Section 1005 sets the minimum number of days' notice that moving and supporting papers must afford to the opposing party: *at least* 16 court days. The section says nothing about a maximum amount of time. Section 484.040, in turn, requires that the papers be served "[a]t the *times* prescribed" by section 1005, subdivision (b). (Italics added.) It makes no further demands regarding compliance with section 1005.

It is undisputed that U.S. Real Estate served Rubin with the summons and complaint at the commencement of the action, in November 2019.[7] Rubin argues in effect that he should have received *another* copy along with the attachment papers. As the court asked Rubin's counsel at the hearing, "[A]re you saying you've never seen the summons and complaint and the statute then would require it to be sent twice? You're saying you want a continuance . . . [¶] . . . because you didn't get a copy of it twice."

Right to attach orders and writs of attachment are typically sought early in a lawsuit, so it makes sense to ensure that the defendant has been served with a copy of the summons and complaint as well as with the attachment papers themselves. But nothing in the statute mandates that they all be served together; the statute requires only that they all be served at least 16 court days before the hearing. U.S. Real Estate served Rubin with a summons and complaint and filed the proof of service more than two years before the hearing, and he had, since that time, been vigorously litigating the matter. He cannot reasonably complain that he was unaware of the nature and allegations of U.S. Real Estate's suit against him.

## II. Rescission

Rubin makes two arguments regarding rescission. First, the court had to wait until he filed his cross-complaint for rescission and had received a judicial determination on it before it could rule on U.S. Real Estate's application for a right to attach order. Second, he rescinded the guaranty, so there is no contract claim upon which to base a right to attach order.[8]

---

[7] According to the register of actions, Rubin began filing papers in the lawsuit on the same day that he was served. He answered on January 6, 2020.

[8] Rubin is incorrect that a cause of action for rescission negates an application for a right to attach order. "[U]pon rescission the law implies an obligation to return the money paid, and an action on the implied contract supports a writ of attachment." (*Landry v. Marshall* (1966) 243 Cal.App.2d 170, 177-178, (*Landry*).) The opposing party would then have a right of offset of any amount based on a claim as to which it showed "probable validity." (§ 483.015.)

Section 483.015, subdivision (b)(2), reduces the amount allowable in a right to attach order by "[t]he amount of any indebtedness of the plaintiff that the defendant has claimed in a cross-complaint filed in the action if the defendant's claim is one upon which an attachment may be issued." Section 483.015, subdivision (b)(3), reduces the amount of the order by the amount asserted as a defense in the answer, subject to certain conditions.

Rubin's answer alleged a defense of offset, but did not allege any amount. As to a claim in a cross-complaint – leaving aside the fact that none was on file when the court issued the right to attach order – "'[Section] 483.015 does not explicitly require more than a filed cross-complaint or contract defense in an answer that would itself support an attachment. However, to sustain reduction in a writ amount, most courts require that defendant [or cross-defendant] provide enough evidence about its counterclaims [or claims] and/or defenses to prove a prima facie case.' [Citation.] 'Courts are generally suspicious of vague, unsupported counterclaims and defenses.' [Citations.]" (*Lydig Construction, Inc. v. Martinez Steel Corp.* (2015) 234 Cal.App.4th 937, 944-945 (*Lydig*).)

Rubin's opposition to U.S. Real Estate's application for a right to attach order presented no evidence whatsoever about any amounts for his counterclaims or defenses. His own declaration stated only the value of three pieces of real estate. The request for judicial notice provided no evidence of the specific amounts of his counterclaims. He therefore presented no evidence to support a prima facie case regarding this issue.[9]

To obtain the offset allowed by section 483.015, Rubin had to establish the probable validity of his own claims. He submitted no evidence to this effect. "If, by

---

[9] If Rubin were correct that his rescission of the guaranty means that there is no contract upon which to base a right to attach order, then there is no contract upon which to base a reduction of the amount under section 483.015, subdivision (b)(2), which requires a claim in a cross-complaint "upon which an attachment could be issued."

virtue of making claims that *are not* probably valid, a defendant could obtain an offset against a plaintiff's claim that is probably valid, a defendant could always and easily defeat a plaintiff's right to a prejudgment attachment." (*Lydig, supra*, 234 Cal.App.4th at p. 945.) This is not, we believe, the Legislature's intention.

Rubin's argument that his cross-complaint must first be adjudicated is likewise without merit. "The purpose of a writ of attachment is to ensure payment will be recovered if judgment is entered. [Plaintiff] is only required to establish the 'probable validity' of its claims. Whether [plaintiff's] claims are 'actually valid' is determined in a subsequent proceeding and not affected by the court's order on the applications for prejudgment attachment. [Citation.] An attachment remedy would be useless if it required the court to first decide the merits and issue a judgment." (*Santa Clara, supra,* 18 Cal.App.5th at p. 889.)

**III. Probable Validity**

As stated above, we review the trial court's finding of probable validity for substantial evidence. (*Santa Clara, supra*, 18 Cal.App.5th at p. 885.)

