JENNER & BLOCK LLP
Michael P. McNamara (SBN 106079)
Kirsten H. Spira (SBN 119885)
2029 Century Park East, Suite 1450
Los Angeles, California 90067-2901
Telephone:  +1 213 239 6900
Facsimile:   +1 213 239 5199
Email:        mmcnamara@jenner.com
                 kspira@jenner.com

Effiong K. Dampha (SBN 323554)
515 South Flower Street, Suite 3300
Los Angeles, California 90071-2246
Telephone:  +1 213 239 5100
Email:        edampha@jenner.com

*Attorneys for Defendant Greenberg Traurig*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

| | |
|---|---|
| ABRAHAM STUART RUBIN, an individual; DUSTY BERKE, as Trustee of the STUART RUBIN CHILDREN'S TRUST; and ANNETTE AND STUART RUBIN, as Co-Trustees of the STUARTAND ANNETTE RUBIN FAMILY TRUST; ASR DEVELOPMENT CO.; FORCE RUBIN, LLC; FORCE RUBIN 2, LLC, | Case No. 2:23-cv-10152 CBM(PVC) |
| | **DEFENDANT GREENBERG TRAURIG, LLP'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS & AUTHORITIES** |
| Plaintiffs, | |
| v. | Judge:       Consuelo B. Marshall |
| GARY STIFFELMAN; RICHARD M. PACHULSKI; PACHULSKI STANG ZIEHL & JONES LLP, a California Limited Liability Partnership;· U.S. REAL ESTATE CREDIT HOLDINGS III-A, LP, an Irish Limited Partnership; CALMWATER ASSET MANAGEMENT, LLC, a Delaware Limited Liability Company; GREENBURG TRAURIG, LLP, a New York Limited Liability Partnership; DOE ATTORNEYS 1-50; DOE FIDUCIARIES 1-50; DOES 1-100, inclusive | Courtroom:  8D |
| | Date:         April 23, 2024 |
| | Time:         10:00 a.m. |
| Defendants. | |

TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on April 23, 2024, at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 8D of the United States District Court, Central District of California, located at 255 E. Temple St., Los Angeles, CA, 90012, before the Honorable Consuelo B. Marshall, Defendant Greenberg Traurig, LLP ("**GT**") will and hereby does move this Court to dismiss this action pursuant to: (1) Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted; and (2) Federal Rule of Civil Procedure 9(b), for failure to state a claim sounding in fraud with sufficient particularity.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the pleadings and records in this action, including any briefs that might be filed by Gary Stiffelman, Richard Pachulski, or Pachulski Stang Ziehl & Jones, LLP, any additional briefing on this subject, and any further evidence or arguments that may be presented to the Court at the hearing on this matter.

For the above reasons and for the reasons set forth in the accompanying Memorandum, GT respectfully requests that the Court dismiss the complaint in its entirety, with prejudice and without leave to amend.

This Motion is made following the conferences of counsel pursuant to L.R. 7-3, which took place on March 12, 2024.

Dated:  March 19, 2024             JENNER & BLOCK LLP

                                   /s/ Kirsten H. Spira
                                   Kirsten H. Spira
                                   Michael P. McNamara
                                   Effiong K. Dampha

                                   *Attorneys for Defendant Greenberg Traurig*

# **TABLE OF CONTENTS**

INTRODUCTION ....................................................................................................1

BACKGROUND ....................................................................................................3

I.   Factual Background ......................................................................................3

  A.   The Glenroy Coachella Project ............................................................3

  B.   Stiffelman's Employment with GT .......................................................4

  C.   The Stiffelman Action ..........................................................................4

  D.   The USRECH Action ............................................................................5

II.   Summary of Legal Claims Against GT .......................................................6

  A.   The RICO Claims ..................................................................................6

  B.   The State Law Claims ...........................................................................7

ARGUMENT .........................................................................................................8

I.   Rubin's Fourth Cause of Action for Violation of Section 1962(c) of
     the RICO Statute Fails on Its Face. ............................................................9

  A.   The Fourth Cause of Action Fails Because Rubin Does Not
       Allege Wrongful Conduct by GT or Facts Supporting
       *Respondeat Superior* Liability. ..........................................................9

    1.   GT Is Not Alleged to Have Participated in the
         Operation or Management of the Supposed Enterprise. ............9

    2.   GT Cannot Be Held Liable Under the Doctrine of
         *Respondeat Superior*. ...........................................................10

  B.   Separately and Independently, the Fourth Cause of Action
       Fails Because Rubin Does Not Allege Facts Establishing
       Racketeering Activity, Let Alone a Pattern of Such Activity. ...........12

  C.   Separately and Independently, the Fourth Cause of Action
       Fails Because Rubin Does Not Allege Facts Establishing an
       Enterprise. ...........................................................................................15

II.   Rubin's Claim for Conspiracy to Violate RICO Under Section
      1962(d) Fails Because Neither a Substantive RICO Violation nor
      Agreement to Commit One Is Alleged. ......................................................15

III.   Both of Rubin's RICO Claims Fail for Lack of RICO Standing. ...............16

    1.   Rubin's Alleged Damages Are Not Legally Cognizable
         and Cannot Be Maintained. .......................................................17

    2.   Rubin Has Failed to Allege Proximate Cause. .........................18

iii

IV.    The Two State Claims Asserted Against GT Should Be Dismissed.............19

CONCLUSION ........................................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anza v. Ideal Steel Supply Corp.*,
   547 U.S. 451 (2006)..................................................................................19

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)....................................................................................8

*Baker v. FirstCom Music*,
   No. 16-08931, 2018 WL 3583237 (C.D. Cal. Mar. 15, 2018) ............................9

*Baumer v. Pachl*,
   8 F.3d 1341 (9th Cir. 1993) .............................................................3, 9, 16

*Boyle v. U.S.*,
   556 U.S. 938 (2009)...................................................................................15

*Brady v. Dairy Fresh Prod. Co.*,
   974 F.2d 1149 (9th Cir. 1992) .................................................................10

*Bryant v. Mattel, Inc.*,
   573 F. Supp. 2d 1254 (C.D. Cal. 2007) .................................................12

*Canyon Cty. v. Syngenta Seeds, Inc.*,
   519 F.3d 969 (9th Cir. 2008) ...................................................................17

*Com. & Farmers Nat. Bk. V. Hetrick*,
   64 Cal. App. 3d 158 (1976) .............................................................3, 17

*Ducote Jax Holdings LLC v. Bradley*,
   335 F. App'x 392 (5th Cir. 2009)...........................................................17

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*,
   544 U.S. 280 (2005)...................................................................................18

