Rudy R. Perrino (SBN: 190672)
**KUTAK ROCK LLP**
777 South Figueroa Street, Suite 4550
Los Angeles, California 90017-5800
Telephone: (213) 312-4000
Facsimile: (213) 312-4001
E-Mail: rudy.perrino@kutakrock.com

Attorneys for Plaintiffs,
ABRAHAM STUART RUBIN, DUSTY BERKE as Trustee of the STUART RUBIN CHILDREN'S TRUST, ANNETTE AND STUART RUBIN, as Co-Trustees of the STUART AND ANNETTE RUBIN FAMILY TRUST, ASR DEVELOPMENT CO., FORCE RUBIN, LLC AND FORCE RUBIN 2, LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION**

ABRAHAM STUART RUBIN, an individual; DUSTY BERKE, as Trustee of the STUART RUBIN CHILDREN'S TRUST; and ANNETTE AND STUART RUBIN, as Co-Trustees of the STUART AND ANNETTE RUBIN FAMILY TRUST; ASR DEVELOPMENT CO.; FORCE RUBIN, LLC; FORCE RUBIN 2, LLC,

Plaintiffs,

v.

GARY STIFFELMAN; RICHARD M. PACHULSKI; PACHULSKI STANG ZIEHL & JONES LLP, a California Limited Liability Partnership; U.S. REAL ESTATE CREDIT HOLDINGS III-A, LP, an Irish Limited Partnership, et al.

Defendants.

Case No. 2:23-cv-10152-CBM (PVCx)

Hon. Consuelo B. Marshall
Courtroom 8D

**PLAINTIFFS' OPPOSITION TO DEFENDANT GREENBERG TRAURIG, LLP'S MOTION TO DISMISS**

**Date: April 23, 2024**
**Time: 10:00 a.m.**
**Crtrm: 8D**

Complaint Filed December 1, 2023

# TABLE OF CONTENTS


I. INTRODUCTION ........ 1

A. THE COMPLAINT ........ 1

1. The RICO Enterprise ........ 1

2. The Predicate Acts and The Falsity ........ 3

3. The Timeline of Greenberg Traurig's Involvement Relevant to the Motion 5

B. GT'S MEET AND CONFER EFFORTS ........ 5

II. LAW AND ARGUMENT ........ 6

A. STANDARDS FOR MOTION TO DISMISS ........ 6

B. GT FAILED TO MEET AND CONFER IN COMPLIANCE WITH LOCAL RULES ........ 7

C. RICO LIABILITY IN THE CIVIL CONTEXT ........ 9

D. PLAINTIFFS CLEARLY DESCRIBE A RICO ENTERPRISE ........ 10

E. GT'S FRAUDULENT INTENT CAN BE PROVEN WITH CIRCUMSTANTIAL EVIDENCE ........ 13

F. AN AGENT'S FRAUD BINDS THE PRINCIPAL ........ 13

G. THE TIMELINE OF GREENBERG TRAURIG'S INVOLVEMENT SUPPORTS THE INFERENCE THAT GREENBERG TRAURIG PARTICIPATED IN AND BENEFITTED FROM THE FRAUDULENT ENTERPRISE ........ 15

H. GT'S ARGUMENT THAT PLAINTIFFS' DAMAGES ARE NOT LEGALLY COGNIZABLE IS A RED HERRING ........ 16

I. THE COURT CAN AND SHOULD EXERCISE SUPPLEMENTAL JURISDICTION OVER THE STATE LAW CLAIMS AGAINST GT WHICH ARE NOT TIME BARRED. ........ 18

J. THE STATE LAW CLAIMS ARE NOT TIME BARRED ........ 20

K. LEAVE TO AMEND SHOULD BE GIVEN ........ 21

III. CONCLUSION ........ 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Agric. Rsch. & Tech. Grp., Inc.*,
916 F.2d 528 (9th Cir. 1990) .......... 17

*Am. Soc. of Mech. Engineers, Inc. v. Hydrolevel Corp.*,
456 U.S. 556 (1982) .......... 18

*Anza v. Ideal Steel Supply Corp.*,
547 U.S. 451 (2006) .......... 13

*Apr. Enterprises, Inc. v. KTTV*,
147 Cal. App. 3d 805 (Ct. App. 1983) .......... 24

*Arbaugh v. Y&H Corp.*,
546 U.S. 500 (2006) .......... 23

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 10

*Austin v. Metro Development Group, LLC*,
571 F.Supp.3d 1279 (M.D. Fla. 2021) .......... 23

*Baker v. Beech Aircraft Corp.*
39 Cal.App.3d 315 (1974) .......... 25

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 10

*Carnegie-Mellon Univ. v. Cohill*,
484 U.S. 343 (1988) .......... 24

*Chaset v. Fleer/Skybox Int'l, LP*,
300 F.3d 1083 (9th Cir. 2002) .......... 13, 14

*Chevron Corp. v. Donziger, et al.*,
974 F.Supp.2d 362 (U.S. Dist. Ct., S.D. New York 2014) .......... 13

*City and Cty. of San Francisco v. Cobra Sols. Inc.*,
38 Cal. 4th 839 (2006) .......... 19

*Cornerstone Consultants, Inc. v. Production Input Solutions, L.L.C.*,
789 F.Supp.2d 1029 (N.D. Iowa 2011) ........ 23

*Deutsch v. Flannery*,
823 F.2d 1361 (9th Cir. 1987) ........ 11

*Est. of Migliaccio v. Midland Nat'l. Life Ins. Co.*,
436 F. Supp. 2d 1095 (C.D. Cal. 2006) ........ 11

*Fednav Ltd. v. Sterling Int'l*,
572 F. Supp. 1268 (N.D. Cal. 1983) ........ 11

*Fireman's Fund Ins. Co. v. Stites*,
258 F.3d 1016 (9th Cir. 2001) ........ 14

*Flatt v. Sup. Ct.*,
9 Cal. 4th 275 (1994) ........ 19

*Fox v. Ethicon Endo-Surgery, Inc.*,
35 Cal. 4th 797 (2005) ........ 24

*Friedman v. 24 Hour Fitness USA, Inc.*,
580 F. Supp. 2d 985 (C.D. Cal. 2008) ........ 14, 15

*Garlock Sealing Techs., LLC v. NAK Sealing Techs. Corp.*,
148 Cal.App.4th 937 (2007) ........ 25

*Gleason v. Seaboard Air Line Ry. Co.*,
278 U.S. 349 (1929) ........ 18

*Gottreich v. San Francisco Inv. Corp.*,
552 F.2d 866 (9th Cir. 1977) ........ 11

