JENNER & BLOCK LLP
Michael P. McNamara (SBN 106079)
Kirsten H. Spira (SBN 119885)
2029 Century Park East, Suite 1450
Los Angeles, California 90067-2901
Telephone: +1 213 239 6900
Facsimile: +1 213 239 5199
Email: mmcnamara@jenner.com
kspira@jenner.com

Effiong K. Dampha (SBN 323554)
515 South Flower Street, Suite 3300
Los Angeles, California 90071-2246
Telephone: +1 213 239 5100
Email: edampha@jenner.com

*Attorneys for Defendant Greenberg Traurig*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

ABRAHAM STUART RUBIN, an individual; DUSTY BERKE, as Trustee of the STUART RUBIN CHILDREN'S TRUST; and ANNETTE AND STUART RUBIN, as Co-Trustees of the STUARTAND ANNETTE RUBIN FAMILY TRUST; ASR DEVELOPMENT CO.; FORCE RUBIN, LLC; FORCE RUBIN 2, LLC,

Plaintiffs,

v.

GARY STIFFELMAN; RICHARD M. PACHULSKI; PACHULSKI STANG ZIEHL & JONES LLP, a California Limited Liability Partnership;· U.S. REAL ESTATE CREDIT HOLDINGS III-A, LP, an Irish Limited Partnership; CALMWATER ASSET MANAGEMENT, LLC, a Delaware Limited Liability Company; GREENBURG TRAURIG, LLP, a New York Limited Liability Partnership; DOE ATTORNEYS 1-50; DOE FIDUCIARIES 1-50; DOES 1-100, inclusive

Defendants.

Case No. 2:23-cv-10152 CBM(PVC)

**DEFENDANT GREENBERG TRAURIG, LLP'S REPLY IN SUPPORT OF MOTION TO DISMISS**

Judge: Consuelo B. Marshall
Courtroom: 8D
Date: April 23, 2024
Time: 10:00 a.m.

**TABLE OF CONTENTS**


INTRODUCTION ..... 1

ARGUMENT ..... 3

I. Rubin's RICO Claims Fail Because Rubin Does Not – and Cannot – Allege Wrongful Conduct by GT. ..... 3

A. Despite Relying on *Respondeat Superior*, Rubin Has Not Plausibly Alleged Any Benefit to GT. ..... 3

B. Rubin's Allegation that Stiffelman *Stole* the Confidential Information from GT, Conclusively Demonstrates that Stiffelman Was Not Acting in the Course and Scope of His Employment. ..... 5

II. Rubin's RICO Claims Fail on Other Several Other Grounds. ..... 6

A. Rubin Fails to Allege a Pattern of Racketeering Activity or Even Address It in His Opposition. ..... 6

B. Rubin Fails to Allege Cognizable Damage. ..... 7

C. Rubin Fails to Allege Predicate Acts of Wire Fraud or Causation. ..... 8

III. This Court Should Retain Jurisdiction Over Rubin's State Law Claims in Order to Dismiss Them as Untimely. ..... 9

IV. The Parties Properly Met and Conferred. ..... 10

CONCLUSION ..... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Soc. of Mech. Engineers, Inc. v. Hydrolevel Corp.*,
456 U.S. 556 (1982) .......... 2

*Baumer v. Pachl*,
8 F.3d 1341 (9th Cir. 1993) .......... 3

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 4

*Bowoto v. Chevron Corp.*,
481 F.Supp.2d 1010 (N.D. Cal. 2007) .......... 4

*Bunnett & Company v. Gearheart*,
No. 17-01475, 2018 WL 2387837 (N.D. Cal. 2018) .......... 5

*Canyon Cty. v. Syngenta Seeds, Inc.*,
519 F.3d 969 (9th Cir. 2008) .......... 7

*Com. & Farmers Nat. Bk. v. Hetrick*,
64 Cal. App. 3d 158 (1976) .......... 7, 8

*Freeney v. Bank of Am. Corp.*,
No. 15-02376, 2015 WL 12535021 (C.D. Cal. Nov. 19, 2015) .......... 3, 4

