**VALLE MAKOFF LLP**
JOHN M. MOSCARINO (State Bar No. 122105)
   jmoscarino@vallemakoff.com
11777 San Vicente Blvd., Suite 890
Los Angeles, California 90049
Telephone:   (310) 476-0300
Facsimile:   (310) 476-0333

Attorneys for Defendants
RICHARD M. PACHULSKI and PACHULSKI
STANG ZIEHL & JONES LLP

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION – ROYBAL FEDERAL BUILDING

| | |
|---|---|
| ABRAHAM STUART RUBIN, an individual; DUSTY BERKE, as Trustee of the STUART RUBIN CHILDREN'S TRUST; and ANNETTE AND STUART RUBIN, as Co-Trustees of the STUART AND ANNETTE RUBIN FAMILY TRUST; ASR DEVELOPMENT CO.; FORCE RUBIN, LLC; FORCE RUBIN 2, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> GARY STIFFELMAN; RICHARD M. PACHULSKI; PACHULSKI STANG ZIEHL & JONES LLP, a California Limited Liability Partnership;· U.S. REAL ESTATE CREDIT HOLDINGS III-A, LP, an Irish Limited Partnership; CALMWATER ASSET MANAGEMENT, LLC, a Delaware Limited Liability Company; GREENBURG TRAURIG, LLP, a New York Limited Liability Partnership; DOE ATTORNEYS 1-50; DOE FIDUCIARIES 1-50; DOES 1-100, inclusive <br><br> Defendants. | Case No. 2:23-cv-10152 CBM (PVCx) <br><br> Hon. Consuelo B. Marshall <br><br> **MOTION TO DISMISS RICO CLAIMS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6), TO DISMISS STATE LAW CLAIMS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6) AND 12(B)(1), TO REQUIRE MORE DEFINITE STATEMENT PURSUANT TO  FEDERAL RULE OF CIVIL PROCEDURE 12(E), AND TO STRIKE PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(F)** <br><br> Date:    June 4, 2024 <br> Time:    10:00 a.m. <br> Place:   Courtroom 8D <br><br> Complaint Filed:    December 1, 2023 |

TO ALL PARTIES AND TO THEIR RESPECTIVE ATTORNEYS OF

RECORD:

PLEASE TAKE NOTICE that on June 4, 2024 at 9:00 a.m. in Courtroom 8D, located at 350 West 1st Street, Los Angeles, California 90012, Defendants Richard M. Pachulski ("Pachulski") and Pachulski Stang Ziehl & Jones LLP ("PSZJ") will and hereby move the court for (1) an order dismissing the Fourth and Fifth Claims For Relief in the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6); (2) an order dismissing the state law claims pursuant to Federal Rule of Civil Procedure 12(b)(6); (3) an order dismissing the state law claims pursuant to Federal Rule of Civil Procedure 12(b)(1); (4) an order requiring Plaintiffs to file a more definite statement pursuant to Federal Rule of Civil Procedure 12(e); and (5) an order striking the sentence in paragraph 93 at page 28, lines 10 to 13 stating "Indeed, as to Pachulski, for more than a year, Pachulski has used the entity RPP to deprive ASR of partnership distributions – despite the lack of a formal order requiring it to do so – pursuant to a writ of attachment obtained by Calmwater/USRECH against Rubin, not ASR," pursuant to Federal Rule of Civil Procedure 12(f).

The motion is made on the grounds that the Fourth and Fifth Claims For Relief, alleging RICO violations, are not plausible under the standards imposed under Federal Rule of Civil Procedure 12(b)(6) for the following reasons:

1. The Complaint is an improper shotgun complaint;

2. The Complaint fails to allege a RICO claim for relief with the particularity required by Federal Rule of Civil Procedure 9(b);

3. The Complaint seeks to impose liability for acts which fall within the Petition Clause of the First Amendment of the United States Constitution;

4. The Complaint fails to allege cognizable RICO predicate acts because it places at issue alleged breaches of fiduciary duty and litigation related activities;

/ / /

5.     The Complaint fails to sufficiently allege the existence of a RICO enterprise;

6.     The Complaint fails to allege that Pachulski or PSZJ conducted the affairs of a RICO Enterprise;

7.     The Complaint fails to allege the existence of a RICO injury proximately caused by a RICO predicate act; and

8.     The Complaint fails to allege a RICO conspiracy claim.

The motion is also made on the grounds that (a) the state law claims fail for lack of proximate causation; (b) this Court should decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367 because the state law claims for breach of fiduciary duty and malpractice predominate; (c) in the alternative, the Court should order Plaintiffs to provide a more definite statement; and (d) in the alternative, the Court strike certain portions of the Complaint.

This motion is based on this Notice, the Memorandum of Points and Authorities filed concurrently herewith, the concurrently filed Request for Judicial Notice, the records, pleadings and files in this matter, and such other and further matters as the Court may consider at the time of hearing thereon.

This motion is made after the conferences by the parties required by Local Rule 7-3 which took place on April 9, 2024 and April 15, 2024 and which were attended by withdrawing counsel for Plaintiffs.

Dated:  April 17, 2024            VALLE MAKOFF

                                 By: */s/ John M. Moscarino*
                                 JOHN M. MOSCARINO
                                 Attorneys for Defendants
                                 RICHARD M. PACHULSKI and
                                 PACHULSKI STANG ZIEHL &
                                 JONES LLP

# TABLE OF CONTENTS

Page

MEMORANDUM OF POINTS AND AUTHORITIES ............................................3

I.   OVERVIEW OF THE PENDING LITIGATION OUT OF
     WHICH THIS CASE ARISES ...................................................................3

     A.   After Rubin and Stiffelman Guarantee USRECH's $24.4
          Million Loan For The Glenroy Coachella Project, The
          Project Fails.......................................................................................3

     B.   USRECH's Writ Of Attachment, The Riverside County
          Superior Court's Denial Of ASR's Third Party Claims,
          and ASR's Pending Appeal. ..............................................................4

     C.   The Pending Stiffelman Case and Rubin's Dissatisfaction
          With The State Court's Discovery Rulings .......................................5

II.  THE ALLEGED JURISDICTIONAL BASIS FOR THE
     COMPLAINT .............................................................................................5

III. OVERVIEW OF THE COMPLAINT'S FACTUAL
     ALLEGATIONS .........................................................................................6

     A.   The Confusing Allegations About Pachulski's Alleged
          Business and Legal "Connections" To Plaintiffs...............................6

     B.   The October 2019 Communications Reflected In The
          Exhibits Incorporated Into The Complaint, Including The
          Communications In Which Rubin's Attorney Asserted
          That Pachulski Had A "Conflict" ......................................................7

     C.   The "Betrayal" Theory Rooted In Alleged Fiduciary
          Duties and Claiming Improper Use Of Unspecified
          "Confidential Information".............................................................. 10

     D.   The Alleged "Secret Agreements," Including April 21,
          2021 Settlement Agreement Detailed In the "Bad Acts"
          Section Of The Complaint .............................................................. 12

     E.   The Confusing "Grand Conspiracy" Allegations ............................ 13

     F.   The Complaint's Attempt To Shoehorn The Alleged
          Fiduciary Breaches Into RICO Claims ........................................... 13

     G.   The Vague Causation And Damage Allegations ............................. 14

IV.  PLAINTIFFS FAIL TO STATE A RICO CLAIM UPON WHICH
     RELIEF MAY BE GRANTED UNDER 18 U.S.C. § 1961(C).................. 15