Rubin advances three arguments as to why U.S. Real Estate's application for a right to attach order lacked probable validity. Rubin had rescinded the guaranty, his cross-complaint for rescission had to be adjudicated first, and finally, the court had ruled, in response to U.S. Real Estate's first motion for summary adjudication, that Rubin had presented evidence to establish a triable issue of fact as to his *Sumitomo* defense of failure to disclose.

We have dealt with the first two arguments above. As to this last argument, the court ruled, in response to U.S. Real Estate's second motion for summary adjudication, that Rubin had *not* established a triable issue of fact as to this defense. While the trial court expressed itself as "reluctant to find that Rubin intentionally perjured himself in the prior motion[,]" it nevertheless ruled that (1) Rubin had seen the relevant report, so there was no failure to disclose, and (2) in the guaranty, Rubin had

waived any obligation on U.S. Real Estate's part to disclose anything. As of the date of the right to attach order, the failure-to-disclose defense had evaporated.

Rubin's argument fails for another reason. A review for substantial evidence means that we "infer the trial court made all factual findings necessary to support the judgment. [Citation.] The doctrine is a natural and logical corollary to three fundamental principles of appellate review: (1) a judgment is presumed correct; (2) all intendments and presumptions are indulged in favor of correctness; and (3) the appellant bears the burden of providing an adequate record affirmatively proving error." (*Fladeboe v. American Isuzu Motors Inc*. (2007) 150 Cal.App.4th 42, 58.) "Since all intendments are in favor of the lower court's ruling, the affidavits on behalf of the respondent are here deemed to establish not only the facts directly stated therein, but all facts reasonably to be inferred from those stated." (*Landry*, *supra*, 243 Cal.App.2d at p. 175.)

In this case, the court accepted U.S. Real Estate's evidence regarding the nature of its claim against Rubin, its probable validity, its purpose, and its amount. In doing so, the trial court must have found the evidence put forward in Rubin's opposition, such as it was, unpersuasive. "Where, as here, the record is otherwise silent with respect to what the trial court considered, we must presume it considered all the pertinent matters presented to it and ruled in favor of the prevailing party." (*Lydig*, *supra*, 234 Cal.App.4th at p. 945.) Under the substantial evidence standard of review, we do not reweigh evidence. (See *Pacific Palisades Residents Assn., Inc. v. City of Los Angeles* (2023) 88 Cal.App.5th 1338, 1368.)

**DISPOSITION**

The right to attach order is affirmed. Respondent U.S. Real Estate Credit Holdings III-A, L.P., is to recover its costs on appeal. Respondent's request for judicial notice is denied.

BEDSWORTH, ACTING P. J.

WE CONCUR:

MOTOIKE, J.

DELANEY, J.

# EXHIBIT G

Electronically FILED by Superior Court of California, County of Los Angeles on 11/10/2022 11:30 PM Sherri R. Carter, Executive Officer/Clerk of Court, by L. Lane,Deputy Clerk

DAMIAN D. CAPOZZOLA (SBN 186412)
ddc@ddclaw.com
TIMOTHY R. LAQUER (SBN 306917)
trl@ddclaw.com
THE LAW OFFICES OF DAMIAN D. CAPOZZOLA
633 W. Fifth Street, 26th Floor
Los Angeles, California 90071
Telephone: (213) 533-4112
Facsimile: (213) 223-2014

Attorneys for Plaintiff Gary Stiffelman

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES, WEST DISTRICT

| | |
|---|---|
| GARY STIFFELMAN, in his individual capacity, and in his capacity as trustee of the STIFFELMAN TRUST and derivatively on behalf of GLENROY COACHELLA HOLDINGS, LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>STUART RUBIN, in his individual capacity and in his capacity as trustee of the STUART & ANNETTE RUBIN FAMILY TRUST; JOSEPH RUBIN, an individual; GLENROY COACHELLA HOLDINGS, LLC, a Delaware limited liability company; and DOES 1-20 inclusive,<br><br>Defendants. | Case No. 19SMCV01908<br><br>*Assigned for all purposes to:*<br>*Hon. Elaine W. Mandel, Dept. P*<br><br>**SUPPLEMENTAL DECLARATION OF RICHARD PACHULSKI IN SUPPORT OF PLAINTIFF'S MOTION TO QUASH DEPOSITION SUBPOENA FOR PRODUCTION OF BUSINESS RECORDS TO PACHULSKI STANG ZIEHL & JONES LLP**<br><br>Hearing Date: November 18, 2022<br>Hearing Time: 9:00 a.m.<br>Hearing Dept.: P<br><br>Reservation ID: 221752527871<br><br>Action Filed: October 29, 2019<br>Trial Date: April 24, 2023 |

**DECLARATION OF RICHARD M. PACHULSKI**

I, Richard M. Pachulski, declare:

1. I have personal knowledge of each of the facts stated in this Declaration, and if called upon to do so, I could and would so competently testify.

2. I am an attorney at the law firm of Pachulski Stang Ziehl & Jones LLP ("PSZJ"). The firm is the largest legal financial restructuring boutique in the United States representing both individuals and entities involved in out-of-court workouts and in-court proceedings (chapter 11 cases). I became a member of the Bar in 1979 and co-founded what is now PSZJ in 1983 after leaving Sidley & Austin as a fourth-year associate. PSZJ presently employs eighty (80) lawyers in five (5) cities: Los Angeles, California, San Francisco, California, Houston, Texas, Wilmington, Delaware and New York City, New York.