*Fox Searchlight Pictures, Inc. v. Paladino*,
   89 Cal. App. 4th 294 (2001) ...................................................................13

*Freeney v. Bank of Am. Corp.*,
   No. 15-02376, 2015 WL 12535021 (C.D. Cal. Nov. 19, 2015).......................10

*Gomez v. Guthy-Renker, LLC,*
No. 14-01425, 2015 WL 4270042 (C.D. Cal. July 13, 2015) ..............................2

*Graf v. Peoples,*
No. 07-4731, 2008 WL 4189657 (C.D. Cal. Sept. 4, 2008) ...............................12

*H.J. Inc. v. Nw. Bell Tel. Co.,*
492 U.S. 229 (1989) ..........................................................................................14

*Halvorssen v. Simpson,*
No. 18-2683, 2019 WL 4023561 (E.D.N.Y. Aug. 26, 2019) ...............................8

*Hemi Grp., LLC v. City of New York,*
559 U.S. 1 (2010) ..............................................................................................19

*Hilton v. Apple Inc.,*
No. 13-7674, 2014 WL 12597143 (C.D. Cal. Jan. 9, 2014)....................8, 12, 13

*Howard v. Am. Online Inc.,*
208 F.3d 741 (9th Cir. 2000) .........................................................2, 14, 15, 16

*Izenberg v. ETS Servs., LLC,*
589 F. Supp. 2d 1193 (C.D. Cal. 2008) .............................................................18

*Jay E. Hayden Found. v. First Neighbor Bank, N.A.,*
610 F.3d 382 (7th Cir. 2010) ............................................................................15

*Jolly v. Eli Lilly & Co.,*
44 Cal. 3d 1103 (1988) .....................................................................................20

*In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prod. Liab. Litig.,*
497 F. Supp. 3d 552 (N.D. Cal. 2020) .........................................................12, 13

*Kwan v. SanMedica Int'l,*
854 F.3d 1088 (9th Cir. 2017) .............................................................................8

*Lee v. Hanley,*
61 Cal. 4th 1225 (2015) .....................................................................................20

*Life Bliss Found. v. Sun TV Network Ltd.,*
No. 13-00393, 2014 WL 12589662 (C.D. Cal. Dec. 23, 2014)
(Phillips, J.) ......................................................................................................19

*Limbaugh v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
784 F.2d 1086 (11th Cir. 1986) ........................................................................17

NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS & AUTHORITIES
CASE NO. 2:23-CV-10152 CBM(PVC)

*Lockton v. O'Rourke*,
    184 Cal. App. 4th 1051 (2010) ...........................................................................20

*Lyles v. State*,
    153 Cal. App. 4th 281 (2007) .............................................................................20

*McGowan v. Weinstein*,
    562 F. Supp. 3d 744 (C.D. Cal. 2021) ................................................................15

*Moore v. Kayport Package Exp., Inc.*,
    885 F.2d 531 (9th Cir. 1989) ................................................................................8

*Mostowfi v. i2 Telecom Int'l, Inc.*,
    269 F. App'x 621 (9th Cir. 2008) .........................................................................8

*Neel v. Magana, Olney, Levy, Cathcart & Gelfand*,
    6 Cal. 3d 176 (1971) ...........................................................................................20

*Odom v. Microsoft Corp.*,
    486 F.3d 541 (9th Cir. 2007) ..............................................................................15

*Oki Semiconductor Co. v. Wells Fargo Bank, NA*,
    298 F.3d 768 (9th Cir. 2002) ..................................................................2, 10, 11

*Pac. Software Consulting, Inc. v. SystemCentrix Inc.*,
    No. 10-1443, 2011 WL 13227832 (C.D. Cal. Apr. 11, 2011).....................10, 11

*Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP*,
    133 Cal. App. 4th 658 (2005) .............................................................................20

*Reves v. Ernst & Young*,
    507 U.S. 170 (1993).............................................................................................2, 9

*In re S. California Plastics, Inc.*,
    165 F.3d 1243 (9th Cir. 1999) ............................................................................18

*Salinas v. United States*,
    522 U.S. 52 (1997)...............................................................................................16

*Sanford v. MemberWorks, Inc.*,
    625 F.3d 550 (9th Cir. 2010) ..............................................................................20

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
    806 F.2d 1393 (9th Cir. 1986) ..............................................................................8

*Shaw v. Nissan N. Am., Inc.*,
   220 F. Supp. 3d 1046 (C.D. Cal. 2016) ................................................15

*Turner v. Cook*,
   362 F.3d 1219 (9th Cir. 2004) ........................................................2, 15

*United States v. Van Cauwenberghe*,
   934 F.2d 1048 (9th Cir. 1991) ..............................................................18

*Walter v. Drayson*,
   538 F.3d 1244 (9th Cir. 2008) ................................................................9

*Weiss v. Dist. Title Ins. Co.*,
   121 F.2d 900 (D.C. Cir. 1941) .............................................................17

**Statutes & Court Rules**

18 U.S.C. § 1343 ...................................................................................7, 14

18 U.S.C. § 1962 ...............................................................................*passim*

18 U.S.C. § 1964 ........................................................................................16

Cal. Civ. Proc. Code § 340.6 ..............................................................3, 20

Fed. R. Civ. P. 9(b) ....................................................................2, 8, 12

Fed. R. Civ. P. 12(b)(6) ..............................................................................8

1

2

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

In 2018, Plaintiff Stuart Rubin and his "lifelong friend," former Greenberg Traurig LLP ("**GT**") attorney, defendant Gary Stiffelman, took out a $24.4 million loan from defendant U.S. Real Estate Credit Holdings III-A, LP ("**USRECH**").[1] The purpose of the loan, which both Rubin and Stiffelman guaranteed in their personal capacity, was to develop a hotel in the Coachella Valley.  The hotel development failed and USRECH sued Stiffelman, Rubin, and Rubin's associated entities, for repayment of the loan.  GT did not represent Rubin, Stiffelman or anyone with respect to the loan obligations on which USRECH sued Rubin, Stiffelman, and others.

In his desperation to hold others responsible for his failed business investment, Rubin has cast a wide and improper net.  Rubin[2] asserts that Stiffelman provided USRECH with "confidential information" he purportedly stole from GT (arising from GT's representation of Rubin in unrelated matters) to obtain a more favorable settlement for himself. Compl. ¶ 5.  Rubin further asserts that Stiffelman's alleged communication of this information to USRECH created a RICO enterprise with the goal of "forc[ing] Rubin into insolvency, allowing USRECH, Calmwater and Pachulski to feast on the bones of his real estate assets, and allowing Stiffelman to exit quietly from the litigation."  Compl. ¶ 64.  Conspicuously absent from Rubin's complaint are any allegations of wrongdoing by moving party, GT.