*Gutierrez v. Mofid*,
39 Cal. 3d 892 (1985) ........ 24

*in Mollica v. Cnty. of Sacramento*,
No. 2:19-CV-02017-KJM-DB, 2022 WL 15053335 (E.D. Cal. Oct. 26, 2022) ........ 12

*Jenkins v. McKeithen*,
395 U.S. 411 (1969) ........ 11

*In re Jordan*,
7 Cal. 3d 930 (1972) ........ 19

*Landefeld v. Marion General Hosp., Inc.*,
994 F.2d 1178 (6th Cir. 1993) .................................................... 22

*Lightner Mining Co. v. Lane*,
161 Cal. 689 (1911) .................................................... 25

*Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*,
431 F.3d 353 (9th Cir. 2005) .................................................... 13

*Marshack v. ASR Development Co.*,
Case No. 23-01080 (C.D. Cal. Feb. 15, 2023) .................................................... 22

*Morongo Band of Mission Indians v. Rose*,
893 F.2d 1074 (9th Cir. 1990) .................................................... 26

*Moss v. U.S. Secret Serv.*,
572 F.3d 962 (9th Cir. 2009) .................................................... 26

*State of Cal. ex rel. Mueller v. Walgreen Corp.*,
175 F.R.D. 631 (N.D. Cal. 1997) .................................................... 11

*Nat'l Org. for Women, Inc. v. Scheidler*,
510 U.S. 249 (1994) .................................................... 14

*Norgart v. Upjohn Co.*,
21 Cal. 4th 383, 981 P.2d 79 (1999) .................................................... 24

*Odom v. Microsoft Corp.*,
486 F.3d 541 (9th Cir. 2007) .................................................... 13, 14, 15, 17

*Orton v. Johnny's Lunch Franchise, LLC*,
668 F.3d 843 (6th Cir. 2012) .................................................... 22

*Owens v. Kaiser Found. Health Plan, Inc.*,
244 F.3d 708 (9th Cir. 2001) .................................................... 26

*Pacific Receivables, LLC v. T-3 Green House Supply, LLC*,
No. 223CV01081KJMDMC, 2023 WL 4534146 (E.D. Cal. July 13, 2023) .................................................... 12

*Parity Networks, LLC v. ZyXEL Commc'ns, Inc.*,
No. SACV20697JVSKESX, 2021 WL 545282 (C.D. Cal. Jan. 26, 2021) .................................................... 12

*Pashley v. Pacific Elec. Co.*,
25 Cal.2d 226 (1944) .......... 25

*People v. Ames*,
61 Cal. App. 2d 522, 143 P.2d 92 (1943) .......... 17

*Polich v. Burlington N., Inc.*,
942 F.2d 1467 (9th Cir. 1991) .......... 26

*Postal Instant Press, Inc. v. Kaswa Corp.*
(4th Dist. 2008) 162 Cal.App.4th 1510 .......... 21

*Poulos v. Caesars World, Inc.*,
379 F.3d 654 (9th Cir. 2004) .......... 17

*Quinn v. Ocwen Federal Bank FSB*,
470 F.3d 1240 (8th Cir. 2006) .......... 22

*Regents of University of California v. Superior Court*
20 Cal.4th 509 (1999) .......... 25

*Rezner v. Bayerische Hypo-Und Vereinsbank AG*,
630 F.3d 866 (9th Cir. 2010) .......... 17

*River Colony Ests. Gen. P'ship v. Bayview Fin. Trading Grp., Inc.*,
287 F. Supp. 2d 1213 (S.D. Cal. 2003) .......... 18

*Riverisland Cold Storage, Inc. v. Fresno-Madera Prod. Credit Assn.*,
55 Cal. 4th 1169 (2013) .......... 17

*Sedima, S.P.R.L. v. Imrex Co.*,
473 U.S. 479, 105 S. Ct. 3275, 87 L. Ed. 2d 346 (1985) .......... 13

*Snapp & Associates Ins. Services, Inc. v. Malcolm Bruce Burlingame Robertson*
(2002) 96 Cal.App.4th 884 .......... 25

*Sosa v. DIRECTV, Inc.*,
437 F.3d 923 (9th Cir. 2006) .......... 13

*United States v. Elliott*,
571 F.2d 880 (5th Cir. 1978) .......... 14, 17

*Whiting Fin. Co. v. Hopkins*,
*115* Cal. App. 756, 2 P.2d 461 (Cal. Ct. App. 1931) .......... 17

*Wutchumna Water Co. v Bailey*,
216 Cal. 564 (1932) .......... 20

*Yegiazaryan v. Smagin*,
599 U.S. 533 (2023) .......... 13

**Statutes**

28 U.S.C.A. § 1367, subd. (a) .......... 22

28 U.S.C.A. § 1367, subd.(c) .......... 23

18 U.S.C. § 1961(4) .......... 14

Cal. Bus. & Prof. Code § 6068(e)(1) .......... 19

**Other Authorities**

Fed. Rules Civ.Proc., Rule 8(a)(2) .......... 10

Fed. Rules Civ.Proc., Rule 9(b) .......... 10

Fed. Rules Civ.Proc., Rule 12(b)(6) .......... 10

Fed. Rules Civ.Proc., Rule 15(a)(2) .......... 26

United States Constitution Article III .......... 22

# I. INTRODUCTION

In its Motion to Dismiss ("Motion"), Defendant Greenberg Traurig ("GT") throws a lot of mud at the wall, hoping that something will stick. Unfortunately, GT gets itself dirty by making supported and unsupportable arguments throughout its Motion. In short, GT's Motion fails to show that Plaintiffs have not articulated cognizable claims under the RICO statutes against it. Moreover, contrary to GT's wishful thinking, the statute of limitations on the state law claims against it have not run and, in any event, those claims are so interrelated with the still-pending claims against the other defendants as to support this Court's exercise of supplemental jurisdiction over them, even if the Court were to dismiss the federal claims. Plaintiffs suspect that, based on the arguments below, the Court will not dismiss those claims.

Plaintiffs respectfully request the Court deny GT's Motion to Dismiss in its entirety. Alternatively, to the extent the Court finds certain elements of the RICO claims lacking, this Opposition to the Motion demonstrates that additional facts can be alleged to fill any gaps. Accordingly, leave to amend should be granted.

## A. The Complaint

The operative Complaint in this matter (Doc. No. 2) is forty-seven pages long. Rather than reiterate everything that is alleged in the Complaint, Plaintiffs provide the following portions of the Complaint as they pertain to arguments made by GT in its Motion.