*Gleason v. Seaboard Air Line Ry. Co.*,
278 U.S. 349 (1929) .......... 5

*H.J. Inc. v. Nw. Bell Tel. Co.*,
492 U.S. 229 (1989) .......... 7

*Ins. Co. of N.A. v. Fed. Exp. Corp.*,
189 F.3d 914 (9th Cir. 1999) .......... 5, 6

*Jay E. Hayden Found. v. First Neighbor Bank, N.A.*,
610 F.3d 382 (7th Cir. 2010) .......... 6

*Limbaugh v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
784 F.2d 1086 (11th Cir. 1986) .......... 7

*McGowan v. Weinstein*,
562 F. Supp. 3d 744 (C.D. Cal. 2021) ....................7

*Medallion Television Enters., Inc. v. SelecTV of Cal., Inc.*,
833 F.2d 1360 (9th Cir. 1987) ....................7

*Mohebbi v. Khazen*,
50 F. Supp. 3d 1234 (N.D. Cal. 2014) ....................6

*Mollica v. Cnty. of Sacramento*,
No. 19-02017, 2022 WL 15053335 (E.D. Cal. Oct. 26, 2022) ....................10

*Monterey Plaza Hotel Ltd. P'ship v. Loc. 483 of Hotel Emps. & Rest. Emps. Union, AFL-CIO*,
215 F.3d 923 (9th Cir. 2000) ....................8

*Neel v. Magana, Olney, Levy, Cathcart & Gelfand*,
6 Cal. 3d 176 (1971) ....................9

*Ogden v. Wells Fargo Bank*,
No. 14-3579, 2015 WL 13404299 (C.D. Cal. 2015) ....................5

*Oki Semiconductor Co. v. Wells Fargo Bank, Nat. Ass'n*,
298 F.3d 768 (9th Cir. 2002) ....................1, 3, 4, 5

*Pac. Receivables, LLC v. T-3 Green House Supply, LLC*,
No. 23-01081, 2023 WL 4534146 (E.D. Cal. July 13, 2023) ....................10

*Pac. Software Consulting, Inc. v. SystemCentrix Inc.*,
No. 10-1443, 2011 WL 13227832 (C.D. Cal. Apr. 11, 2011) ....................3

*Parity Networks, LLC v. ZyXEL Commc'ns, Inc.*,
No. 20-697, 2021 WL 545282 (C.D. Cal. Jan. 26, 2021) ....................10

*Reves v. Ernst & Young*,
507 U.S.170 (1993) ....................3

*In re S. California Plastics, Inc.*,
165 F.3d 1243 (9th Cir. 1999) ....................8

*Turner v. Cook*,
362 F.3d 1219 (9th Cir. 2004) ....................7

*Walter v. Drayson*,
538 F.3d 1244 (9th Cir. 2008) ....................3

*Webster v. Omnitrition Int'l, Inc.*,
79 F.3d 776 (9th Cir. 1996) ....................................................................3

**Statutes & Court Rules**

18 U.S.C. § 1962 (RICO)....................................................................*passim*

18 U.S.C. § 1964 ...................................................................................7

Fed. R. Civ. P. 9(b) ...........................................................................2, 6, 9

**Other Authorities**

2A C.J.S. *Agency* § 416 (2024)..............................................................6

## INTRODUCTION

Rubin[1] seeks to hold GT vicariously liable under RICO for its former employee's personal conduct unrelated to his employment, but Ninth Circuit precedent is clear: "respondeat superior liability attaches only if an employer benefitted from its employee's RICO violation." *Oki Semiconductor Co. v. Wells Fargo Bank, Nat. Ass'n*, 298 F.3d 768, 775 (9th Cir. 2002). Although this lack of benefit to GT was GT's lead argument, the opposition does not directly address the benefit rule, does not cite *Oki Semiconductor* or any of the other controlling authorities cited by GT, and does not even try to suggest any plausible "benefit" to GT from the alleged RICO scheme. Indeed, Rubin concedes that whether GT derived a benefit from the alleged scheme "is a good question." Opp. at 13. Accordingly, the RICO claims alleged against GT fail to state a claim on this ground alone and the Court need go no further.