     A.   Rubin's Complaint Is An Improper Shotgun Complaint................... 16

     B.   Plaintiffs' Complaint Fails To Allege A RICO Claim
          With Particularity........................................................................... 17

     C.   Because This Case Arises Out Of Pending State Court
          Litigation, This Court Must Construe RICO In A Manner
          That Does Not Burden Activity Falling Within The Scope
          Of The Petition Clause Of The First Amendment ........................... 18

     D.   Plaintiffs Have Not Alleged Any Cognizable RICO
          Predicate Acts ................................................................................ 19

# TABLE OF CONTENTS (Cont'd.)

Page

1.    A Breach Of Fiduciary Duty Is Not A Predicate Act Or Racketeering ............................................................... 19

2.    Litigation Related Activities Are Not Predicate Acts Of Racketeering ........................................................... 19

E.    Plaintiffs Have Not Sufficiently Alleged The Existence Of A RICO Enterprise ................................................ 20

F.    Plaintiffs Have Not Alleged That Pachulski Or PSZJ Conducted The Affairs Of A RICO Enterprise .................. 21

G.    Plaintiffs Have Not Alleged The Existence Of A RICO Injury That Was Proximately Caused By A Predicate Act ......... 21

V.    PLAINTIFFS FAIL TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED UNDER 18 U.S.C. § 1961(D) ........... 23

VI.    PLAINTIFFS' STATE LAW CLAIMS SHOULD BE DISMISSED FOR LACK OF CAUSATION ................................. 23

VII.    IN THE ALTERNATIVE, THIS COURT SHOULD REQUIRE PLAINTIFFS TO PROVIDE A MORE DEFINITE STATEMENT ........... 24

VIII.    IN THE ALTERNATIVE, THIS COURT SHOULD GRANT THE MOTION TO STRIKE ................................................ 24

IX.    THIS COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION ON THE SUBSTANTIALLY PREDOMINATING STATE LAW CLAIMS ........... 25

X.    LEAVE TO AMEND SHOULD BE DENIED AS FUTILE ........... 26

XI.    CONCLUSION ................................................................ 26

CERTIFICATE OF COMPLIANCE ............................................. 27

1

2

# TABLE OF AUTHORITIES

Page

3  **Cases**

4  Ashcroft v. Iqbal

5  556 U.S. 662 (2009)...................................................................15, 16

6  Avilez v. Garland
   69 F.4th 525 (9th Cir. 2023) ..............................................................15

7  Behette v. Saleeby

8  842 F.Supp. 657 (E.D.N.Y. 1994) ......................................................19

9  Bell Atl. Corp. v. Twombly
   550 U.S. 544 (2007)............................................................................15

10  California Bank & Trust v. Lawlor

11  222 Cal.App.4th 625 (2013) ...............................................................16

12  Chaset v. Fleer/Skybox Int'l., L.P.
    300 F.3d 1083 (9th Cir. 2002).............................................................26

13  Forro Precision, Inc. v. International Business Machines Corp.

14  673 F.2d 1045 (9th Cir. 1982)........................................................18, 22

15  General Motors v. FCA U.S., LLC
    44 F.4th 548 (6th Cir. 2022) ...............................................................23

16  Guerrero v. Haliburton Energy Services, Inc.

17  231 F.Supp.3d 797 (E.D. Cal. 2017) ..................................................24

18  Hemi Group, LLC v. City of New York, N.Y.
    559 U.S. 1 (2010)................................................................................21

19  Howard v. America Online, Inc.

20  208 F.3d 741 (9th Cir. 2000)...............................................................23

21  In re Facebook Inc. Securities Litigation
    87 F.4th 934 (9th Cir. 2023) ...............................................................17

22  Kim v. Kimm

23  884 F.3d 98 (2nd Cir. 2018)...........................................................19, 20

24  Langan v. Smith
    312 F.Supp.3d 201 (D.Mass. 2018) ...............................................19, 20

25  LaVay Corp. v. Dominion Fed. Sav. & Loan Ass'n.

26  830 F.2d 522 (4th Cir. 1987) ..............................................................19

27  Manion v. Freund
    967 F.2d 1183 (8th Cir. 1982).............................................................19

28

1

**TABLE OF AUTHORITIES (Cont'd)**

2

Page

3
4

Marcus v. ABC Signature Studios
 279 F.Supp.3d 1056 (C.D.Cal. 2017) ...................................................24

Mohebbi v. Khazen
 50 F.Supp.3d 1234 (N.D. Cal. 2014) ....................................................20

5
6
7

Molshi v. Kahn Winery
 381 F.Supp.2d 1209 (C.D.Cal. 2005) ...................................................25

8

Muskegan Hotels, LLC v. Patel
 986 F.3d 692 (7th Cir. 2021)................................................................21

9
10

Poulos v. Caesars World Inc.
 379 F.3d 654 (9th Cir. 2004)................................................................21

11

Rajaratnam v. Motley Rice, LLC
 449 F.Supp.3d 45, 72 ...........................................................................20

12
13

Reeves v. Ernst & Young
 507 U.S. 170 (1993).............................................................................21

14

Schnitzer v. Oppenheimer & Co., Inc.,
 633 F.Supp. 92 (D.Or. 1985) ...............................................................17

15
16

Sosa v. DIRECTV, Inc.
 437 F.3d 923 (9th Cir. 2006).................................................................18

17

Steele v. Hospital Corp. of America
 36 F.3d 69 (9th Cir. 1994).....................................................................23

18
19

T.D.S. Inc. v. Shelby Mot. Ins. Co.
 760 F.2d 1520 (11th Cir. 1985) ............................................................16

20

UMB Bank, N.A. v. Guerin
 89 F.4th 1047 (8th Cir. 2024) ...............................................................20

21
22

Walter v. Drayson
 496 F.Supp.2d 1162 (2007) ............................................................15, 16

23

Warner v. Tinder Inc.
 105 F.Supp.3d 1083 (C.D.Cal. 2015) ..................................................16

24
25

Weiland v. Palm Beach County Sheriff's Office
 792 F.3d 1313 (11th Cir. 2015) .......................................................16, 24

26
27
28

# TABLE OF AUTHORITIES (Cont'd)

<u>Page</u>

**Statutes**

18 U.S.C. § 1961(c) ........................................................................6, 13, 19

18 U.S.C. § 1961(d) ........................................................................6, 13, 23

28 U.S.C. § 1331 ...................................................................................5

28 U.S.C. § 1367(a) ..............................................................................25

28 U.S.C. § 1367(c) ..............................................................................25

California Code of Civil Procedure § 488.610 ...............................11, 22

California Code of Civil Procedure §488.620 ........................................22

Federal Rule of Civil Procedure 10(c) .....................................................7

Federal Rule of Civil Procedure 12(b)(6) .........................................24, 25

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2    This case should be dismissed because (a) Plaintiffs' RICO Claims

3    completely lack merit; (b) there is no proximate causation for the state law claims;

4    (c) the state court claims predominate and Plaintiffs are forum shopping.

5    **I.    OVERVIEW OF THE PENDING LITIGATION OUT OF WHICH**

6          **THIS CASE ARISES**

7          Plaintiffs' rambling Complaint jumbles together grievances about long-

8    pending state court litigation matters arising out of the failed Glenroy-Coachella

9    real estate project in which Plaintiff Stuart Rubin ("Rubin") and Defendant Gary

10   Stiffelman ("Stiffelman") were involved.    Rubin's grievances arise from the

11   following litigation related activities:   (a) discovery requests, depositions, and

12   motions; (b) meet and confers; (c) the submission of declarations to Courts; (d)

13   participation in mediation; (e) settlement negotiations; (f) settlement agreements;

14   and (g) court orders under a writ of attachment.   (See, e.g., Complaint, ¶¶ 7, 8, 9,

15   65, 66, 72, 79, 80, 85, 86, 87, 88, 89, 90, 91, 94, 101, 102 and 103.)