3. While I spend the vast majority of my professional time working as a lawyer, I am also one of four members of Rubin Pachulski Properties and affiliates (collectively, "RPP"). At all times until he stepped down in May, 2020, A. Stuart Rubin ("Rubin") acted as the day-to-day managing member and CEO of RPP. In the past, in addition to Rubin, my brother, Isaac Pachulski, Rubin's brother, Nathan Rubin, and I, as RPP's members, acted as the equivalent of the RPP board.

4. PSZJ and I represent plaintiff Gary Stiffelman ("Plaintiff" or "Stiffelman"). PSZJ and I have been representing Plaintiff and have provided legal advice to Plaintiff on issues related to this pending litigation and all other matters related to the failed hotel project in Coachella, California (the "Coachella Project") since early August, 2019. I have represented Plaintiff and provided legal advice to Plaintiff regarding the Coachella Project since August 2019, before the filing of the Complaint that commenced this litigation (the "Litigation").

5. I have prepared this Declaration to respond to "*Defendant Stuart Rubin's Response in Opposition to Plaintiff's Motion to Quash Deposition Subpoena for Production of Business Records to Pachulski Stang Ziehl & Jones LLP*" ("Rubin's Response").

6. Notably, Rubin does not provide any declaration in support of the Rubin Response and, as I will demonstrate herein, many statements in the Rubin Response are factually inaccurate or

outright untrue. For instance, Rubin states that PSZJ and/or I have represented Rubin and his family in the past. At no time has PSZJ or I ever represented Rubin and/or his family as legal counsel.

**REPRESENTATION OF STIFFELMAN.**

7. Below I will discuss in more detail my prior involvement with the Coachella property which concluded in 2012 (all matters relating to the Coachella Property prior to the asset being turned over to Rubin as described herein will be referred to as the Coachella Property and after that time will be referred to as the Coachella Project). From 2012 through early August 2019 I had no knowledge of, and had no involvement in any capacity, including as a lawyer, an investor, or even a confidant to anyone, relating to the Coachella Project. In fact, at a dinner I will describe in more detail with Stiffelman in early August 2019, Stiffelman advised me, before I became his counsel, that Rubin instructed him on several occasions never to tell me anything about the Coachella Project. Additionally, counsel for the Coachella entity, who had been hired by Stiffelman and Rubin to represent the Coachella Project entity in its restructuring in mid-2019, also advised me after Stiffelman hired me and the Coachella situation was publicly disclosed, that Rubin had previously instructed him not to tell me anything about the distressed Coachella Project or any of the Coachella issues. I will discuss more regarding my involvement in the Coachella Property, below.

8. As my family and Stiffelman's wife were separately out of town in late July, 2019, Stiffelman and I arranged to have dinner on Friday, August 2, 2019. My expectation was to have a purely social dinner as I had done just with Stiffelman or including my wife and Stiffelman's wife on several occasions in the past. The dinner with Stiffelman on August 2 was quite different than I expected. Among other things, Stiffelman advised me of the following:

a. Rubin completely mismanaged the Coachella Project and the Coachella Project was barely complete and was massively over budget;

b. Rubin had failed to keep Stiffelman apprised of the events leading up to the Coachella Project construction being shut down by its lender, Calmwater;

c. The Coachella Project's lender, Calmwater, had declared a default and would no longer fund the Coachella Project;

d. Without Stiffelman's knowledge, Rubin had diverted millions of dollars of Mello-Roos monies in violation of the Calmwater loan agreement and without Stiffelman's knowledge;

e. At Rubin's request, and assurances that Rubin would pay the debt Stiffelman personally borrowed on behalf of the Coachella Project, and Rubin also causing Stiffelman to guarantee substantial Coachella debt on similar assurances that Rubin would be responsible for all the guaranteed debt, Stiffelman guaranteed upwards of $40 million which, if not resolved, would result in Stiffelman's personal bankruptcy; and

f. Rubin caused Stiffelman to invest millions of dollars in the Coachella Project, in addition to borrowing money and guaranteeing debt for the Coachella Project, based on completely false representations by Rubin.

9. At the conclusion of the dinner, Stiffelman advised me that he hoped that with the prospect of raising EB-5 Funds, that the Coachella Project issues could be remedied. During that dinner, I asked Stiffelman why he had never mentioned the issues associated with the Coachella Project to me prior to that dinner, as we had been friends for years including my representation of Stiffelman when he exited a law firm in 2014. Stiffelman responded that his best friend, Rubin, had instructed him not to do so. The dinner concluded with me advising Stiffelman that I was sad about what had happened to him in relation to the Coachella Project, and was not surprised based on my involvement with Rubin in the past when he was not subject to any guardrails. (See discussion in Paragraph 20, below.)

10. A few days after that dinner, Stiffelman contacted me to ask if I would represent him with respect to all matters associated with the Coachella Project. I agreed to do so because I was sympathetic to the damage Rubin had caused Stiffelman.