The complaint asserts two RICO claims and two state law claims against GT. These claims are untenable on their face and must be dismissed because:

---

[1] The complaint alleges that defendants USRECH and Calmwater Asset Management, LLC are alter egos of each other.  Compl. ¶ 29, 55. For purposes of this brief, GT refers to the lender simply as "USRECH."

[2] Plaintiffs Stuart Rubin, his wife and Rubin's various associated entities are referred to herein simply as "**Rubin**" or "**Plaintiff**."

<u>First</u>, Rubin's RICO claim under Section 1962(c) fails because Rubin does not allege that GT itself "participate[d] in the operation or management of the [RICO] enterprise." *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993).   Rubin attempts to solve this problem by asserting that GT is *vicariously* liable for Stiffelman's alleged conduct, but as a matter of clear Ninth Circuit law, vicarious liability is not permissible under RICO unless the plaintiff can make a threshold showing that "the employer benefitted from its employee's RICO violation." *Oki Semiconductor Co. v. Wells Fargo Bank, NA*, 298 F.3d 768, 775 (9th Cir. 2002). Here, Rubin does not allege any benefit to GT from Stiffelman's conduct, nor could he.  The alleged scheme to "force Rubin into insolvency" would have been patently contrary to GT's interests since GT allegedly earned income from representing Rubin in unrelated matters.  Compl. ¶ 11.  Similarly, even if a benefit to GT were plausible (and it is not), Rubin would need to prove that in doing the acts alleged, Stiffelman acted within the course and scope of his employment, but Rubin affirmatively alleges that Stiffelman "stole" the confidential information from GT "for his own personal benefit," thus precluding any such finding.  *Id.* ¶¶ 4–5.

Rubin's RICO claim under Section 1962(c) also fails on numerous other, separate, grounds.   The alleged acts are described in purely conclusory terms (without the required "when, where, and how" allegations), which are insufficient to state a RICO claim pursuant to Rule 9(b). None of the predicate acts alleged constitutes "racketeering," and even if they did, Rubin has not alleged *a pattern* of activity.   *See, e.g.*, *Turner v. Cook*, 362 F.3d 1219, 1230 (9th Cir. 2004). Additionally, Rubin has failed to allege the existence of an "enterprise."  *See Gomez v. Guthy-Renker, LLC*, No. 14-01425, 2015 WL 4270042, at *8 (C.D. Cal. July 13, 2015).

<u>Second</u>, Rubin's RICO claim under 1962(d) fails because Rubin does not allege a substantive RICO violation under Section 1962(c).  *Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000).   Even if Rubin sufficiently alleged a

substantive RICO violation, Rubin has failed to allege facts showing that GT was even "aware of the essential nature and scope of the enterprise and intended to participate in it," which precludes finding GT part of the conspiracy. *Baumer v. Pachl*, 8 F.3d 1341, 1346 (9th Cir. 1993) (internal quotation marks omitted).

Third, Rubin lacks standing with respect to both RICO claims because he has not alleged cognizable damages. The only damages that Rubin articulates relate to his debt to USRECH and USRECH's attachment of assets. Legal attachment of property is not a cognizable injury conferring standing. *See Com. & Farmers Nat. Bk. V. Hetrick*, 64 Cal. App. 3d 158, 164 (1976). Moreover, Rubin does not explain why he should be allowed to relitigate the writ of attachment in this Action or how any such damages were caused by GT—as opposed to Rubin's failure to pay the USRECH loan.

Finally, although this Court need not retain supplemental jurisdiction over Rubin's state law breach of fiduciary duty claim and legal malpractice claims, GT requests that it do so and dismiss these claims as they are barred on their face by California's one-year statute of limitations. Cal. Civ. Proc. § 340.6.

The complaint is fatally defective and therefore GT respectfully requests that this Court dismiss all claims against GT, without leave to amend.

## BACKGROUND

### I.    Factual Background

#### A.    The Glenroy Coachella Project

Rubin and Stiffelman were lifelong friends, with Stiffelman being Rubin's neighbor and godfather to Rubin's children. Compl. ¶ 44. In approximately 2017, Rubin and Stiffelman hatched a plan to develop a hotel in the Coachella Valley. Compl. ¶ 52. The developer on the project was Glenroy Coachella LLC ("**Glenroy Coachella**"), a company that Stiffelman personally co-owned with Rubin. Compl. ¶¶ 52, 118.

In or around April 26, 2018, Rubin and Stiffelman "personally guaranteed" a $24.4 million loan from USRECH to develop the hotel project (the "**Glenroy Project**").  Compl. ¶¶ 52–55.

The project failed and by at least August 2, 2019, defendant Richard Pachulski ("**Pachulski**") began representing Stiffelman in defending a planned action by USRECH to recover on the $24.4 million loan.  Compl. ¶¶ 63–64.  Rubin and Pachulski's families have known each other since the 1960s, and Pachulski has been involved in "nearly all aspects of Rubin's affairs," including as an attorney. *Id*. ¶¶ 35–36.

### B.      Stiffelman's Employment with GT

On or around January 26, 2016, Stiffelman was hired as a GT shareholder. *See* Compl. ¶ 49, Ex. I.  Coincidentally, at the time he joined GT, GT was allegedly representing Rubin and certain associated entities and persons in three matters: (1) representation of Rubin and his wife in personal matters; (2) representation of a related entity, RPP, LLC, in construction litigation; and (3) representation of a related entity, L&R Group, in litigation.  *Id*. ¶¶ 40, 46.  These matters are hereafter referred to as the "**GT Unrelated Matters**."

Although Stiffelman was allegedly given "a detailed explanation" of the GT Unrelated Matters, Stiffelman is not alleged to have worked on those matters.  *See* Compl. Ex. I; Compl. ¶¶ 142–43.  However, Rubin alleges that while Stiffelman was employed by GT, Stiffelman represented Glenroy Coachella.  *Id.* ¶ 45(d).

Stiffelman left GT in October 2020.  Compl. ¶ 46(d).  Rubin, alleges, without any specific factual averments, that Stiffelman "stole" files from GT "up until he was dismissed by Greenberg Traurig in or about October 2020" and used that information against Rubin in the cases described below:

### C.      The Stiffelman Action

On October 28, 2019, attorneys for Rubin wrote a letter to GT complaining that Stiffelman was threatening to sue Rubin despite Rubin being a GT client.