### 1. The RICO Enterprise

Factual allegations describing the RICO Enterprise can be found throughout the Complaint. However, to respond to GT's argument in its Motion that Plaintiffs fail to allege the elements of a RICO Enterprise ("a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose. . . ." Motion, pp. 15:8-21, citation omitted), the Complaint contains the following relevant allegations:

- The Purpose: "Stiffelman, Pachulia, Calmwater/USRECH and

others have conspired to participate in a broad scheme that involves meticulous cooperation to capture Rubin's and, more broadly, Plaintiffs' cash flow so that Pachulski and Calmwater/USRECH can feast on the bones of Plaintiffs' real estate assets, while Stiffelman is able to keep his assets in exchange for his complicit malfeasance." Complaint, ¶ 14.

- Relationships: "Even worse, unbeknownst to Plaintiffs until very recently through discovery propounded on some of the defendants, in 2019 and again in 2021 both Stiffelman and Pachulski assert they entered into clandestine agreements with Defendants USRECH and/or Calmwater, and others, to disclose personal and privileged information belonging to Plaintiffs, in violation of fiduciary and ethical duties owed by both of them, and further utilized their partnership relations with Plaintiffs and various Rubin Entities to impair the assets of those entities in violation of fiduciary duties, all in order to facilitate USRECH/Calmwater's ability to obtain a pre-verdict writ of attachment essentially seizing control of all cash flow, distributions, and sale proceeds from various revenue sources belonging to Plaintiffs." Complaint, ¶ 5.

- Longevity: "Indeed, the extent of the abuses by the Defendants wasn't fully understood until Pachulski's law firm disclosed, on July 12, 2023, the purported existence of one such secret agreement with Defendant USRECH and/or Calmwater, allegedly entered into at a time when Rubin and, more broadly, Plaintiffs continued to share private and privileged information with both Stiffelman and Pachulski based on their fiduciary and/or attorney/client relationships and the belief, developed over years, that Stiffelman

and Pachulski not only could be trusted, but owed ethical and fiduciary obligations to maintain confidentiality of certain information."

2. The Predicate Acts and The Falsity

a. The Predicate Acts in the Complaint

Contrary to GT's misrepresentation, examples of wire fraud can be found throughout the Complaint:

- On October 7, 2019, Richard Pachulski e-mailed Stuart Rubin and Gary Stiffelman, among others, stating that his "primary role" was to "get Gary off his guarantee" implying that he was not acting adversely to Stuart Rubin or the Plaintiffs. Complaint, ¶ 68 & Exhibit Q. This representation was false in that Pachulski and his law firm have since admitted that Pachulski was acting adversely to Stuart Rubin as early as August 2, 2019. Complaint, ¶ 64. This statement was false when made and Pachulski had the specific intent to defraud with this e-mail so that he and Gary Stiffelman could continue to gather confidential information about Stuart Rubin and Plaintiffs. Rubin Decl., ¶ 3. It can be inferred from the Complaint that Pachulski was acting as Stiffelman's agent and as an agent for the RICO enterprise when this statement was made.
- On October 14, 2019, Richard Pachulski e-mailed Ron Bender of Levene Neale Bender Yoo & Golubchik, LLP stating that he was "trying to get [Stiffelman] to back off of suing [Stuart Rubin]" and identifying several accounting records in the files of Scott Eisner, an accountant used by Plaintiffs, to "try to convince Gary not to file the complaint right away. . . ." Complaint ¶ 67 & Exhibit R. This statement was false when made and Pachulski had the specific intent to defraud with this e-mail so that he and Gary Stiffelman could

continue to gather confidential information about Stuart Rubin and Plaintiffs from Scott Eisner. Rubin Decl., ¶ 4. Pachulski was acting as Stiffelman's agent and as an agent for the RICO enterprise when this statement was made.

- On October 15, 2019, Richard Pachulski e-mailed Stacy Harrison of the Orrick law firm stating that he has "never had Mr. Rubin as a client." Complaint, ¶ 67 & Exhibit R. This statement is false as a matter of law and Pachulski had the specific intent to defraud with this e-mail so that he and Gary Stiffelman could continue to gather confidential information about Stuart Rubin and Plaintiffs from Scott Eisner. Rubin Decl., ¶ 5. Pachulski was acting as Stiffelman's agent and as an agent for the RICO enterprise when this statement was made.

b. Additional Predicate Acts

It can be inferred from the Complaint that additional predicate acts in the form of legal filings and other communications related to the ongoing litigation on behalf of Stiffelman exist. See Complaint, ¶ 64. The fraudulent intent of those filings is clear: continue the charade that Stiffelman is an active defendant as to USRECH/Calmwater allowing Stiffelman to conduct discovery against Stuart Rubin in a case where his liability is truly no longer at issue. These fraudulent acts were quite clearly carried out in furtherance of the RICO Enterprise. Plaintiffs are informed and believe that communications relating to this fraudulent intent were, at times, transmitted through Stiffelman's GT e-mail account. Rubin Decl., ¶ 6.

/ / /

/ / /

/ / /

/ / /

3. The Timeline of Greenberg Traurig's Involvement Relevant to the Motion

The Complaint contains numerous references to GT's long-standing relationships with Plaintiffs and the RICO Enterprise. Important to the instant Opposition are the following:

GT has long served as counsel to Rubin, both personally and to his business interests, including the Rubin Entities. Complaint, ¶ 45.

Gary Stiffelman was a shareholder in GT. Complaint, ¶ 24; Motion, pp. 4:11-12.

GT has been counsel to some of the Plaintiffs and their interests since at least 2008, including serving alongside Defendant Pachulski as co-counsel in litigation brought by the Simons family against the L&R Group and Stuart Rubin individually ("Enterprise Litigation"). (Complaint, ¶ 40; Declaration of Rudy R. Perrino ("Perrino Decl.", ¶ 3 & **Exhibit A**, pp. 3:15-25.)

After Stiffelman joined GT in 2016, Eric Rowan, co-managing member of GT's Real Estate Litigation Practice provided Stiffelman with a detailed explanation of the Enterprise Litigation and, importantly, of GT's representation of Stuart Rubin and others. Complaint, ¶ 49.

On October 28, 2019, GT was warned of the risks of Stiffelman being adverse to Plaintiffs. Complaint, ¶ 128 & Exhibit X. Despite this warning, Stiffelman continued to be employed by GT up until at least October 2020. Complaint, ¶ 95; Motion, pp. 4:22. Importantly, while communications from GT after that warning exist, it appears that GT has never informed Plaintiffs that it has or would take steps to protect their confidential information. Rubin Decl., ¶ 7.