But putting aside that Rubin cannot allege a benefit to GT, Rubin's *respondeat superior* theory also fails for the separate reason that the allegations in the Complaint establish that Stiffelman's alleged conduct was outside the course and scope of his employment with GT. *Oki Semiconductor*, 298 F.3d at 775-76. Here, the alleged RICO violation consists of Stiffelman and Pachulski entering into clandestine agreements with USRECH for their *personal* benefit in connection with *personal* loan guarantees. Compl. ¶ 5. The Complaint alleges that to facilitate the clandestine agreements, Stiffelman gave USRECH confidential information about Rubin that Stiffelman had *stolen* from GT.[2] Rubin argues that Stiffelman had "apparent authority" from GT to *steal* Rubin's information, and therefore Stiffelman's actions were somehow within the course and scope of his employment. Opp. at 14. This makes no sense. For one thing, apparent authority is a doctrine of law that relates to

[1] This brief uses the same definitions as in the Motion, including referring to the Plaintiffs simply as "**Rubin**."

[2] These allegations are wholly untrue; however, GT does not describe the false nature of the allegations as it be procedurally improper to do so on this Motion.

agents making representations to *third parties* and thus has no application here. *Am. Soc. of Mech. Engineers, Inc. v. Hydrolevel Corp.*, 456 U.S. 556, 566 n.5 (1982). For another, the notion that an employer can give an employee "authority" to *steal* from itself – particularly to facilitate a RICO scheme that is unknown and adverse to the employer – is simply nonsense. Finally, the assertion is pure conjecture that does not satisfy Rule 9(b).

While Rubin's failure to allege facts that could establish *respondeat superior* liability is fatal to his RICO claims, it must be noted that the opposition largely ignores its *respondeat superior* problem and uses most of its space arguing that the Complaint sufficiently alleges the *other* elements of RICO, apparently hoping these are easier targets. He fares no better here. Rubin fails to address the pattern element in his opposition at all; he does not explain how there is any continuity where Rubin is the sole target of the alleged enterprise with the finite aim of having Rubin pay his loan debt. Rubin fails to explain how his USRECH loan debt or the legally obtained writ of attachment is a cognizable injury. And Rubin fails to address GT's proximate cause argument or identify predicate acts of wire fraud by GT.

Additionally, should this Court choose to retain jurisdiction over Rubin's state law claims after dismissing his RICO claims, those claims are barred on their face by the applicable one-year statute of limitations and should be dismissed. Rubin's opposition confirms that the Complaint admits Rubin was aware that Stiffelman was allegedly using confidential information stolen from GT since August 4, 2022, at the latest. These facts demonstrate that Rubin's state law claims are untimely.

Finally, Rubin's argument that GT failed to thoroughly meet and confer – despite admittedly engaging Rubin's counsel in a timely Zoom meet and confer, and providing a follow-up email describing GT's arguments – is frivolous and should not distract from the deficiencies of the Complaint. *See* Spira Decl. ¶¶ 2-7.

Because the Complaint alleges facts fatal to his claims, GT respectfully requests that this Court dismiss the Complaint against GT without leave to amend.

## ARGUMENT

### I. Rubin's RICO Claims Fail Because Rubin Does Not – and Cannot – Allege Wrongful Conduct by GT.

#### A. Despite Relying on *Respondeat Superior*, Rubin Has Not Plausibly Alleged Any Benefit to GT.

Rubin does not contest that under clear Ninth Circuit precedent, "benefit to the employer is a threshold requirement that must be satisfied" before this Court can find vicarious liability under RICO.[3] *Freeney v. Bank of Am. Corp.*, No. 15-02376, 2015 WL 12535021, at *34 (C.D. Cal. Nov. 19, 2015); *Oki Semiconductor*, 298 F.3d at 775. Nor does he contest that courts in this Circuit routinely dismiss RICO claims brought under a theory of *respondeat superior* where plaintiffs fail to satisfy the requirement. *See, e.g.*, *Pac. Software Consulting, Inc. v. SystemCentrix Inc.*, No. 10-1443, 2011 WL 13227832, at *3 (C.D. Cal. Apr. 11, 2011); *Freeney*, 2015 WL 12535021, at *34. Rubin's opposition even recognizes that 9(b)'s strict standards require that he not only affirmatively allege benefit, but also provide a statement of facts supporting that allegation. Opp. at 6-7. Rubin does not begin to meet these requirements.