16   **A.    After Rubin and Stiffelman Guarantee USRECH's $24.4 Million**

17         **Loan For The Glenroy Coachella Project, The Project Fails.**

18         Rubin and Stiffelman jointly agreed to "develop a hotel/resort in Coachella,

19   California."   Both Rubin and Stiffelman "personally guaranteed aspects of this

20   project." (Complaint ¶ 52.) The project "ran into problems," including "significant

21   litigation pressures from multiple angles."  (Complaint ¶ 12.)

22         Defendant U.S. Real Estate Credit Holdings III-A, LP ("USRECH") loaned

23   Rubin and Stiffelman $24.4 million.   (Complaint ¶ 55 and 56.)   There was a

24   "shortfall" on the loan – a result of the project's unspecified "problems."

25   (Complaint ¶ 14.)

26   / / /

27   / / /

28   / / /

3

**B.**     **USRECH's Writ Of Attachment, The Riverside County Superior**
**Court's Denial Of ASR's Third Party Claims, and ASR's**
**Pending Appeal.**

USRECH sued Rubin and Stiffelman "in their capacity as personal guarantors under the relevant project documents" in Riverside County ("the USRECH Case"). (Complaint ¶ 59.) The following transpired in the USRECH Case:

- The Court issued an April 7, 2022 Writ of Attachment to the Los Angeles County Sheriff. (RJN, Ex. B at A-1.)

- A process server served defendant Richard Pachulski ("Pachulski"), as the agent for service of process for Rubin-Pachulski Properties LP ("RPP"), with the Writ of Attachment. (RJN, Ex. B at B-1.)

- Scott Dew ("Dew") signed RPP's Memorandum of Garnishee, explaining that RPP was not delivering property because USRECH and Rubin had made "conflicting claims" of entitlement to a $62,437.50 distribution and that RPP would hold all distributions "pending a further order from this Court as to whom should be paid following the levy of the Writ of Attachment herein." (RJN, Ex. A at Ex. 1; Ex. B at Ex. C.)

- The Court denied ASR's Third Party Claim on August 4, 2022, ordering that RPP deposit all funds it was then holding and all future distributions payable to ASR with the Sheriff to be held in trust pending a judgment in the USRECH Case. (RJN, Ex. B at Ex. A.)

- The California Court of Appeal affirmed the trial court's decision to grant a right to attach order in the USRECH Case on September 29, 2023. (RJN, Ex. B at Ex. E.)

1
2
3

- ASR filed a Petition for Hearing On Second Third Party Claim For Ownership And Superior Right Of Possession in the USRECH Case on November 9, 2023.  (RJN, Ex. C.)

4   When Plaintiffs filed this case on December 1, 2023, ASR's Second Third
5   Party Claim was pending.[1]  Ultimately, the Court entered judgment denying the
6   Third Party Claim.  (RJN, Ex. D.)  ASR has now appealed, contending that the trial
7   court erroneously disregarded applicable law.

8   **C.   The Pending Stiffelman Case and Rubin's Dissatisfaction With**
9        **The State Court's Discovery Rulings**

10   Stiffelman filed a Los Angeles County Superior Court action against Rubin
11   ("the Stiffelman Case").  Rubin was frustrated in his "efforts to conduct discovery"
12   in the Stiffelman Case.  (Complaint ¶ 8.)  Rubin claims that "further efforts outside
13   this RICO Complaint will likely fail to generate needed discovery."  (Complaint
14   ¶ 66.)  He bizarrely alleges that "[w]hat is clear, however, is that Stiffelman will
15   continue to oppose Rubin's discovery efforts on relevancy and other grounds and
16   that further efforts outside this RICO complaint will likely fail to generate the
17   needed discovery." (Complaint ¶ 66.)

18   Plaintiffs sought "time and time again" to obtain discovery.  In meet and
19   confer communications, PSZJ and Pachulski have objected to "the relevance of the
20   communications at issue here to the dispute in that pending litigation."  (Complaint
21   ¶¶ 89, 91.)  Plaintiffs thus filed this case at least, in part, to obtain discovery they
22   could not get in state court.

23   **II.   THE ALLEGED JURISDICTIONAL BASIS FOR THE COMPLAINT**

24   Jurisdiction is alleged to exists under 28 U.S.C. § 1331 because the case
25   "involves questions of federal law."  (Complaint ¶ 17.)  The Complaint's admitted

26
27

28

[1] Rudy Perrino and Kutak Rock LLP filed the Second Third Party Claim just a month before they filed this case.  They are now withdrawing from this case for ethical conflicts.

gravamen is the alleged "betrayal of a man and his family by two lifelong friends" alleged to be lawyers and fiduciaries with "unique access to Plaintiff Stuart Rubin's personal and, importantly, financial life." (Complaint ¶¶ 1, 2.)  The theory is that Rubin's two lifelong family friends "used the litigation as an opportunity to betray him" and did so by using "confidential information about Plaintiffs gained in their capacity as counsel and/or fiduciaries, all to the Plaintiffs' detriment, and for their own benefit." (Complaint ¶¶ 12, 16.)

Only two claims could conceivably justify the invocation of federal jurisdiction:  (1) a RICO claim under 18 U.S.C. § 1961(c); and (2) a RICO claim under 18 U.S.C. § 1961(d).  With that jurisdictional basis in mind, we turn to the allegations of Plaintiffs' rambling Complaint.

## III.  OVERVIEW OF THE COMPLAINT'S FACTUAL ALLEGATIONS

The utterly incoherent Complaint is not organized chronologically or in any other logical fashion.  It aggregates argumentative conclusions unsupported by factual allegations.  Rubin and ASR, whose involvement in attachment proceedings in the USRECH Case is described above, are Plaintiffs.

There are four more Plaintiffs:  (a) Dusty Berke, as Trustee of the Stuart Rubin Children's Trust ("SRCT"); (b) Annette and Stuart Rubin, as Co-Trustees and Annette Rubin Family Trust ("SARFT"); (c) Force Rubin, LLC ("Force Rubin"); and (d) Force Rubin 2, LLC ("Force Rubin 2").  (Complaint ¶ 22.)

### A.  The Confusing Allegations About Pachulski's Alleged Business and Legal "Connections" To Plaintiffs

Pachulski is an attorney who is a partner in PSZJ, a law firm doing business in California. (Complaint ¶ 23.)  Pachulski allegedly acted "by and through PSZJ." (Complaint ¶ 25.)  Paragraphs 35 to 43 vaguely describe Plaintiffs' alleged "connections" to Pachulski.  The Complaint states that RPP is a business in which both ASR and Pachulski are partners, but does not identify the other RPP partners by name.  (Complaint ¶¶ 37-38.)

The Complaint incorporates an email in which Pachulski unequivocally states that he has "never had Mr. Rubin as a client." (Complaint, Ex. R at p. 134 of 165.) It alleges that (1) Pachulski handled "sensitive issues" for "L&R Group"; (2) that L&R Group is an entity "in which Rubin and/or the Rubin entities hold interests"; (3) that Pachulski "was engaged by L&R as an attorney for such work" (Complaint ¶ 39); and (4) that Pachulski represented "certain L&R Group elements"; (Complaint ¶ 41).