11. In late August 2019, Rubin contacted me and requested that I immediately meet with him. I agreed to do so. At that meeting, Rubin advised me he understood that I was representing Stiffelman and would I agree to also represent Rubin regarding the Coachella Project. I told Rubin that the conflicts were insurmountable and that I would be representing Stiffelman and not him. I also informed Rubin that Stiffelman was extremely upset that Rubin had not provided any key

documentation to Stiffelman, after repeated requests from Stiffelman. Rubin advised me that he believed that he had provided all documentation Stiffelman needed to evaluate the status of the Coachella Project, and that he did not see any conflict between my representing both Stiffelman and himself. I advised Rubin that Stiffelman had a very different view of Rubin's transparency regarding the Coachella Project, and that under no circumstance would I represent both Stiffelman and Rubin, and I intended to continue to represent Stiffelman.

12. On page 5, lines 1-3, the Rubin Response provides: "Pachulski has never held himself out as counsel to the Plaintiff and, in fact, has made many representations to the contrary." Of course, Rubin fails to describe who those purported representations were made to, as they never occurred. Not surprisingly, Rubin presumably failed to advise his present lawyers of the contents of Exhibit A to this Declaration. Exhibit A includes an e-mail from Stacy Harrison of Orrick, Herrington in which she states that since I have been partners with Rubin, that I have a conflict of interest that mandates "that you withdraw as counsel for Mr. Stiffelman." Nowhere in that letter is there a statement that I have ever represented Rubin or any members of his family, but rather that I was partners with Rubin. Eleven minutes after receiving that correspondence I advised Ms. Harrison by e-mail (part of Exhibit A) that I checked the ethical rules and laws and had no conflict, and I made it clear that I had no intention of withdrawing from my representation of Stiffelman on any matters. (The genesis of Stacy Harrison transmitting the e-mail to me was because as counsel to Stiffelman, and in an attempt to avoid this Litigation, I requested Rubin's personal counsel to provide to Stiffelman the relevant documents Rubin previously refused to provide Stiffelman. Exhibit A was the response to that request.)

13. At no time subsequent to October 15, 2019, through the present, have I received any further correspondence to withdraw from PSZJ's and my representation of Stiffelman, or any citation to any ethical rule or law that I was conflicted from representing Stiffelman. Rubin is well aware that I have represented Stiffelman on a variety of matters relating to the Coachella Project including a resolution of a Bank Hapoalim loan guaranteed by Stiffelman and Rubin, since Bank Hapoalim used the same form to settle its dispute with Rubin for the same amount that I resolved Bank Hapoalim's claims against Stiffelman.

14. Additionally, while the Rubin Response contends that Rubin had no knowledge of my involvement in representing Stiffelman, and that I had "made representations to the contrary", for several weeks after becoming Stiffelman's counsel I, among other things, and with Rubin's knowledge, worked on negotiating, alongside Coachella Project's counsel, a potential financial transaction as Stiffelman's counsel that would have satisfied Calmwater if it had been concluded. Additionally, prior to receiving Stacy Harrison's correspondence, I attended a meeting in early October 2019 at Calmwater's offices that included Rubin and various other parties, where it was clear I represented Stiffelman in an attempt to resolve the Coachella Project's issues with Calmwater, including Stiffelman's guarantee to Calmwater.

<u>THE COACHELLA DEBT INVESTMENT.</u>

15. An RPP-related entity raised $5 million in debt to place a lien on the Coachella Property in around 2006 or 2007. As Rubin states in the Rubin Response, he raised $100,000 for that debt transaction from Stiffelman. At that time, Stiffelman and Rubin were best friends, so I was not surprised to learn of Stiffelman's investment. In contrast, I had no discussion with Stiffelman regarding his investment in the Coachella debt transaction. While I was not an active member of the RPP-related entity that raised the $5 million, I did invest in the Coachella debt transaction.

16. In addition to the equity sponsor for the Coachella Project (unrelated to RPP or any individual affiliated with RPP) putting up $5 million to purchase the Coachella Property, and the separate $5 million debt transaction, Rubin, on behalf of the RPP-related debt entity, raised approximately $11 million of debt senior to the RPP-related entity's $5 million of debt, from Bear Stearns. The $11 million was a senior position to the RPP-related entity's $5 million lien. I had no involvement in structuring any of the debt transaction, as Rubin ran all matters relating to RPP in 2006 and 2007, and he had recruited at least two individuals with banking experience to start an RPP unit to locate and complete debt transactions. The RPP-related entity had no equity or management of the Coachella Property when the debt transaction closed. All the equity to my knowledge was held by the equity sponsor.