4

Compl. Ex. X.  The next day, on October 29, 2019, Stiffelman initiated his action, *Stiffelman v. Rubin*, Case No. 19SMCV01908 ("Stiffelman Action"), in the Los Angeles Superior Court.  Compl. ¶ 8.  Rubin does not, and cannot, allege that GT represented Stiffelman in the Stiffelman Action.

Rubin alleges that Stiffelman used Rubin's confidential information "against Rubin" in the Stiffelman Action.  Compl. ¶ 51.  He claims to know this because it was "obvious," as the pleadings included non-public information "known only known to Greenberg Traurig."  Compl. ¶¶ 95–96.

### D.    The USRECH Action

On November 19, 2019, USRECH filed a complaint entitled *US Real Estate Credit Holding III-A, LP v. Glenroy Coachella, LLC*, Case No. RIC1905743 ("USRECH Action") in the Riverside Superior Court, seeking payment on the defaulted debt.  Plaintiffs Rubin, Force Rubin, LLC, Force Rubin 2, LLC, and the Stuart & Annette Rubin Family Trust as well as Stiffelman and Glenroy Coachella, among others, were named as defendants.  Compl. ¶¶ 52, 59.

In paragraph 64 of his complaint, Rubin alleges, based on information and belief, that "in 2019" Stiffelman entered into a secret common interest agreement with USRECH pursuant to which Stiffelman (and Pachulski) allegedly agreed to provide USRECH with "confidential information about Plaintiffs to which they have access solely as a result of their unique fiduciary and attorney/client relationships." Compl. ¶ 64; *see also* Compl. ¶ 5.  However, in paragraph 66 of the complaint, Rubin admits that it is "unclear" when the alleged common interest agreement was formed and concedes it might not have occurred "until February 2021," by which time Stiffelman was no longer employed by GT. Rubin thereafter alleges that confidential information stolen from GT "appeared in multiple filings against Rubin" in the USRECH Action.  Compl. ¶ 96.  This information was allegedly used to aid "USRECH's efforts to identify and freeze Rubin's and, more broadly, Plaintiffs' assets."  Compl. ¶ 85.

In or around April 22, 2021 (well after Stiffelman left GT), Stiffelman and USRECH entered into a settlement agreement. Compl. Ex. V. Pursuant to its terms, Stiffelman agreed to pay USRECH around $3.2 million in exchange for USRECH's agreement that it would stop actively prosecuting its claims against Stiffelman. Compl. Ex. V § 2.2; *see also* Compl. ¶ 5.

Also on April 22, 2021, USRECH filed a request for writ of attachment against Rubin and various entities. Request for Judicial Notice ("RJN") Ex. 1. USRECH's writ Application was opposed, including by petition by plaintiff ASR, but on or around February 24, 2022, the Court issued a writ of attachment on Rubin's assets. RJN Ex. 2. Compl. ¶ 101. On December 29, 2023, it entered final judgment against ASR on its petition. RJN Ex. 3.

In an attempt to "plead around" the obvious statute of limitations bar to his state law claims, Rubin alleges he was only made aware of the cooperation agreement between Stiffelman and USRECH in January 2023, although he elsewhere alleges that it was "obvious" that USRECH was using confidential information from GT in connection with its attempts to attach property. Compl. ¶¶ 6, 86–87.

## II. Summary of Legal Claims Against GT

### A. The RICO Claims

<u>RICO Wire Fraud Claim, Section 1962(c) (Fourth Cause of Action)</u>. The complaint asserts that GT violated Section 1962(c) by participating in a RICO enterprise through a pattern of racketing activity, including wire fraud. Compl. ¶ 140. Allegedly, co-conspirators USRECH, Stiffelman, and Pachulski formed an enterprise "designed to destroy Plaintiff's business affairs." *Id.* at 84. No action by GT is specifically alleged, but Rubin assets that "Stiffelman's actions bind the firm." *Id.* 50.

Rubin alleges that "Defendants acted in concert to utilize information gained in fiduciary and personal relationships with Plaintiffs in order to strip their interests

in jointly held business ventures . . . so that Calmwater/USRECH, aided by Pachulski, could seize Rubin's interests . . . while Stiffelman would be allowed to quietly exit the litigation." Compl. ¶¶ 142–43. It was their common goal to force Rubin into bankruptcy so they could "feast on the bones of his assets." *Id*. ¶ 85.

As a pattern of racketeering activity, Rubin alleges that Defendants engaged in "willful acts indictable as wire fraud under 18 U.S.C. § 1343, acts which thereby affect interstate commerce." Compl. ¶ 145. Despite listing 10 purported acts of "specific wire fraud and electronic communications made by Defendants in furtherance of the RICO enterprise," only four acts are alleged by Stiffelman during his employment by GT. Allegedly Stiffelman: (1) characterized Rubin as his client in an April 2016 email (Compl. ¶ 146(d), Ex. H); (2) emailed Rubin's unspecified confidential information "stolen from Greenberg Traurig" in or around October 2020 (Compl. ¶ 146(h)); (3) transmitted the files to third parties pursuant to the alleged 2019 and/or 2021 secret agreements with USRECH for use in legal filings (Compl. ¶ 146(i)); and (4) failed to disclose the alleged 2019 secret agreement with USRECH (Compl. ¶ 146(f)).

RICO Violation Under Section 1962(d) (Fifth Cause of Action). The complaint alleges that GT was involved in a conspiracy in violation of Section 1962(d) of the RICO statute. Allegedly, the defendants "violated § 1962(d) by conspiring to violate 18 U.S.C. § 1962(c)." Compl. ¶ 161.

**B.    The State Law Claims**

Breach of Fiduciary Duty (First Cause of Action). The complaint generally alleges that that Stiffelman owed a duty to "Rubin and, more broadly, to Plaintiffs to maintain confidentiality of Plaintiffs' confidential information, which Stiffelman has breached through his disclosures to Calmwater/USRECH." Compl. ¶ 116.

Legal Malpractice (Second Cause of Action). The complaint alleges that Stiffelman's "deliberate use of confidential information, and the breaches of fiduciary duty therefrom, and the betrayals wrought thereby, have been perpetrated

by . . . Greenberg Traurig, insofar as [the] firm tolerated such malfeasance and each partner acted on behalf of its firm, and with the resources of its firm, in the commission of such malfeasance." Compl. ¶ 128.