**B. GT's Meet and Confer Efforts**

Counsel for GT called Plaintiffs counsel on March 12, 2024 to discuss GT's contemplated Motion to Dismiss. Perrino Decl., ¶ 4. Counsel for GT

spent several minutes discussing their *respondeat superior* argument, but barely outlined the other grounds for their purported motion. Id. Confirming this fact, Plaintiffs' counsel e-mailed GT's counsel on March 13, 2024, asking her for the substance of the other arguments so that an informed decision could be made. Id. & **Exhibit C**. The response was perfunctory at best, listing only the legal bases for the arguments. Id. & **Exhibit D**.

## II. LAW AND ARGUMENT

### A. Standards for Motion to Dismiss

Defendant's Motion to Dismiss is made, in part, under Federal Rule of Civil Procedure 12(b)(6). Mtn. to Dismiss, p. 8, ln. 5-6. Federal Rule 12(b)(6) allows Defendant to test the sufficiency of a complaint by motion. Fed. Rules Civ.Proc., Rule 12(b)(6). Under the Federal Rules, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. Rules Civ.Proc., Rule 8(a)(2); *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). Pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly, supra,* 550 U.S. at p. 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation omitted).

However, when alleging fraud, as Plaintiffs do with their RICO causes of action, "a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. Rules Civ.Proc., Rule 9(b). With that said, "a pleading is sufficient under Rule 9(b) if it identifies 'the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations.'" *Gottreich v.*

*San Francisco Inv. Corp.*, 552 F.2d 866, 866 (9th Cir. 1977) (quoting *Walling v. Beverly Enterprises*, 476 F.2d 393 (9th Cir. 1973)). Further, "Rule 9(b)'s particularity requirement is relaxed in instances of corporate fraud where the facts supporting the allegation of fraud are exclusively within the defendants' possession" *Est. of Migliaccio v. Midland Nat'l. Life Ins. Co.*, 436 F. Supp. 2d 1095, 1106 (C.D. Cal. 2006). The purpose of this heightened pleading standard is solely to ensure the allegations are specific enough to provide defendants notice of the particular misconduct which is alleged to be fraudulent. *Deutsch v. Flannery*, 823 F.2d 1361, 1365 (9th Cir. 1987); *State of Cal. ex rel. Mueller v. Walgreen Corp.*, 175 F.R.D. 631 (N.D. Cal. 1997). "In such cases, plaintiff's allegations may be based on information and belief…. However, even where allegations are based upon information and belief, a plaintiff still must: (1) specifically allege that the necessary information lies within the defendant's control; and (2) include a statement of the facts upon which plaintiff's information and belief is based." *State of Cal. ex rel. Mueller v. Walgreen Corp., supra*, 175 F.R.D. at p. 635.

On a motion to dismiss under Rule 12(b)(6), "the complaint is to be liberally construed in favor of plaintiff." *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). "The complaint should not be dismissed unless it appears that appellant could 'prove no set of facts in support of his claim which would entitle him to relief.'" *Id.* at p. 422; *Fednav Ltd. v. Sterling Int'l*, 572 F. Supp. 1268, 1270 (N.D. Cal. 1983).

**B. GT Failed to Meet and Confer in Compliance with Local Rules**

The United States District Court for the Central District of California requires counsel to meet and confer prior to filing motion. United States District Court for the Central District of California, Local Rule 7-3. Specifically, Local Rule 7-3 states, "In all cases… counsel contemplating the

filing of any motion must first contact opposing counsel to ***discuss thoroughly***, preferably in person, the substance of the contemplated motion and any potential resolution. The conference must take place at least 7 days prior to the filing of the motion. If the parties are unable to reach a resolution that eliminates the necessity for a hearing, counsel for the moving party must include in the notice of motion a statement to the following effect: 'This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on (date).'" *Id.* (emphasis added).

Courts have previously found that failing to meet and confer will defeat a motion. In *Pacific Receivables, LLC v. T-3 Green House Supply, LLC,* No. 223CV01081KJMDMC, 2023 WL 4534146 (E.D. Cal. July 13, 2023) ("*Pacific Receivables*"), the Court denied a motion to dismiss for failure to meet and confer pursuant to local rules. *Pacific Receivables* at p. 1. The court similarly denied a motion to dismiss *in Mollica v. Cnty. of Sacramento,* No. 2:19-CV-02017-KJM-DB, 2022 WL 15053335 (E.D. Cal. Oct. 26, 2022)

This is rule has been applied in the United States District Court for the Central District of California. In *Parity Networks, LLC v. ZyXEL Commc'ns, Inc.,* No. SACV20697JVSKESX, 2021 WL 545282 (C.D. Cal. Jan. 26, 2021) ("*Parity Networks*") the court denied plaintiff's motion for reconsideration, stating, "[d]enial of a motion as the result of a failure to comply with local rules is well within a district court's discretion." *Parity Networks* at p. 1 (quoting *Tri-Valley CAREs v. United State Department of Energy*, 671 F.3d 1113, 1131 (9th Cir. 2012)). Further, the court states that "Courts in this district have denied motions for failure to comply with Local Rule 7-3 in particular." *Parity Networks* at p. 2.

Counsel for GT called Plaintiffs counsel on March 12, 2024 to discuss GT's contemplated Motion to Dismiss. Perrino Decl., ¶ 4. Counsel for GT spent several minutes discussing their *respondeat superior* argument, but barely outlined the other grounds for their purported motion. Id. Confirming this fact, Plaintiffs' counsel e-mailed GT's counsel on March 13, 2024, asking her for the substance of the other

arguments so that an informed decision could be made. Id. & **Exhibit C**. The response was perfunctory at best, listing only the legal bases for the arguments. Id. & **Exhibit D**. Clearly, this effort does not meet Local Rule 7-3's requirement of a thorough discussion of the substance of the motion.