First, Rubin fails to articulate any benefit to GT in either his Complaint or opposition brief. Conversely, Rubin unequivocally alleges benefit as to the other defendants, alleging that the purpose of the enterprise was to allow USRECH to recover on its loan from Rubin, Stiffelman to decrease his liability to USRECH, and Pachulski to "feast on the bones" of Rubin's assets once Rubin was financially

---

[3] To directly satisfy the "conduct" element of RICO (i.e., non-vicarious liability), Rubin would need to allege facts showing that GT "participated in the conduct of the operation or management of the enterprise itself." *Reves v. Ernst & Young*, 507 U.S.170, 185 (1993). He has not tried to do that and instead relies on the doctrine of *respondeat superior*. For the sake of clarity, GT acknowledges that Rubin argues that GT failed to safeguard his confidential information, but that allegation goes to his theory that GT should be held vicariously liable and does not show participation in the "operation and management" of the enterprise. *See, e.g., Baumer v. Pachl,* 8 F.3d 1341, 1344 (9th Cir. 1993) (allegations that attorney helped "cover-up" client's fraudulent scheme to sell illegal partnership interests was insufficient to meet operation and management test); *see also Webster v. Omnitrition Int'l, Inc.*, 79 F.3d 776, 789 (9th Cir. 1996); *Walter v. Drayson*, 538 F.3d 1244, 1248 (9th Cir. 2008).

ruined. Opp. at 2; Compl. ¶ 14. But nowhere does Rubin allege that any benefits accrued to GT from this scheme; nor could they have. GT's only "involvement" was that Stiffelman was allegedly able "to steal . . . Plaintiffs' secrets" from GT. Compl. ¶ 4. Thus, GT was a victim, not a beneficiary of the alleged conduct.

<u>Second</u>, Rubin nevertheless suggests that this Court should *infer* that there was a benefit to GT. Opp. at 13, 16. Benefit, however, can only be inferred where the plaintiff's allegations reflect that the "substantive acts underlying the claims were committed for the employers' benefit." *Freeney*, 2015 WL 12535021, at *33; *Oki Semiconductor*, 298 F.3d at 775. Those allegations must rise "above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). Accordingly, courts have refused to find benefit where the alleged benefit did not derive from the employees RICO violation. *See, e.g.*, *Freeney*, 2015 WL 12535021, at *34 ; *Bowoto v. Chevron Corp.*, 481 F.Supp.2d 1010, 1018 (N.D. Cal. 2007).

Instructive here, the Central District held in *Freeney* that banks could not be held vicariously liable under RICO for employees' theft of funds because no benefit from the theft accrued to the banks. The plaintiff in that case alleged that the employees, two broker-advisors, stole millions of dollars from the plaintiff and that the banks received a benefit from "having Mr. Freeney as a client." 2015 WL 12535021, at *34. Rejecting this argument, the court held that the plaintiff failed to plead "any meaningful benefit that accrued" to the banks because "the benefits to be gained from recruiting [the plaintiff] as a client, [were] not the benefits of defrauding him." *Id.* In so finding, the Court took into account the alleged purpose of the enterprise showed that "the broker-advisors took advantage of their employment to complete the alleged theft" for their own benefit. *Id.*

Rubin's failure to plausibly allege a benefit GT from the alleged theft is fatal to his RICO claims.

### B. Rubin's Allegation that Stiffelman *Stole* the Confidential Information from GT, Conclusively Demonstrates that Stiffelman Was Not Acting in the Course and Scope of His Employment.

Even if Rubin could satisfy the "benefit" requirement to prove *respondeat superior* liability, he would *additionally* need to allege and prove that Stiffelman's conduct was within the course and scope of his employment. *Oki Semiconductor*, 298 F. 3d at 776; *Ogden v. Wells Fargo Bank*, No. 14-3579, 2015 WL 13404299 at *3 (C.D. Cal. 2015). Here, none of Stiffelman's alleged actions, including the alleged theft of GT's confidential client files, was plausibly within the scope of Stiffelman's employment with GT.