The Complaint assumes that the work for L&R somehow caused Pachulski to have broad fiduciary duties to each of the Plaintiffs. Rather than alleging Pachulski had an attorney-client relationship with each of the Plaintiffs, the Complaint alleges that Pachulski was a "paid attorney and fiduciary for *Rubin's interests*." (Complaint ¶ 36.)

The Complaint describes Pachulski as a "successor trustee" of SRCT "but not for long" – an acknowledgement that successor trustees can always change and have no role unless and until they agree to serve when the existing trustee resigns or dies. (Complaint ¶ 42.) It also alleges that Pachulski jointly owns La Cienega with Rubin, individually and through his entities, "with others." (Complaint ¶ 43.)

**B.** **The October 2019 Communications Reflected In The Exhibits Incorporated Into The Complaint, Including The Communications In Which Rubin's Attorney Asserted That Pachulski Had A "Conflict"**

The Complaint's exhibits, incorporated into Plaintiffs' pleading under Federal Rule of Civil Procedure 10(c), show that Rubin knew that Pachulski was representing Stiffelman in 2019, that Rubin participated in 2019 meetings in which Rubin was represented by his own independent counsel, and that Rubin's first claimed that Pachulski had a "conflict of interest" in 2019, more than four years before the Complaint was filed.

/ / /

7

On October 7, 2019, attorney Michael Tuchin ("Tuchin") emailed Ana Tenzer ("Tenzer") re "Coachella," asking her if she had heard back from Defendant Calmwater Asset Management, LLC ("Calmwater"). He informed her that "[t]he company and guarantors would very much like to make this work." (Complaint, Ex. Q at p. 131-65.)[2]   After Tenzer responded, Tuchin advised Rubin, Stiffelman and Pachulski about his efforts to set up a meeting with Calmwater.

Pachulski added attorney Ron Bender to the email chain, explaining that Bender "will be representing Stuart [Rubin] at the meeting." (Complaint, Ex. Q at p. 129 or 165.)  Pachulski then stated "I do want to make it very clear that my primary role at the meeting will be to get Gary off his guarantee. Saving the project makes no sense based on where things are at, and settling the guarantees is our best shot at this point." (Complaint, Ex. Q at pp. 129-30 of 165.)  Thus, as of October 7, 2019, both Rubin and his own attorney were notified that (a) Pachulski represented Stiffelman;  (b) Pachulski believed that saving the project made no sense; and (c) Pachulski's objective was to eliminate Stifelman's guarantee.

Tuchin requested that someone add Elliot Lander ("Lander") to the email chain.[3]  Pachulski then did so.  Lander confirmed that he would seek counsel and asked Pachulski who he was representing. (Id. at 128 of 165.)  Pachulski responded "I am representing Gary [Stiffelman], Ron Bender is representing Stuart [Rubin] and Michael Tuchin is representing the Coachella entity." (Id.)

On October 11, 2019, Pachulski advised Bender that Stiffelman's litigation counsel was keeping him in the loop because Stiffelman's proposed Complaint against Rubin "may affect any guarantee or restructuring." (Ex. S at p. 140 of 165.)  Pachulski memorialized that Stiffelman believed that "he was defrauded and Stuart

---

[2] Calmwater and USRECH are alleged to be alter egos of each other. (Complaint ¶ 29.)  Case.  The Complaint alleges that Calmwater's right to bring the USRECH Case through USRECH is "a separate issue to be litigated in a different forum," presumably the Riverside County Superior Court. (Complaint ¶ 61.)

[3] Lander was also involved in the Glenroy Coachella project and is a defendant in the USRECH Case.  He is not a party to this case.

completely mismanaged the project." (Ex. S at p. 140 or 165.)  Pachulski reported that he would begin negotiating with the banks and would reach out to Bank Hapoalim if Rubin did not provide relevant contact information.  (Id.)

On October 14, 2019, Pachulski, as counsel for Stiffelman, sent two emails addressed to:  (a) Bender, as counsel for Rubin; and (b) Scott Eisner, an accountant. (Complaint, Ex. R at pp. 135-137 of 165.)  He noted that "Stuart continuing to blow Gary off" was not helping his efforts to deter Stiffelman from suing Rubin.  He provided a "summary of my discussion with Scott" and described "the minimum I need to convince Gary not to file the complaint right away."  (Id. at 136.)  In a second email, Pachulski sought confirmation that Rubin would not be cooperating, as requested.  (Id. at 135-136 of 165.)

Stacy W. Harrison ("Harrison") of Orrick Herrington & Sutcliffe LLP then sent an email to Pachulski stating that "we will not be responding to your email and will instead be communicating directly with Mr. Stiffelman's litigation counsel on this subject."  (Id. at 134-35 of 165.)  Harrison noted that Pachulski had been "partners with Mr. Rubin for years in your RP entity," that Pachulski's legal representation of Stiffelman "threatens to breach your fiduciary duties and other obligations you have to Mr. Rubin *as his partner*."  (Id. at 135 of 165.)  Harrison did not refer to any alleged attorney-client relationship between Pachulski and Rubin.

Rather, relying solely on Pachulski's relationship as Rubin's *business partner*, Harrison stated that a "conflict of interest" mandated that Pachulski withdraw as counsel for Stiffelman.  (Ex. R to Complaint at pp. 134-35 of 165.) Pachulski responded to Harrison's email, stating that he knew of no conflict and emphasizing that he "never had Mr. Rubin as a client."  (Id. at p. 134 of 165.)  The Stiffelman case was filed on October 29, 2019, fifteen days later.

/ / /

/ / /

C.   **The "Betrayal" Theory Rooted In Alleged Fiduciary Duties and Claiming Improper Use Of Unspecified "Confidential Information"**

The Complaint's first numbered paragraph states that "[t]his action concerns the betrayal of a man and his family by two lifelong family friends." (Complaint ¶ 1.)   Pachulski allegedly owed fiduciary duties to Plaintiffs and "numerous entities" that would be "impacted by adverse developments in any action against Rubin" and breached them by representing Stiffelman "whose interests were adverse to Mr. Rubin and the entities to which Mr. Pachulski owed the fiduciary duty."   (Complaint ¶¶ 109, 110.)   The Complaint states that "it would be impossible" for Pachulski to act as Stiffelman's attorney "in a setting that would make him adversarial to Rubin." (Complaint ¶ 67.)[4]

Pachulski allegedly wanted to push Rubin towards personal bankruptcy and force Rubin's assets into a fire sale, and then buy them at a fraction of their actual value. (Complaint ¶ 68.)  The Stiffelman representation was to "help shape the fall-out in such a way as to harm Stuart Rubin and, more broadly, Plaintiffs to his own pecuniary benefit." (Complaint ¶¶ 12, 70.)[5]

/ / /

---

[4] The Complaint concedes that Pachulski was negotiating to get Stiffelman off his guarantees. (Complaint ¶ 63.)  The Complaint appears to assume that negotiating to eliminate the guarantees of Stiffelman would not be adverse to Rubin, even though Rubin's joint liability under the guarantee would persist after any extinguishment of Stiffelman's guarantee and be reduced only by the amount Stiffelman paid.  This assumption is utterly inconsistent with the allegation that Pachulski breached his fiduciary duty "by representing Stiffelman, *whose interests were adverse to Mr. Rubin*." (Complaint ¶ 110.)  The Complaint also inconsistently alleges that "Pachulski and Stiffelman actively concealed that Pachulski was actually representing Stiffelman adversely to Plaintiffs' interests. His adversity was not known and could not have been known until January 2023, at the earliest." (Complaint ¶ 63.)