17. Because of the 2008 recession, the equity sponsor did not have the funds to continue to develop the Coachella Property and allowed the RPP-related entity to foreclose on the Coachella

Property's $5 million debt, leaving Bear Stearns with a senior $11 million position. After the foreclosure, Rubin feverishly tried to find other options for the Coachella Property. My impression at that time was that Rubin was trying to do what he could for the debt investors, but I later learned that he had at least one other motive. Apparently, without any RPP members' knowledge, Rubin guaranteed $4.5 million of the Bear Stearns $11 million senior debt at the closing of the debt transaction in 2006 or 2007. Because of the 2008 recession the Coachella Property was by 2010 worth less than Bear Stearns $11 million senior debt. Rubin only advised me of his guarantee in 2010, because I advised him that his efforts to do something with the Coachella Property were completely hopeless and that RPP should accordingly stop wasting its time on the Coachella Property, as there was little value at that time in undeveloped land in Coachella. Rubin then finally advised me of his guarantee. I made clear upon learning of the guarantee that RPP would not indemnify him for his guarantee. That was just another example of Rubin hiding facts from his partners.

18. Sometime in 2011 or 2012, Colony Capital purchased the Bear Stearns $11 million senior note and sought control of the Coachella Property, and further sought enforcement of Rubin's $4.5 million guarantee. Rubin again asked the RPP members to indemnify him for the $4.5 million guarantee he signed without consent. The RPP members adamantly refused. At that time the RPP members did agree that Rubin could take personal control of the Coachella Property so he could resolve his debt issues with Colony Capital, and that RPP would no longer have any involvement with the Coachella Property, and RPP never had any further involvement.

19. As stated above, between 2012 through 2019, neither RPP nor I had any knowledge of or involvement in any capacity in the Coachella Project. It was only after Rubin took ownership control of the Coachella Project that Rubin recruited Stiffelman to invest millions in the Coachella Project and guarantee approximately $40 million of debt. To my knowledge, prior to Rubin taking control of the Coachella Project, Stiffelman had only invested $100,000 in the above-referenced $5 million debt transaction. Prior to my dinner with Stiffelman in August 2019, I was unaware what, if anything, Stiffelman had invested into the Coachella Project, in addition to the $100,000 Stiffelman invested into the Coachella Property in 2006 or 2007.

20. The Rubin Response also states on page 4, lines 20-27, and continuing to page 5, line 1, as follows: "However, Plaintiff misses the mark on a very important point – Defendant does not wish to obtain records or depose Pachulski as counsel for the Plaintiff, but rather as an investor and business partner of both Plaintiff and Defendant. Pachulski has been involved as a business partner and investor for numerous real estate deals, which have also involved both Plaintiff and Defendant. In fact, Pachulski was a personal and corporate investor in the Coachella project when it was purchased as raw land years ago. He was even involved in the Project when it was discussed whether Section 8 housing should be located there. The property was eventually taken over by Rubin and Stiffelman. RP had been involved in the development for years before the Rubin/Stiffelman takeover." I respond to each of the points made in that portion of the Rubin Response as follows:

a. The Rubin Response provides that Rubin is not seeking to depose me as counsel for the Plaintiff, but rather as an investor and business partner of both Plaintiff and Defendant. In reviewing the Request for Production of Documents, virtually every request relates to the Coachella Project, and not unrelated investments which, frankly, my involvement in prior real estate investments would be irrelevant to the Litigation. With respect to RPP, there has been no new transaction by RPP since Stiffelman and Rubin became partners in the Coachella Project in 2012 (RPP stopped doing any new investments since approximately 2010). Stiffelman invested in certain RPP real estate transactions well prior to 2012, but the Rubin Response does not state why any of those business transactions could remotely be relevant to the Litigation.

b. While I have stated that I was an investor in the Coachella Project when the debt was originated over 15 years ago, I do not understand the relevance that I was an investor in the Coachella Project, as it relates to the Litigation. Interestingly enough, Rubin states that I was involved when there was a discussion of whether the Coachella Property should be used for Section 8 housing. To be clear, that was one of many ideas that Rubin came up with after the RPP-related entity foreclosed on and obtained the ownership of the Coachella Property. The Section 8 housing discussed, which never occurred, was based on placing prefabricated housing on the Coachella Property. What Rubin fails to mention was that there was never any discussion, prior to his taking

control of the Coachella Project, of construction of a ground-up hotel. Rubin never raised that possibility because he was well aware that the RPP partners would never consent to ground-up construction of any kind. The reason being that many years prior to the RPP-entity obtaining ownership of the Coachella Property, Rubin sought to build a ground-up shopping center that went over budget by millions of dollars and was ultimately taken back by the lender for that project. I was a limited partner in that distressed project with no right of oversight. As a result of that project's financial distress, Rubin was sued by the limited partners of an unrelated entity (in which I had no financial or other interest) for converting funds from the unrelated project for use in the distressed project. As a result of what had occurred because of Rubin's mismanagement of the distressed project, when RPP was formed some years later, the RPP partners made it clear to Rubin that they would never consent to any type of ground-up construction and further placed certain controls to reduce the risk of his converting or commingling funds from separate partnerships or limited liability companies. The RPP partners made it clear upon RPP's formation and after, that they wanted Rubin to focus on what he was very good at, opportunistic real estate transactions with limited future construction requirements (e.g., project remodeling), and certainly not ground-up construction.

c. Rubin further states that RPP was involved in the redevelopment of the Property for years before Rubin and Stiffelman had taken control of the Coachella Project. To be very clear, there was never any redevelopment of the Coachella Property after the RPP-related entity took control of the Coachella Property, but rather certain ideas were floated to create value for the Coachella Property, none of which came to fruition.