## **ARGUMENT**

GT brings this motion to dismiss under Federal Rules of Civil Procedure 12(b)(6) and 9(b). Pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[C]onclusory allegations" and "unwarranted inferences" are "insufficient to avoid dismissal" under Rule 12(b)(6). *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017) (citations omitted). Additionally, Rubin's RICO claims are subject to Rule 9(b)'s heightened pleading standard. *Mostowfi v. i2 Telecom Int'l, Inc.*, 269 F. App'x 621, 623 (9th Cir. 2008); *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1400 (9th Cir. 1986). This standard requires Rubin to "state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 541 (9th Cir. 1989). "Given the powerful incentive for plaintiffs to attempt to fit garden variety fraud claims within the standard of civil RICO due to the allure of treble damages, attorney's fees, and federal jurisdiction," courts "scrutinize civil RICO claims early in the litigation to separate the rare complaint that actually states a claim for civil RICO from that more obviously alleging common law fraud." *Halvorssen v. Simpson*, No. 18-2683, 2019 WL 4023561, at *3 (E.D.N.Y. Aug. 26, 2019) (internal quotation marks omitted); *accord Hilton v. Apple Inc.*, No. 13-7674, 2014 WL 12597143, at *7 (C.D. Cal. Jan. 9, 2014).

**I.  Rubin's Fourth Cause of Action for Violation of Section 1962(c) of the RICO Statute Fails on Its Face.**

To state a substantive RICO violation under Section 1962(c), a plaintiff must prove the defendant engaged in "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Baker v. FirstCom Music*, No. 16-08931, 2018 WL 3583237, at *17 (C.D. Cal. Mar. 15, 2018) (Phillips, J.).

As discussed below, Rubin has failed to allege *any* one of these elements.

**A.  The Fourth Cause of Action Fails Because Rubin Does Not Allege Wrongful Conduct by GT or Facts Supporting *Respondeat Superior* Liability.**

**1.  GT Is Not Alleged to Have Participated in the Operation or Management of the Supposed Enterprise.**

In *Reves v. Ernst & Young*, the Supreme Court held that Section 1962(c)'s reach is limited to persons "associated with an enterprise," who "participate in the conduct of [the enterprise's] affairs—that is, participate in the operation or management of the enterprise itself." 507 U.S. at 185.

The Ninth Circuit has applied *Reves*'s so-called "operation and management" test to hold that law firms—even if they may have done work for or been part of an associated-in-fact enterprise—cannot be held liable unless they had "some part in directing its affairs." *Walter v. Drayson,* 538 F.3d 1244, 1249 (9th Cir. 2008). Nor is it enough that the law firm "failed to stop illegal activity." *Id.* at 1248. Accordingly, the Ninth Circuit has consistently thrown out RICO claims against law firms where plaintiffs failed to meet the operation and management test. *See, e.g., Baumer*, 8 F.3d at 1344.

Here, Rubin nowhere alleges that GT itself operated or managed the alleged enterprise—i.e., the enterprise "designed to destroy Plaintiff's business affairs." Compl. ¶ 84.  There is no allegation that GT was even aware of the alleged enterprise.  Rubin's only articulated theory of liability against GT is that GT is vicariously liable as Stiffelman's employer for Stiffelman's acts purportedly made

in protecting his wholly personal interests. *See id*. ¶ 50. As discussed below, this theory fails as a matter of law.

## 2. GT Cannot Be Held Liable Under the Doctrine of *Respondeat Superior*.

Rubin's assertion that GT is vicariously liable for Stiffelman's alleged conduct fails as a matter of law because Rubin does not, and cannot, allege that Stiffelman's alleged conduct benefited GT, or that Stiffelman was acting within the course and scope of his employment in doing the acts alleged.

For RICO claims, "respondeat superior liability attaches only if an employer benefitted from its employee's RICO violation." *Oki Semiconductor Co*, 298 F.3d at 775; *Brady v. Dairy Fresh Prod. Co.*, 974 F.2d 1149, 1154 (9th Cir. 1992) ("We hold that an employer that is *benefited* by its employee or agent's violations of section 1962(c) may be held liable under the doctrines of respondeat superior and agency" (emphasis added)). A finding of "benefit to the employer is a threshold requirement that must be satisfied before examining whether the employee's conduct that underlies a RICO claim was within the scope of the employee's employment." *Freeney v. Bank of Am. Corp.*, No. 15-02376, 2015 WL 12535021, at *34 (C.D. Cal. Nov. 19, 2015) (internal quotation marks omitted). Courts in this District have routinely dismissed RICO claims against an employer, where plaintiffs have failed to make that threshold showing of employer benefit. *See, e.g.*, *Pac. Software Consulting, Inc. v. SystemCentrix Inc.*, No. 10-1443, 2011 WL 13227832, at *3 (C.D. Cal. Apr. 11, 2011) (dismissing RICO claims against company brought under a theory of *respondeat superior* because plaintiff failed to plausibly allege employer benefited from alleged illegal activity); *Freeney*, 2015 WL 12535021, at *34 (same).

Rubin alleges in conclusory fashion that Stiffelman's supposed acts of wire fraud "bind the firm," but he does not allege that GT benefited from Stiffelman's alleged RICO violations, *nor could he*. Compl. ¶ 50. The alleged purpose of the conspiracy was to "force Rubin into insolvency," allowing defendants "USRECH,

10

Calmwater and Pachulski to feast on the bones of [Rubin's] real estate assets, and allowing Stiffelman to exit quietly from the litigation."  Compl. ¶ 64.  Neither Rubin's insolvency, Stiffelman or Pachulski's personal financial fortunes, nor USRECH's recoupment of its loan, could be of any possible benefit to GT.  Indeed, because Rubin was a firm client, Rubin's insolvency—and thus his inability to pay his legal bills—would have been directly adverse to GT's interests.

And even if Rubin could overcome the threshold issue of benefit to GT, Rubin's *respondeat superior* theory still fails on the face of the complaint because Stiffelman's alleged conduct was undeniably outside the course and scope of his employment.  Conduct is within the course and scope of a person's employment only if: "(1) the conduct occurred substantially within the time and space limits authorized by the employment; (2) the employee was motivated, at least in part, by a purpose to serve the employer; and (3) the act was of a kind that the employee was hired to perform."  *Oki Semiconductor Co.*, 298 F.3d at 775–76 (citing Rest. 2d Agency § 219 (1958)); *Pac. Software Consulting*, 2011 WL 13227832, at *2.