**C. RICO Liability in the Civil Context**

Contrary to GT's machinations, RICO is not solely a criminal statute. *See Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 495, 105 S. Ct. 3275, 3284, 87 L. Ed. 2d 346 (1985) ("Section 1962 in turn makes it unlawful for 'any person'—not just mobsters—to use money derived from a pattern of racketeering activity to invest in an enterprise, to acquire control of an enterprise through a pattern of racketeering activity, or to conduct an enterprise through a pattern of racketeering activity."). Rather, RICO provides a private right of action to anyone injured in their business or property by reason of a violation of the RICO Act. 18 U.S.C.A. § 1964(c); *See Sedima, S.P.R.L. v. Imrex Co., supra,* 473 U.S. at p. 481; *See also Chaset v. Fleer/Skybox Int'l, LP,* 300 F.3d 1083, 1086 (9th Cir. 2002). In fact, RICO has been used in a variety of civil contexts, including: the concealing of assets by a judgment debtor (*Yegiazaryan v. Smagin,* 599 U.S. 533 (2023)), unfair business practices by a competitor (*Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006)), and fraudulent practices against consumers (*Odom v. Microsoft Corp.*, 486 F.3d 541 (9th Cir. 2007)). Importantly, RICO has also been used by many courts to establish liability for a fraudulent enterprise involving fraudulent actions with respect to civil litigation. *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.,* 431 F.3d 353 (9th Cir. 2005); *Sosa v. DIRECTV, Inc.*, 437 F.3d 923 (9th Cir. 2006); *Chevron Corp. v. Donziger, et al.*, 974 F.Supp.2d 362, 567-68 (U.S. Dist. Ct., S.D. New York 2014) ("Against this clear background, the RICO claims against Donziger are entirely appropriate despite the fact that he is a Harvard-educated lawyer. The RICO question in this and all other such cases

is whether all of the statutory requirements are satisfied with respect to each defendant, not whether the defendant fits a particular popular stereotype.”).

“To prevail on a civil RICO claim, a plaintiff must prove that the defendant engaged in (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity and, additionally, must establish that (5) the defendant caused injury to plaintiff's business or property.” *Chaset v. Fleer/Skybox Int'l, LP, supra,* 300 F.3d at p. 1086. “This fifth element includes two related components. First, a civil RICO plaintiff must show that his injury was proximately caused by the fraudulent conduct. Second, the plaintiff must show that he has suffered a concrete financial loss by documenting the amount of damages to which he is entitled.” *Fireman's Fund Ins. Co. v. Stites,* 258 F.3d 1016, 1021 (9th Cir. 2001) (internal citations omitted). Importantly, “RICO contains no economic motive requirement.” *Nat'l Org. for Women, Inc. v. Scheidler,* 510 U.S. 249, 262 (1994).

**D. Plaintiffs Clearly Describe a RICO Enterprise**

Title 18 U.S.C. § 1961(4) defines an enterprise as “includ[ing] any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity”. 18 U.S.C.A. § 1961(4); *Friedman v. 24 Hour Fitness USA, Inc.*, 580 F. Supp. 2d 985, 990 (C.D. Cal. 2008). “In defining ‘enterprise’, Congress made clear that the statute extended beyond conventional business organizations to reach ‘any . . . group of individuals’ whose association, however loose or informal, furnishes a vehicle for the commission of two or more predicate crimes. “ *United States v. Elliott,* 571 F.2d 880, 898 (5th Cir. 1978); *Odom v. Microsoft Corp., supra*, 486 F.3d at p. 552 (“An ongoing organization is ‘a vehicle for the commission of two or more predicate crimes.’”). “[T]his definition is not very demanding.” *Odom v. Microsoft Corp., supra,* 486 F.3d at p. 548.

“[T]he Ninth Circuit has held that three elements must be alleged: “a common purpose of engaging in a course of conduct,” an “ongoing organization,” either

"formal or informal," and "facts that, if proved, provide sufficient evidence that the various associates function as a continuing unit." *Friedman v. 24 Hour Fitness USA, Inc., supra,* 580 F. Supp. 2d at p. 990 (citing *to Odom v. Microsoft Corp., supra,* 486 F.3d at p. 54). Further, "the Ninth Circuit later made clear that an enterprise does not require any particular organizational structure at all*." Friedman v. 24 Hour Fitness USA, Inc., supra,* 580 F. Supp. 2d at p. 993.

In *Friedman v. 24 Hour Fitness USA, Inc.,* 580 F. Supp. 2d 985 ("*Friedman*"), the court found third-party payment processors with regular contracts and entirely legitimate business relationships formed an enterprise with a gym which continued to charge customers after cancelling their memberships. (*Id.* at p. 989.) The court relied on the fact that the common purpose of the enterprise need not be fraudulent, but instead merely that participants needed "a common purpose of engaging in a course of conduct." (*Id.* at p. 992-93)

Oddly, GT tries to argue—without a single citation to the Complaint—that Plaintiffs do not allege facts establishing an enterprise, specifically "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." Motion, pp. 15:8-21, citation omitted. To make this argument, GT ignores, at a minimum, the following factual allegations:

- The purpose: "Stiffelman, Pachulski, Calmwater/USRECH and others have conspired to participate in a broad scheme that involves meticulous cooperation to capture Rubin's and, more broadly, Plaintiffs' cash flow so that Pachulski and Calmwater/USRECH can feast on the bones of Plaintiffs' real estate assets, while Stiffelman is able to keep his assets in exchange for his complicit malfeasance." Complaint, ¶ 14.
- Relationships: "Even worse, unbeknownst to Plaintiffs until very

recently through discovery propounded on some of the defendants, in 2019 and again in 2021 both Stiffelman and Pachulski assert they entered into clandestine agreements with Defendants USRECH and/or Calmwater, and others, to disclose personal and privileged information belonging to Plaintiffs, in violation of fiduciary and ethical duties owed by both of them, and further utilized their partnership relations with Plaintiffs and various Rubin Entities to impair the assets of those entities in violation of fiduciary duties, all in order to facilitate USRECH/Calmwater's ability to obtain a pre-verdict writ of attachment essentially seizing control of all cash flow, distributions, and sale proceeds from various revenue sources belonging to Plaintiffs." Complaint, ¶ 5.

- Longevity: "Indeed, the extent of the abuses by the Defendants wasn't fully understood until Pachulski's law firm disclosed, on July 12, 2023, the purported existence of one such secret agreement with Defendant USRECH and/or Calmwater, allegedly entered into at a time when Rubin and, more broadly, Plaintiffs continued to share private and privileged information with both Stiffelman and Pachulski based on their fiduciary and/or attorney/client relationships and the belief, developed over years, that Stiffelman and Pachulski not only could be trusted, but owed ethical and fiduciary obligations to maintain confidentiality of certain information."

Furthermore, because a RICO enterprise can be an association in fact, Plaintiffs do not have to show any specific agreement by GT to participate in the enterprise. See *United States v. Elliott, supra*, 571 F.2d at 898; *Odom v. Microsoft Corp., supra*, 486 F.3d at p. 552.