Courts have consistently found that illegal conduct such as money laundering or theft is outside the scope of an employee's job. *See Oki Semiconductor*, 298 F. 3d at 776 ("[C]onspiring to violate RICO was outside the course and scope of Tran's employment because it was not the kind of function Wells Fargo hired her to perform."); *Ins. Co. of N.A. v. Fed. Exp. Corp.*, 189 F.3d 914, 922-23 (9th Cir. 1999) (finding no *respondeat superior* liability for an employee's theft because "it was a substantial deviation from employee's duties"); *Bunnett & Company v. Gearheart*, No. 17-01475, 2018 WL 2387837 at *4 (N.D. Cal. 2018) ("Because Plaintiffs fail to show that Todd Gearheart's alleged predicate acts [of wire fraud, perjury, bankruptcy fraud, and money laundering] were of a kind he was hired to perform, JDH may not be held vicariously liable for his action.").

Rubin argues that GT failed to safeguard Rubin's confidential client files after having been warned of Stiffelman's adversity to Rubin, and therefore "Stiffelman's actions in stealing Plaintiffs' confidential information were carried out with apparent authority." Opp. at 14. For this bizarre conclusion, Rubin relies on *Gleason v. Seaboard Air Line Ry. Co.*, 278 U.S. 349 (1929), an inapposite 1929 case that does not support plaintiffs' point. In *Gleason*, the defendant used his apparent authority as a railroad employee to convince a third party that a false bill of lading was genuine, thus committing fraud.

The doctrine of apparent authority simply has no application in this RICO case. First, apparent authority is a doctrine that concerns whether an employer placed an employee in a position so that his or her actions could be perceived *by a third party* as those of the employer. 2A C.J.S. Agency § 416 (2024). There are no such allegations in this case. To the extent that Rubin claims that GT failed to properly safeguard his information, that allegation has nothing to do with the doctrine of apparent authority but rather relates to a claim for a breach of duty (not RICO) – although here all such claims are time-barred. *See* Section III, *infra*.

Second, to the extent Rubin means that Stiffelman was given "authority" by GT to "steal" from it, this makes even less sense – it is nonsensical to argue that GT authorized an employee to steal from it, and he alleges no facts (as required by Rule 9(b)) to support such an allegation. Further, the mere fact that an employee is in a position to commit a crime, does not create liability on the part of the employer. *See Ins. Co. of N.A.*, 189 F.3d at 922 (refusing to apply *respondeat superior* to a theft: "the mere fact that the employee had access to the 'secure' holding area by way of his employment with Federal Express does not change the result").

## II. Rubin's RICO Claims Fail on Other Several Other Grounds.

Plaintiffs' RICO claims fail to get past *respondeat superior* and thus fail on the conduct element alone. Additionally, although this Court need not even reach these issues, Rubin's RICO claims fail on numerous other, independent grounds.[4]

### A. Rubin Fails to Allege a Pattern of Racketeering Activity or Even Address It in His Opposition.

Rubin's opposition does not address his failure to meet the pattern element. That element requires two or more predicate acts of racketeering that amount to or

[4] In addition to those grounds discussed below, GT notes that Rubin's opposition spends significant time on the "enterprise" element, but still fails to address his failure to allege structure, organization, or leadership required for a RICO enterprise. *Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 388 (7th Cir. 2010); *Mohebbi v. Khazen*, 50 F. Supp. 3d 1234, 1254 (N.D. Cal. 2014).

pose a threat of continued criminal activity. *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989). Thus, allegations of racketeering activity with a single victim or built-in endpoint are insufficient. *Medallion Television Enters., Inc. v. SelecTV of Cal., Inc.*, 833 F.2d 1360, 1363-64 (9th Cir. 1987).

Here, Rubin's allegations reflect only a singular plan and purpose: to hold Rubin liable for the USRECH loan. The only victim is Rubin, the only fraudulent act (if any) is the apparent sole goal of recouping on the USRECH loan by marshaling Rubin's assets. Once the loan is paid or at least judgment entered against Rubin the alleged enterprise would cease. *Turner v. Cook*, 362 F.3d 1219, 1230 (9th Cir. 2004); *see also* Compl. ¶¶ 79-82, Ex. V. Additionally, GT's alleged role in the supposed enterprise (the victim of Stiffelman's theft) was finite and non-patterned, which "cannot possibly be part of a pattern of racketeering activity." *See McGowan v. Weinstein*, 562 F. Supp. 3d 744, 754 (C.D. Cal. 2021).