[5] While the Complaint suggests that Pachulski had personal, financial motivations, it identifies *different* motivations for Stiffelman and USRECH.  Stifelman wanted "to protect what remains of his assets from liquidation." (Complaint ¶ 13.)  USRECH wanted to recoup the entire shortfall on the $24.4 million loan for the Glenroy-Coachella project.  (Complaint ¶ 14.)

According to the Complaint, Pachulski wanted to force Rubin to file bankruptcy and/or to lose his ownership interests in "various enterprises" by sharing "confidential and privileged information" so Calmwater/USRECH could "seize Rubin's real estate interests and re-sell those same interests to Pachulski at a steep discount. *If successful*, this will effectively force Rubin to cede ownership and the proceeds of a lifetime of work to Pachulski's benefit." (Complaint ¶ 77.) The Complaint speculates that Pachulski is continuing to share unspecified "confidential information" with Calmwater/USRECH. (Complaint ¶ 64.)

The Complaint vaguely claims that Pachulski somehow "revealed" unspecified "information" Pachulski knew because of "his work as a fiduciary and counsel for various entities associated with Stuart Rubin." (Complaint ¶ 97.) It claims that Pachulski had an obligation to "maintain confidentiality of *certain information*." (Complaint ¶ 7.) Pachulski allegedly revealed what Plaintiffs describe as "confidential" or "private" information "[t]o aid and shape Calmwater/USRECH collection efforts." (Complaint ¶ 97.)

Pachulski allegedly encouraged Calmwater/USRECH to pursue an attachment that was "unlawful." (Complaint ¶ 98.) On September 29, 2023, before this case was filed, the issuance of the right to attach order had been affirmed. (RJN, Ex. B at Ex. E.) Thus, the "unlawful attachment" claim is utterly baseless.

Pachulski allegedly used RPP to deprive ASR of partnership distributions "despite the lack of a formal court order requiring it to do so." (Complaint ¶ 93.) The Complaint thus places at issue (a) the Sheriff's service of the Writ of Attachment on RPP; and (b) RPP's service of the Memorandum of Garnishee pursuant to California Code of Civil Procedure § 488.610.

The Memorandum of Garnishee gave Rubin and ASR the ability to litigate their attachment related issues. (RJN, Ex. B at Ex. B-1.) The Court ultimately ordered RPP remit money to the L.A. County Sheriff. It later rejected Rubin's Second Third Party Claim. (RJN, Ex. D.)

In essence, the Complaint seeks to impose liability on Pachulski for causing RPP to issue a Memorandum of Garnishee preserving Rubin and ASR's ability to raise their legal arguments before the Riverside County Superior Court.[6]

**D.    The Alleged "Secret Agreements," Including April 21, 2021 Settlement Agreement Detailed In the "Bad Acts" Section Of The Complaint**

The Complaint suggests Plaintiffs' interests were somehow compromised by what it characterizes as secret agreements. While the complaint refers to a "Secret 2019 Agreement," it also refers to "meet and confer" discussions (in the Stiffelman Case) that made it "unclear" when that agreement arose. (Complaint ¶¶ 64 and 66.)

The Complaint references a document described as "the Secret 2021 Settlement." (Complaint ¶ 79.) Stiffelman was to cause an electronic payment to be made in the amount of $3,100,000 out of the escrow sale of the real property located at 383 Beverly Glen Blvd., Los Angeles, CA 90024 and to execute a letter to the escrow agent (a signed version of which is attached). (Exhibit V at pp. 149 to 157 of 165.)

The Complaint concedes that Plaintiffs become aware of the "Secret 2021 Settlement" when it was released in "early 2023" through "discovery propounded on Pachulski's office" in an unidentified action. (Complaint ¶ 79.) The Complaint does not state whether Plaintiffs' knowledge of the "Secret 2021 Settlement" will ultimately affect the outcome of the USRECH Case or the Stiffelman Case. Nor

///

---

[6] Pachulski is alleged to have used "entities controlled by Pachulski, but in which Rubin holds an interest in – like RPD – to divert funds away from Rubin." (Complaint ¶ 71.) This includes coordinating "the removal of Stuart [Rubin] as managing member of RP Realty Partners." (Complaint ¶ 75.) Pachulski allegedly "began sidelining Rubin from RPP" and did so by "arguing that Rubin would need to convert his interests in La Cienega from general partner to limited partner, with no voting rights, on the ruse that it would avoid a lender background check." (Complaint ¶ 73.)

does it allege any impediment to Plaintiffs' use of the "Secret 2021 Settlement" in the pending litigation.

### E. The Confusing "Grand Conspiracy" Allegations

Paragraph 9 of the Complaint alleges that there is a "grand conspiracy." (Complaint ¶ 9.)  The Third Claim For Relief alleges a "Civil Conspiracy" and the Fifth Claim For Relief alleges a RICO conspiracy under 18 U.S.C. § 1961(d). These appear to be two different conspiracies, only one of which allegedly involves Greenberg Traurig.  (Complaint ¶131.)

It is not clear if the alleged conspiracies arose at different times or if both of them involve what Complaint refers to as "clandestine agreements" and "secret" agreements.  (Complaint ¶ 5, 10.)

The so-called clandestine agreements were allegedly designed "to facilitate USRECH/Calmwater's ability to obtain a pre-verdict writ of attachment essentially seizing control of all cash flow, distributions and sale proceeds from various revenue sources belonging to Plaintiffs."  (Complaint ¶ 5.)  In utterly speculative language, the Complaint states that "[i]t is *not a big leap of logic* to *infer* that the private financial information requested by Pachulski *was going to be used* to advance the goals of the *grand conspiracy* described herein."  (Complaint at ¶ 9.)

The Complaint also alleges that "Defendants began an enterprise," but contains a parenthetical noting that "this is where the use of a second enterprise may be confusing."  (Complaint ¶ 84.)  We agree.

### F. The Complaint's Attempt To Shoehorn The Alleged Fiduciary Breaches Into RICO Claims

Preliminarily, Paragraph 139, the first sentence of the RICO claim under 18 U.S.C. § 1961(c), expressly incorporates "the allegations in *each of the foregoing Paragraphs*."  (Complaint ¶ 139.)  Thus, breach of fiduciary duty is part of the § 1961(c) claim.  (Complaint ¶¶ 108-122.)

/ / /

13

The Complaint alleges that (a) "Defendants intentionally formed and participated in a scheme of artifice to defraud Plaintiffs," as detailed in "the above referenced facts"; and (b) the Defendants "together constitute an enterprise" which "was made up of each defendant and was an association in fact, and the threat is open-ended and continuous and continues to this day." (Complaint ¶¶ 141, 155.)

The Complaint alleges that the Defendants conducted the affairs of the enterprise through a "pattern of racketeering activity."   (Complaint ¶ 143.) Plaintiffs "are informed and believe and thereon allege" that the Defendants engaged in wire fraud between April of 2016 and July of 2023. (Complaint ¶¶ 145, 146.)

The RICO conspiracy claim expressly incorporates the preceding 158 paragraphs of the Complaint and claims that all of the Defendants "violated § 1962(d) by conspiring to violate 18 U.S.C. § 1962(c)." (Complaint ¶ 161.) The "object" of the conspiracy was allegedly "to conduct or participate in, directly or indirectly, the conduct of the affairs of the enterprise described previously" through a pattern of racketeering activity." (Id.)

The Defendants allegedly "conspired with enterprise participants to interfere with Plaintiffs' business engagements, *and success in the Calmwater/USRECH action*, and to create an opportunity for Pachulski to acquire Rubin's interest in commonly owned enterprises at a substantial discount." (Id.)