21. Simply put, the statement on page 4, lines 20 through 27, continuing on page 5, line 1, has no relationship to the request for production of documents (the "Request"). The Request clearly relates to PSZJ and my representation of Stiffelman with respect to the Coachella Project. The Rubin Response simply pivots away from seeking clear attorney-client related information to documents that are completely irrelevant to the Litigation, but wants to serve a new request requesting the same documents that relate to the Coachella Project, for which I only got involved in as Stiffelman's counsel.

22. What is clear, since Rubin has not subpoenaed any other RPP member or Coachella Property investor, is that Rubin's goal is to harass PSZJ and me because of his displeasure with my representing his former best friend Stiffelman.

23. On a final note, I have not received any consumer notice concerning the records being sought.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 10th day of November, 2022 at Los Angeles, California.

Richard M. Pachulski

# Exhibit "A"

**Richard Pachulski**

**From:** Richard Pachulski
**Sent:** Tuesday, October 15, 2019 12:41 PM
**To:** Harrison, Stacy
**Cc:** Molinski, William; Grossman, Marshall; Ron Bender, (rb_lnbrb.com)
**Subject:** Re: Coachella

Stacy, I have checked the ethical rules on this issue and I know of no conflict. Please cite me to a rule that says otherwise. I assure you I am well aware of my ethical and fiduciary obligations and do not intend to violate any of those, and have never had Mr. Rubin as a client.

I would also appreciate your advising Mr. Rubin that as a consequence of this baseless position my wife and I will be unable to attend his daughter's wedding.

Further, there are matters that I discuss with Mr. Rubin about RPP, and all completely unrelated to Coachella. Even though there is no ethical rule prohibiting me from discussing those matters with Mr. Rubin, if you prefer please advise if I should go through you for all such matters.

Regards,

Richard M. Pachulski

Sent from my BlackBerry - the most secure mobile device

**From:** swharrison@orrick.com

**Sent:** October 15, 2019 12:30 PM

**To:** rpachulski@pszjlaw.com

**Cc:** wmolinski@orrick.com; mgrossman@orrick.com; RB@lnbyb.com

**Subject:** Coachella



**EXHIBIT A**

Mr. Pachulski,
We represent Stuart Rubin as the Manager of Glenroy Coachella, LLC in connection with Gary Stiffelman's request to inspect the books and records of that entity. Ron Bender forwarded us your email below. Please note that we will not be responding to your email and instead will be communicating directly with Mr. Stiffelman's litigation counsel on this issue.
We understand that you have been partners with Mr. Rubin for numerous years in your RP entity and, through that relationship, you have acquired confidential and sensitive business and financial information about Mr. Rubin. As such, your representation of Mr. Stiffleman in this matter is inappropriate and, indeed, threatens to breach your fiduciary duties and other obligations you have to Mr. Rubin as his partner. This conflict of interest (and possibly others) also mandates that you withdraw as counsel for Mr. Stiffleman. In addition, you should refrain from communicating with anyone at Block, Plant & Eisner (including Scott Eisner) about Mr. Stiffleman's request for inspection of that entity's books and records or any other matter regarding the Coachella entities.
All rights reserved.

**Stacy W. Harrison**
Partner

Orrick
Los Angeles
T +1-213-612-2254
swharrison@orrick.com

orrick

> -----Original Message-----
> From: Richard Pachulski [mailto:rpachulski@pszjlaw.com]
> Sent: Tuesday, October 15, 2019 7:48 AM
> To: Ron Bender
> Cc: Scott Eisner, (seisner_bpehcpas.com)
> Subject: Re: Coachella
>
> Ron, should I assume the answer to each of the below is no? I just need to know so I can tell Gary's litigators and get out of the middle of this part of the case.
>
> Sent from my BlackBerry - the most secure mobile device
> From: rpachulski@pszjlaw.com
> Sent: October 14, 2019 10:32 AM
> To: RB@lnbyb.com
> Cc: seisner@bpehcpas.com
> Subject: Coachella
>
>
> Ron, thanks for taking the time yesterday to catch up about Coachella. As you know, I am trying to get Gary to back off of suing Stuart while we try to find a solution, but Stuart continuing to blow Gary off, is not helping. As we also discussed, I called Scott yesterday after our call to get an update about the audit. The following is a summary of my discussion with Scott and the minimum I need to try to convince Gary not to file the complaint right away (to be fully transparent I have been told by Gary and his lawyers that even if they don't file the complaint because we make a deal not to, they will send a draft to Stuart):
>
> 1. Scott said he presently has only a few items scheduled on the list previously sent to Stuart. Scott also said that there are a number of items on the list he has no access to (e.g. loan documents), accordingly please by today:
>