In this case, Rubin has affirmatively alleged that Stiffelman stole confidential information from GT.  Rubin cannot plausibly argue that theft of client documents is "the kind of function [GT] hired [Stiffelman] to perform" or was "authorized by the employment."  *Oki Semiconductor Co.*, 298 F.3d at 776 (Ninth Circuit refusing to hold a bank vicariously liable for bank teller's conspiracy to violate RICO because her acts were "outside the course and scope of [her] employment because it was not the kind of function Wells Fargo hired her to perform").  Nor can he plausibly argue that Stiffelman's alleged act of leaking stolen firm documents in the "hopes to protect what remains of his assets," was motivated by a desire to serve GT or was "substantially within the time and space limits authorized by the employment."  Indeed, there are no *facts* alleged that demonstrate that Stiffelman's agreement with USRECH even occurred while he was employed by GT.[3]

---

[3] The complaint acknowledges that USRECH informed Rubin that its common

NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS & AUTHORITIES
CASE NO. 2:23-CV-10152 CBM(PVC)

Because the allegations in the complaint actually preclude any finding that GT benefited from the alleged wire fraud, or that Stiffelman was acting in the course and scope of his employment in doing the acts alleged, the fourth claim pursuant to RICO section 1962(c) must be dismissed on this ground alone.[4]

### B. Separately and Independently, the Fourth Cause of Action Fails Because Rubin Does Not Allege Facts Establishing Racketeering Activity, Let Alone a Pattern of Such Activity.

Rubin has failed to sufficiently allege any conduct that constitutes "racketeering activity" or that such alleged conduct forms a "pattern." Failing to show either racketeering activity or a pattern is fatal to a RICO claim.

First, Rubin fails to sufficiently allege any racketeering activity. Racketeering is defined by statute as certain types of criminal activity, and the predicate acts that constitute racketeering (mail fraud, wire fraud, collection of an unlawful debt, etc.) must be alleged specifically. *Graf v. Peoples*, No. 07-4731, 2008 WL 4189657, at *6 (C.D. Cal. Sept. 4, 2008). Here, the only predicate act alleged is wire fraud. *Compare* § 1961(1), *with* Compl. ¶¶ 145–46.

Wire fraud requires "(1) a scheme to defraud, (2) the use of the mails or wires to further that scheme, and (3) the specific intent to defraud." *In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prod. Liab. Litig.*, 497 F. Supp. 3d 552, 595 (N.D. Cal. 2020). Each alleged predicate act of wire fraud must set forth "the time, place, and manner of each act of fraud, [and] the role of each defendant in each scheme" under Rule 9(b)'s specificity requirement. *Bryant v. Mattel, Inc.*, 573 F. Supp. 2d 1254, 1264 (C.D. Cal. 2007) (quoting *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991)). But conduct that amounts to "garden-variety" state-law crimes does not qualify as "racketeering activity" under RICO. *Hilton v.*

---

interest agreement with Stiffelman did not arise until February 2021—four months after Stiffelman left GT's employment. Compl. ¶ 66.

[4] Additionally, in the likely event that the Court concludes that Rubin has failed to state a RICO claim against Stiffelman, it follows that he cannot have stated a RICO claim against GT.

*Apple Inc.*, 2014 WL 12597143, at *7.  Finally, where, as here, the alleged predicate acts of wire fraud are perpetrated by a co-conspirator, Rubin was required to allege that GT was "a knowing participant in a scheme to defraud," that GT "participated in the scheme with the intent to defraud," and, that the co-schemers' acts of mail and wire fraud "occurred during [GT's] participation in the scheme and were within the scope of the scheme." *In re JUUL Labs*, 497 F. Supp. 3d at 616.

None of the four supposed predicate acts by GT (through Stiffelman) constitutes wire fraud:

- Stiffelman's April 4, 2016 email describing Rubin as "our client" cannot indicate fraud because Rubin himself alleges he was GT's client, so no falsity is alleged. *See* Compl. ¶¶ 4, 7, 47.

- Stiffelman's alleged October 2020 emailing of "private and confidential files stolen from Greenberg Traurig," is, if actionable at all,[5] a breach of fiduciary duty claim, not a fraud claim.  *Hilton v. Apple*, 2014 WL 12597143, at *7.

- Stiffelman's alleged "transmittal" of the confidential information pursuant to the "Secret 2019 Agreement" and/or 2021 agreement for use "in multiple legal filings," at most constitutes a breach of duty, but not wire fraud.  *Id.*  Rubin does not even allege that the files were transmitted by wire, or that the statements used in the filings were *false*.

- Stiffelman's alleged concealment of the supposed 2019 and 2021 common interest agreements with USRECH is not wire fraud as it does not allege the use of wires.  The alleged concealment of a common interest agreement also was not fraudulent because Stiffelman could not have had a duty to disclose his litigation strategy to Rubin, who was his litigation adversary at all relevant times.  Moreover, although Rubin alleges that Stiffelman's

---

[5] The retaining and disclosure of a former client's confidences by an attorney to his own counsel following his termination, on its own, is not actionable.  *Fox Searchlight Pictures, Inc. v. Paladino*, 89 Cal. App. 4th 294, 312–13 (2001).

agreement to the alleged 2019 common interest agreement was somehow wire fraud (Compl. ¶ 145), he concedes that he does not even know whether such an agreement existed. *Id.* ¶ 66.

These allegations—if actionable at all—are no more than "garden-variety" tort claims. Moreover, all of these allegations are conclusory and fail to allege the predicate acts with the required specificity, setting forth neither the time, place, and manner of each act nor the role of each defendant. Finally, Rubin wholly fails to allege how any of the above referenced alleged wrongful acts implicates *interstate* wire communications. *See* 18 U.S.C. § 1343.

Also, for the reasons discussed in <u>Section I.A</u>, describing Rubin's inability to establish *respondeat superior* liability, Rubin has not alleged that GT was a knowing participant in a scheme to defraud or had the requisite intent. The allegations of co-conspirator wire fraud also do not meet the 9(b) pleading standard.

<u>Second</u>, even if Rubin could show that the alleged conduct constituted racketeering activity, he failed to allege a pattern. The "pattern" element requires showing two or more predicate acts of racketeering that are (1) sufficiently related and (2) amount to or pose a threat of continued criminal activity. *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989). Even if the Court found that the acts alleged are related (which is highly unlikely), there is no threat of continued criminal activity. A plaintiff must plead and prove either "a series of related predicates extending over a substantial period of time [i.e., closed-ended continuity] . . . or past conduct that by its nature projects into the future with a threat of repetition [i.e., open-ended continuity]." *Id.* 242 (brackets in original); *Howard*, 208 F.3d at 750. Rubin fails to allege facts that show closed- or open-ended pattern of racketeering activity because Rubin's allegations concern singular plan and purpose: to hold Rubin liable for the USRECH loan. The only victim is Rubin, and the only apparent goal is marshaling Rubin's assets to repay the loan. Once the loan is paid or judgment entered against Rubin—the terms of the alleged agreements are fulfilled

14

and the alleged enterprise ceases. *Turner v. Cook*, 362 F.3d at 1230 (no continuity, and thus no pattern of racketeering activity, where alleged mail fraud would end once outstanding tort judgment against plaintiff was collected); *see also* Compl. ¶¶ 79–82, Ex. V.  Additionally, Stiffelman's (and hence, GT's) role in the alleged enterprise was finite and non-patterned, which "cannot possibly be part of a pattern of racketeering activity." *See McGowan v. Weinstein*, 562 F. Supp. 3d 744, 754 (C.D. Cal. 2021).