**E. GT's Fraudulent Intent Can Be Proven with Circumstantial Evidence**

Fraudulent intent can be shown with circumstantial evidence. *Riverisland Cold Storage, Inc. v. Fresno-Madera Prod. Credit Assn.*, 55 Cal. 4th 1169, 1183 (2013) ("fraudulent intent must often be established by circumstantial evidence"); *Whiting Fin. Co. v. Hopkins, 115* Cal. App. 756, 762, 2 P.2d 461, 464 (Cal. Ct. App. 1931) ("In but few instances, comparatively, can fraudulent intent be shown by direct testimony, and, therefore, is generally established by circumstantial evidence"); *People v. Ames,* 61 Cal. App. 2d 522, 143 P.2d 92 (1943); *In re Agric. Rsch. & Tech. Grp., Inc.*, 916 F.2d 528, 534 (9th Cir. 1990) ("[a] court may make a finding of fraudulent intent under section 548(a)(1) [actual intent to defraud] on the basis of circumstantial evidence; direct proof ... will rarely be available.") (quoting *In re Roco Corp.*, 701 F.2d 978, 984 (1st Cir.1983)); *See also Poulos v. Caesars World, Inc.*, 379 F.3d 654, 667-68 (9th Cir. 2004); *Rezner v. Bayerische Hypo-Und Vereinsbank AG,* 630 F.3d 866, 868 (9th Cir. 2010).

Here, the timeline of GT's involvement serves to create at least an inference of fraudulent intent. GT was warned of Stiffelman's adversity to Plaintiffs, yet not only continued to employ him, but apparently failed to take any steps to secure Plaintiffs' personal information. GT makes a lot of Plaintiffs' allegations that they are or were clients, inquiring rhetorically what incentive would GT have to bankrupt its own clients. That is a good question, but the facts suggest there may have been some incentive because GT apparently did not act as a good fiduciary should have. As such, discovery into GT's question is appropriate.

**F. An Agent's Fraud Binds the Principal**

In federal court, a principal is bound by the fraudulent or negligent acts of its agents acting within the scope of employment and notice of these

wrongful acts is likewise imputed to the principal. *River Colony Ests. Gen. P'ship v. Bayview Fin. Trading Grp., Inc.*, 287 F. Supp. 2d 1213, 1227 (S.D. Cal. 2003); *Am. Soc. of Mech. Engineers, Inc. v. Hydrolevel Corp.*, 456 U.S. 556, 565–66 (1982). "For instance, a principal is liable for an agent's fraud though the agent acts solely to benefit himself, if the agent acts with apparent authority." *Am. Soc. of Mech. Engineers, Inc. v. Hydrolevel Corp., supra,* 456 U.S. at p. 566. Further, "[u]nder the doctrine of imputed knowledge a principal is chargeable with and is bound by the knowledge or notice received by his or her agent while the agent is acting within the scope of his or her authority. The law imputes the knowledge to the principal, regardless of whether the agent actually communicates the knowledge to the principal." *Id.* (citation omitted).

To explore these principles further, it is worth considering *Gleason v. Seaboard Air Line Ry. Co.*, 278 U.S. 349 (1929) ("*Gleason*"). In *Gleason*, a railroad employee sought to enrich himself by issuing fraudulent bills of lading. *Gleason*, at p. 352. The bills of lading were provided as a typical part of the railroad employee's job. *Id.* Despite the railroad employee not having authority to issue fraudulent bills of lading, the Supreme Court still found the principal liable because issuing bills of lading was a typical job function. In vacating a Fifth Circuit ruling, the Supreme Court stated, "few doctrines of the law are more firmly established or more in harmony with accepted notions of social policy than that of the liability of the principal without fault of his own." *Gleason*, at p. 356.

Here, it can be inferred from the allegations in the Complaint that Stiffelman's actions in stealing Plaintiffs' confidential information were carried out with apparent authority, at least as to those within GT and those within the RICO Enterprise. To the extent GT seeks to establish that it was unaware of Stiffelman's actions, the Court need look no further than paragraph 128 of the Complaint, where notice to GT of the risk of continuing to employ Stiffelman and allow his access to confidential client files went largely ignored. Complaint, ¶ 128. GT apparently took no action in

response to this warning to protect Plaintiffs' information, despite owing their clients a duty to do precisely that. Again, the more nuanced why's, where's and how's of the fraudulent intent are proper for discovery.

**G. The Timeline of Greenberg Traurig's Involvement Supports the Inference that Greenberg Traurig Participated in and Benefitted from the Fraudulent Enterprise**

If Greenberg Traurig received no benefit of Stiffelman's actions it is unclear why Greenberg Traurig has refused to provide any information regarding Stiffelman's access to Plaintiff's confidential information.

In a Motion to Quash filed by GT related to other unprofessional acts of Stiffelman, GT admits, "[a]n attorney owes two distinct ethical duties to a client: (1) a duty of confidentiality, 'which fosters full and open communication between client and counsel[,]' *City and Cty. of San Francisco v. Cobra Sols. Inc.*, 38 Cal. 4th 839, 846 (2006); and (2) a duty of loyalty, whereby an attorney devotes his or her 'entire energies to his client's interests[,]' *Flatt v. Sup. Ct.*, 9 Cal. 4th 275, 289 (1994) (italics omitted). It is the duty of every attorney '[t]o maintain inviolate the confidence, and at every peril to himself or herself to preserve the secrets, of his or her client.' Cal. Bus. & Prof. Code § 6068(e)(1). As the California Supreme Court instructs, 'the protection of confidences and secrets is not a rule of mere professional conduct, but instead involves public policies of paramount importance which are reflected in numerous statutes.' *In re Jordan*, 7 Cal. 3d 930, 940-941 (1972); see also *Styles*, 164 Cal. App. 4th at 1167-1168. [¶] " Perrino Decl., ¶ 3 & **Exhibit B**. GT further argued that "'[i]n addition to not being able to directly reveal or use confidences after the termination of the relationship, an attorney may not act in a way which would undermine his continuing duty to protect the confidential relationship.' *Styles*, 164 Cal. App. 4th 163 at 1168 (emphasis in original). Said another way, '[t]he relation of attorney and client

is one of highest confidence, and, as to professional information gained while this relation exists, the attorney's lips are forever sealed, and this is true, notwithstanding his subsequent discharge by his client and notwithstanding the lack of any justification for such action.' *Wutchumna Water Co. v Bailey*, 216 Cal. 564, 571 (1932)." *Id.*

Despite clearly understanding these duties, GT knowingly allowed its partner, Gary Stiffelman, to continually access the firm's client's confidential information, who then shared that information with other defendants in furtherance of the fraudulent enterprise designed to harm Plaintiffs and their business interests. The Complaint is clear that GT was warned in October 2019 that Stiffelman was adverse to Rubin. Complaint, ¶ 128. Yet, for more than a year GT continued to employ Stiffelman and, apparently, did nothing to screen him or to otherwise bar his access to Plaintiffs' confidential information. Rubin Decl., ¶ 7 Greenberg Traurig appears to not have screened Stiffelman from the information or enacted any other restriction on access of Plaintiff's information by Stiffelman, while Stiffelman was employed by the Greenberg Traurig. From these actions alone, an inference can be drawn that GT was a knowing participant in the fraudulent scheme and stood to benefit from it.