**B. Rubin Fails to Allege Cognizable Damage.**

For civil RICO claims, only "injury to business or property" is cognizable. *Canyon Cty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 975 (9th Cir. 2008); *see* 18 U.S.C. § 1964(c). In this Circuit, to meet this standing requirement, Rubin must allege "concrete financial loss." *Syngenta Seeds*, 519 F.3d at 975. "Without a harm to a specific business or property interest . . . there is no injury to business or property within the meaning of RICO." *Id.* (quoting *Diaz v. Gates*, 420 F.3d 897, 900 (9th Cir. 2005) (en banc)).

Rubin's opposition does not contest that the writ of attachment to pay the USRECH loan debt is not a cognizable injury within the meaning of RICO as it does not change the title to the property. *Com. & Farmers Nat. Bk. v. Hetrick*, 64 Cal. App. 3d 158, 164 (1976). Nor does he claim that the loan debt itself – the basis of the writ attaching Rubin's assets – is a cognizable injury. *Limbaugh v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 784 F.2d 1086, 1088 n.3 (11th Cir. 1986)

("[P]ayment of a debt which one is already obligated to pay is not a legal injury in any sense.").

Instead, Rubin takes issue with the August 4, 2022 order in the USRECH Action finding a writ of attachment (RJN Ex. 2) encompassed funds allegedly owed to Rubin's company, ASR (RJN Ex. 3 at Ex. A at 2-3). Rubin argues that the ruling caused damages because it concerns property "belonging to ASR, a separate legal entity." Opp. at 17. However, the USRECH Court is a court of competent jurisdiction. It not only found that Rubin and ASR were alter egos of one another such that "any money distributed to ASR will be delivered directly to ASR's owner, Rubin" but also that the August 4, 2022 ruling was *res judicata*. *Id.* at Ex. A. at 3. To the extent Rubin argues the writ is not a final judgment, he has suffered no "concrete financial loss" as the "property remains in [Rubin]." *Com. & Farmers Nat. Bk.*, 64 Cal. App. 3d at 164; *accord In re S. California Plastics, Inc.*, 165 F.3d 1243, 1246 (9th Cir. 1999). To the extent he challenges the attachment ruling, he must do so in state court pursuant to the strict "statutory rights and remedies with respect to attachment proceedings" created for that purpose. *Com. & Farmers Nat. Bk.,* 64 Cal. App. 3d at 164; *see also* Cal. Civ. Proc. § 488.620 (third-party who provides garnishment information for attachment is immune to liability).

**C. Rubin Fails to Allege Predicate Acts of Wire Fraud or Causation.**

As an initial matter, Rubin's allegations of wire fraud are not predicate acts. In addition to the reasons set forth in GT's Motion, the three electronic communications identified in the opposition as the "wire fraud" – all from Pachulski and none from GT or Stiffelman – are not deceptive and do not reflect an intent to fraudulently obtain Rubin's property. *Monterey Plaza Hotel Ltd. P'ship v. Loc. 483 of Hotel Emps. & Rest. Emps. Union, AFL-CIO*, 215 F.3d 923, 926 (9th Cir. 2000) (explaining mail fraud statutes requirements). Pachulski's alleged email representations in October 2019 that he was working to "get [Stiffelman] off his guarant[y]" and that he was "trying to get [Stiffelman] to back off of suing [Rubin],"

are entirely consistent with Stiffelman being adverse to Rubin vis-à-vis the USRECH debt. Opp. at 3. Further, Rubin had actual knowledge that Stiffelman was adverse to him that very same month when Stiffelman sued Rubin over the USRECH loan debt. *See* Compl. ¶ 8 and Ex. X.

Moreover, although Rubin argues that an alleged disclosure of his confidential information affected Rubin's debt liability under his personal guaranty, he does not, as required by Rule 9(b), explain how that can be true. Rubin has not alleged what confidential information was used and how the use of that information harmed Rubin. Rubin has not alleged why Stiffelman and Pachulski would not have access to Rubin's alleged confidential information as Rubin's business partners (rather than as his alleged attorneys) or why Rubin would not have disclosed the alleged confidential information to USRECH as part of the original loan (in fact, he did) or in discovery in the USRECH litigation, or the bankruptcy proceedings.