### G.   The Vague Causation And Damage Allegations

While damage claims are asserted by six different Plaintiffs, the Complaint does not identify individualized harm on a Plaintiff by Plaintiff basis, stating only that "[t]he damages that Pachulski and Stiffelman have caused are extraordinary." It likewise suggests, in a conclusory fashion, that "[t]he aggregate loss of value to Plaintiffs has been in the tens of millions of dollars." (Complaint ¶ 106.)

Paragraph 156 expressly uses RICO's "by reason of" language to support the § 1961(c) claim.   Plaintiffs allege that they have been injured "by reason of

Defendants' use of confidential information obtained in violation of fiduciary duties owed to Plaintiffs, causing significant financial damages including interference with Plaintiffs' business affairs and personal family trusts, including SRCT and SARFT." (Complaint ¶ 156.) Thus, the alleged injuries are irrevocably tied to alleged breaches of fiduciary duties.

Plaintiffs claim to have been "deprived of income and property." The injuries were "proximately caused" by "overt acts taken in furtherance of their racketeering activity." (Complaint ¶ 157.) The damage claim for RICO conspiracy claim adds no more, merely stating that "Plaintiffs were injured "in their business and property interests as set forth more fully above." (Complaint ¶ 164.)

## IV.   PLAINTIFFS FAIL TO STATE A RICO CLAIM UPON WHICH RELIEF MAY BE GRANTED UNDER 18 U.S.C. § 1961(C)

To survive a motion to dismiss, the Complaint must state a claim that is plausible on its face. See, Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The factual allegations "must be enough to raise a right to relief above the speculative level." Id. at 555. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Twombly, 550 U.S. at 556). Legal conclusions "must be supported by factual allegations." Id. at 679.

This Court may consider documents attached to the Complaint, documents incorporated by reference into the Complaint, and matters subject to judicial notice. Walter v. Drayson, 496 F.Supp.2d 1162, 1165 (D. Hawaii 2007). The Court can take judicial notice of "proceedings in other courts both within and without the federal system, if those proceedings have a direct relation to matters at issue." Avilez v. Garland, 69 F.4th 525, 527 n. 3 (9th Cir. 2023) (Quoting Trigueros v. Adams, 658 F.2d 983, 987 (9th Cir. 2011)).

/ / /

The court "need not, however, accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations." <u>Warner v. Tinder Inc.</u>, 105 F.Supp.3d 1083, 1090 (C.D.Cal. 2015). <u>See also</u>, <u>Walter</u>, 469 F.Supp.2d at 1166 (RICO claim failed where based on "conclusory allegations of law, unwarranted deductions of fact, and unreasonable inferences").

Whether the facts alleged plausibly give rise to an entitlement to relief is "a context specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Iqbal</u>, 556 U.S. at 679. Where, the alleged harm is a lender's acquisition of "confidential information" about a guarantor, the "common sense" to be employed in assessing plausibility necessarily includes recognizing that "[t]here is nothing unusual about a bank asking for financial information from a person or entity that is guaranteeing a loan." <u>California Bank & Trust v. Lawlor</u>, 222 Cal.App.4th 625, 640 (2013).

## A.   <u>Rubin's Complaint Is An Improper Shotgun Complaint</u>

A Plaintiff is required to "present his claims discretely and succinctly." <u>Weiland v. Palm Beach County Sheriff's Office</u>, 792 F.3d 1313, 1320 (11th Cir. 2015) (<u>Quoting</u>, <u>T.D.S. Inc. v. Shelby Mot. Ins. Co.</u>, 760 F.2d 1520, 1544 n. 14 (11th Cir. 1985)).

Pleadings which "fail to one degree or another, to give defendants adequate notice of the claims against them and the grounds upon which each claim rests" are known as "shotgun pleadings." <u>Id</u>. at 1323. The most common form of "shotgun pleading" is a multi-count complaint in which each count adopts allegations in all preceding counts, "causing each successive court to carry all that came before and the last court to be a combination of the entire complaint." <u>Id</u>. at 1321.

Here, both RICO claims expressly incorporate the allegations of each paragraph that precede them. (Complaint ¶ 139 and 159.) Plaintiffs' complaint is a classic shotgun complaint.

/ / /

**B.**  **Plaintiffs' Complaint Fails To Allege A RICO Claim With Particularity**

Because Plaintiffs allege that Pachulski and PSZJ committed wire fraud, they must plead their RICO claim with particularity.  A RICO plaintiff alleging mail fraud must meet a higher pleading standard because "RICO's *in terrorem* effect is potent, in that a RICO defendant faces the unsavory label 'racketeer' as well as the risk of triple damages."  Schnitzer v. Oppenheimer & Co., Inc., 633 F.Supp. 92, 97 (D.Or. 1985).  RICO claims place the professional reputations of the defendants at risk.  Id.

A defendant is entitled to notice of the "particular misconduct" alleged to constitute the fraud charged.  In re Facebook Inc. Securities Litigation, 87 F.4th 934, 947 (9th Cir. 2023).  Here, the alleged scheme to defraud is generally described as a plan to disclose "personal and privileged information" belonging to Plaintiffs to "facilitate" USRECH's ability to obtain a Writ of Attachment.  The pleading does not identify information allegedly disclosed to USRECH or explain how that information aided USRECH in proving the probable validity of its claim.

The Complaint is completely silent on whether, consistent with standard lending practices, Rubin provided financial information to USRECH before guaranteeing  the $24.4 million USRECH loan.  It simply does not confront the lender's familiarity with Rubin's finances.   Rather, the Complaint merely speculates that is "*not a big leap of logic to infer*" that Pachulski would use what it describes as "*private financial information*" to further the goals of a "*grand conspiracy*."  (Complaint ¶ 9.)

Plaintiffs' allegations leave the following questions unanswered:  (1) what "private" or "confidential" information do Plaintiffs attempt to place at issue?; (b) is there any reason to believe that the "private" or "confidential" information was not already known to USRECH?; (c) how was this "private" information provided to USRECH?; (d) when was this information provided to USRECH?; (e) by what

means was this information provided?; and (f) how did the alleged transmission of this "confidential" information alter USRECH's litigation plan for collecting upon the Rubin guarantee?   Rule 9(b) requires that Plaintiffs provide the missing information so that Pachulski and PSZJ are notified about what is at issue and can meaningfully respond to the charge that they are "racketeers."

C. **Because This Case Arises Out Of Pending State Court Litigation, This Court Must Construe RICO In A Manner That Does Not Burden Activity Falling Within The Scope Of The Petition Clause Of The First Amendment**

The Complaint arises out of communications in the USRECH Case and the Stiffelman Case.  The Noerr-Pennington doctrine, derived from the Petition Clause in the First Amendment, provides that "those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct."  Sosa v. DIRECTV, Inc., 437 F.3d 923, 929 (9th Cir. 2006).

Sosa requires that the RICO statute and the mail fraud and wire fraud statutes be construed "so as to avoid burdens on activities failing within the scope of the Petition Clause of the First Amendment."  Id. at 942.  Permissible petitioning activities include "citizen communications with police."  Forro Precision, Inc. v. International Business Machines Corp., 673 F.2d 1045, 1060 (9th Cir. 1982).

Where, as here, a plaintiff alleges a RICO claim based on predicate acts of wire fraud, the claim cannot burden petitioning activity, including burdening "communications between private parties" that are "sufficiently related to petitioning activity."  437 F.3d at 935.

The Sosa Court concluded that RICO predicate acts cannot be based on a prelitigation demand to settle a legal claim that was not a sham.  The logic and reasoning of Sosa compels an interpretation of the wire fraud statute that does not burden first amended activities related to the resolution of the conflicting claims of

/ / /

USRECH and ASR to the RPP partnership distributions.  Those communications included the Memorandum of Garnishee.