> A. Have Scott get me a list of the items he will be able to provide to the forensic auditor (just have him check off the list previously sent); and
>
> B. I need a date by which all items will be provided, and who will provide them if not Scott.
>
> 2. During the call I asked Scott if he had a summary of the money each partner put into the Project, and took out, since Stuart told me at Via Alloro that Scott had prepared such a summary. Scott said he prepared a summary, but he could not opine to the accuracy as the information was not reviewed by him. I asked for a copy, and he said he could not provide it to me without Stuart's or your consent. Please obtain the consent and advise me if I will get it today, or that no such consent will happen.
>
> 3. I need your approval to get full access immediately to Scott, as will the forensic auditor. Please advise if such consent will be provided today.
>
> 4. On a separate note, I need to know if I will be getting the Mello-Roos and Pace documents today. Gary has meetings with potential investors and needs the information ASAP. Gary asked for those documents from Stuart 2 weeks ago and never received them. Please advise if I can expect those documents today.
>
> Thanks in advance.
>
> Sent from my BlackBerry - the most secure mobile device
>
> ________________________________
>
> CONFIDENTIALITY
> This e-mail message and any attachments thereto is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this e-mail message, you are hereby notified that any dissemination, distribution or copying of this e-mail message, and any attachments thereto is strictly prohibited. If you have received this e-mail message in error, please immediately notify me by telephone and permanently delete the original and any copies of this email and any prints thereof.
>
> NOT INTENDED AS A SUBSTITUTE FOR A WRITING Notwithstanding the Uniform Electronic Transactions Act or the applicability of any other law of similar substance and effect, absent an express statement to the contrary hereinabove, this e-mail message, its contents, and any attachments hereto are not intended to represent an offer or acceptance to enter into a contract and are not otherwise intended to bind the sender, Pachulski Stang Ziehl & Jones LLP, any of its clients, or any other person or entity.
>
> NOTICE TO RECIPIENT | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.
>
> For more information about Orrick, please visit https://protect-us.mimecast.com/s/56x4C82EVkTENEJBFnE94t?domain=orrick.com>.
>
> In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://protect-us.mimecast.com/s/ReafC0RLK1spNpEYu20ho7?domain=orrick.com to learn about how we use this information.

---

NOTICE TO RECIPIENT | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

For more information about Orrick, please visit *http://www.orrick.com.*

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy to learn about how we use this information.

## PROOF OF SERVICE

***Gary Stiffelman. v. Stuart Rubin, et al.***
**LASC Case No. 19SMCV01908**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is 633 West Fifth Street, 26th Floor, Los Angeles, California 90071.

On November 10, 2022, I served true copies of the following document(s) on the interested parties in this action as follows described as**:**

**SUPPLEMENTAL DECLARATION OF RICHARD PACHULSKI IN SUPPORT OF PLAINTIFF'S MOTION TO QUASH DEPOSITION SUBPOENA FOR PRODUCTION OF BUSINESS RECORDS TO PACHULSKI STANG ZIEHL & JONES LLP**

**SEE ATTACHED SERVICE LIST**

**BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the document(s) to be sent from e-mail address trl@ddclaw.com to the persons at the e-mail addresses listed in the Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on November 10, 2022, at Lake Forest, California.

Timothy R. Laquer

**SERVICE LIST**
***Gary Stiffelman. v. Stuart Rubin, et al.***
**LASC Case No. 19SMCV01908**

| | |
|---|---|
| Simran S. Tiwana<br>Peckar & Abramson, P.C.<br>801 S. Figueroa Street, Suite 950<br>Los Angeles, CA 90017<br>stiwana@pecklaw.com<br><br>Adam P. Handfinger<br>Brett J. Moritz<br>Peckar & Abramson, P.C.<br>One Southeast 3rd Ave., Suite 2000<br>Miami, FL 33131<br>ahandfinger@pecklaw.com<br>bmoritz@pecklaw.com<br><br>***Via Electronic Transmittal*** | *Counsel for Defendant Stuart Rubin* |
| Denis Shmidt<br>Nabil Bisharat<br>Orsus Gate LLP<br>16 N. Marengo Ave., Suite 316<br>Pasadena, CA 91101<br>DShmidt@OrsusGate.com<br>NBisharat@OrsusGate.com<br><br>***Via Electronic Transmittal*** | *Counsel for Defendant Joseph Rubin* |
| Pachulski Stang Ziehl & Jones LLP<br>10100 Santa Monica Blvd, 13th Floor<br>Los Angeles, CA 90067<br>rpachulski@pszjlaw.com<br>jhunter@pszjlaw.com<br><br>***Via Electronic Transmittal*** | *Deponent* |

# EXHIBIT H

RA-100

# State of California
## Secretary of State

For Office Use Only

**-FILED-**

File No.: BA20220586279

Date Filed: 3/11/2022

## Resignation of Agent Upon Whom Process May Be Served

There is no fee for filing this form.

IMPORTANT – Read instructions before completing this form.

This Space For Filing Use Only

**Entity Type** (Identify the type of business from which you are resigning as agent for service of process. Check only one box.)

1. ☑ Corporation (domestic or qualified foreign)
- ☐ Registered General Partnership
- ☐ Limited Liability Company (domestic or registered foreign)
- ☐ Unincorporated Association
- ☐ Limited Partnership (domestic or registered foreign)
- ☐ Foreign Partnership (other than a foreign limited partnership)
- ☐ Limited Liability Partnership (domestic or registered foreign)
- ☐ Foreign Association

**Entity Name** (Enter the name of the entity from whom you are resigning as agent for service of process.)

2. ASR DEVELOPMENT CO.

**Entity File Number** (Enter the file number issued by the Secretary of State to the entity named in Item 2.)

3. C1335151

**Statement of Resignation** (The following statement declares intent to resign as agent for service of process and should not be altered.)