### C.  Separately and Independently, the Fourth Cause of Action Fails Because Rubin Does Not Allege Facts Establishing an Enterprise.

A RICO "enterprise" can include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  *Odom v. Microsoft Corp.*, 486 F.3d 541, 548 (9th Cir. 2007).  However, even "an association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. U.S.*, 556 U.S. 938, 946 (2009).  Here, Rubin fails to even allege basic facts showing that the "enterprise" had any structure, organization, or leadership.  *Jay E. Hayden Found. v. First Neighbor Bank, N.A.,* 610 F.3d 382, 388 (7th Cir. 2010) (dismissing RICO claim where the plaintiff alleged "*just* a conspiracy, between a judge-executor, lawyers, and a bank and its officers, rather than anything that looks even remotely like an enterprise, however informal; for there was no structure, organization, or leadership").

### II.  Rubin's Claim for Conspiracy to Violate RICO Under Section 1962(d) Fails Because Neither a Substantive RICO Violation nor Agreement to Commit One Is Alleged.

As an initial matter, in this Circuit, "the failure to adequately plead a substantive violation of RICO precludes a claim for conspiracy."  *Howard*, 208 F.3d at 751; *see also Shaw v. Nissan N. Am., Inc.*, 220 F. Supp. 3d 1046, 1058 (C.D. Cal. 2016).  As discussed above, as Rubin has failed to adequately plead a substantive

RICO violation under Section 1962(c), his RICO conspiracy claim under Section 1962(d) also fails.

Even assuming Rubin alleged a substantial RICO violation under Section 1962(c), Rubin must then allege facts showing that GT "adopt[ed] the goal of furthering or facilitating the criminal endeavor," *Salinas v. United States*, 522 U.S. 52, 65 (1997), or "agreed to commit, or participated in, a violation of two predicate offenses," *Howard*, 208 F.3d at 751. Either way, Rubin must allege facts showing that GT was "aware of the essential nature and scope of the enterprise and intended to participate in it." *Baumer*, 8 F.3d at 1346 (internal quotation marks omitted).  For the reasons set for in <u>Section I.A.</u>, Rubin fails that showing.

Rubin has not alleged any facts showing that GT was even aware of any aspect of the alleged enterprise.  At best, Rubin alleges that his counsel informed GT of the Stiffelman Action.  Compl. Ex. X.  But knowledge of the Stiffelman Action would not put GT on notice of the alleged enterprise with the goal of "forc[ing] Rubin into insolvency." Compl. ¶ 64.  Indeed, if Rubin is a GT client—as Rubin alleges he still is—then it would not make sense for GT to seek his insolvency.

Moreover, Rubin's allegation that Stiffelman stole Rubin's confidential information from GT (without any suggestion that GT encouraged or participated in such alleged theft), cannot support a finding that GT "agreed to commit, or participated in, a violation of two predicate offenses." Rubin has failed to adequately allege that GT acted in the capacity of even an aider or abettor yet alone a conspirator.

## III.   Both of Rubin's RICO Claims Fail for Lack of RICO Standing.

Section 1964(c) allows "[a]ny person injured in his business or property by reason of a violation of [Section 1962]" to sue in federal court.  *See* 18 U.S.C. § 1964(c). "To have standing under § 1964(c), a civil RICO plaintiff must show: (1) that his alleged harm qualifies as injury to his business or property; and (2) that his harm was 'by reason of' the RICO violation, which requires the plaintiff to establish

proximate causation." *Canyon Cty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 972 (9th Cir. 2008). [6]

### 1.   Rubin's Alleged Damages Are Not Legally Cognizable and Cannot Be Maintained.

Apparently in support of his claim for damages, Rubin asserts that his property is "subject to writs of attachment" and that defendants were "engaging in efforts"—via the USRECH and Stiffelman Actions—to "take away Plaintiffs interests in commonly held investments." Compl. ¶¶ 142–43.

First, property subject to a writ of attachment cannot form the basis for Rubin's damages. *See Com. & Farmers Nat. Bk.*, 64 Cal. App. 3d at 164 (holding that parties could not dispute property held by writ of attachment in ancillary dispute so long as attachment was proper and both parties were subject to attachment). Courts have held that where a plaintiff is already obligated to pay a debt, payment of that debt is not a cognizable injury. *See also Limbaugh v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 784 F.2d 1086, 1088 n.3 (11th Cir. 1986) ("[P]ayment of a debt which one is already obligated to pay is not a legal injury in any sense."); *Weiss v. Dist. Title Ins. Co.*, 121 F.2d 900, 904 (D.C. Cir. 1941) (debt payment not cognizable injury where "funds were applied for plaintiff's benefit"); *Ducote Jax Holdings LLC v. Bradley*, 335 F. App'x 392, 401 (5th Cir. 2009) (tax assessments were not cognizable injury where plaintiff could not show how attorney advice could have allowed plaintiff to avoid paying taxes).

Further, Rubin still has title to his property until an order is issued in the USRECH Action. "A levy of attachment does not change the title to the attached property, even though as in the case of personalty, it may be taken from the possession and control of the defendant . . . the attaching creditor acquires no title to the property by means of his attachment." *Com. & Farmers Nat. Bk.*, 64 Cal. App.

---

[6] In a RICO action, the plaintiff must satisfy both the statutory standing and the comparatively less rigorous Article III standing requirements. *See Canyon Cty.*, 519 F.3d at 972 n.7.

3d at 164.; *see also In re S. California Plastics, Inc.*, 165 F.3d 1243, 1246 (9th Cir. 1999) ("[T]he attachment creditor has no right to proceed against the property until after the creditor obtains a judgment."). The fact that Rubin's interests may end up being sold to USRECH or others sometime in the future to pay down the debt is irrelevant. Prospective injuries such as those alleged are not sufficiently concrete for RICO purposes. *See e.g.*, *Izenberg v. ETS Servs., LLC*, 589 F. Supp. 2d 1193, 1204 (C.D. Cal. 2008) ("Plaintiffs' remaining allegations involve prospective injuries—i.e., the possibility that they may, in the future, lose their property, have to pay more money than is owed on their mortgage, or incur additional attorneys' fees. Prospective injuries likewise do not satisfy RICO's concrete financial injury requirement.").