**H. GT's Argument That Plaintiffs' Damages Are Not Legally Cognizable is a Red Herring**

Using nearly two full pages for the argument, GT boldly asserts that Rubin's alleged damages are not legally cognizable and cannot be maintained, purportedly because they are all subject to a writ of attachment and orders from the Riverside Superior Court are *res judicata*. Motion, pp. 17:3-18:23. There are two significant issues with this argument.

First, the order on ASR's Second Claim of Right is ***not*** *res judicata*. While the Riverside Superior Court has issued a judgment on that Claim of Right, ASR has taken an appeal on it and that appeal is pending. Moreover, the writ of attachment, which GT attaches to its Request for Judicial Notice clearly does not apply to

property belonging to ASR, a separate legal entity and plaintiff here. In issuing its ruling and signing the judgment, the Riverside Superior Court disregarded directly applicable law in the Fourth District where that court sits.

In *Postal Instant Press, Inc. v. Kaswa Corp.* (4th Dist. 2008) 162 Cal.App.4th 1510, the Fourth District Court of Appeal held that "outside reverse piercing" of the corporate veil—passing an individual's liability onto a corporation—is not permitted in California, that is, the corporate veil will not be pierced to satisfy the debt of an individual shareholder. *Id*. at 1524. The Court there reasoned that "[o]utside reverse piercing can harm innocent shareholders and corporate creditors, and [importantly] allow judgment creditors to bypass normal judgment collection procedures." *Id* at 1513.

While ASR will continue to litigate that ruling, that ruling could not exist had the RICO Enterprise not shared certain confidential information about distributions owed to ASR. Complaint, ¶ 93. Moreover, that ruling was issued in December 2023, whereas Pachulski through RPP has been redirecting distributions owed to ASR to the Beverly Hills Sheriff's Department **without an order requiring them to do so** since May 2022. *Id*. (emphasis added); see GT's Request for Judicial Notice, Exhibit 1. Clearly, such mishandling of a partner's money without a court order to do so constitutes a breach of fiduciary duties owed to that partner. In any event, damages arising as a result of the writ of attachment are only one part of the damages caused directly by the RICO Enterprise and being sought by Plaintiffs here. See, e.g., Complaint, ¶ 106.

In its zeal to avoid a finding that RICO liability can be sought, GT makes an off-handed reference to the case of *Marshack v. ASR Development Co.*, Case No. 23-01080 (C.D. Cal. Feb. 15, 2023). It is noteworthy that that case has not proceeded beyond the allegation stage and, as such, no factual findings have been made.

**I. The Court Can and Should Exercise Supplemental Jurisdiction Over the State Law Claims Against GT Which Are Not Time Barred.**

Should the Court dismiss the federal claims (Plaintiffs believe they have provided sufficient factual allegations to support a denial of this motion), the Court should nevertheless retain supplemental jurisdiction over the state law claims against Greenberg Traurig under previous holdings by federal courts.

"[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C.A. § 1367, subd. (a).

"It is within the district court's discretion to exercise supplemental jurisdiction after dismissal of the federal claim." *Quinn v. Ocwen Federal Bank FSB,* 470 F.3d 1240, 1249 (8th Cir. 2006); *See also Orton v. Johnny's Lunch Franchise, LLC,* 668 F.3d 843, 850 (6th Cir. 2012). "A district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion General Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993).

GT is correct that the general rule states that where only federal claims have been dismissed and the case is before a federal district court, the court should decline pendant jurisdiction. However, Greenberg Traurig is incorrect that it must do so based on the balance of factors. Instead, "before blindly applying that general rule, federal law requires a two-step process to determine whether to decline supplemental jurisdiction: first, the district court must confirm that it has discretion to decline; and second, it must consider whether prudential factors counsel against dismissal of the supplemental claims." *Austin v. Metro Development Group, LLC,* 571 F.Supp.3d 1279, 1293 (M.D. Fla. 2021) (emphasis added). The federal court may decline supplemental jurisdiction "if-- (1) the claim raises a novel or complex issue of State

law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C.A. § 1367, subd.(c).

In situations where the federal claims are only dismissed as to one defendant and not all defendants, federal courts have found that they should not decline to exercise supplemental jurisdiction because there remain some claims over which it has original jurisdiction (i.e. not all claims under which it has original jurisdiction are dismissed). *Cornerstone Consultants, Inc. v. Production Input Solutions, L.L.C.*, 789 F.Supp.2d 1029, 1058 (N.D. Iowa 2011); *see also Arbaugh v. Y&H Corp.*, 546 U.S. 500, 502 (2006) ("[W]hen a court grants a motion to dismiss for failure to state a federal claim, the court generally retains discretion to exercise supplemental jurisdiction, pursuant to § 1367, over pendent state-law claims.").

The Court will have jurisdiction over an entire action, including state law claims, "whenever the federal-law claims and state-law claims in the case 'derive from a common nucleus of operative fact' and are 'such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding.'" *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 349 (1988). "The Court intended this standard not only to clarify, but also to broaden, the scope of federal pendent jurisdiction." *Ibid.* "[T]he doctrine of pendent jurisdiction thus is a doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values." *Id.* at p. 350.

Here, there are a number of issues which the principles of judicial economy suggest should be heard together. Whether Stiffelman was an agent of GT with respect to the allegations against Stiffelman is one issue that will

need to be determined for all Plaintiff's claims and the statute of limitations which attaches to said claims.

**J. The State Law Claims Are Not Time Barred**

The general rule for defining the accrual of a cause of action when the actual wrong is done or the wrongful result occurs, and the consequent liability arises. *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 981 P.2d 79 (1999). However, "[a]n important exception to the general rule of accrual is the "discovery rule," which postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807 (2005); *See also Apr. Enterprises, Inc. v. KTTV*, 147 Cal. App. 3d 805, 832 (Ct. App. 1983). "[T]he uniform California rule is that a limitations period dependent on discovery of the cause of action begins to run no later than the time the plaintiff learns, or should have learned, the facts essential to his claim. " *Gutierrez v. Mofid*, 39 Cal. 3d 892, 897 (1985).