## III. This Court Should Retain Jurisdiction Over Rubin's State Law Claims in Order to Dismiss Them as Untimely.

Contrary to Rubin's description of GT's argument, GT requested that this Court retain supplemental jurisdiction over the remaining state law claims in order to dismiss them as untimely. The applicable one-year limitations period begins once the plaintiff discovers, or could have discovered with reasonable diligence, the material facts constituting the attorney's wrongful conduct. *Neel v. Magana, Olney, Levy, Cathcart & Gelfand*, 6 Cal. 3d 176, 183-94 (1971). The latest Rubin could have discovered with reasonable diligence the alleged improper use of confidential information was well over a year ago when USRECH secured the writ of attachment.

The Complaint affirmatively alleges it was "obvious" that USRECH used confidential information from Stiffelman and Pachulski to secure the writ of attachment. Compl. ¶¶ 92, 95; *see also id.* ¶ 96. And Rubin's opposition confirms that the Riverside Superior Court's ruling on the ASR distributions "could not exist had the RICO Enterprise not shared certain confidential information about

distributions owed to ASR." Opp. at 17. The undisputed evidence shows that the Riverside Superior Court issued its ruling on August 4, 2022. The December 2023 ruling, wherein Rubin tried to relitigate the issue, stated that the August 4, 2022 ruling was *res judicata*. Therefore, the Complaint reveals that, at the latest, by August 4, 2022, Rubin believed that his confidential information was used. This action was not filed until December 1, 2023, making all the state claims untimely.

**IV. The Parties Properly Met and Conferred.**

Rubin's argument that the parties timely met and conferred but did not do so "thoroughly" enough, is frivolous. At the Zoom meet and confer, GT went through each of the grounds for its Motion, spending the most time on its primary argument that GT cannot be held vicariously liable for Stiffelman's alleged conduct because plaintiffs failed to (and could not) plead a benefit to GT and that Stiffelman's alleged theft from GT was not within the course and scope of his employment with GT. Spira Decl. ¶¶ 3-5. The opposition admits this. Opp. at 8. If the meet and confer was not sufficiently thorough, it was because plaintiffs' counsel – who is currently seeking to withdraw – expressly declined to engage further. Spira Decl. ¶ 2. Plaintiff's counsel admits that he was "reluctant to meet and confer . . . given the pendency of the motions to withdraw." Spira Decl. ¶ 7, Ex. A. None of plaintiffs' cited authority is on point as none involve a timely, good faith effort by the movant to meet and confer.[5]

## CONCLUSION

For the foregoing reasons, GT respectfully requests that this Court grant its Motion and dismiss the Complaint in its entirety, without leave to amend.

---

[5] *See Pac. Receivables, LLC v. T-3 Green House Supply, LLC*, No. 23-01081, 2023 WL 4534146, at *1 (E.D. Cal. July 13, 2023) (finding parties did not *attempt* to meet and confer); *Mollica v. Cnty. of Sacramento*, No. 19-02017, 2022 WL 15053335, at *2 (E.D. Cal. Oct. 26, 2022) (finding party only sent opposing counsel a "curt dismissive email on the morning of the last day to file a motion for summary judgment"); *Parity Networks, LLC v. ZyXEL Commc'ns, Inc.*, No. 20-697, 2021 WL 545282, at *1 (C.D. Cal. Jan. 26, 2021) (finding party sent email to wrong counsel).

Dated: April 9, 2024

JENNER & BLOCK LLP

/s/ *Kirsten H. Spira*

Kirsten H. Spira
Michael P. McNamara
Effiong K. Dampha

*Attorneys for Defendant Greenberg Traurig*

**CERTIFICATE OF COMPLIANCE**

The undersigned counsel of record for Defendant Greenberg Traurig, LLP certifies this brief contains 3,606 words, which complies with the word limit of L.R. 11-6.1.

Dated: April 9, 2024

JENNER & BLOCK LLP

/s/ *Kirsten H. Spira*
Kirsten H. Spira
Michael P. McNamara
Effiong K. Dampha

*Attorneys for Defendant Greenberg Traurig*