### D.   Plaintiffs Have Not Alleged Any Cognizable RICO Predicate Acts

There are two separate and different reasons why Plaintiffs have not pled any cognizable predicate acts of wire fraud:  (1) a breach of fiduciary duty is not a predicate act; and (2) litigation related activities are not predicate acts.

### 1.   A Breach Of Fiduciary Duty Is Not A Predicate Act Or Racketeering

The 18 U.S.C. § 1961(c) claim incorporates all prior allegations stating that Pachulski breached his fiduciary duties by (a) representing Stiffelman; and (b) disclosing unspecified "confidential information."  (Complaint ¶ 110.)

Simply put, a breach of fiduciary duty "should not be pleaded in a RICO claim as part of a pattern of racketeering acts because it is not specified 'racketeering activity' under 18 U.S.C. § 1961."  Behette v. Saleeby, 842 F.Supp. 657, 661 (E.D.N.Y. 1994) citing Manion v. Freund, 967 F.2d 1183, 1186 (8ᵗʰ Cir. 1982).  See also, LaVay Corp. v. Dominion Fed. Sav. & Loan Ass'n., 830 F.2d 522, 529 (4th Cir. 1987).

### 2.   Litigation Related Activities Are Not Predicate Acts Of Racketeering

Allegations of "frivolous, fraudulent, or baseless litigation activities – without more – cannot constitute a RICO predicate act."  Kim v. Kimm, 884 F.3d 98, 104 (2ⁿᵈ Cir. 2018).  See also, Langan v. Smith, 312 F.Supp.3d 201, 206 (D.Mass. 2018) ("courts are typically skeptical of attempts to fashion fraud-based RICO claims out of litigation activities.")

Public policy supports this general rule.  Any other rule would (a) inundate the federal courts with retaliatory RICO cases arising out of litigation activities; (b) unreasonably call into question matters already decided in state court litigation; and

(c) chill the activities of litigants and lawyers by making them fearful that their litigation activities could lead to drastic litigation liability.  Kim, 884 F.3d at 104.

The alleged litigation related activities, including communications with the Sheriff's Office about the USRECH levy, simply do not rise to the level of wire fraud.   See, Langan, 312 F.Supp.3d at 207 (No predicate acts arising out of "discussions among attorneys; service of documents; an attorney's notice of appearance; and an attorney's litigation-related communications").  See also, UMB Bank, N.A. v. Guerin, 89 F.4th 1047, 1055 (8th Cir. 2024) (Applying general rule while describing principles of finality that animate our legal system and noting risk of endless cycle of follow on RICO litigation); Rajaratnam v. Motley Rice, LLC, 449 F.Supp.3d 45, 72 (Litigation activities did not constitute predicate acts of mail fraud and wire fraud.  Civil RICO is not "appropriate mechanism" for dealing with false statements in court filings; Rule 11 sanctions, motions to preclude or strike testimony, and 60(b) motions for fraud on the court are more appropriate measures for redress.)

**E.**   **Plaintiffs Have Not Sufficiently Alleged The Existence Of A RICO Enterprise**

Plaintiffs claim that they are "informed and believe" that "Defendants together constitute an enterprise" which "functioned as an ongoing organization and continuing unit." (Complaint ¶ 142.)

These mere conclusions provide no information whatsoever about (a) the form or structure of the enterprise; (b) the ways that decisions are made in this enterprise; (c) hierarchy of the enterprise; or (d) how Pachulski or PSZJ engaged in the enterprise.  As such, the enterprise allegations are insufficient.  See, Mohebbi v. Khazen, 50 F.Supp.3d 1234, 1254 (N.D. Cal. 2014).

/ / /

/ / /

/ / /

**F.     Plaintiffs Have Not Alleged That Pachulski Or PSZJ Conducted The Affairs Of A RICO Enterprise**

Pachulski's alleged role in the enterprise is not defined.  In <u>Reeves v. Ernst & Young</u>, 507 U.S. 170, 185, 113 S.Ct. 1163, 122 L.Ed.2d 575 (1993), the Supreme Court held that a RICO defendant must participate in the operation or management of the enterprise itself.  The Complaint does not allege that Pachulski participated in the operation or management of the enterprise.  <u>See also</u>, <u>Muskegan Hotels, LLC v. Patel</u>, 986 F.3d 692, 699 (7th Cir. 2021) ("a law firm's provision of legal services for a client – even with knowledge of the client's unlawful activities – does not alone demonstrate operation or management of a RICO enterprise.")

**G.     Plaintiffs Have Not Alleged The Existence Of A RICO Injury That Was Proximately Caused By A Predicate Act**

"Causation lies at the heart of a civil RICO claim."  <u>Poulos v. Caesars World Inc.</u>, 379 F.3d 654, 664 (9th Cir. 2004).  A plaintiff must show that the alleged misconduct "proximately caused the injury."  <u>Id</u>.  The Plaintiff must "connect the dots" in order to show "an obvious link  between the alleged misconduct and harm."  <u>Id</u>. at 665.  A link that is too remote, purely contingent, or indirect is insufficient.  <u>Hemi Group, LLC v. City of New York, N.Y.</u>, 559 U.S. 1, 9, 130 S.Ct. 983, 175 L.Ed.2d 943 (2010).

First and foremost, the Complaint does not identify specific individual injuries suffered by each specific Plaintiff.  ASR is the only Plaintiff whose alleged injury is described.  The claims of Rubin, SRCT, SARFT, Force Rubin, and Force Rubin 2 thus fail.

The only claimed ASR "injury" is an alleged deprivation of partnership distributions which Rubin attributes to the lack of a court order requiring that RPP withhold the partnership distributions. (Complaint ¶ 93.)  ASR's claim that it failed to receive partnership distributions is indisputably tied to (a) USRECH's initiation of legal process by having the L.A. County Sheriff levy on the RPP partnership

disbursements; and (b) RPP's response to the L.A. County Sheriff's service of the Writ of Attachment and Memorandum of Garnishee.  The judicially noticeable facts are that:  (a) USRECH obtained a writ of attachment (RJN, Ex. B at ex. A-1); (b) RPP provided the L.A. County Sheriff with a Memorandum of Garnishee with notice of competing claims of USRECH and Rubin (RJN, Ex. B at B-1); and (c) ASR initiated proceedings in the Riverside County Superior Court to present both its First Third Party Claim and to assert its Second Third Party Claim (RJN, Exs. A and C); (d) the Court decided that RPP should pay the disputed funds to the L.A. County Sheriff.  (RJN, Ex. D.)

The one and only theory of causation and damages articulated in the Complaint necessarily assumes that Pachulski somehow engaged in an illegal act by causing RPP partnership distributions to be withheld from ASR in connection with RPP's submission of the Memorandum of Garnishee to the Sheriff pursuant to California Code of Civil Procedure § 488.610.

RPP's Memorandum of Garnishee acknowledging the dispute between two competing claimants, USRECH and ASR, essentially mirrored the process used in an interpleader proceeding.  RPP's communication with law enforcement on a state mandated form constitutes protected First Amendment petitioning activity under Noerr-Pennington.  See, Forro Precision, 673 F.2d at 1060.

Consistent with Noerr-Pennington, California Code of Civil Procedure §488.620 expressly states that "[a] third person who gives a garnishee memorandum pursuant to this title is not liable to any person for the disclosure in the garnishee memorandum of any information contained in the garnishee memorandum."  (California Code of Civil Procedure § 488.620.)  Thus, the Complaint's theory of causation is dependent upon the acceptance of a plainly erroneous theory that statutorily immunized conduct proximately caused ASR's alleged injury.