4. The undersigned hereby resigns as agent upon whom process may be served in California for the above-named entity.

**Execution**

5. I declare I am the person who executed this instrument, which execution is my act and deed.

Incorporating Services, Ltd.

Type or Print Name of declarant *(i.e., the individual or corporation resigning as agent for service of process for the above-named entity)*

Amanda Archambault

Signature of Declarant *or* Signature of Authorized Representative of Declarant *(if declarant is a corporation)*

Amanda Archambault, Assistant Secretary

Title of Office of Authorized Representative of Declarant *(if declarant is a corporation)*



B0921-2255 03/11/2022 5:00 PM Received by California Secretary of State

# EXHIBIT I

BA20230890155

B1819-5089 06/01/2023 2:10 PM Received by California Secretary of State

**STATE OF CALIFORNIA**
*Office of the Secretary of State*
**RESIGNATION OF AGENT FOR SERVICE OF PROCESS**
California Secretary of State
1500 11th Street
Sacramento, California 95814
(916) 653-3516

For Office Use Only
**-FILED-**
File No.: BA20230890155
Date Filed: 6/1/2023

Entity Details

| | |
|---|---|
| Entity Name | ASR DEVELOPMENT CO. |
| Entity No. | 1335151 |

Resigning Agent for Service of Process

| | |
|---|---|
| California Registered Corporate Agent (1505) | INCORPORATING SERVICES, LTD.<br>Registered Corporate 1505 Agent |

☒ I confirm that I am an authorized representative of the Agent for Service of Process for the above listed entity.

Statement of Resignation

The undersigned hereby resigns as agent upon whom process may be served in California for the above named entity.

Electronic Signature

☒ I declare I am the person who signed this document, which execution is my act and deed.

*Amanda Archambault, Assistant Secretary* — *06/01/2023*
Signature of Authorized Representative of Resigning Agent for Service of Process — Date

# EXHIBIT J

BA20231859012

B2315-7705 12/08/2023 12:34 PM Received by California Secretary of State

**STATE OF CALIFORNIA**
*Office of the Secretary of State*
**STATEMENT OF INFORMATION CORPORATION**
California Secretary of State
1500 11th Street
Sacramento, California 95814
(916) 653-3516

For Office Use Only
**-FILED-**
File No.: BA20231859012
Date Filed: 12/8/2023

Entity Details

| | |
|---|---|
| Corporation Name | ASR DEVELOPMENT CO. |
| Entity No. | 1335151 |
| Formed In | CALIFORNIA |

Street Address of Principal Office of Corporation

| | |
|---|---|
| Principal Address | 1801 SOUTH LA CIENEGA BLVD.<br>STE. 301<br>LOS ANGELES, CA 90035 |

Mailing Address of Corporation

| | |
|---|---|
| Mailing Address | 3500 S DUPONT HWY<br>DOVER, DE 19901 |
| Attention | |

Street Address of California Office of Corporation

| | |
|---|---|
| Street Address of California Office | 1801 SOUTH LA CIENEGA BLVD.<br>STE. 301<br>LOS ANGELES, CA 90035 |

Officers

| Officer Name | Officer Address | Position(s) |
|---|---|---|
| + STUART RUBIN | 1801 SOUTH LA CIENEGA BLVD.<br>STE. 301<br>LOS ANGELES, CA 90035 | Chief Executive Officer, Chief Financial Officer, Secretary |

Additional Officers

| Officer Name | Officer Address | Position | Stated Position |
|---|---|---|---|
| None Entered | | | |

Directors

| Director Name | Director Address |
|---|---|
| + STUART RUBIN | 1801 SOUTH LA CIENEGA BLVD.<br>STE. 301<br>LOS ANGELES, CA 90035 |

The number of vacancies on Board of Directors is: 0

Agent for Service of Process

| | |
|---|---|
| Agent Name | RUDY R PERRINO |
| Agent Address | C/0 KUTAK ROCK LLP 777 SOUTH FIGUEROA STREET<br>STE. 4550<br>LOS ANGELES, CA 90017 |

Type of Business

| | |
|---|---|
| Type of Business | REAL ESTATE |

Email Notifications

| | |
|---|---|
| Opt-in Email Notifications | No, I do NOT want to receive entity notifications via email. I prefer notifications by USPS mail. |

Labor Judgment

No Officer or Director of this Corporation has an outstanding final judgment issued by the Division of Labor Standards Enforcement or a court of law, for which no appeal therefrom is pending, for the violation of any wage order or provision of the Labor Code.

Electronic Signature

☒ By signing, I affirm that the information herein is true and correct and that I am authorized by California law to sign.

| *STUART RUBIN* | *12/08/2023* |
|---|---|
| Signature | Date |

B2315-7706 12/08/2023 12:34 PM Received by California Secretary of State