Second, to the extent Rubin seeks to recover for property seized upon a writ of attachment in the USRECH Action, the orders are res judicata. *United States v. Van Cauwenberghe*, 934 F.2d 1048, 1064 (9th Cir. 1991) (affirming denial of defendant's motion for return of property in criminal case because property was properly ordered to be paid to plaintiff in civil case pursuant to a writ of attachment). To the extent that Rubin seeks to relitigate his company ASR's superior right to property, *see* Compl. ¶ 93, the USRECH Court has already issued Judgment denying that claim on December 29, 2023, RJN Ex. 3. *See also Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284 (2005) (the *Rooker-Feldman* doctrine prevents the lower federal courts from exercising subject matter jurisdiction over cases "brought by state-court losers complaining of injuries caused by state-court judgments").

### 2. Rubin Has Failed to Allege Proximate Cause.

Rubin has not alleged how his supposed damages were caused by the alleged theft and misuse of Rubin's confidential information—as opposed to his own failure to pay back the USRECH loan or disclose his assets. In essence, Rubin's claim is that Stiffelman provided USRECH with information that prevented Rubin from

18

hiding assets that were pledged to secure a debt he owes. Proximate causation demands "a 'direct causal connection' between the predicate wrong and the harm." *Life Bliss Found. v. Sun TV Network Ltd.*, No. 13-00393, 2014 WL 12589662, at *3 (C.D. Cal. Dec. 23, 2014) (Phillips, J.) (quoting *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 17–18 (2010)). "When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation *led directly* to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006) (emphasis added). "A link that is too remote, purely contingent, or indirect is insufficient." *Hemi Grp.*, 559 U.S. at 9.

Rubin has not alleged any facts explaining how disclosure of the alleged confidential information affected Rubin's debt liability under his guaranty agreement. Rubin has not specifically alleged what confidential information was used in public documents and how the use of that information harmed Rubin. Rubin has not alleged why Stiffelman and Pachulski would not have access to Rubin's alleged confidential information as Rubin's business partners (rather than as his lawyers) or why Rubin would not have been required to disclose the alleged confidential information anyway, in connection with discovery in his litigation with USRECH and Stiffelman, in the Glenroy Coachella bankruptcy proceedings, or in the Glenroy Coachella bankruptcy trustee's case against Rubin (*Marshack v. ASR Development Co*, Case No. 23-01080 (C.D. Cal. Feb. 15, 2023)) in which the trustee alleged that Glenroy Coachella initiated fraudulent transfers to Rubin's company ASR of $4.25 million and to Rubin of $1.8 million.

## IV.     The Two State Claims Asserted Against GT Should Be Dismissed.

Since the RICO claims fail, there is no federal question jurisdiction, but GT respectfully requests that this Court nevertheless exercise supplemental jurisdiction to dismiss the plainly time-barred state claims.[7]

---

[7] While, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining

Rubin's legal malpractice and breach of fiduciary duty claims are subject to the one-year statute of limitations set forth in section 340.6 of the California Code of Civil Procedure.  *Lee v. Hanley*, 61 Cal. 4th 1225, 1236–37 (2015).  The one-year limitations period begins to run once an aggrieved client knows, or should have known, the material facts constituting the attorney's wrongful act or omission, not when the client realizes those facts state a claim.  *Neel v. Magana, Olney, Levy, Cathcart & Gelfand*, 6 Cal. 3d 176, 183–94 (1971); *see also Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP*, 133 Cal. App. 4th 658, 685 (2005) (one-year limitations period triggered by discovery of facts, not discovery that any particular legal theory applies to the facts).  Under California law, "actual knowledge" is not required for a cause of action to accrue; instead, "the statute of limitations begins to run when the plaintiff suspects or *should suspect* that her injury was caused by wrongdoing."  *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1110 (1988) (emphasis added); *Lyles v. State,* 153 Cal. App. 4th 281, 286–87 (2007).

Here, Rubin has not alleged that any GT attorney, other than Stiffelman, did anything wrong or that GT performed any work on the "same specific subject" as the matter at issue in this case after his departure in October 2020.  Thus, on the face of the complaint, the statute of limitations began to run, at the latest, in October 2020 when Stiffelman left GT, and expired in October 2021.  *Lockton v. O'Rourke*, 184 Cal. App. 4th 1051, 1063 (2010) (the limitations period is tolled only while the defendant attorney continues to represent the plaintiff on the "same specific subject matter" in which the alleged wrongful act occurred).

In an effort to avoid the time bar, the complaint asserts that Rubin was not on notice of his claims until January 2023. Compl. ¶¶ 86–87.  But the affirmative allegations in the complaint establish that the latest Rubin could or should have

---

to exercise jurisdiction over the remaining state-law claims," in this case be more efficient for the Court to dismiss the state claims as they are plainly time-barred. *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010) (alteration in original) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).

discovered the allegedly improper use of GT's confidential information was in connection with USRECH's writ of attachment.

USRECH sought its writ of attachment on April 22, 2021 and, after motion practice, that writ was granted on February 24, 2022.  Rubin alleges it was "obvious" that certain information used by USRECH to secure an attachment "could only have been obtained through [Pachulski and Stiffelman's] improper disclosures." Compl. ¶¶ 92, 95; *see also id.* ¶ 96 ("confidential information . . . appeared in multiple filings against Rubin and his interest, including false allegations that were non-public and known only to Greenberg Traurig and to Stiffelman and Pachulski, in their professional capacities").

Therefore, the complaint itself establishes that Rubin had notice of the alleged leak of his confidential information by February 24, 2022 at the very latest, in which case the limitations period expired on February 24, 2023. The complaint in this Action was not filed until December 1, 2023 and therefore is untimely on its face.

## CONCLUSION

For the foregoing reasons, GT respectfully requests that this Court grant its Motion and dismiss Plaintiffs' complaint in its entirety, without leave to amend.

Dated:  March 19, 2024

JENNER & BLOCK LLP

/s/ Kirsten H. Spira
Kirsten H. Spira
Michael P. McNamara
Effiong K. Dampha

*Attorneys for Defendant Greenberg Traurig*

21

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned counsel of record for Defendant Greenberg Traurig, LLP certifies this brief contains 6869 words, which complies with the word limit of L.R. 11-6.1.

Dated:  March 19, 2024

JENNER & BLOCK LLP

/s/ Kirsten H. Spira

Kirsten H. Spira
Michael P. McNamara
Effiong K. Dampha

*Attorneys for Defendant Greenberg Traurig*