Moreover, the doctrine of fraudulent concealment can further toll the statute of limitations. "In order to establish fraudulent concealment, the complaint must show: (1) when the fraud was discovered; (2) the circumstances under which it was discovered; and (3) that the plaintiff was not at fault for failing to discover it or had no actual or presumptive knowledge of facts sufficient to put him on inquiry." *Baker v. Beech Aircraft Corp.* 39 Cal.App.3d 315, 321 (1974). "Because fraud is the basis of the estoppel, the same pleading and proof is required in the fraud cases, i.e., the plaintiff must show (a) the substantive elements of fraud, and (b) an excuse for late discovery of the facts." *Snapp & Associates Ins. Services, Inc. v. Malcolm Bruce Burlingame Robertson* (2002) 96 Cal.App.4th 884, 890. The doctrine of fraudulent concealment is an equitable doctrine. *Regents of University of California v. Superior Court* 20 Cal.4th 509 (1999).

Here, the Complaint clearly lays out that the concealed facts were the Secret 2019 Agreement and the Secret 2021 Settlement, neither of which Plaintiffs knew of

nor could know of until, at the earliest, January 2023. As this case was filed in December 2023, the one-year statute of limitations GT argues for had not run.

Nor had it run specifically as to GT. Under the doctrine of fraudulent concealment in California, the acts of an agent will be imputed to the principal whether the principal was aware of it or not: “The fraud of the agents will be imputed to the principal for the purpose of preventing the running of the statute of limitations, whether the principal was aware of it or not.” *Lightner Mining Co. v. Lane*, 161 Cal. 689, 703 (1911); *Pashley v. Pacific Elec. Co.*, 25 Cal.2d 226, 236 (1944). “The injustice of allowing such fraud to become successful by reason of lapse of time and concealment is an injustice to the plaintiff, and it is precisely the same in effect and extent whether the fraud is that of the defendant or its agents.” *Ibid.* “The existence of an agency relationship is a factual question for the trier of fact whose determination must be affirmed on appeal if supported by substantial evidence.” *Garlock Sealing Techs., LLC v. NAK Sealing Techs. Corp.*, 148 Cal.App.4th 937, 965 (2007).

Here, there are sufficient allegations to show that Stiffelman was the agent of GT and, alternatively, an agent of the RICO Enterprise. Stiffelman was a shareholder in GT, who only had access to Plaintiff’s confidential information by way of his position with GT. Further, by GT’s own admission, Stiffelman’s job responsibilities included review client information and files. Given these circumstances and the fact that the existence of an agency relationship is a question of fact, the Court should not decide that the state claims are in fact time-barred based on the arguments put forth by GT.

**K. Leave to Amend Should Be Given**

“The court should freely give leave when justice so requires.” Fed. Rules Civ.Proc., Rule 15(a)(2). “[T]his policy is to be applied with extreme liberality.” *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990); *See also Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708 (9th Cir. 2001). “Dismissal without leave to amend is improper unless it is clear, upon de novo

review, that the complaint could not be saved by any amendment." *Polich v. Burlington N., Inc.*, 942 F.2d 1467, 1472 (9th Cir. 1991); *See also Moss v. U.S. Secret Serv.*, 572 F.3d 962 (9th Cir. 2009).

Here, the Compliant contains sufficient allegations to support an inference that GT was an active, knowing participant in the RICO Enterprise, and that the other elements of a RICO cause of action have been met. To the extent the Court feels that more is required, this Opposition provides additional facts and allegations that should support leave to amend.

## III. CONCLUSION

As GT's Motion fails to demonstrate that Plaintiffs' Complaint does not articulate facts sufficient to support causes of action under RICO, GT's Motion must be denied. GT's efforts to defeat Plaintiffs' state law claims similarly fail. Should the Court believe that the Complaint fails to allege some facts sufficiently to support the claims, this Opposition demonstrates that sufficient factual material exists to support amendment. Accordingly, Plaintiffs would request the Court grant leave to amend, to the extent the Court is inclined to grant any portion of GT's Motion.

Dated: April 2, 2024

**KUTAK ROCK LLP**

By: [signature]
Rudy R. Perrino
Attorneys for Plaintiffs
ABRAHAM STUART RUBIN, DUSTY BERKE as Trustee of the STUART RUBIN CHILDREN'S TRUST, ANNETTE AND STUART RUBIN, as Co-Trustees of the STUART AND ANNETTE RUBIN FAMILY TRUST, ASR DEVELOPMENT, INC., FORCE RUBIN, LLC AND FORCE RUBIN 2, LLC

**CERTIFICATE OF SERVICE**

*Abraham Stuart Rubin, et al. v. Garry Stiffelman, et al.*
United States District Court – Western Division
Case No. 2:23-cv-10152-CBM (PVCx)

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the City of Los Angeles in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 777 S. Figueroa Street, Suite 4550, Los Angeles, California 90017.

☒ I hereby certify that on April 2, 2024, I caused to be electronically filed the foregoing document(s) **PLAINTIFFS' OPPOSITION TO DEFENDANT GREENBERG TRAURIG, LLP'S MOTION TO DISMISS** with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail, electronic mail, or by other means permitted by the court rules.

**(PLEASE SEE ATTACHED SERVICE LIST**

[X] **(FEDERAL)** I declare that I am employed in the office of a member of the bar of this Court at whose direction service was made.

Executed on April 2, 2024, at Los Angeles, California.

Nanette Leali

*Nanette Leali*

# SERVICE LIST

*Abraham Stuart Rubin, et al. v. Garry Stiffelman, et al.*
United States District Court – Western Division
*Case No. 2:23-cv-10152-CBM (PVCx)*

| | |
|---|---|
| Abraham Stuart Rubin<br>Annette Rubin<br>269 S. Beverly Dr., Suite 1455<br>Beverly Hills, CA 90212<br>Email: srubin@rprp.com<br>ar@rprp.com | ABRAHAM STUART RUBIN, DUSTY BERKE as Trustee of the STUART RUBIN CHILDREN'S TRUST, ANNETTE AND STUART RUBIN, as Co-Trustees of the STUART AND ANNETTE RUBIN FAMILY TRUST, ASR DEVELOPMENT CO., FORCE RUBIN, LLC AND FORCE RUBIN 2, LLC |
| Dusty Berke<br>Trustee of the Stuart Rubin Children's Trust<br>2321 North Clinton Street<br>Orange, CA 92867<br>Email: godustyb@yahoo.com | DUSTY BERKE, AS TRUSTEE OF THE STUART RUBIN CHILDREN'S TRUST AND A. STUART RUBIN |