/ / /

Moreover, the Riverside Court's two orders validated RPP's decision to allow USRECH and ASR to litigate their competing claims and severed the chain of causation.  (RJN, Ex. C at Ex. D; Ex. D.)  See, General Motors v. FCA U.S., LLC, 44 F.4th 548, 563 (6th Cir. 2022).  (Chain of causation was too attenuated where the chain from wrongful and to injury "had to pass through the independent actions of at least two independent parties").

Finally, while the Complaint expresses some overall general fear about what might happen in the future, "speculative injuries do not serve to confer standing under RICO, unless they become concrete and actual."  Steele v. Hospital Corp. of America, 36 F.3d 69, 71 (9th Cir. 1994).

## V.   PLAINTIFFS FAIL TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED UNDER 18 U.S.C. § 1961(D)

The failure to adequately plead a § 1962(d) claim is fatal to the RICO conspiracy claim.  See, e.g., Howard v. America Online, Inc., 208 F.3d 741, 751 (9th Cir. 2000)  For that reason, Plaintiffs have not adequately alleged a RICO conspiracy claim.

The RICO conspiracy claim expressly incorporates all prior allegations, including the Third Claim for a "Civil Conspiracy," which involves only some of the alleged RICO conspirators.  There is no information about who formed what conspiracy at what time.  The Complaint leaves open the possibility that there were ongoing conspiracies with differing participants operating at the same time.  Pachulski and PSZJ are entitled to know much more about the conspiracies that existed and the differences between them.

## VI.   PLAINTIFFS' STATE LAW CLAIMS SHOULD BE DISMISSED FOR LACK OF CAUSATION

Plaintiffs' state law claims fail because there is no causation, as described above.  No injury is alleged by five of the six Plaintiffs.  ASR's claimed "injury" – / / /

a deprivation of partnership distributions – is irrevocably tied to RPP's service of a Memorandum of Garnishee and the rejection of ASR's litigation position.

## VII.   IN THE ALTERNATIVE, THIS COURT SHOULD REQUIRE PLAINTIFFS TO PROVIDE A MORE DEFINITE STATEMENT

In <u>Wieland</u>, the Court noted that a defendant faced with a shotgun pleading should move for a more definite statement. <u>Weiland</u>, 792  F.3d at 1321 n. 10.  For that reason, the Court should require the Plaintiffs to provide a more definite statement in the event that the RICO claim is not dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

## VIII.   IN THE ALTERNATIVE, THIS COURT SHOULD GRANT THE MOTION TO STRIKE

The second sentence of paragraph 93 states that "Indeed, as to Pachulski, for more than a year, Pachulski has used the entity RPP to deprive Plaintiff ASR," partnership distributions – despite the lack of a court order requiring it to do so – pursuant to a writ of attachment obtained by Calmwater/USRECH against Rubin, not ASR." (Complaint ¶ 93.)

Federal Rule of Civil Procedure 12(f) allows this Court to strike an allegation consisting of "redundant, immaterial, impertinent, scandalous, matter."  Matters are immaterial when they have no essential or important relationship to the claim for relief. <u>Guerrero v. Haliburton Energy Services, Inc.</u>, 231 F.Supp.3d 797, 802 (E.D. Cal. 2017).  Impertinent matters consist of statements that do not pertain and are not necessary to the issues in question.  <u>Id</u>.  Matters are scandalous when they "cast a cruelly derogatory light on a party or other person." <u>Marcus v. ABC Signature Studios</u>, 279 F.Supp.3d 1056, 1062 (C.D.Cal. 2017).

Whether or not there was a court order requiring RPP to withhold partnership distributions has no bearing on this action.  RPP was served with a Writ of Attachment, responded by filling out a Memorandum of Garnishee, and was immune from liability for doing so.  If the Court does not dismiss the Complaint

1    pursuant to Federal Rule of Civil Procedure 12(b)(6), the identified sentence should

2    be stricken as immaterial, impertinent and scandalous.

3    **IX.    THIS COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL**

4    **JURISDICTION ON THE SUBSTANTIALLY PREDOMINATING**

5    **STATE LAW CLAIMS**

6         Supplemental jurisdiction extends to claims that are "so related to claims in

7    the action within such original jurisdiction that they form part of the same case or

8    controversy under Article Ill of the United States Constitution."  (28 U.S.C.

9    § 1367(a).)

10        Under § 1367(c), a district court may decline supplemental jurisdiction over

11   a state law claim if:  (l) the claim raises a novel or complex issue of State law;

12   (2) the claim substantially predominates over the claim or claims over which the

13   district court has original jurisdiction; (3) the district court has dismissed all claims

14   over which it has original jurisdiction; or (4) in exceptional circumstances, there

15   are other compelling reasons for declining jurisdiction.  (28 U.S.C . § 1367(c).)

16        As demonstrated above, the two RICO claims – the only claims that can

17   conceivably justify the exercise of federal jurisdiction – suffer from fatal flaws and

18   must be dismissed.  Thus, this Court should decline to exercise supplemental

19   jurisdiction over the supplemental state law claims.

20        The state law claims for breach of fiduciary duty and malpractice

21   predominate in any event.  Their primacy is illustrated by not only the description

22   of the conduct in the introductory paragraphs of the Complaint, but also by the

23   placement of the claim for Breach of Fiduciary Duty as the very first Claim for

24   Relief pled in the Complaint.

25        Moreover, because Plaintiffs are forum shopping to avoid the adverse rulings

26   in their pending state court cases, there are additional reasons not to exercise

27   supplemental jurisdiction.  See, e.g., Molshi v. Kahn Winery, 381 F.Supp.2d 1209,

28   1212 (C.D.Cal. 2005) (Court declined to exercise supplemental jurisdiction while

noting need to discourage forum shopping through "attempted bootstrapping of several predominating state law claims to the single federal claim.")

## X.    **LEAVE TO AMEND SHOULD BE DENIED AS FUTILE**

Plaintiffs cannot plead any facts to support a claim that ASR's alleged "injury" was proximately caused by any misconduct alleged in the Complaint. For that reason, leave to amend should be denied. See, Chaset v. Fleer/Skybox Int'l., L.P., 300 F.3d 1083 (9th Cir. 2002) (Denying leave to amend in a RICO case where the Court had analyzed the "basic underlying facts" and concluded that "the plaintiffs cannot cure the basic flaw in their pleading.")

## XI.    **CONCLUSION**

This is simply not a federal case. The Complaint does not allege a RICO claim for relief against Pachulski and PSZJ, there is no proximate cause and causation alleged in connection with the state law claims. The Complaint should be dismissed in its entirety, with prejudice.

Dated: April 17, 2024           VALLE MAKOFF

By: */s/ John M. Moscarino*
                JOHN M. MOSCARINO
                Attorneys for Defendants
                RICHARD M. PACHULSKI and
                PACHULSKI STANG ZIEHL &
                JONES LLP

# **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendants Richard M. Pachulski and Pachulski Stang Ziehl & Jones LLP, certifies that this brief contains 6,823 words, which complies with the word limit of L.R. 11-6.1.

Dated:  April 17, 2024                         VALLE MAKOFF


By: */s/ John M. Moscarino*
JOHN M. MOSCARINO
Attorneys for Defendants
RICHARD M. PACHULSKI and
PACHULSKI STANG ZIEHL &
JONES LLP

**PSZJ'S MOTION TO DISMISS**